IRELL & MANELLA LLP
Jonathan H. Steinberg (98044)
Samuel K. Lu (171969)
Jason G. Sheasby (205455)
C. Maclain Wells (221609)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199
E-mail: jsteinberg@irell.com
E-mail: slu@irell.com
E-mail: jsheasby@irell.com
E-mail: mwells@irell.com

Attorneys for Defendant LSI CORPORATION and
Defendant and Counterclaimant AGERE SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC.,<br><br>         Plaintiff,<br><br>     vs.<br><br>LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware Corporation and AGERE SYSTEMS, INC., a Delaware corporation,<br><br>         Defendants. | ) CASE NO. CV-08-00775 (JW & RS)<br>)<br>)<br>)<br>) **LSI CORPORATION'S**<br>) **MOTION TO COMPEL NXP**<br>) **PRODUCT INFORMATION**<br>)<br>) Date:    September 10, 2008<br>) Time:    9:30 a.m.<br>)<br>)<br>) |
| AGERE SYSTEMS, INC., a Delaware corporation,<br><br>         Counterclaimant,<br><br>     vs.<br><br>NXP SEMICONDUCTORS USA, INC., a Delaware corporation, and<br><br>         Counterclaim-Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1899178

1

## TABLE OF CONTENTS

2
Page

3  I.    STATEMENT OF ISSUES TO BE DECIDED................................................................. 1

4  II.   STATEMENT OF RELEVANT FACTS AND ARGUMENT ......................................... 2

5        A.    NXP Refuses to Produce Information Necessary to Analyze Its 1987
             PLA License Defense............................................................................................. 2

6        B.    NXP Refuses to Provide Information Necessary to Identify Relevant
7             Products ................................................................................................................... 6

8  III.  CONCLUSION ......................................................................................................... 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE THAT** Defendants LSI Corporation and Agere Systems, Inc. (collectively "LSI"), shall, and hereby do, move for an order compelling Plaintiff NXP Semiconductors USA, Inc. ("NXP") to produce the documents and information that it is withholding relating to its current products that are the subject of this litigation.  LSI's motion shall be heard at 9:30 a.m. on September 10, 2008, before the Honorable Richard Seeborg.  LSI's motion is supported by this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the attached exhibits, any other evidence and argument that LSI may submit to the Court, and any matters of which the Court may take judicial notice.

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

## I.      STATEMENT OF ISSUES TO BE DECIDED

      In its complaint, NXP seeks declarations that a group of LSI patents are invalid and/or not infringed.  NXP also seeks a declaration that "any use by [NXP] of the methods or technology claimed in patents that were filed by AT&T or its related companies . . . is licensed and therefore noninfringing" under a 1987 license agreement between Philips and AT&T (the "1987 PLA").  [Ex. 1, ¶¶ 9-10, 16-18.][1]  NXP maintains that the 1987 PLA covers a number of the LSI patents in suit.  In an effort to narrow the issues, at the June 2, 2008 initial case management conference, the Court set a deadline for early summary judgment motions on NXP's licensing defense:  December 15, 2008.  [Ex. 2, Docket No. 38]  This affords the parties a relatively narrow window in which to obtain the relevant discovery and prepare motions.

      The 1987 PLA license grant only applies to "products and services of the kinds which are furnished or used by Philips . . . in the operation of the business in which it is engaged on the effective date of this Agreement [July 1, 1987]."  [Ex. 3, § 1.01(a).]  The license grant language requires the parties to compare current NXP products to historical Philips products to understand if NXP's current products are licensed.[2]

---

[1] All exhibits are attached to the Declaration of C. Maclain Wells In Support Of Motion To Compel NXP Product Information ("Wells Decl.") filed concurrently.

[2] A number of other requirements need to be established for NXP to actually take advantage of the 1987 PLA.

LSI served document requests and interrogatories seeking information on the function, use, and design of NXP's current products in order to compare the current products to historical Philips products. Complaining of undue burden, NXP refuses to produce the requested technical information on its current products until LSI designates "representative" NXP products. These representative products would be only a subset of the products that NXP currently markets.

In an effort to reach a middle ground, LSI has asked NXP to provide two narrow categories of information that will allow the parties to focus the litigation on the NXP products that truly matter and to explore whether it is possible to select representative NXP products:

- Sales and manufacturing-origin information so that the parties can identify which NXP products are actually generating significant revenue and will yield significant patent damages;

- An identification of which NXP products contain features that implicate the claims of the patents in suit, so that the parties can focus on products that are likely to infringe the patents in suit.

Using this preliminary information, the parties can focus their analysis of which NXP products are licensed to a subset of highly relevant products. NXP has refused to provide even these two narrow categories of information.

NXP cannot have it both ways: it refuses to produce requested technical information on its current products until LSI selects representative products, and it refuses to provide information necessary to make a reasoned determination on which products are actually relevant in the litigation.

LSI respectfully requests that the Court order NXP to produce the preliminary information identified above.

## II.    STATEMENT OF RELEVANT FACTS AND ARGUMENT

### A.    NXP Refuses to Produce Any Information Necessary to Analyze Its 1987 PLA License Defense

NXP seeks a declaration that "any use by [NXP] of the methods or technology claimed in patents that were filed by AT&T or its related companies [from July 1, 1987 to December 31,

1996] is licensed and therefore noninfringing" under the 1987 PLA. [Ex. 1, ¶¶ 9-10, 16-18.] NXP claims it is a beneficiary to the 1987 PLA through Philips.

The 1987 PLA license grant extends to "products and services" which satisfy a necessary condition:  they must be "of the kinds which are furnished or used by Philips . . . in the operation of the business in which it is engaged on the effective date of this Agreement [July 1, 1987] . . . ." [Ex. 3, § 1.01(a).]  The plain language of the license grant requires a comparison of NXP's current products to Philips' products on July 1, 1987.   The process of comparison requires an understanding of, among other things, the function, use, and design of both current NXP products and historical Philips products.

On May 21, 2008, LSI propounded a series of document requests and interrogatories calling for NXP to produce materials and provide information regarding the function, use, and design of NXP's current products.   [Ex. 5 (Requests 5, 17); Ex. 4 (Rog. 3).]   LSI needs this information so that it can conduct the comparison called for by the 1987 PLA license grant.  NXP has refused to provide the requested information, even though it is directly relevant to the question of which NXP products, if any, are protected by the 1987 PLA.  [*Id.*]

Below are the relevant discovery requests and responses:

**REQUEST NO. 5:**

For all current NXP products, DOCUMENTS sufficient to fully describe the location of manufacture of the product, the identity of the line used to manufacture the product, and the entity that manufactures the product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement.  NXP objects to this request to the extent that LSI requests documents in the public domain or within the possession of LSI.  NXP further objects to this request because it employs the ambiguous term "manufacturing line".

NXP further objects to this request because it is unduly burdensome and premature in that it makes no effort to limit its request to products that are at issue in this case, and comes before receiving LSI's contentions of which products are at issue in this case. Answering this request would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products. Furthermore, to the extent this request calls for the identity of goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action, NXP objects to this request on grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 17:**

DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP as of the initiation of this action and within the last six years, including a description of the method of manufacture, the intended use, and the function.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence in that it makes no effort to limit its request to products that arc at issue in this case, and comes before LSI has issued its infringement contentions. The request covers potentially unlimited numbers of products, most of which are not at issue in this case. Further, NXP objects to this request to the extent that it was not in existence in 1987. NXP further objects to this request because it employs ambiguous terms "method of manufacture", "intended use"

and "function".  Finally, NXP objects to this request as duplicative of the one preceding.

## INTERROGATORY NO. 3:

For each product identified in response to Interrogatory No. 2 [Interrogatory No. 2 requests that NXP identify the products it contends are licensed under the 1987 PLA], IDENTIFY the date on which the product was first sold, the date the product was designed, the date on which each manufacturing line used to manufacture the product was designed, and the date on which each manufacturing line used to manufacture the product was first used, including the IDENTITY of DOCUMENTS sufficient to evidence the foregoing.

## RESPONSE TO INTERROGATORY NO. 3:

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement.  NXP objects to this interrogatory on the grounds that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that its products do not infringe the Patents-In-Suit and therefore no license is necessary.  NXP objects to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the right to amend or modify its answer as further information comes to light.  Further, NXP objects to this interrogatory as unduly burdensome and premature because answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products.  Also, to the extent this interrogatory requests the identity of licensed goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action, this interrogatory is irrelevant, over broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Further, NXP objects to

this interrogatory on the grounds that it is vague and ambiguous as to the phrase "manufacturing line".

**B.    NXP Refuses to Provide Information Necessary to Identify Relevant Products**

NXP maintains that it has "50,000+ licensed products" and that it would be overly burdensome to produce discovery on every single product. [Wells Decl., ¶ 4.] NXP demands "that the parties agree to proceed with discovery on the basis of representative products" before it produces any substantive discovery on its products. [*Id.*]

LSI is willing to explore the possibility of designating representative NXP products for use in both the license defense and patent phases of the case. LSI has asked NXP to provide it with information necessary to determine whether it is possible to designate representative products. This information falls into two categories:

**Category 1:  Sales and Manufacturing Information on NXP's Current Products**

For all products NXP has sold in the period beginning six years before the initiation of the litigation ("NXP current products"), LSI has requested a list by quarter of the number of units of each product sold, the purchaser of the product, the price of the product, the location of manufacture of the product, and the identity of the manufacturer. [Wells Dec. ¶ 6.] LSI needs a brief description of what role third parties play in the manufacture of the product (e.g., the circuits they designed or built). The information on third party manufacturing will assist LSI in determining if a product is licensed under the patents in suit via an agreement with a third party.

The requested information will allow LSI to focus on a subset of NXP's "50,000+" products that are commercially relevant—those products which:  (a) generate substantial revenue for NXP; (b) are not already licensed under agreements with third parties.

NXP has rejected LSI's proposal, maintaining that the information is irrelevant. [Wells Dec. ¶ 6.]

Category 1 information is also directly responsive to a number of discovery requests that NXP has refused to comply with. [Ex. 5 (Requests 5, 7-8, 17).] Below are the relevant discovery requests and responses:

**REQUEST NO. 5:**

For all current NXP products, DOCUMENTS sufficient to fully describe the location of manufacture of the product, the identity of the line used to manufacture the product, and the entity that manufactures the product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this request to the extent that LSI requests documents in the public domain or within the possession of LSI. NXP further objects to this request because it employs the ambiguous term "manufacturing line".

NXP further objects to this request because it is unduly burdensome and premature in that it makes no effort to limit its request to products that are at issue in this case, and comes before receiving LSI's contentions of which products are at issue in this case. Answering this request would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products. Furthermore, to the extent this request calls for the identity of goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action, NXP objects to this request on grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:**

DOCUMENTS sufficient to disclose all THIRD PARTIES who purchased products from NXP in the last six years, and the types and amounts of products purchased.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this request because it is unduly burdensome and premature in that it comes before receiving LSI's contentions of which products are at issue in this case and is therefore not reasonably limited in scope to documents related to products at issue in this case. NXP also objects to this request as demanding confidential business information of third parties. Further, NXP objects on the grounds that this request is not reasonably calculated to lead to the discovery of admissible evidence. NXP will meet and confer with LSI in a good faith attempt to narrow the scope of this request.

**REQUEST NO. 8:**

DOCUMENTS sufficient to fully disclose the top ten purchasers of NXP products by dollar amount in the Mobile & Personal, Home, Automotive & Identification, Multimarket Semiconductor, and commodity market segments over the last 6 years, the purchase amounts and products purchased for each of the last 6 years, and any agreements NXP has with these customers to supply NXP products on a going forward basis.

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

2         As explained in the GENERAL OBJECTIONS section above at paragraph

3    5, NXP objects to this request as overly broad and premature in that it requests

4    information outside the scope of the current phase of litigation as agreed by the

5    parties and is not related to the terms and coverage of the Patent Licensing

6    Agreement.  NXP objects to this request to the extent that LSI requests documents

7    in the public domain or within the possession of LSI.  NXP further objects to this

8    request because it employs the ambiguous terms "market segment" "commodity

9    market" and "purchase amounts".  NXP further objects to this request because it is

10   over broad, unduly burdensome and premature in that it comes before receiving

11   LSI's contentions of which products are at issue in this case and is therefore not

12   reasonably limited in scope to documents related to products at issue in this case.

13
14   **REQUEST NO. 17:**

15        DOCUMENTS sufficient to identify and fully describe all products sold or

16   used by NXP as of the initiation of this action and within the last six years,

17   including a description of the method of manufacture, the intended use, and the

18   function.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

20        As explained in the GENERAL OBJECTIONS section above at paragraph

21   5, NXP objects to this request as overly broad and premature in that it requests

22   information outside the scope of the current phase of litigation as agreed by the

23   parties and is not related to the terms and coverage of the Patent Licensing

24   Agreement.   NXP further objects to this interrogatory because it is unduly

25   burdensome, premature and not reasonably calculated to lead to discovery of

26   admissible evidence in that it makes no effort to limit its request to products that arc

27   at issue in this case, and comes before LSI has issued its infringement contentions.

28   The request covers potentially unlimited numbers of products, most of which are

1    not at issue in this case.  Further, NXP objects to this request to the extent that it

2    was not in existence in 1987.  NXP further objects to this request because it

3    employs ambiguous terms "method of manufacture", "intended use" and "function".

4    Finally, NXP objects to this request as duplicative of the one preceding.

**Category 2:  Identification of Products with Potentially Infringing Features**

Interrogatories 12-17 request that NXP identify those NXP products that contain structures or are made using processes relevant to claims of the patents in suit.  [Ex. 4 (Rogs. 12-17).]  This information will assist in limiting the scope of the license dispute by allowing the parties to also focus on subset of NXP's "50,000+" products which are candidates for claims of infringement.

For example, LSI's '335 patent (one of the patents in suit) relates to the use of tungsten in the design of an integrated circuit.  [Ex. 8, at Abstract; claim 1.]  Interrogatory 12 asks NXP to identify its products with tungsten plugs.  It is this subgroup of NXP products that the parties will focus on in the infringement phase of the case as it relates to the '335 patent, and so it makes sense to deal with this same subgroup in the licensing phase of the case.

As to Interrogatories 16-17, <u>NXP formally committed in June 2008 to providing the requested information</u> and agreed to "update [its] answer at the soonest possible opportunity."  [Ex. 4.]  In its August 5 supplementation, NXP changed course and stated that it would not provide any of the requested information.  [*Id.*]

As to Interrogatories 12-15, NXP has refused to provide any of the requested information.  [Ex. 4.]

NXP's shifting positions continue to delay the collection of information necessary to achieve its stated goal—to limit the number of products the parties must analyze to determine if they are within the scope of the 1987 PLA.  As evidenced by NXP's original response to Interrogatories 16-17, the information requested in Interrogatories 12-17 is not unduly burdensome to collect.  NXP has no basis for refusing to respond to proper discovery requests.  Indeed, LSI is willing to limit the requested information to current NXP products in order to expedite the process of collecting the relevant information.

LSI MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)

Below are the relevant discovery requests and responses:

**INTERROGATORY NO. 12:**

IDENTIFY, by product number and product description, every semiconductor product sold by NXP since July 1, 1987 having a tungsten plug, IDENTIFY DOCUMENTS sufficient to fully describe all steps in the manufacture of tungsten plugs in the product, as well as the location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the foregoing.

**RESPONSE TO INTERROGATORY NO. 12:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. Further, NXP objects to this interrogatory on the grounds that it employs the vague and ambiguous use of the term "semiconductor product".  To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the grounds that it employs the vague and ambiguous use of the term "semiconductor product".  To the extent that this

interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

Subject to and without waiving the foregoing objections, NXP responds as follows: In the light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this interrogatory is irrelevant (emphasis added).

**INTERROGATORY NO. 13:**

IDENTIFY, by product number and product description, every semiconductor product sold by NXP since July 1, 1987 having a passivation layer that is deposited with at least one high density plasma chemical vapor deposition step, IDENTIFY DOCUMENTS sufficient to fully describe all steps in the manufacture of any passivation layers in the product, as well as the location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the foregoing.

**RESPONSE TO INTERROGATORY NO. 13:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "high density plasma chemical vapor deposition" and "passivation layer".  To the extent that this interrogatory calls for information

related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "high density plasma chemical vapor deposition" and "passivation layer". To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

Subject to and without waiving the foregoing objections, NXP responds as follows: In the light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this interrogatory is irrelevant (emphasis added).

**INTERROGATORY NO. 14:**

IDENTIFY, by product number and product description, every semiconductor product sold by NXP since July 1, 1987 having at least one

aluminum interconnect whereby a cross sectional area of the aluminum interconnect in a region closer to the substrate is, by design, greater than a cross sectional area of the aluminum interconnect in a region further away from the substrate, IDENTIFY DOCUMENTS sufficient to fully describe all steps in the manufacture of the aluminum interconnects, as well as the location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the foregoing.

**RESPONSE TO INTERROGATORY NO. 14:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "high density plasma chemical vapor deposition" and "passivation layer". NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues. To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. Further,

1   NXP objects to this interrogatory on the grounds that it employs vague and

2   ambiguous terms "semiconductor product" "high density plasma chemical vapor

3   deposition" and "passivation layer".  NXP objects to this interrogatory as premature

4   at this early date in the litigation, and reserves the right to update as discovery

5   continues.  To the extent that this interrogatory calls for information related to

6   products that LSI will not accuse and which are not therefore at issue in this

7   litigation, NXP objects to this interrogatory as premature, unduly burdensome, and

8   not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to

9   this interrogatory as not reasonably limited in scope or time as NXP did not exist in

10  1987.

11      Subject to and without waiving the foregoing objections, NXP responds as

12  follows: In the light of NXP's Supplemental Response to Interrogatory No. 2 and

13  the explanation provided in Mark Taylor's July 23, 2008 letter to C. Maclain Wells,

14  the information requested by this interrogatory is irrelevant (emphasis added).

15  **INTERROGATORY NO. 15:**

16

17      IDENTIFY, by product number and product description, every integrated

18  circuit product sold by NXP since December 1, 1998 that is capable of generating a

19  drive current for a laser and that, either alone or in combination with another

20  component, is capable of sensing the temperature of the integrated circuit,

21  IDENTIFY DOCUMENTS sufficient to fully describe the design and operation of

22  the circuit, as well as the location of manufacture of the product, and the identity of

23  the manufacturer, and IDENTIFY the NXP employee most knowledgeable about

24  the foregoing.

25  **RESPONSE TO INTERROGATORY NO. 15:**

26      As explained in the GENERAL OBJECTIONS section above at paragraph

27  5, NXP objects to this interrogatory as overly broad in that it requests information

28  outside the scope of the current phase of litigation as agreed by the parties and is

not related to the terms and coverage of the Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to this interrogatory on the grounds that it employs the vague and ambiguous terms "integrated circuit product" and "drive current".  To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1998.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to this interrogatory on the grounds that it employs the vague and ambiguous terms "integrated circuit product" and "drive current".  To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1998.

Subject to and without waiving the foregoing objections, NXP responds as follows: In the light of NXP's Supplemental Response to Interrogatory No. 2 and

1  the explanation provided in Mark Taylor's July 23, 2008 letter to C. Maclain Wells,

2  the information requested by this interrogatory is irrelevant (emphasis added).

3

4  **INTERROGATORY NO. 16:**

5      IDENTIFY, by product number and product description, every

6  semiconductor product sold by NXP since June 1, 1999 that contains a phase locked

7  loop capable of outputting a signal generated based on comparing an input signal,

8  or a signal related thereto, to a reference signal, or a signal related thereto,

9  IDENTIFY DOCUMENTS sufficient to fully describe the design and operation of

10 the device and phase locked loop, as well as the location of manufacture of the

11 product, and the identity of the manufacturer, and IDENTIFY the NXP employee

12 most knowledgeable about the foregoing.

13 **RESPONSE TO INTERROGATORY NO. 16:**

14     As explained in the GENERAL OBJECTIONS section above at paragraph

15 5, NXP objects to this interrogatory as overly broad in that it requests information

16 outside the scope of the current phase of litigation as agreed by the parties and is

17 not related to the terms and coverage of the Patent Licensing Agreement.  NXP

18 objects to this interrogatory as premature at this early date in the litigation, and

19 reserves the right to update as discovery continues.  Further, NXP objects to this

20 interrogatory on the grounds that it employs vague and ambiguous terms

21 "semiconductor product" "phase locked loop", "input signal" and "reference signal".

22 Furthermore, the entire phrase "contains a phase locked loop capable of outputting a

23 signal generated based on comparing an input signal", is objected to as ambiguous

24 and impossible to parse.  To the extent that this interrogatory calls for information

25 related to products that LSI will not accuse and which are not therefore at issue in

26 this litigation, NXP objects to this interrogatory as premature, unduly burdensome,

27 and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

28 to this interrogatory as not reasonably limited in scope or time as NXP did not exist

in 1999.  Subject to, and without waiving the foregoing objections, NXP responds as follows:

The NXP employee most knowledgeable about these products is Luca Lo Coco, however NXP will require additional time to review hundreds of products, analyze data sheets and design descriptions in order to answer fully and completely this interrogatory.  It will update this answer at the soonest possible opportunity (emphasis added).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "phase locked loop", "input signal" and "reference signal". Furthermore, the entire phrase "contains a phase locked loop capable of outputting a signal generated based on comparing an input signal", is objected to as ambiguous and impossible to parse.  To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1999.

Subject to, and without waiving the foregoing objections, NXP responds as follows:  NXP does not contend that either of the Patents-In-Suit concerning phase-locked loop technology is within the EXTENDED PERIOD of the 1987 Patent

1  License Agreement, as amended. Accordingly, the information requested by this

2  interrogatory is, at this stage of the case, irrelevant (emphasis added).

3

4  **INTERROGATORY NO. 17:**

5      IDENTIFY, by product number and product description, every

6  semiconductor product sold by NXP since July 1, 1987 having a gate runner

7  including a silicide overlayer, whereby a first layer of dielectric is deposited over

8  the gate runner and a second layer of dielectric is deposited over the first layer of

9  dielectric, IDENTIFY DOCUMENTS sufficient to fully describe the design and

10  operation of the gate runner and layers of dielectric, as well as the location of

11  manufacture of the product, and the identity of the manufacturer, and IDENTIFY

12  the NXP employee most knowledgeable about the foregoing.

13  **RESPONSE TO INTERROGATORY NO. 17:**

14      As explained in the GENERAL OBJECTIONS section above at paragraph

15  5, NXP objects to this interrogatory as overly broad in that it requests information

16  outside the scope of the current phase of litigation as agreed by the parties and is

17  not related to the terms and coverage of the Patent Licensing Agreement. NXP

18  objects to this interrogatory as premature at this early date in the litigation, and

19  reserves the right to update as discovery continues. Further, NXP objects to this

20  interrogatory on the grounds that it employs vague and ambiguous terms

21  "semiconductor product" "gate runner", "silicide overlayer" and "dielectric". To the

22  extent that this interrogatory calls for information related to products that LSI will

23  not accuse and which are not therefore at issue in this litigation, NXP objects to this

24  interrogatory as premature, unduly burdensome, and not reasonably calculated to

25  lead to admissible evidence. Finally, NXP objects to this interrogatory as not

26  reasonably limited in scope or time as NXP did not exist in 1987. Subject to, and

27  without waiving the foregoing objections, NXP responds as follows:

28

The NXP employee most knowledgeable about the above products is Rutger Wijburg, however NXP will require additional time to review hundreds of products, analyze data sheets and design descriptions in order to answer fully and completely this interrogatory. It will update this answer at the soonest possible opportunity (emphasis added).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "gate runner", "silicide overlayer" and "dielectric". To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

Subject to and without waiving the foregoing objections, NXP responds as follows: In the light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this interrogatory is irrelevant (emphasis added).

**III.    CONCLUSION**

NXP has insisted that it will not provide any technical information on its products until LSI selects representative products, and yet it also refuses to provide the basic information that LSI needs in order to explore the viability of selecting representative products. NXP's position appears

1  to be designed with one goal in mind—preventing LSI from meeting the deadline for summary

2  judgment briefing on the scope of the 1987 PLA.

3          LSI respectfully requests that the Court order the following schedule:

4          • Within five business days of the Court's order, NXP must produce the Category 1

5             and Category 2 information as to NXP current products.

6          • Within ten business days of LSI identifying a current NXP product or product

7             family, NXP must provide the information on its function, use, manufacture, and

8             design history specified in Requests for Production 5 and 17 and Interrogatory 3.[3]

11  DATED:  August 6, 2008                    Respectfully Submitted,

12                                            IRELL & MANELLA LLP
                                              Jonathan H. Steinberg
13                                            Samuel K. Lu
                                              Jason G. Sheasby
14                                            C. Maclain Wells

16                                            By:___/s/ C. Maclain Wells_____
                                                      C. Maclain Wells

17                                            Attorneys for Defendant LSI CORPORATION and
                                              Defendant and Counterclaimant AGERE SYSTEMS,
18                                            INC.

---

26      [3] LSI's Request for Production No. 33, served in LSI's Second Set of Requests for
Production, also seeks information about current NXP products necessary to understand whether
27  they are licensed.  NXP has declined to produce the requested information until the parties reach
    "a mutually acceptable agreement to proceed with discovery on the basis of representative parts."
28  [Ex. 9.]  LSI presumes that NXP will voluntarily produce the documents specified in this request
    as to the specific NXP products identified by LSI if the Court grants LSI's motion.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., | ) CASE NO. CV-08-00775 (JW, RS) |
| | ) |
| Plaintiff, | ) |
| | ) **[PROPOSED] ORDER GRANTING** |
| vs. | ) **LSI CORPORATION'S MOTION TO** |
| | ) **COMPEL NXP PRODUCT** |
| LSI CORPORATION d/b/a LSI LOGIC | ) **INFORMATION** |
| CORPORATION, a Delaware Corporation | ) |
| and AGERE SYSTEMS, INC., a Delaware | ) Date:      September 10, 2008 |
| corporation, | ) Time:      9:30 a.m. |
| | ) |
| Defendants. | ) |
| AGERE SYSTEMS, INC., a Delaware | ) |
| corporation, | ) |
| | ) |
| Counterclaimant, | ) |
| | ) |
| vs. | ) |
| | ) |
| NXP SEMICONDUCTORS USA, INC., | ) |
| a Delaware corporation, | ) |
| | ) |
| Counterclaim-Defendant. | ) |

Having considered the papers and arguments submitted in connection with LSI Corporation's Motion to Compel NXP Product Information, and good cause appearing therefore,

IT IS HEREBY ORDERED that:

LSI Corporation's Motion to Compel is GRANTED.

- Within five business days of the Court's order, for all NXP products sold during the period beginning six years before the initiation of the litigation ("NXP current products"), NXP must produce a list by quarter of the number of units of each product it sold, the purchaser of the product, the price of the product, the location of manufacture of the product, and the identity of the manufacturer.  NXP must

1         provide LSI with a description of what role third parties play or played in the

2         manufacture of the product.

3       •   Within five business days of the Court's order, NXP must respond to LSI's

4         Interrogatories 12-17 as to NXP current products.

5       •   Within ten business days of LSI identifying a current NXP product or product

6         family, NXP must provide the information on its function, use, manufacture, and

7         design history specified in Requests for Production 5 and 17 and Interrogatory 3.

8

9

10

11 DATED: _____, 2008         _____

                                         Hon. Richard Seeborg

12                                          United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING LSI'S
MOTION TO COMPEL CASE NO. CV-08-
00775 (JW, RS)          - 2 -