IRELL & MANELLA LLP
Jonathan H. Steinberg (98044)
Samuel K. Lu (171969)
Jason G. Sheasby (205455)
C. Maclain Wells (221609)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199
E-mail: jsteinberg@irell.com
E-mail: slu@irell.com
E-mail: jsheasby@irell.com
E-mail: mwells@irell.com

Attorneys for Defendant LSI CORPORATION and
Defendant and Counterclaimant AGERE SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC.,<br><br>               Plaintiff,<br><br>     vs.<br><br>LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware Corporation and AGERE SYSTEMS, INC., a Delaware corporation,<br><br>               Defendants. | ) CASE NO. CV-08-00775 (JW & RS)<br>)<br>)<br>)<br>)<br>) **DECLARATION OF C. MACLAIN**<br>) **WELLS IN SUPPORT OF LSI**<br>) **CORPORATION'S MOTION TO**<br>) **COMPEL NXP PRODUCT**<br>) **INFORMATION**<br>)<br>) Date:     September 10, 2008<br>) Time:    9:30 a.m.<br>) |
| AGERE SYSTEMS, INC., a Delaware corporation,<br><br>               Counterclaimant,<br><br>     vs.<br><br>NXP SEMICONDUCTORS USA, INC., a Delaware corporation, and<br><br>               Counterclaim-Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1909940

## DECLARATION OF C. MACLAIN WELLS

I, C. Maclain Wells, declare under penalty of perjury that the following is true and correct.

1.     I am an attorney with the law firm of Irell & Manella, LLP, counsel of record for defendant LSI Corporation and defendant and counterclaimant Agere Systems, Inc. (collectively, "LSI"), in the above-captioned matter.  I am a member of the State Bar of California and have been admitted to practice before this Court.

2.     Responses to LSI's First Set of Requests for Production and First Set of Interrogatories (the subject of the motion filed concurrently with this declaration ("the Motion")) were served by NXP Semiconductor USA, Inc. ("NXP") on June 20, 2008.

3.     On June 30, 2008 LSI sent a letter to NXP setting out concerns it had with NXP's discovery responses, including the responses to the discovery requests that are the subject of the Motion.

4.     At the parties' July 15, 2008 meet and confer and in correspondence on July 18 and 23, 2008, NXP claimed that it has "50,000+ licensed products" and demanded "that the parties agree to proceed with discovery on the basis of representative products" before it produces any of the requested discovery on its current products.  [Ex. 6, at 2; Ex. 7, at 3]

5.     In follow-up letters dated July 18, 21, and 28, 2008, LSI explained why the information it is requesting in the Motion is relevant to the licensing phase of the case and can assist with the process of identifying relevant products.

6.     LSI's July 18 and 28 letters proposed that NXP provide "for each NXP product sold since six years before the date of initiation of this litigation, a list by quarter of the number of units of each product sold, the purchaser of the product, the price of the product, the location of manufacture of the product and the identity of the manufacturer."  In a letter dated July 23, 2008, NXP declined, stating that the information was "irrelevant."

7.     LSI understands that NXP's final position on providing the information requested in the Motion is that LSI should only be entitled to discovery on "representative" NXP products and that the representative products should be those that were discussed by the parties during pre-litigation settlement communications.

8.    LSI's July 28 letter noted that it believed the meet and confer process had been completed on the matters that are the subject of this motion.

9.    Attached hereto as Exhibit 1 is a true and correct copy of NXP Semiconductor USA, Inc.'s Amended Complaint for Declaratory Judgment and Demand for Jury Trial, filed in the above-captioned matter on May 30, 2008.  The attachments to the Amended Complaint have been intentionally omitted.

10.    Attached hereto as Exhibit 2 is a true and correct copy of the Amended Scheduling Order [Docket No. 38], entered in the above-captioned matter on August 5, 2008.

11.    Attached hereto as Exhibit 3 is a true and correct copy of portions of the Patent License Agreement entered into by American Telephone and Telegraph Company, N.V. Philips Gloeilampenfabrieken and U.S. Philips Corporation, on or about July 1, 1987.

12.    Attached hereto as Exhibit 4 is a true and correct copy of Plaintiff NXP Semiconductors USA, Inc's Supplemental Responses to LSI's First Set of Interrogatories, served in the above-captioned matter on August 5, 2008.

13.    Attached hereto as Exhibit 5 is a true and correct copy of Plaintiff NXP Semiconductors USA, Inc's Responses to LSI's First Set of Requests for Document Production, served in the above-captioned matter on June 20, 2008.

14.    Attached hereto as Exhibit 6 is a true and correct copy of a letter from Mark W. Taylor, dated July 18, 2008, to C. Maclain Wells, relating, in part, to NXP's responses to LSI's discovery requests.

15.    Attached hereto as Exhibit 7 is a true and correct copy of a letter from Mark W. Taylor, dated July 23, 2008, to C. Maclain Wells, relating, in part, to NXP's responses to LSI's discovery requests.

16.    Attached hereto as Exhibit 8 is a true and correct copy of United States Patent No. 5,227,335.

17.    Attached as Exhibit 9 is a true and correct copy of Plaintiff NXP Semiconductors USA, Inc's Responses to LSI's Second Set of Requests for Document Production, served in the above-captioned matter on July 18, 2008.

1    DATED:  August 6, 2008                    By:    /s/ C. Maclain Wells
2                                                     C. Maclain Wells
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF C. MACLAIN
WELLS ISO LSI'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)              - 3 -

# EXHIBIT 1

MICHAEL E. MOLLAND (State Bar No. 111830)
DANIEL JOHNSON, JR. (State Bar No. 57409)
BRETT M. SCHUMAN (State Bar No. 189247)
GREGG P. YATES (State Bar No. 224641)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail:  mmolland@morganlewis.com
E-mail:  djjohnson@morganlewis.com
E-mail:  bschuman@morganlewis.com

Attorneys for Plaintiff
NXP SEMICONDUCTORS USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware corporation, and AGERE SYSTEMS, INC., a Delaware corporation, <br><br> Defendants. | Case No. CV-08-0775 JW <br><br> **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

1

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

Plaintiff NXP SEMICONDUCTORS USA, INC. ("NXP") alleges as follows:

## PARTIES

1.      Plaintiff NXP is a Delaware corporation with its principal place of business at 1109 McKay Drive, San Jose, California 95131. NXP is qualified and duly authorized to conduct business in the State of California.

2.      On information and belief, defendant LSI CORPORATION d/b/a LSI LOGIC CORPORATION ("LSI") is a Delaware corporation with its principal place of business at 1621 Barber Lane, Milpitas, California 95035.

3.      On information and belief, defendant AGERE SYSTEMS, INC. ("AGERE") is a Delaware corporation with its principal place of business at 1110 American Parkway NE, Allentown, Pennsylvania 18109. On information and belief, AGERE is a wholly owned subsidiary of LSI.

## JURISDICTION AND VENUE

4.      This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1338(a).

5.      This Court has personal jurisdiction over defendant LSI because LSI has its principal place of business in the Northern District of California, and therefore has sufficient contacts with the State of California to satisfy the requirements of due process and Rule 4(k)(2) of the Federal Rules of Civil Procedure.

6.      This Court has personal jurisdiction over defendant AGERE because AGERE has substantial ongoing business activity in the Northern District of California including but not limited to negotiations with NXP regarding licensing of the AGERE patents-in-suit.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) & (c).

## INTRADISTRICT ASSIGNMENT

8.      Under Local Rule 3-2(c), this action for declaratory judgment as to the patents at issue shall be assigned on a district-wide basis, notwithstanding the fact that a substantial part of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

2

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1   the events that give rise to the claims alleged herein occurred in Santa Clara County, in the San

2   Jose Division of this Court.

3   **GENERAL ALLEGATIONS**

4         9.     On or about July 1, 1987, Koninklijke Philips Electronics, N.V. ("Philips"), a

5   Dutch corporation, and American Telephone and Telegraph Company ("AT&T"), entered into a

6   Patent License Agreement ("PLA"). In the PLA, Philips and AT&T broadly granted to each

7   other a license to the other's patents that were filed between July 1, 1987 and July 1, 1994. The

8   PLA referred to this time frame as the "Limited Period." A true and correct copy of the PLA is

9   attached hereto as Exhibit 1.

10        10.     In November 1995, Philips and AT&T modified and extended the PLA. Among

11   other things, Philips and AT&T extended the Limited Period from July 1, 1994 to December 31,

12   1996. Philips and AT&T referred to this as the "Extended Period." Moreover, Philips and AT&T

13   agreed that the license granted to Philips in the PLA "may be sublicensed to any future divested

14   present business of Philips . . . to the extent applicable to those products and services sold by the

15   future divested business which are substantially similar to products and services sold by it prior to

16   its divestiture." A true and correct copy of the agreement extending and modifying the PLA is

17   attached hereto as Exhibit 2.

18        11.     In 2006, Philips transferred its semiconductor business to NXP B.V., the parent

19   company of NXP. As part of the transaction, Philips sublicensed to NXP B.V. and NXP the

20   license granted to Philips in the PLA.

21        12.     In communications with NXP, both LSI and AGERE have asserted rights to

22   certain patents. LSI and AGERE have asserted that they are the assignees of certain patents in

23   semiconductor and other technology, some of which originally issued to AT&T or its related

24   companies. LSI is claiming rights under the following patents:

25        (A)     U.S. Patent No. 5,600,182 (the "'182 patent"), filed on January 24, 1995 and

26                 issued on February 4, 1997, entitled "Barrier Metal Technology for Tungsten Plug

27                 Interconnection." A true and correct copy of the '182 patent is attached to this

28                 Complaint as Exhibit 3.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7696185.2          3          AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    (B)   U.S. Patent No. 5,827,777 (the "'777 patent"), filed Sept. 24, 1996 and issued on

2          October 27, 1998, entitled "Method of Making a Barrier Metal Technology for

3          Tungsten Plug Interconnection." A true and correct copy of the '777 patent is

4          attached to this Complaint as Exhibit 4.

5   AGERE is claiming rights under the following patents:

6    (C)   U.S. Patent No. 5,373,180 (the "'180 patent"), filed on September 14, 1993 and

7          issued on December 13, 1994, entitled "Planar Isolation Technique for Integrated

8          Circuits." A true and correct copy of the '180 patent is attached to this Complaint

9          as Exhibit 5.

10    (D)   U.S. Patent No. 5,227,335 (the "'335 patent"), filed on April 30, 1990 and issued

11          on July 13, 1993, entitled "Tungsten Metallization." A true and correct copy of

12          the '335 patent is attached to this Complaint as Exhibit 6.

13    (E)   U.S. Patent No. 5,599,739 (the "'739 patent"), filed on Dec. 30, 1994 and issued

14          on February 4, 1997, entitled "Barrier Layer Treatments for Tungsten Plug." A

15          true and correct copy of the '739 patent is attached to this Complaint as Exhibit 7.

16    (F)   U.S. Patent No. 5,149,672 (the "'672 patent"), filed on August 29, 1991 and issued

17          on September 22, 1992, entitled "Process for Fabricating Integrated Circuits

18          Having Shallow Junctions." A true and correct copy of the '672 patent is attached

19          to this Complaint as Exhibit 8.

20    (G)   U.S. Patent No. 5,022,958 (the "'958 patent"), filed on June 27, 1990 and issued

21          on June 11, 1991, entitled "Method of Etching for Integrated Circuits with

22          Planarized Dielectric." A true and correct copy of the '958 patent is attached to

23          this Complaint as Exhibit 9.

24    (H)   U.S. Patent No. 6,153,543 (the "'543 patent"), filed on August 9, 1999 and issued

25          on November 28, 2000, entitled "High Density Plasma Passivation Layer and

26          Method of Application." A true and correct copy of the '543 patent is attached to

27          this Complaint as Exhibit 10.

28    (I)   U.S. Patent No. 4,914,500 (the "'500 patent"), filed on December 4, 1987 and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2          4            AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    issued on April 3, 1990, entitled "Method for Fabricating Semiconductor Devices

2    Which Include Sources and Drains Having Metal-Containing Material Regions,

3    and the Resulting Devices." A true and correct copy of the '500 patent is attached

4    to this Complaint as Exhibit 11.

5    (J)    U.S. Patent No. 4,919,748 (the "'748 patent"), filed on June 30, 1989 and issued

6    on April 24, 1990, entitled "Method for Tapered Etching." A true and correct

7    copy of the '748 patent is attached to this Complaint as Exhibit 12.

8    (K)    U.S. Patent No. 5,844,928 (the "'928 patent"), filed provisionally on February 27,

9    1996 and issued on December 1, 1998, entitled "Laser Driver with Temperature

10    Sensor on an Integrated Circuit." A true and correct copy of the '928 patent is

11    attached to this Complaint as Exhibit 13.

12    (L)    U.S. Patent No. 5,909,149 (the "'149 patent"), filed on August 29, 1997 and issued

13    on June 1, 1999, entitled "Multiband Phase Locked Loop Using a Switched

14    Voltage Controlled Oscillator." A true and correct copy of the '149 patent is

15    attached to this Complaint as Exhibit 14.

16    (M)    U.S. Patent No. 6,163,184 (the "'184 patent"), filed on December 9, 1998 and

17    issued on December 19, 2000, entitled "Phase Locked Loop (PLL) Circuit." A

18    true and correct copy of the '184 patent is attached to this Complaint as Exhibit 15.

19    13.    Both LSI and AGERE have asserted that NXP, by its manufacture, offers for sale,

20    and/or sales of certain semiconductor and other products, infringes and/or has infringed the

21    aforementioned patents. Since early 2007, both LSI and AGERE have communicated with NXP

22    on numerous occasions regarding their belief that the aforementioned patents are valid and that

23    NXP is infringing or has infringed those patents. Moreover, both LSI and AGERE have

24    demanded that NXP enter into another license agreement regarding the patents. These

25    communications have created an apprehension in NXP that LSI and AGERE intend to sue if NXP

26    refuses to enter into such a license.

27    14.    NXP disputes LSI and AGERE's positions with respect to the aforementioned

28    patents. Namely, NXP disputes that the claims of the aforementioned patents are valid. NXP

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2                    5                    AMENDED COMPLAINT
                                                       FOR DECLARATORY JUDGMENT
                                                       CV-08-0775 JW

1   also disputes that its conduct infringes any of the aforementioned patents, or any valid and

2   enforceable claim of any of these patents.

3        15.    An actual and justiciable controversy exists between NXP on the one hand and LSI

4   and AGERE on the other hand concerning whether NXP infringes any valid claim of the

5   aforementioned patents. NXP now seeks a declaratory judgment that the claims of the

6   aforementioned patents are invalid and/or that NXP does not infringe any valid claim of the

7   aforementioned patents.

8                 **FIRST CLAIM FOR RELIEF**

9             (Declaratory Relief Regarding Meaning of PLA)

10       16.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

11  through 15 of this Complaint.

12       17.    An actual controversy has arisen and now exists between NXP on the one hand

13  and LSI and AGERE on the other hand concerning their rights and duties under the PLA, as

14  amended and modified. LSI and AGERE contend that NXP is infringing the patents identified

15  above. NXP contends that, for patents filed during the Extended Period, any use of the patented

16  methods or technology by NXP is licensed and therefore noninfringing.

17       18.    <u>NXP desires a judicial determination of the rights and duties of the parties under

18  the PLA, as modified and amended. NXP seeks a declaration that any use by it of the methods or

19  technology claimed in patents that were filed by AT&T or its related companies during the

20  Extended Period is licensed and therefore noninfringing.</u>

21              **SECOND CLAIM FOR RELIEF**

22        (Non-Infringement of United States Patent No. 5,373,180)

23       19.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

24  through 15 of this Complaint.

25       20.    NXP is not directly infringing, contributorily infringing, or actively inducing

26  others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '180

27  patent as properly construed.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

6

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

**THIRD CLAIM FOR RELIEF**

(Invalidity of United States Patent No. 5,227,335)

21.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

22.    The claims of the '335 patent are invalid under the patent laws of the United States, as codified in Title 35 of the United States Code.

**FOURTH CLAIM FOR RELIEF**

(Non-Infringement of United States Patent No. 5,227,335)

23.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

24.    NXP is not directly infringing, contributorily infringing, or actively inducing others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '335 patent as properly construed.

**FIFTH CLAIM FOR RELIEF**

(Invalidity of United States Patent No. 5,599,739)

25.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

26.    The claims of the '739 patent are invalid under the patent laws of the United States, as codified in Title 35 of the United States Code.

**SIXTH CLAIM FOR RELIEF**

(Non-Infringement of United States Patent No. 5,599,739)

27.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

28.    NXP is not directly infringing, contributorily infringing, or actively inducing others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '739 patent as properly construed.

**SEVENTH CLAIM FOR RELIEF**

(Non-Infringement of United States Patent No. 5,149,672)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

7

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    29.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

2   through 15 of this Complaint.

3    30.    NXP is not directly infringing, contributorily infringing, or actively inducing

4   others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '672

5   patent as properly construed.

6                    **EIGHTH CLAIM FOR RELIEF**

7              (Invalidity of United States Patent No. 5,022,958)

8    31.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

9   through 15 of this Complaint.

10    32.    The claims of the '958 patent are invalid under the patent laws of the United

11   States, as codified in Title 35 of the United States Code.

12                    **NINTH CLAIM FOR RELIEF**

13          (Non-Infringement of United States Patent No. 5,022,958)

14    33.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

15   through 15 of this Complaint.

16    34.    NXP is not directly infringing, contributorily infringing, or actively inducing

17   others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '958

18   patent as properly construed.

19                    **TENTH CLAIM FOR RELIEF**

20             (Invalidity of United States Patent No. 6,153,543)

21    35.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

22   through 15 of this Complaint.

23    36.    The claims of the '543 patent are invalid under the patent laws of the United

24   States, as codified in Title 35 of the United States Codes.

25                   **ELEVENTH CLAIM FOR RELIEF**

26          (Non-Infringement of United States Patent No. 6,153,543)

27    37.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

28   through 15 of this Complaint.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7696185.2                              8                          AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    38.    NXP is not directly infringing, contributorily infringing, or actively inducing

2    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '543

3    patent as properly construed.

4    **TWELFTH CLAIM FOR RELIEF**

5    (Invalidity of United States Patent No. 4,914,500)

6    39.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

7    through 15 of this Complaint.

8    40.    The claims of the '500 patent are invalid under the patent laws of the United

9    States, as codified in Title 35 of the United States Code.

10    **THIRTEENTH CLAIM FOR RELIEF**

11    (Non-Infringement of United States Patent No. 4,914,500)

12    41.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

13    through 15 of this Complaint.

14    42.    NXP is not directly infringing, contributorily infringing, or actively inducing

15    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '500

16    patent as properly construed.

17    **FOURTEENTH CLAIM FOR RELIEF**

18    (Invalidity of United States Patent No. 4,919,748)

19    43.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

20    through 15 of this Complaint.

21    44.    The claims of the '748 patent are invalid under the patent laws of the United

22    States, as codified in Title 35 of the United States Code.

23    **FIFTEENTH CLAIM FOR RELIEF**

24    (Non-Infringement of United States Patent No. 4,919,748)

25    45.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

26    through 15 of this Complaint.

27    46.    NXP is not directly infringing, contributorily infringing, or actively inducing

28    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '748

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

9

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    patent as properly construed.

2                        **SIXTEENTH CLAIM FOR RELIEF**

3                  (Invalidity of United States Patent No. 5,600,182)

4          47.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

5    through 15 of this Complaint.

6          48.    The claims of the '182 patent are invalid under the patent laws of the United

7    States, as codified in Title 35 of the United States Code.

8                        **SEVENTEENTH CLAIM FOR RELIEF**

9                  (Invalidity of United States Patent No. 5,844,928)

10         49.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

11   through 15 of this Complaint.

12         50.    The claims of the '928 patent are invalid under the patent laws of the United

13   States, as codified in Title 35 of the United States Code.

14                        **EIGHTEENTH CLAIM FOR RELIEF**

15                  (Non-Infringement of United States Patent No. 5,844,928)

16         51.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

17   through 15 of this Complaint.

18         52.    NXP is not directly infringing, contributorily infringing, or actively inducing

19   others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '928

20   patent as properly construed.

21                        **NINETEENTH CLAIM FOR RELIEF**

22                  (Invalidity of United States Patent No. 5,909,149)

23         53.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

24   through 15 of this Complaint.

25         54.    The claims of the '149 patent are invalid under the patent laws of the United

26   States, as codified in Title 35 of the United States Code.

27                        **TWENTIETH CLAIM FOR RELIEF**

28                  (Non-Infringement of United States Patent No. 5,909,149)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    55.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

2    through 15 of this Complaint.

3    56.    NXP is not directly infringing, contributorily infringing, or actively inducing

4    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '149

5    patent as properly construed.

6    **TWENTY-FIRST CLAIM FOR RELIEF**

7    (Invalidity of United States Patent No. 6,163,184)

8    57.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

9    through 15 of this Complaint.

10    58.    The claims of the '184 patent are invalid under the patent laws of the United

11    States, as codified in Title 35 of the United States Code.

12    **TWENTY-SECOND CLAIM FOR RELIEF**

13    (Non-Infringement of United States Patent No. 6,163,184)

14    59.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

15    through 15 of this Complaint.

16    60.    NXP is not directly infringing, contributorily infringing, or actively inducing

17    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '184

18    patent as properly construed.

19    **TWENTY-THIRD CLAIM FOR RELIEF**

20    (Invalidity of United States Patent No. 5,827,777)

21    61.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

22    through 15 of this Complaint.

23    62.    The claims of the '777 patent are invalid under the patent laws of the United

24    States, as codified in Title 35 of the United States Code.

25    **PRAYER FOR RELIEF**

26    WHEREFORE, NXP prays that this Court:

27    A.    As to the First Claim for Relief, enter a declaratory judgment that the PLA, as

28    amended and modified, authorizes any alleged use by NXP of the technology claimed in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2                              11                    AMENDED COMPLAINT
                                                       FOR DECLARATORY JUDGMENT
                                                                CV-08-0775 JW

1    asserted aforementioned patents that were filed during the Extended Period.

2         B.    As to the Second, Fourth, Sixth, Seventh, Ninth, Eleventh, Thirteenth, Fifteenth,

3    Eighteenth, Twentieth, and Twenty-Second Claim for Relief,

4            (1)    enter a declaratory judgment that the manufacture, use, sale, or offer for

5    sale of NXP's product(s) does not infringe any valid and enforceable claim of the LSI and/or

6    AGERE patents; and

7            (2)    enter a declaratory judgment that the manufacture, use, sale, or offer for

8    sale of NXP's product(s) does not constitute an inducement to infringe or contributory

9    infringement of any valid and enforceable claim of the LSI and/or AGERE patents;

10         C.    As to the Third, Fifth, Eighth, Tenth, Twelfth, Fourteenth, Sixteenth, Seventeenth,

11    Nineteenth, Twenty-First, and Twenty-Third Claims for Relief, enter a declaratory judgment

12    declaring that the claims of each of the LSI and/or AGERE patents are invalid;

13         D.    Declare this case exceptional under 35 U.S.C. § 285 and award NXP its reasonable

14    attorneys' fees, expenses and costs incurred in this action; and

15         E.    Grant NXP such other action and further relief as this Court may deem just and

16    proper, or that NXP may be entitled to as a matter of law or equity.

17    Dated: May 30, 2008              MORGAN, LEWIS & BOCKIUS LLP

18

19

20                  By /s/ Brett M. Schuman
                  Brett M. Schuman

21                      Attorneys for Plaintiff

22

23

24

25

26

27

28

1-SF/7696185.2            12                  AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1

## DEMAND FOR JURY TRIAL

2          NXP hereby requests a trial by jury.

3

4    Dated: May 30, 2008                    MORGAN, LEWIS & BOCKIUS LLP

5

6

7                                           By  /s/  Brett M. Schuman
                                                Brett M. Schuman
8                                               Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO          1-SF/7696185.2                13          AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

# EXHIBIT 2

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP Semiconductors USA, Inc., | No. C 08-00775 JW |
| Plaintiff, | **AMENDED SCHEDULING ORDER** |
| v. | |
| LSI Corporation, et al., | |
| Defendants. | |
| _____/ | |

The Court is in receipt of letters from counsel for the parties in the above entitled action.

(See Docket Item Nos. 36, 37.)  The letters address the propriety of Plaintiff's Motion for Partial

Summary Judgment which has been noticed for a hearing on October 27, 2008.  To resolve the

parties' dispute and to correct a typographical error in the Scheduling Order issued on June 5, 2008,

(see docket item no. 28), the Court issues an Amended Scheduling Order as follows:

### CASE SCHEDULE

| | |
|---|---|
| Plaintiff's Motion Re: Patent License Filing Date<br>Plaintiff's Motion for Partial Summary Judgment Re:<br>   Collateral Estoppel[1] | December 15, 2008 |

---

[1] The Court finds good cause to hear both motions at the same time.  Thus, in light of this Order and the Court's desire to clear its docket, the Clerk shall terminate Docket Item No. 28.  Plaintiff shall renotice its "collateral estoppel's" motion on the date provided above by refiling it as a separate docket entry.

| Defendants' Opposition to Motions | January 15, 2009[2] |
| Plaintiff's Replies to Motions | January 30, 2009[3] |
| Hearing on Both Motions | February 23, 2009 at 9 a.m. |
| Case Management Conference | February 23, 2009 at 10 a.m. |
| Case Management Conference Statement *(Due 10 days before conference)* | February 13, 2009 |

None of the dates set in this Order may be changed without an order of the Court made after a motion is filed pursuant to the Civil Local Rules of Court.

### Standing Order to Lodge Printed Copy of "ECF" Papers

1.    In all cases, including cases covered by the Electronic Case Filing System of the Court "ECF," when filing papers in connection with any motion or any pretrial conference, in addition to filing the paper electronically, the filing parties shall lodge with the Clerk's Office a printed copy of the papers, in an envelop clearly marked "Chamber's Copy – Lodged for the Chambers of Judge James Ware." The "Chamber's Copy" envelop must state the case name and case number and be delivered on or before the close of the next court day following the day the papers are filed electronically. See Standing Order Regarding Case Management in Civil Cases.

### Compliance with Discovery Plan and Reference to Magistrate Judge

2.    The Court adopts the Discovery Plan proposed by the parties in their Joint Case Management Statement. The parties are ordered to comply with the discovery plan. Any disputes with respect to the implementation of the discovery plan and all disclosure or discovery disputes are referred to the assigned Magistrate Judge. In addition, any disputes pertaining to service or joinder of parties or claims are referred to the assigned Magistrate Judge.

---

[2]  Erroneously listed as January 15, 2008 in the Scheduling Order.

[3]  Erroneously listed as January 30, 2008 in the Scheduling Order.

2

United States District Court
For the Northern District of California

**Document Management During Pretrial Discovery and Electronic Evidence Presentation**

       3.     This Court has available a digital and video electronic evidence presentation system. Before commencement of pretrial discovery, the parties are ordered to familiarize themselves with the system, and to meet and confer about whether the case will involve voluminous documentary. If so, as the parties identify documentary material which is likely to be used as trial exhibits, the parties are ordered to electronically store these materials in a fashion which will facilitate displaying them electronically during the trial. The parties are reminded that Civil L.R. 30-2(b) requires sequential numbering of exhibits during depositions and that numbering must be maintained for those exhibits throughout the litigation. Each proposed exhibit shall be pre-marked for identification. All exhibits shall be marked with numerals. The parties shall meet and confer on a division which will avoid duplication (e.g., Plaintiff: 1-99,000; Defendant #1: 100,000-299,999; Defendant #2: 300,000-500,000).

Dated: August 5, 2008

                                  JAMES WARE
                                  United States District Judge

United States District Court
For the Northern District of California

3

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brett Michael Schuman bschuman@morganlewis.com
Crawford Maclain Wells mwells@irell.com
Daniel Johnson djjohnson@morganlewis.com
Gregg Paris Yates gyates@morganlewis.com
Jason George Sheasby JSheasby@Irell.com
Jonathan Henry Steinberg jsteinberg@irell.com
Michael Eric Molland mmolland@morganlewis.com
Samuel Kai Lu slu@irell.com

**Dated: August 5, 2008**                    Richard W. Wieking, Clerk


By: **/s/ JW Chambers**
       **Elizabeth Garcia**
       **Courtroom Deputy**

United States District Court
For the Northern District of California

4

# EXHIBIT 3

PHILIPS 051587-021288

PATENT LICENSE AGREEMENT

among

AMERICAN TELEPHONE AND TELEGRAPH COMPANY,

N.V. PHILIPS' GLOEILAMPENFABRIEKEN

and

U.S. PHILIPS CORPORATION

Effective as of July 1, 1987

PHILIPS 051587-021288

## PATENT LICENSE AGREEMENT

   **Effective as of July 1, 1987,** AMERICAN TELEPHONE AND
TELEGRAPH COMPANY, a New York corporation (AT&T), having an
office at 550 Madison Avenue, New York, New York 10022, United
States of America; and N.V. PHILIPS' GLOEILAMPENFABRIEKEN, a
limited company of the Kingdom of the Netherlands (NV PHILIPS),
having an office at Eindhoven, Netherlands, and U.S. PHILIPS
CORPORATION, a Delaware corporation (US PHILIPS), having an
office at 580 White Plains Road, Tarrytown, New York 10591,
United States of America (hereinafter, NV PHILIPS and US PHILIPS
are sometimes referred to, individually or collectively, as
"PHILIPS") agree as follows*:

### ARTICLE I - GRANTS OF LICENSES

   1.01 (a) AT&T grants to PHILIPS, under AT&T's PATENTS,
nonexclusive and nontransferable licenses to make, have made,
use, lease, sell, import and otherwise dispose of (and practice
methods and processes for the use of) any or all products and
services of the kinds which are furnished or used by PHILIPS or
any of its present RELATED COMPANIES in the operation of the
business in which it is engaged on the effective date of this
Agreement.

   (b) PHILIPS grants to AT&T, under PHILIPS' PATENTS,
nonexclusive, nontransferable and royalty-free licenses to make,
have made, use, lease, sell, import and otherwise dispose of (and
practice methods and processes for the use of) any or all
products and services of the kinds which are furnished or used by
AT&T or any of its present RELATED COMPANIES in the operation of
the business in which it is engaged on the effective date of this
Agreement.

   (c) The licenses include the right to grant sublicenses,
within the scope of the licenses granted, to a party's RELATED
COMPANIES for so long as they remain its RELATED COMPANIES.
However, any such sublicenses to any RELATED COMPANY specified
in Sections 2.02(a)(vi) and (xi) and in Section 2.02(b) shall be
limited to products which are SEMICONDUCTOR PRODUCTS and shall
not include any license under any patent covering circuitry
and/or systems (other than merely covering the function of a
single semiconductor circuit element, such as a Charge Coupled

---

* Any term in capital letters which is defined in the Definitions
Appendix shall have the meaning specified therein.

PHILIPS 051587-021288

Device), whether or not wholly or partly embodied in such SEMICONDUCTIVE PRODUCT. Moreover, the licenses granted herein under the patents of any such RELATED COMPANY shall also be similarly limited.

(d) All licenses granted under any AT&T PATENT or PHILIPS' PATENT shall, notwithstanding the expiration of the LIMITED PERIOD, continue for the entire unexpired term of such patent or, for patents falling within subsection (ii) of the definition of AT&T's PATENTS or PHILIPS' PATENTS, for as much of such term as the grantor has the right to grant such licenses.

1.02 Each party warrants that, upon execution hereof by it and as of the effective date hereof, there are no commitments or restrictions which will limit the licenses and rights which are purported to be granted by it, except as specified in Appendix A.

1.03 Licenses and rights, the grant of which hereunder by any grantor, or the exercise of which by any grantee or by its sublicensees hereunder, would make such grantor or any of its RELATED COMPANIES liable to others than its RELATED COMPANIES and its or their employees for royalties or other payments, shall be granted hereunder to such grantee only upon such grantee's agreement in writing to assume its fair share of such royalties or other payments for such grant. For the purposes of this Section 1.03, NV PHILIPS and US PHILIPS, and their RELATED COMPANIES, shall be deemed to be RELATED COMPANIES of one another.

1.04 There are jurisdictions (not including the United States) which require the express consent of all inventors or their assignees to the grant of licenses or rights under patents issued in such jurisdictions for joint inventions. Each party gives such consent and agrees to obtain such consent from its RELATED COMPANIES, its employees and its RELATED COMPANIES' employees, and shall use all reasonable efforts to obtain such consent from third parties, as required to make full and effective any such licenses or rights respecting any joint invention granted to the grantee hereunder by such party.

ARTICLE II - RELATED COMPANIES

2.01 (a) AT&T and Philips Telecommunications B.V., a Netherlands Besloten Vennootschap (APT), is deemed a RELATED COMPANY of AT&T so long as at least fifty percent (50%) of the (i) shares or other securities entitled to vote for election of directors (or other managing authority) of APT are controlled by AT&T, either directly or indirectly, or (ii) equity interest in

- 2 -

PHILIPS 051587-021288

APT is owned and controlled by AT&T, either directly or indirectly.

(b) APT is also deemed a RELATED COMPANY of NV PHILIPS so long as at least fifty percent (50%) of the (i) shares or other securities entitled to vote for election of directors (or other managing authority) of APT are controlled by NV PHILIPS, either directly or indirectly, or (ii) equity interest in APT is owned and controlled by NV PHILIPS, either directly or indirectly.

2.02 (a) RELATED COMPANIES of NV PHILIPS shall also include the following companies (i) only so long as NV PHILIPS controls, directly or indirectly, not less than the specified percentage of stock of such company entitled to vote for election of directors (or other managing authority), and (ii) provided a Letter of Subjection from such company, in the form annexed hereto as Appendix B, is executed and delivered to both AT&T and NV PHILIPS prior to January 1, 1989.

| | Company | Percentage of Stock (%) |
|---|---|---|
| (i) | Associated Electronic Products (Nigeria) Ltd., a Nigerian corporation, and its SUBSIDIARIES. | 40 |
| (ii) | BTS - Broadcast Television Systems GmbH, a German corporation, and its SUBSIDIARIES. | 30 |
| (iii) | Grundig A.G., a German corporation, and its SUBSIDIARIES. | 31.6 |
| (iv) | Han Wha Domestic Appliances Co., a corporation of the Republic of Korea, and its SUBSIDIARIES. | 49 |
| (v) | Hua Fei Colour Display Systems Company, Ltd., a company of the People's Republic of China, and its SUBSIDIARIES. | 30 |
| (vi) | Matsushita Electronics Corporation, a Japanese corporation, and its SUBSIDIARIES. | 35 |
| (vii) | Nihon Micro Motor Co., Ltd., a Japanese corporation, and its SUBSIDIARIES. | 49 |
| (viii) | Peico Electronics and Electricals, Ltd., a corporation of India, and its SUBSIDIARIES. | 39.7 |

- 3 -

PHILIPS 051587-021288

| | | |
|---|---|---|
| (ix) | PNN Corporation, a Japanese corporation, and its SUBSIDIARIES. | 40 |
| (x) | Telecomunicaciones y Sistemas Profesionales S.A. de C.V. (S.P.), a Mexican corporation, and its SUBSIDIARIES. | 49 |
| (xi) | Taiwan Semiconductor Manufacturing Company, a corporation of the Republic of China, and its SUBSIDIARIES. | 27.5 |

(b) RELATED COMPANIES of AT&T shall also include the following company (i) only so long as AT&T controls, directly or indirectly, not less than the specified percentage of stock of such company entitled to vote for election of directors (or other managing authority), and (ii) provided a Letter of Subjection, in the form annexed hereto as Appendix C, is executed and delivered to both AT&T and NV PHILIPS prior to January 1, 1989.

| Company | Percentage of Stock (%) |
|---|---|
| (i) Gold Star Semiconductor, Ltd., a corporation of the Republic of Korea, and its SUBSIDIARIES. | 44 |

## ARTICLE III- ROYALTIES

3.01 (a) NV PHILIPS shall pay AT&T semiannually during the LIMITED PERIOD, at the address specified in Section 6.04, a royalty of one hundred and seventy-five thousand United States dollars (US $175,000.00), payable within thirty (30) days after the end of each semiannual period of the LIMITED PERIOD ending on June 30th or December 31st, commencing with the semiannual period during which this Agreement becomes effective.

(b) Overdue payments shall be subject to a late payment charge calculated at an annual rate of three percent (3%) over the prime rate (as posted in New York City) during delinquency.

## ARTICLE IV - ACQUISITIONS

4.01 (a) The parties recognize that during the LIMITED PERIOD, any party or any of its RELATED COMPANIES might acquire a company, or the business or any portion of such business of any company or other entity, the gross receipts of which company, entity, business or portion, in the year prior to the date of

- 4 -

PHILIPS 051587-021288

such acquisition, might be greater than two hundred and fifty million United States dollars (US $250,000,000.00).

(b) If PHILIPS or any of its RELATED COMPANIES makes any acquisition of the kind described in Section 4.01(a), PHILIPS shall give written notice to AT&T of such acquisition within forty-five (45) days thereof. Similarly, if AT&T or any of its RELATED COMPANIES makes any acquisition of the kind described in Section 4.01(a), AT&T shall give written notice to NV PHILIPS within forty-five (45) days thereof. If any such notice is received by AT&T or NV PHILIPS, then AT&T and NV PHILIPS shall begin negotiating with each other, on or about July 1, 1994, as to an appropriate adjustment, if any, in royalties paid or payable hereunder. If no agreement regarding such adjustment is made by January 1, 1995, the matter shall be settled by arbitration in New York City, United States of America, pursuant to the rules of the American Arbitration Association.

## ARTICLE V - TERMINATION

5.01 (a) In the event of a breach of this Agreement by PHILIPS, AT&T may, in addition to any other remedies that it may have, at any time terminate all licenses and rights granted by it by not less than four (4) months' written notice to NV PHILIPS specifying such breach, unless within the period of such notice all breaches specified shall have been remedied.

(b) In the event of a breach of this Agreement by AT&T, NV PHILIPS may, in addition to any other remedies that it may have, at any time terminate all licenses and rights granted by PHILIPS by not less than four (4) months' written notice to AT&T specifying such breach, unless within the period of such notice all breaches specified shall have been remedied.

5.02 (a) If a company ceases to be a RELATED COMPANY of any party, licenses and rights granted hereunder with respect to patents of such company having a first filing date or convention date prior to the date of such cessation shall not be affected by such cessation.

(b) Any termination of licenses and rights of any party under the provisions of this Article V shall not affect such party's licenses, rights and obligations with respect to any product or service made or furnished prior to such termination, and shall not affect any other party's licenses and rights (and obligations related thereto, if any) hereunder.

- 5 -

PHILIPS 051587-021288

## ARTICLE VI - MISCELLANEOUS PROVISIONS

6.01 No party nor any of its SUBSIDIARIES makes any representations, extends any warranties of any kind, assumes any responsibility or obligations whatever, or confers any right by implication, estoppel or otherwise, other than the licenses, rights and warranties herein expressly granted.

6.02 (a) No party shall assert any claim for infringement of any patent licensed hereunder against any customer of another party, or any of its RELATED COMPANIES, or any subsequent vendee, with respect to any product in the form first furnished to such customer.

(b)  The provisions of paragraph (a) of this Section 6.02 do not extend to any claim for infringement of (i) a combination of a product licensed hereunder to a party or its RELATED COMPANY with another item not licensed hereunder to such party or its RELATED COMPANY, or (ii) any product which is used for manufacturing or testing an item in accordance with a method or process claim of any patent licensed hereunder.

6.03 The parties hereto have entered into this Agreement in contemplation of personal performance by each other and intend that the licenses and rights granted to a party not be extended to entities other than such party's RELATED COMPANIES without the other parties' express written consent.  All of a party's right, title and interest in this Agreement and any licenses and rights granted to it hereunder may be assigned to any direct or indirect successor to the business of such party as the result of any internal reorganization, which successor shall thereafter be deemed substituted as the party hereto, effective upon such assignment; but neither this Agreement nor any licenses or rights hereunder shall be otherwise assignable or transferable (in insolvency proceedings or otherwise) by any party without the express written consent of the other parties.

6.04 Any notice or other communication hereunder shall be sufficiently given when sent by certified mail addressed to NV PHILIPS at P.O. Box 218, 5600 MD, Eindhoven, Netherlands, with a copy to US PHILIPS at its office specified above, or addressed to AT&T at 10 Independence Boulevard, P.O. Box 4911, Warren, New Jersey 07060-0911, United States of America (to the attention of Contract Administrator, Intellectual Property Licensing and Management Organization).  Changes in such addresses may be specified by written notice.

6.05 NV PHILIPS shall pay any tax (and any related interest or penalty), however designated, imposed as a result of the existence or operation of this Agreement, including any tax which

- 6 -

PHILIPS 051587-021288

NV PHILIPS is required to withhold or deduct from payments to AT&T, except (i) any such tax imposed upon AT&T or any of its SUBSIDIARIES in the Netherlands if such tax is allowable as a credit against United States income taxes of AT&T or any of its SUBSIDIARIES; and (ii) any income tax imposed upon AT&T or any of its SUBSIDIARIES by the United States or any governmental entity within the United States proper (the fifty (50) states and the District of Columbia).  To assist AT&T in obtaining the credit identified in (i) of this Section 6.05, NV PHILIPS shall furnish AT&T with such evidence as may be required by United States taxing authorities to establish that any such tax has been paid.

6.06 There may be jurisdictions in which a party hereto may have, as a consequence of this Agreement, rights against infringers of another party's patents licensed hereunder.  Each party hereby waives any such right it may have by reason of any third party's infringement or alleged infringement of any such patents.

6.07 There are jurisdictions in which the owner of an invention is entitled to compensation, damages or other monetary award for another's unlicensed manufacture, sale, lease, use or importation involving such invention prior to the date of issuance of a patent for such invention but on or after a certain earlier date (the invention's "protection commencement date").  For the purposes of this Agreement, an invention which has a protection commencement date in any such jurisdiction shall be deemed to have had a patent issued therefor in such jurisdiction on such date.

6.08 Each party agrees to register or cause to be registered, to the extent required by applicable law, and without expense to any other party or any of its RELATED COMPANIES, this Agreement and any agreements wherein sublicenses are granted by it under the patents of another party.  Each party hereby waives any and all claims or defenses, arising by virtue of the absence of such registration, that might otherwise limit or affect its obligations to any other party.

6.09 Except as otherwise provided in Article VII, this Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and merges all prior discussions between them.  No party shall be bound by any warranties, understandings or representations with respect to such subject matter other than as expressly provided herein, in prior written agreements, or in a writing signed with or subsequent to execution hereof by an authorized representative of the party to be bound thereby.

- 7 -

PHILIPS 051587-021288

6.10 The construction and performance of this Agreement shall be governed by the law of the State of New York, United States of America.

## ARTICLE VII - PRIOR LICENSE AGREEMENT

7.01 (a) AT&T Technologies, Inc. (formerly Western Electric Company, Incorporated), a wholly owned SUBSIDIARY of AT&T, and NV PHILIPS, US PHILIPS and NORTH AMERICAN PHILIPS CORPORATION, a Delaware corporation, are parties to a July 1, 1980 Patent License Agreement (Prior License Agreement) relating to various products.

(b) Royalty obligations (and any reports related thereto) under the Prior License Agreement with respect to Magnetic Single Wall Domain Assemblages (as defined in the Prior License Agreement) made, sold, leased or put into use on or after July 1, 1987 shall be governed by this Agreement.

(c) Except as otherwise provided in paragraph (b) of this Section 7.01, no licenses, rights or obligations under the Prior License Agreement are affected by this Agreement.

## ARTICLE VIII - LETTER OF ASSENT

8.01 This Agreement is subject to the execution and delivery of a Letter of Assent from N.V. GEMEENSCHAPPELIJK BEZIT VAN AANDEELEN PHILIPS' GLOEILAMPENFABRIEKEN, a limited company of the Kingdom of the Netherlands (BEZIT), in the form annexed hereto as Appendix D.

## ARTICLE IX - TRUSTS

9.01 In the event that one or more SUBSIDIARIES of NV PHILIPS shall cease to be a SUBSIDIARY of NV PHILIPS and shall become a SUBSIDIARY of a Trustee under a deed of trust with NV PHILIPS and BEZIT which upon the occurrence of one or more events (as specified in said deed of trust) is to provide for the continuance of the business of such SUBSIDIARY, then, effective as of the date such SUBSIDIARY became a SUBSIDIARY of such Trustee, such SUBSIDIARY shall be deemed to continue as a SUBSIDIARY of NV PHILIPS, provided, however, that such Trustee executes and delivers to AT&T a Letter of Subjection in the form annexed hereto as Appendix E and, provided further, NV PHILIPS and BEZIT assent to such execution and delivery, as provided for in Appendix E. If NV PHILIPS or BEZIT is unable to assent

- 8 -

PHILIPS 051587-021288

because of the occurrence of one or more of such events, then such Letter of Subjection shall be effective without such assent.

## ARTICLE X - RELEASES

10.01 AT&T, for itself and its present SUBSIDIARIES, hereby releases PHILIPS and its present SUBSIDIARIES and all purchasers and users of products of the kinds herein licensed as of the effective date hereof to PHILIPS, from all claims, demands and rights of action which AT&T or any of its present SUBSIDIARIES may have on account of any infringement or alleged infringement of any patent issued in any country of the world by reason of the manufacture or any past or future use, lease, sale or importation of any of such products which, prior to the effective date hereof, were manufactured by or for, or used, furnished or imported by PHILIPS, its present SUBSIDIARIES or any of them.

10.02 PHILIPS, for itself and its present SUBSIDIARIES, hereby releases AT&T and its present SUBSIDIARIES, and all purchasers and users of products of the kinds herein licensed as of the effective date hereof to AT&T, from all claims, demands and rights of action which PHILIPS or any of its present SUBSIDIARIES may have on account of any infringement or alleged infringement of any patent issued in any country of the world by reason of the manufacture or any past or future use, lease, sale or importation of any of such products which, prior to the effective date hereof, were manufactured by or for, or used, furnished or imported by, AT&T, its present SUBSIDIARIES or any of them.

- 9 -

PHILIPS 051587-021288

IN WITNESS WHEREOF, each of the parties has caused this
Agreement to be executed in triplicate originals by its duly
authorized representatives on the respective dates entered below.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY

By... *Laurence C Safrt* ....................
      Vice President, Engineering,
   Manufacturing and Production Planning

Date... *Feb 18, 1988* .......................

N.V. PHILIPS' GLOEILAMPENFABRIEKEN

By................................................

Title............................................

Date... *Feb 18, 1988* .........................

U.S. PHILIPS CORPORATION

By... *Thomas A. Briody* .......................

Title... *Vice President* .......................

Date... *February 18, 1988* .....................

- 10 -

PHILIPS 051587-021288

## DEFINITIONS APPENDIX

AT&T's PATENTS means all patents (including utility models but excluding design patents and design registrations) issued in any or all jurisdictions of the world for INVENTIONS

    (i)   which are owned (either solely or jointly with others) or controlled at any time during the LIMITED PERIOD by AT&T or any of its RELATED COMPANIES, or

    (ii)  with respect to which any such company shall at any time during the LIMITED PERIOD otherwise have the right to grant the licenses and rights which are herein granted by AT&T (but only to the extent of such company's rights);

provided, however, that for purposes of this definition, INVENTIONS shall be deemed not to include any invention made by any employee of any company which is exclusively engaged in the performance of contracts with the United States Government or an agency or department thereof.

INVENTION means any invention covered by any application for patent having a first filing date or convention date in any jurisdiction prior to the termination of the LIMITED PERIOD.

LIMITED PERIOD means the period commencing on the effective date of this Agreement and having a duration of seven (7) years.

PHILIPS' PATENTS means all patents (including utility models but excluding design patents and design registrations) issued in any or all jurisdictions of the world for INVENTIONS

    (i)   which are owned (either solely or jointly with others) or controlled at any time during the LIMITED PERIOD by PHILIPS or any of its RELATED COMPANIES, or

    (ii)  with respect to which any such company shall at any time during the LIMITED PERIOD otherwise have the right to grant the licenses and rights which are herein granted by PHILIPS (but only to the extent of such company's right).

RELATED COMPANY of a company means (a) a SUBSIDIARY of a company; (b) a corporation or other legal entity (i) fifty percent (50%) of whose shares or other securities entitled to vote for election of directors (or other managing authority) is

PHILIPS 051587-021288

now or hereafter controlled by such company, either directly or
indirectly, or (ii) fifty percent (50%) of the equity interest in
which is now or hereafter owned or controlled by such company,
either directly or indirectly; but any such corporation or other
legal entity shall be deemed to be a RELATED COMPANY of such
company, (iii) only so long as such control or ownership and
control exists, and (iv) a Letter of Subjection, in the form
annexed hereto as Appendix B (in the case of a RELATED COMPANY
of PHILIPS) or Appendix C (in the case of a RELATED COMPANY of
AT&T), is executed and delivered to both AT&T and NV PHILIPS; and
(c) any other company so designated in a writing executed by both
AT&T and NV PHILIPS.  Such writing shall establish the effective
date of such other company's becoming a RELATED COMPANY and may
provide limitations upon the sublicenses which may be granted to
such other company pursuant to Section 1.01(c).

SEMICONDUCTOR PRODUCT means a device consisting primarily of
a body (which may be in the form of a layer), or of a unitary
structure of bodies which have been produced in this structure
simultaneously and/or commonly, of a single semiconductor
material or a plurality of semiconductor materials and a
plurality of electrodes associated therewith, and including, if
present, in and/or upon said body or bodies layers and/or regions
and/or additional circuit elements in the form of layers, which
layers and/or regions may be in single or multiple form and may
consist also of materials other than semiconductor material.

SUBSIDIARY of a company means a corporation or other legal
entity the majority of whose shares or other securities entitled
to vote for election of directors (or other managing authority)
is now or hereafter controlled by such company, either directly
or indirectly, but any such corporation or other legal entity
shall be deemed to be a SUBSIDIARY of such company only as long
as such control exists.

(ii)

Commitments or restrictions exist with respect to the following PHILIPS' PATENTS:

1. U.S. Patent No. 4,389,893, issued June 28, 1983 for Precision Ultrasound Attenuation Measurement, and foreign patents which are counterparts thereof.

2. Patents of North American Philips Corporation, a Delaware corporation, and its RELATED COMPANIES, relating to circuit breakers and related devices, which are exclusively licensed to Sanken-Airpax Co., Ltd., a Japanese corporation, pursuant to a June 1, 1984 agreement and amendments thereto, including any substitute agreement therefor.

3. Patents regarding video game devices licensed to The Magnavox Company, a Delaware corporation, by Sanders Associates, Inc., a Delaware corporation.

APPENDIX A

<u>Letter of Subjection (NV Philips)</u>

AMERICAN TELEPHONE AND TELEGRAPH COMPANY (AT&T)
550 Madison Avenue
New York, New York  10022
United States of America

N.V. PHILIPS' GLOEILAMPENFABRIEKEN (NV PHILIPS)
P.O. Box 218, 5600 MD
Eindhoven, Netherlands

Gentlemen:

   With reference to the July 1, 1987 Patent License Agreement
among you and U.S. Philips Corporation, a copy of which is attached
hereto, we agree (i) to be included in such Agreement as a RELATED
COMPANY (as defined in such Agreement) of NV PHILIPS, subject to all
the rights and obligations of such Agreement applicable to such
RELATED COMPANY, and (ii) to do all things necessary to empower NV
PHILIPS to perform its obligations under such Agreement insofar as
they relate to us or to our SUBSIDIARIES (as defined in such
Agreement).

                         Very truly yours,


                         ...................................

                         By.................................

                         Title..............................




                         APPENDIX B

<u>Letter of Subjection (AT&T)</u>

AMERICAN TELEPHONE AND TELEGRAPH COMPANY (AT&T)
550 Madison Avenue
New York, New York  10022
United States of America

N.V. PHILIPS' GLOEILAMPENFABRIEKEN (NV PHILIPS)
P.O. Box 218, 5600 MD
Eindhoven, Netherlands

Gentlemen:

    With reference to the July 1, 1987 Patent License Agreement
among you and U.S. Philips Corporation, a copy of which is attached
hereto, we agree (i) to be included in such Agreement as a RELATED
COMPANY (as defined in such Agreement) of AT&T, subject to all the
rights and obligations of such Agreement applicable to such RELATED
COMPANY, and (ii) to do all things necessary to empower AT&T to
perform its obligations under such Agreement insofar as they relate
to us or to our SUBSIDIARIES (as defined in such Agreement).

                        Very truly yours,


                        ...................................

                        By...................................

                        Title................................




APPENDIX C

<u>Letter of Assent (Bezit)</u>

AMERICAN TELEPHONE AND TELEGRAPH COMPANY
550 Madison Avenue
New York, New York 10022
United States of America

Gentlemen:

We have examined the proposed July 1, 1987 Patent License
Agreement among you, N.V. PHILIPS' GLOEILAMPENFABRIEKEN (NV
PHILIPS) and U.S. PHILIPS CORPORATION (US PHILIPS).

With respect thereto we hereby confirm that the sole objects
of our company are to acquire and hold shares in the limited
company, NV PHILIPS, to exercise the right to vote and to do all
such other acts and things in respect of said shares, and
everything connected therewith in the widest sense, as may be
conducive to the proper continuity of the collectivity of
business enterprises, in the Netherlands and elsewhere, which are
carried on by NV PHILIPS and the companies in which it directly
or indirectly participates. Accordingly, our company does not
and will not own, or have any rights in, any patents.

In consideration of said Agreement and of One United States
Dollar (US $1.00) and other good and valuable consideration, the
receipt of which is hereby acknowledged, we hereby agree to do
all things necessary to empower NV PHILIPS and US PHILIPS to
perform their obligations under said Agreement insofar as they
relate to us or to our SUBSIDIARIES.

Very truly yours,

N.V. GEMEENSCHAPPELIJK BEZIT VAN AANDEELEN
PHILIPS' GLOEILAMPENFABRIEKEN

By.........................................

Title.....................................

APPENDIX D

## Letter of Subjection (Trustee)

AMERICAN TELEPHONE AND TELEGRAPH COMPANY
550 Madison Avenue
New York, New York 10022
United States of America

Gentlemen:

    With reference to Article IX of the July 1, 1987 Patent License
Agreement among you, N.V. PHILIPS' GLOEILAMPENFABRIEKEN (NV PHILIPS)
and U.S. PHILIPS CORPORATION, a copy of which is attached hereto, we
agree (i) that (identify corporation, here) shall be deemed to
continue as a SUBSIDIARY of NV PHILIPS, subject to all the rights
and obligations of such Agreement applicable to a SUBSIDIARY of NV
PHILIPS, and (ii) to do all things necessary to empower NV PHILIPS
to perform its obligations under such Agreement insofar as they
relate to SUBSIDIARIES of NV PHILIPS.

                    Very truly yours,

             .............................................
             As Trustee under a Deed of Trust, dated
             _____, with N.V. PHILIPS'
             GLOEILAMPENFABRIEKEN and N.V.
             GEMEENSCHAPPELIJK BEZIT VAN AANDEELEN
             PHILIPS' GLOEILAMPENFABRIEKEN

             By.......................................

             Title....................................

             Date.....................................

ASSENT:

N.V. PHILIPS' GLOEILAMPENFABRIEKEN     N.V. GEMEENSCHAPPELIJK
                                    BEZIT VAN AANDEELEN
                                    PHILIPS' GLOEILAMPENFABRIEKEN

By...............................     By..........................

Title............................     Title.......................

Date.............................     Date........................

APPENDIX E

# EXHIBIT 4

1  MORGAN, LEWIS & BOCKIUS LLP
   MICHAEL E. MOLLAND, State Bar No. 111830
2  DANIEL JOHNSON, JR., State Bar No. 57409
   BRETT M. SCHUMAN, State Bar No. 189247
3  GREGG P. YATES, State Bar No. 224641
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   E-mail:  mmolland@morganlewis.com
6  E-mail:  djjohnson@morganlewis.com
   E-mail:  bschuman@morganlewis.com
7
   Attorneys for Plaintiff
8  NXP SEMICONDUCTORS USA, INC.

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13  NXP SEMICONDUCTORS USA, INC.,          Case No. C 08-00775 JW
    a Delaware corporation,
14                                         **PLAINTIFF NXP SEMICONDUCTORS**
                   Plaintiff,              **USA, INC.'S SUPPLEMENTAL**
15                                         **RESPONSES TO LSI'S FIRST SET OF**
             vs.                           **INTERROGATORIES**
16
    LSI CORPORATION d/b/a LSI LOGIC
17  CORPORATION, a Delaware corporation,
    and AGERE SYSTEMS, INC. a Delaware
18  corporation,

19                 Defendants.

20

21        Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules

22  for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc. ("NXP"), hereby

23  responds to Defendants LSI Corporation and Agere Systems Inc.'s ("LSI") First Set of

24  Interrogatories (Nos. 1-17), served on May 21, 2008 as follows:

25                         **GENERAL OBJECTIONS:**

26        1.     As preliminary and general objections to LSI's First Set of Interrogatories, NXP

27  objects to each interrogatory to the extent that it calls for information contained in notes,

28

1   memoranda, correspondence, or other documents prepared by NXP or its attorneys in preparation

2   for litigation in this matter.  All such information is protected from disclosure by the work-

3   product doctrine and/or the attorney-client privilege or other applicable protections and

4   privileges.

5       2.      NXP objects to the First Set of Interrogatories and to each definition, instruction,

6   and interrogatory therein to the extent that they purport to impose on NXP obligations that differ

7   from or exceed those required by the Federal Rules of Civil Procedure, the Local Rules for the

8   Northern District of California ("Local Rules"), or any order or ruling by the Court in this action.

9   NXP shall not comply with any purported obligation not imposed by law.

10      3.      NXP objects to the First Set of Interrogatories and to each interrogatory therein to

11  the extent that they seek disclosure of NXP's trade secrets, proprietary, or other confidential or

12  competitively sensitive information or personal information that is protected by statutory,

13  constitutional, common law or privacy rights.  NXP reserves the right not to provide any of this

14  information until an appropriate protective order is in place.  To the extent that NXP responds to

15  these Interrogatories by referring LSI to documents pursuant to Federal Rule of Civil Procedure

16  33(d), nothing herein shall affect in any way the confidentiality designations, if any, of those

17  documents.

18      4.      NXP objects to the First Set of Interrogatories and each interrogatory therein to the

19  extent they call for trade secret, proprietary, or other confidential or competitively sensitive

20  information of third parties.  NXP will not provide any of this information without consent of the

21  third party and the establishment of a protective order.

22      5.      NXP further objects to LSI's First Set of Interrogatories on the grounds that they

23  are not reasonably restricted to reflect the limited nature of discovery at this phase of the

24  litigation.  By agreement of the parties and instruction of the Court this litigation is proceeding in

25  phases.  The first and current phase concerns the issue of whether the Patent License Agreement

26  entered into by predecessors-in-interest to the current parties, as extended and modified, grants

27  NXP a license to the '180, '335, '739, '672, '958, '500, '748, and '928 Patents.  *Joint Case*

28  *Management Conference Statement and Proposed Order* at p.3.  Further, "LSI request[ed] that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1   the Court phase the litigation by allowing ample time for discovery on licensing-related issues

2   *before* deadlines for patent disclosures begin.  This [] give[s] NXP the opportunity to file such a

3   motion for summary judgment on the license defense to the extent, after taking discovery, it

4   believes such a motion is appropriate." (Italics added).  See *Id.* at 7.  Claim construction will

5   follow in a separate and later phase of the trial, hence it follows that issues related to claim

6   construction or which require the claims of the Patents-In-Suit to be construed, are also outside

7   the scope of this phase of the litigation.  NXP's responses to LSI's first set of Interrogatories will

8   be limited to only those issue properly part of the first phase of litigation-determining the scope

9   and terms of the Patent Licensing Agreement.

10        6.      NXP objects to the First Set of Interrogatories and to each interrogatory therein to

11   the extent they request information concerning patent claims and claim terms that have not yet

12   been construed by the Court.  NXP reserves its right to modify or supplement its responses as a

13   result of any rulings by the Court bearing on claim construction, and/or discovery bearing on

14   claim construction.

15        7.      NXP objects to the First Set of Interrogatories and to each interrogatory therein to

16   the extent they request information dependent upon documents or other information in the

17   possession, custody and control of LSI or third parties.  NXP reserves its right to modify or

18   supplement its responses in view of the discovery of information and review of documents

19   received from LSI or third parties.

20        8.      NXP also objects to LSI's First Set of Interrogatories on the grounds that it has not

21   completed its investigation in this case and has not completed its discovery.  The responses

22   contained herein are based only upon such information and documents as are presently available

23   to NXP.  Further discovery and investigation may reveal additional information which may lead

24   to additions to or variations from the responses herein set forth, and NXP reserves the right to

25   modify or supplement these responses accordingly.

26        9.      These general objections are part of NXP's response to each interrogatory

27   contained in LSI's First Set of Interrogatories, and are hereby incorporated into each of those

28   responses.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

3

1    10.    To the extent that LSI's First Set of Interrogatories call for NXP to identify

2    responsive documents, NXP reserves the right to amend its interrogatory responses as its

3    document collection progresses and it becomes aware of the identity of those documents.

4

5                                    **INTERROGATORIES**

6    **INTERROGATORY NO. 1:**
         IDENTIFY the NXP employee most knowledgeable about each of the following

7    categories: (1) each of the manufacturing lines used to manufacture NXP products, including but
     not limited to the manufacturing lines owned in whole or in part by THIRD PARTIES; (2) the

8    differences between products sold by NXP on July 1, 1987 and NXP products currently offered
     for sale; and (3) the PATENTS-IN-SUIT.

9

10   **RESPONSE TO INTERROGATORY NO. 1:**

11        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

12   to this interrogatory as overly broad and premature in that it requests information outside the

13   scope of the current phase of litigation as agreed by the parties and is not related to the terms and

14   coverage of the Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the

15   grounds that it is vague and ambiguous as to the phrase "manufacturing line"; this interrogatory is

16   also ambiguous in that it does not specify a person most knowledgeable about the technical or

17   legal significance of the Patents-In-Suit.  NXP also objects to this interrogatory as unduly

18   burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that

19   it requests identifications and information about NXP products that have not been accused by LSI

20   of infringing an asserted Patent-In-Suit, and therefore may lie outside the potential scope of the

21   asserted Patents-In-Suit.  Subject to, and without waiving the foregoing objections, NXP responds

22   as follows:

23        The following NXP employees are most knowledgeable about the following topics:

24        Rutger Wijburg: Manufacturing of NXP semiconductor products.

25        Luca Lo Coco: Manufacture of NXP products with phase locked loops.

26        Pieter Hoojimans: Differences between products sold by NXP.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2                                    4

1    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

2            As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3    to this interrogatory as overly broad and premature in that it requests information outside the

4    scope of the current phase of litigation as agreed by the parties and is not related to the terms and

5    coverage of the Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the

6    grounds that it is vague and ambiguous as to the phrase "manufacturing line"; this interrogatory is

7    also ambiguous in that it does not specify a person most knowledgeable about the technical or

8    legal significance of the Patents-In-Suit.  NXP also objects to this interrogatory as unduly

9    burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that

10   it requests identifications and information about NXP products that have not been accused by LSI

11   of infringing an asserted Patent-In-Suit, and therefore may lie outside the potential scope of the

12   asserted Patents-In-Suit.

13           Subject to, and without waiving the foregoing objections, NXP responds as follows:

14   1.      Rutger Wijburg (manufacturing of NXP semiconductor products); Luca Lo Coco

15   (manufacturing of NXP products with phase locked loops).

16   2.      NXP agrees to identify an appropriate witness to testify at LSI's 30(b)(6) deposition of

17   NXP regarding the similarities between products of the kinds furnished or used by Philips on

18   July 1, 1987 and those furnished or used by NXP at present.

19   3.      Pursuant to the parties' agreement during the July 15, 2008 meet and confer

20   teleconference, in lieu of identifying an NXP employee most knowledgeable about the Patents-In-

21   Suit, NXP identifies the following Patents-In-Suit as falling within the EXTENDED PERIOD, as

22   that term is defined in the 1987 Patent License Agreement, as amended by the November 1995

23   letter agreement: the '180, '335, '739, '672, '958, '500, '748, and '928 patents.

24

25   **INTERROGATORY NO. 2:**
        IDENTIFY, by product number and product description, every NXP product that NXP

26   contends is licensed under the PATENTS-IN-SUIT, and IDENTIFY all INFORMATION,
     DOCUMENTS, facts, and arguments that support NXP's contention.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

**RESPONSE TO INTERROGATORY NO. 2:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory on the grounds that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that its products do not infringe the Patents-In-Suit and therefore no license is necessary. NXP objects to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the right to amend or modify its answer as further information comes to light. Further, NXP objects to this interrogatory as unduly burdensome and premature because answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products. Furthermore, to the extent this interrogatory requests the identity of licensed goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action, this interrogatory is irrelevant, outside the scope of this litigations, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections, NXP answers the following: all of the accused products identified by Agere and LSI to date are licensed to all Patents-In-Suit filed before December 31, 1996 because they are products or services of the kinds which were furnished or sold by Philips.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory on the grounds

1  that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on

2  the grounds that its products do not infringe the Patents-In-Suit and therefore no license is

3  necessary. NXP objects to this interrogatory as premature in that the litigation is still in its early

4
5  stages; NXP reserves the right to amend or modify its answer as further information comes to

6  light. Further, NXP objects to this interrogatory as unduly burdensome and not reasonably

7  calculated to lead to the discovery of admissible evidence. Accordingly, NXP interprets the term

8  "NXP product" to refer to the NXP products accused by LSI/Agere in pre-litigation negotiations.

9      Subject to, and without waiving the foregoing objections, NXP responds as follows: Each

10 and every one of the products accused by LSI/Agere prior to the commencement of this litigation

11 are products and services of the kinds that Philips and/or its RELATED COMPANIES (as that

12
13 term is defined in the Patent License Agreement) furnished or used in their businesses in 1987.

14 The following accused products are semiconductor chips and SEMICONDUCTOR PRODUCTS

15 (as that term is defined in the Patent License Agreement): PNX8550EH, PNX7850E,

16 PCF5213EL1 Die A, PCF5213EL1 Die B, 3587G Die A, CF50603, BLF6G2745, BLF4G22LS

17 and TZA3010 / 11 / 47 (the "Accused Semiconductor Products"). Philips and/or its RELATED

18 COMPANIES were furnishing and/or using semiconductor chips and SEMICONDUCTOR

19 PRODUCTS in the operation of their businesses as of July 1, 1987. Further, in some instances

20 NXP uses foundry services to make the Accused Semiconductor Products. Philips and/or its

21
22 RELATED COMPANIES were furnishing and/or using foundry services to make semiconductor

23 chips as of July 1, 1987.

24      Further, without conceding that the Patent License Agreement requires any more

25 specificity regarding product similarities, NXP avers that the Accused Semiconductor Products

26 utilize CMOS and LDMOS technologies. Philips and/or its RELATED COMPANIES were

27 furnishing and/or using semiconductor chips and/or SEMICONDUCTOR PRODUCTS utilizing

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

7

DB2/20778519.2

1   these technologies as of July 1, 1987.  Further, as of July 1, 1987, Philips and/or its RELATED

2   COMPANIES furnished and/or used a broad range of semiconductors and integrated circuits and

3   used those products in, among other things, consumer electronics including audio products (*e.g.*,

4   portable radios, car radios, receivers, amplifiers, and Compact Disc systems) and video products

5   (*e.g.*, televisions, video recorders and cam recorders).  The Accused Semiconductor Products are

6   all furnished and/or used in audio and video products.  By way of example, the TZA3010 / 11 / 47

7   is a semiconductor chip that operates a laser in consumer products such as CD players.  Philips

8   and/or its RELATED COMPANIES were furnishing and/or using chips that operate lasers in

9   consumer products such as CD players as of July 1, 1987.

10

11          Further, NXP's interpretation of the Patent License Agreement is supported by years of

12  conduct by the parties (and their predecessors) operating under the Patent License Agreement.

13  By way of example, and not limitation, Agere previously asserted the '335 patent against Intersil

14  Corporation with respect to integrated circuits sold to Intersil by Philips.  When, by letter dated

15  September 22, 2003, Philips invoked its rights under the Patent License Agreement, Agere

16  responded by confirming that "Agere will respect the license agreement between AT&T Corp.

17  and Philips dated July 1, 1987."

18

19          NXP's analysis and review of the evidence is ongoing.  NXP reserves the right to

20  supplement this response further as appropriate.

21

22  **INTERROGATORY NO. 3:**

23          For each product identified in response to Interrogatory No. 2, IDENTIFY the date on
    which the product was first sold, the date the product was designed, the date on which each
24  manufacturing line used to manufacture the product was designed, and the date on which each
    manufacturing line used to manufacture the product was first used, including the IDENTITY of
25  DOCUMENTS sufficient to evidence the foregoing.

26

27

28

1    **RESPONSE TO INTERROGATORY NO. 3:**

2          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3    to this interrogatory as overly broad and premature in that it requests information outside the

4    scope of the current phase of litigation as agreed by the parties and is not related to the terms and

5    coverage of the Patent Licensing Agreement.  NXP objects to this interrogatory on the grounds

6    that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on

7    the grounds that its products do not infringe the Patents-In-Suit and therefore no license is

8    necessary.  NXP objects to this interrogatory as premature in that the litigation is still in its early

9    stages; NXP reserves the right to amend or modify its answer as further information comes to

10   light.  Further, NXP objects to this interrogatory as unduly burdensome and premature because

11   answering this interrogatory would require NXP to review and analyze hundreds of products

12

13   before LSI has narrowed that scope to a reasonable number by accusing specific NXP products.

14   Also, to the extent this interrogatory requests the identity of licensed goods which LSI does not

15   intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action,

16   this interrogatory is irrelevant, over broad, and not reasonably calculated to lead to the discovery

17   of admissible evidence.  Further, NXP objects to this interrogatory on the grounds that it is vague

18   and ambiguous as to the phrase "manufacturing line".

19

20

21   **INTERROGATORY NO. 4:**
          IDENTIFY by product number and product description every NXP product that NXP

22   believes is not licensed under the PATENTS-IN-SUIT, and IDENTIFY all INFORMATION,

23   DOCUMENTS, facts, and arguments that support NXP's belief.

24   **RESPONSE TO INTERROGATORY NO. 4:**

25          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

26   to this interrogatory as overly broad in that it requests information outside the scope of the current

27   phase of litigation as agreed by the parties and is not related to the terms and coverage of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

1  Patent Licensing Agreement.  NXP objects to this interrogatory on the grounds that it calls for a

2  legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that

3  its products do not infringe the Patents-In-Suit and therefore no license is necessary.  NXP objects

4  to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the

5  right to amend or modify its answer as further information comes to light.  NXP further objects to

6  this interrogatory as unduly burdensome as answering this interrogatory would require NXP to

7  review and analyze hundreds of products before LSI has narrowed that scope to a reasonable

8  number by accusing specific NXP products.

9  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.4:**

10

11  As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

12  to this interrogatory as overly broad in that it requests information outside the scope of the current

13  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

14  Patent Licensing Agreement.  NXP objects to this interrogatory on the grounds that it calls for a

15  legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that

16  its products do not infringe the Patents-In-Suit and therefore no license is necessary.  NXP objects

17  to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the

18  right to amend or modify its answer as further information comes to light.  NXP further objects to

19  this interrogatory as unduly burdensome as answering this interrogatory would require NXP to

20

21  review and analyze hundreds of products before LSI has narrowed that scope to a reasonable

22  number by accusing specific NXP products.

23  Subject to, and without waiving the foregoing objections, NXP responds as follows:  NXP

24  incorporates by this reference its response to Interrogatory No. 2.

25

26  **INTERROGATORY NO. 5:**
IDENTIFY all products sold or used by NXP as of July 1, 1987, and IDENTIFY

27  DOCUMENTS sufficient to fully describe the design, method of manufacture, intended use, and
function of the products.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

**RESPONSE TO INTERROGATORY NO. 5:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly burdensome and premature in that it makes no effort to limit its request to products that are at issue in this case, and comes before receiving LSI's contentions of which products are at issue in this case. Answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products. Furthermore, to the extent this interrogatory requests the identity of goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action, NXP objects to this interrogatory on grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. NXP further objects to this interrogatory because it employs ambiguous terms such as "intended use", "function of the products" and "method of manufacture".

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly burdensome and premature in that it makes no effort to limit its request to products that are at issue in this case, and comes before receiving LSI's contentions of which products are at issue in this case. Answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products. Furthermore, to the extent this interrogatory requests the identity of goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

11

1   this action, NXP objects to this interrogatory on grounds that it is irrelevant and not reasonably

2   calculated to lead to the discovery of admissible evidence. NXP further objects to this

3   interrogatory because it employs ambiguous terms such as "intended use", "function of the

4   products" and "method of manufacture".

5       Subject to, and without waiving the foregoing objections, NXP responds as follows:

6   NXP has produced or will produce documents in its possession, custody or control describing the

7

8   products and services furnished or used by Philips and its RELATED COMPANIES on July 1,

9   1987.

10

11  **INTERROGATORY NO. 6:**
        IDENTIFY all COMMUNICATIONS with LSI or any THIRD PARTY RELATING TO
12  the PATENTS-IN-SUIT, or the above-captioned lawsuit, including the contents of those
    COMMUNICATIONS and the PERSONS involved in those COMMUNICATIONS.
13

14  **RESPONSE TO INTERROGATORY NO.6:**

15      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

16  to this interrogatory as overly broad in that it requests information outside the scope of the current

17  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

18  Patent Licensing Agreement. NXP also objects to the forgoing interrogatory as requesting

19  information protected by attorney/client privilege, the attorney work product doctrine, or other

20

21  applicable protections. NXP also objects to this interrogatory because it calls for information or

22  documents already within the possession of LSI or in the public domain. NXP further objects to

23  this interrogatory as irrelevant and not reasonably calculated to lead to admissible evidence.

24  Subject to, and without waiving the foregoing objections, NXP responds as follows:

25      The forgoing interrogatory will be answered by producing documents responsive to the

26  request, but limited to those relevant to the issues of the first phase of this litigation, that is, those

27  documents related to communications with third parties concerning the Patents-In-Suit and this

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1  litigation, which are related to the Patent Licensing Agreement.  These documents will be

2  identified as they are collected and reviewed by NXP.

3

4  **INTERROGATORY NO. 7:**
   IDENTIFY when and how NXP first became aware of each of the PATENTS-IN-SUIT

5  and the applications from which the PATENTS-IN-SUIT issued, the circumstances of such first
   awareness, the PERSON or PERSONS involved in NXP first becoming aware of the foregoing,

6  and what actions were taken in response to NXP becoming aware of the foregoing.

7

8  **RESPONSE TO INTERROGATORY NO. 7:**

9       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

10  to this interrogatory as overly broad in that it requests information outside the scope of the current

11  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

12  Patent Licensing Agreement.  NXP also objects to this interrogatory because it calls for

13  information or documents already within the possession of LSI or in the public domain.

14  Furthermore, NXP objects to the forgoing interrogatory as requesting information protected by

15  attorney/client privilege, the attorney work product doctrine, or other applicable protections.

16

17  NXP objects to this interrogatory as compound and consisting of multiple subparts which

18  properly should be counted as separate interrogatories.  Subject to, and without waiving the

19  foregoing objections, NXP responds as follows:

20       NXP first became aware of the LSI Patents-in-Suit when LSI first contacted NXP

21  regarding licensing the Patents-In-Suit.  LSI is aware of those dates and circumstances.

22

23  **INTERROGATORY NO. 8:**
   Excluding any subject matter called for by Northern District of California Patent Local

24  Rules 3-3 and 3-4, IDENTIFY all facts and reasons (including all DOCUMENTS) that support or
   contradict any NXP contention that NXP has not infringed and does not infringe literally, under

25  the doctrine of equivalents, by contribution, by inducement, or willfully, any claim of the
   PATENTS-IN-SUIT.  As part of YOUR response, provide a claim chart IDENTIFYING each

26  limitation of each claim of the PATENTS-IN-SUIT that NXP contends that it does not practice,

27  and provide the facts that establish that NXP does not practice these limitations.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

13

**RESPONSE TO INTERROGATORY NO.8:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this interrogatory as unduly burdensome in that it seeks to improperly shift the burden from LSI to NXP to identify potentially infringing products. Under the local patent rules, it is LSI's burden to identify products which it alleges are infringing the Patents-In-Suit, and only then does the burden shift to NXP to raise appropriate defenses. Further, NXP objects to this interrogatory as unduly burdensome because answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed this scope to a reasonable number by accusing specific NXP products. NXP also objects to this interrogatory on the ground that it calls for a legal conclusion. NXP further objects to this interrogatory on the grounds it prematurely seeks an opinion that will be the subject of expert testimony and improperly shifts the burden from LSI to prove infringement. NXP objects to the forgoing interrogatory to the extent that it requests information protected by the attorney/client privilege, the attorney work product doctrine, or other applicable protections.

**INTERROGATORY NO. 9:**

Excluding any of the subject matter called for by the Northern District of California's Patent Local Rules 3-3 and 3-4, IDENTIFY all facts and reasons (including all DOCUMENTS) that support or contradict any NXP contention that each of the claims of the PATENTS-IN-SUIT is invalid under the patent laws of the United States.

**RESPONSE TO INTERROGATORY NO. 9:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the

Patent Licensing Agreement. NXP further objects to this interrogatory as premature in that it seeks information explicitly at issue in later phases of this litigation, but not at issue during this phase. Furthermore, NXP objects to this interrogatory as premature and unduly burdensome in that invalidity contentions are explicitly contemplated by the patent local rules of the United States District Courts for the Northern District of California, and will be served at a later date but are not currently the responsibility of NXP. NXP also objects to this interrogatory on the ground that it calls for a legal conclusion. NXP further objects to this interrogatory on the grounds it prematurely seeks an opinion that will be the subject of expert testimony. NXP objects to the forgoing interrogatory to the extent that it requests information protected by the attorney/client privilege, the attorney work product doctrine, or other applicable protections.

**INTERROGATORY NO. 10:**
        IDENTIFY all facts and reasons (including all DOCUMENTS) that support or contradict any NXP contention that the PATENTS-IN-SUIT are unenforceable.

**RESPONSE TO INTERROGATORY NO. 10:**

        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP also objects to this interrogatory because it calls for a legal conclusion. Further, NXP objects to this interrogatory in that it requests information and documents which are properly protected by attorney client privilege, the attorney work product doctrine, and other applicable protections and privileges.

**INTERROGATORY NO. 11:**
        IDENTIFY all facts and reasons (including all DOCUMENTS) that support or contradict any NXP contention that NXP has not willfully infringed any claim of the PATENTS-IN-SUIT.

**RESPONSE TO INTERROGATORY NO. 11:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this interrogatory on the grounds that LSI has not asserted that NXP willfully infringed the Patents-In-Suit and therefore the interrogatory is irrelevant, premature, and not reasonably calculated to lead to admissible evidence. NXP also objects to this interrogatory on the ground that it calls for a legal conclusion. NXP further objects to this interrogatory on the grounds it prematurely seeks an opinion that will be the subject of expert testimony. Further, NXP objects to this interrogatory in that it requests information and documents which are properly protected by attorney client privilege, the attorney work product doctrine, and other applicable protections and privileges.

**INTERROGATORY NO. 12:**
IDENTIFY, by product number and product description, every semiconductor product sold by NXP since July 1, 1987 having a tungsten plug, IDENTIFY DOCUMENTS sufficient to fully describe all steps in the manufacture of tungsten plugs in the product, as well as the location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the foregoing.

**RESPONSE TO INTERROGATORY NO. 12:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. Further, NXP objects to this interrogatory on the grounds that it employs the vague and ambiguous use of the term "semiconductor product". To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects

1   to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

2   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

3

4          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

5   to this interrogatory as overly broad in that it requests information outside the scope of the current

6   phase of litigation as agreed by the parties and is not related to the terms and coverage of the

7   Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the grounds that it

8   employs the vague and ambiguous use of the term "semiconductor product".  To the extent that

9   this interrogatory calls for information related to products that LSI will not accuse and which are

10  not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

11  burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

12  to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

13

14         Subject to and without waiving the foregoing objections, NXP responds as follows:  In the

15  light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

16  Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

17  interrogatory is irrelevant.

18

19  **INTERROGATORY NO. 13:**
           IDENTIFY, by product number and product description, every semiconductor product
20  sold by NXP since July 1, 1987 having a passivation layer that is deposited with at least one high
    density plasma chemical vapor deposition step, IDENTIFY DOCUMENTS sufficient to fully
21  describe all steps in the manufacture of any passivation layers in the product, as well as the
    location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the
22  NXP employee most knowledgeable about the foregoing.

23  **RESPONSE TO INTERROGATORY NO. 13:**

24         As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

25  to this interrogatory as overly broad in that it requests information outside the scope of the current

26  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

27  Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

17

1    the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

2    this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

3    product" "high density plasma chemical vapor deposition" and "passivation layer".  To the extent

4    that this interrogatory calls for information related to products that LSI will not accuse and which

5    are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

6    burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

7    to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

8
9    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

10         As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

11   to this interrogatory as overly broad in that it requests information outside the scope of the current

12   phase of litigation as agreed by the parties and is not related to the terms and coverage of the

13   Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in

14   the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

15   this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

16   product" "high density plasma chemical vapor deposition" and "passivation layer".  To the extent

17   that this interrogatory calls for information related to products that LSI will not accuse and which

18   are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

19   burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

20   to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

21         Subject to and without waiving the foregoing objections, NXP responds as follows: In the

22   light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

23   Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

24   interrogatory is irrelevant.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2                                    18

1

**INTERROGATORY NO. 14:**

2

 IDENTIFY, by product number and product description, every semiconductor product sold by NXP since July 1, 1987 having at least one aluminum interconnect whereby a cross sectional area of the aluminum interconnect in a region closer to the substrate is, by design, greater than a cross sectional area of the aluminum interconnect in a region further away from the substrate, IDENTIFY DOCUMENTS sufficient to fully describe all steps in the manufacture of the aluminum interconnects, as well as the location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the foregoing.

3

4

5

6

7

**RESPONSE TO INTERROGATORY NO. 14:**

8

 As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

9

to this interrogatory as overly broad in that it requests information outside the scope of the current

10

phase of litigation as agreed by the parties and is not related to the terms and coverage of the

11

Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the grounds that it

12

employs vague and ambiguous terms "semiconductor product" "high density plasma chemical

13

vapor deposition" and "passivation layer".  NXP objects to this interrogatory as premature at this

14

early date in the litigation, and reserves the right to update as discovery continues.  To the extent

15

that this interrogatory calls for information related to products that LSI will not accuse and which

16

are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

17

burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

18

to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

19

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

20

21

 As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

22

to this interrogatory as overly broad in that it requests information outside the scope of the current

23

phase of litigation as agreed by the parties and is not related to the terms and coverage of the

24

Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the grounds that it

25

employs vague and ambiguous terms "semiconductor product" "high density plasma chemical

26

vapor deposition" and "passivation layer".  NXP objects to this interrogatory as premature at this

27

early date in the litigation, and reserves the right to update as discovery continues.  To the extent

28

that this interrogatory calls for information related to products that LSI will not accuse and which

are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects

to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

Subject to and without waiving the foregoing objections, NXP responds as follows: In the

light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

interrogatory is irrelevant,

**INTERROGATORY NO. 15:**
    IDENTIFY, by product number and product description, every integrated circuit product
sold by NXP since December 1, 1998 that is capable of generating a drive current for a laser and
that, either alone or in combination with another component, is capable of sensing the
temperature of the integrated circuit, IDENTIFY DOCUMENTS sufficient to fully describe the
design and operation of the circuit, as well as the location of manufacture of the product, and the
identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the
foregoing.

**RESPONSE TO INTERROGATORY NO.15:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

to this interrogatory as overly broad in that it requests information outside the scope of the current

phase of litigation as agreed by the parties and is not related to the terms and coverage of the

Patent Licensing Agreement.. NXP objects to this interrogatory as premature at this early date in

the litigation, and reserves the right to update as discovery continues. Further, NXP objects to

this interrogatory on the grounds that it employs the vague and ambiguous terms "integrated

circuit product" and "drive current". To the extent that this interrogatory calls for information

related to products that LSI will not accuse and which are not therefore at issue in this litigation,

NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably

calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not

reasonably limited in scope or time as NXP did not exist in 1998.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

20

1  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

2      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3  to this interrogatory as overly broad in that it requests information outside the scope of the current

4  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

5  Patent Licensing Agreement.. NXP objects to this interrogatory as premature at this early date in

6  the litigation, and reserves the right to update as discovery continues. Further, NXP objects to

7  this interrogatory on the grounds that it employs the vague and ambiguous terms "integrated

8  circuit product" and "drive current". To the extent that this interrogatory calls for information

9  related to products that LSI will not accuse and which are not therefore at issue in this litigation,

10  NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably

11  calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not

12  reasonably limited in scope or time as NXP did not exist in 1998.

13      Subject to and without waiving the foregoing objections, NXP responds as follows: In the

14  light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

15  Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

16  interrogatory is irrelevant.

17  **INTERROGATORY NO. 16:**

18      IDENTIFY, by product number and product description, every semiconductor product

19  sold by NXP since June 1, 1999 that contains a phase locked loop capable of outputting a signal

    generated based on comparing an input signal, or a signal related thereto, to a reference signal, or

20  a signal related thereto, IDENTIFY DOCUMENTS sufficient to fully describe the design and

    operation of the device and phase locked loop, as well as the location of manufacture of the

21  product, and the identity of the manufacturer, and IDENTIFY the NXP employee most

    knowledgeable about the foregoing.

22

23  **RESPONSE TO INTERROGATORY NO. 16:**

24      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

25  to this interrogatory as overly broad in that it requests information outside the scope of the current

26  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

27  Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in

28

the litigation, and reserves the right to update as discovery continues. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "phase locked loop", "input signal" and "reference signal". Furthermore, the entire phrase "contains a phase locked loop capable of outputting a signal generated based on comparing an input signal", is objected to as ambiguous and impossible to parse. To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1999. Subject to, and without waiving the foregoing objections, NXP responds as follows:

The NXP employee most knowledgeable about these products is Luca Lo Coco, however NXP will require additional time to review hundreds of products, analyze data sheets and design descriptions in order to answer fully and completely this interrogatory. It will update this answer at the soonest possible opportunity.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "phase locked loop", "input signal" and "reference signal". Furthermore, the entire phrase "contains a phase locked loop capable of outputting a signal generated based on comparing an input signal", is objected to as ambiguous and impossible to parse. To the extent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

that this interrogatory calls for information related to products that LSI will not accuse and which

are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects

to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1999.

Subject to, and without waiving the foregoing objections, NXP responds as follows: NXP

does not contend that either of the Patents-In-Suit concerning phase-locked loop technology is

within the EXTENDED PERIOD of the 1987 Patent License Agreement, as amended.

Accordingly, the information requested by this interrogatory is, at this stage of the case,

irrelevant.

**INTERROGATORY NO. 17:**

IDENTIFY, by product number and product description, every semiconductor product
sold by NXP since July 1, 1987 having a gate runner including a silicide overlayer, whereby a
first layer of dielectric is deposited over the gate runner and a second layer of dielectric is
deposited over the first layer of dielectric. IDENTIFY DOCUMENTS sufficient to fully describe
the design and operation of the gate runner and layers of dielectric, as well as the location of
manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP
employee most knowledgeable about the foregoing.

**RESPONSE TO INTERROGATORY NO. 17:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

to this interrogatory as overly broad in that it requests information outside the scope of the current

phase of litigation as agreed by the parties and is not related to the terms and coverage of the

Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in

the litigation, and reserves the right to update as discovery continues. Further, NXP objects to

this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

product" "gate runner", "silicide overlayer" and "dielectric". To the extent that this interrogatory

calls for information related to products that LSI will not accuse and which are not therefore at

1   issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and

2   not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this

3   interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.  Subject to,

4   and without waiving the foregoing objections, NXP responds as follows:

5
        The NXP employee most knowledgeable about the above products is Rutger Wijburg,
6
    however NXP will require additional time to review hundreds of products, analyze data sheets
7
    and design descriptions in order to answer fully and completely this interrogatory.  It will update
8
    this answer at the soonest possible opportunity.
9

10

11

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

13
        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects
14
    to this interrogatory as overly broad in that it requests information outside the scope of the current
15
    phase of litigation as agreed by the parties and is not related to the terms and coverage of the
16
    Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in
17
    the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to
18
    this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor
19
    product" "gate runner", "silicide overlayer" and "dielectric".  To the extent that this interrogatory
20
    calls for information related to products that LSI will not accuse and which are not therefore at
21
    issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and
22
    not reasonably calculated to lead to admissible evidence.  Finally, NXP objects to this
23
    interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.
24

25
        Subject to and without waiving the foregoing objections, NXP responds as follows:  In the
26
    light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in
27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    Mark Taylor's July 23, 2008 letter to C. Maclain Wells, <u>the information requested by this</u>

2    <u>interrogatory is irrelevant.</u>

3

4

5    Dated: August 5, 2008                                    MORGAN, LEWIS & BOCKIUS LLP

6

7                                                             By _____

8                                                             Brett Schuman
                                                             Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 5

MORGAN, LEWIS & BOCKIUS LLP
MICHAEL E. MOLLAND, State Bar No. 111830
DANIEL JOHNSON, JR., State Bar No. 57409
BRETT M. SCHUMAN, State Bar No. 189247
GREGG P. YATES, State Bar No. 224641
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: mmolland@morganlewis.com
E-mail: djjohnson@morganlewis.com
E-mail: bschuman@morganlewis.com

Attorneys for Plaintiff
NXP SEMICONDUCTORS USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware corporation, and AGERE SYSTEMS, INC. a Delaware corporation.<br><br>Defendants. | Case No. C 08-00775 JW<br><br>**PLAINTIFF NXP SEMICONDUCTORS USA, INC.'S RESPONSE TO LSI'S FIRST SET OF REQUESTS FOR DOCUMENT PRODUCTION** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules

for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc ("NXP") hereby

responds to Defendant LSI Corporation and Agere Systems Inc.'s ("LSI") First Set of Requests

for Production (Nos. 1-21) as follows:

## **GENERAL OBJECTIONS:**

1.    As preliminary and general objections to LSI's First Set of Requests for

Production, NXP objects to each interrogatory to the extent that it calls for information contained

in notes, memoranda, correspondence, or other documents prepared by NXP or its attorneys in

1    preparation for litigation in this matter. All such documents are protected from disclosure by the

2    work-product doctrine and/or the attorney-client privilege or other applicable protections and

3    privileges.

4         2.    NXP objects to the First Set of Requests for Production and to each definition,

5    instruction, and request for production therein to the extent that they purport to impose on NXP

6    obligations that differ from or exceed those required by the Federal Rules of Civil Procedure, the

7    Local Rules for the Northern District of California ("Local Rules"), or any order or ruling by the

8    Court in this action. NXP shall not comply with any purported obligation not imposed by law.

9         3. NXP objects to the First Set of Requests for Production and to each request for

10   production therein to the extent that they seek disclosure of NXP's trade secrets, proprietary, or

11   other confidential or competitively sensitive information or personal information that is protected

12   by statutory, constitutional, common law or privacy rights. NXP reserves the right not to provide

13   any of this information until an appropriate protective order is in place.

14        4.    NXP objects to the First Set of Requests for Production and each request for

15   production therein to the extent they call for trade secret, proprietary, or other confidential or

16   competitively sensitive information of third parties. NXP will not provide any of this information

17   without consent of the third party and the establishment of a protective order.

18        5.    NXP further objects to LSI's First Set of Requests for Production on the grounds

19   that they are not reasonably restricted to reflect the limited nature of discovery at this phase of the

20   litigation. By agreement of the parties and instruction of the Court this litigation is proceeding in

21   phases. The first and current phase concerns the issue of whether the Patent License Agreement

22   entered into by predecessors-in-interest to the current parties, as extended and modified, grants

23   NXP a license to the '180, '335, '739, '672, '958, '500, '748, and '928 Patents. *Joint Case*

24   *Management Conference Statement and Proposed Order* at p.3. Further, "LSI request[ed] that

25   the Court phase the litigation by allowing ample time for discovery on licensing-related issues

26   *before* deadlines for patent disclosures begin. This will give NXP the opportunity to file such a

27   motion for summary judgment on the license defense to the extent, after taking discovery, it

28   believes such a motion is appropriate." (Italics added). See *Id.* at 7. Claim construction will

1    follow in a separate and later phase of the trial, hence it follows that issues related to claim

2    construction or which require the claims to be construed, are also outside the scope of this phase

3    of the litigation- determining the scope and terms of the Patent Licensing Agreement. NXP's

4    responses to LSI's First Set of Requests for Production will be limited to only those issues

5    properly part of the first phase of litigation.

6          6.    NXP objects to the First Set of Requests for Production and to each request for

7    production therein to the extent they request documents concerning patent claims and claim terms

8    that have not yet been construed by the Court. NXP reserves its right to modify or supplement its

9    responses as a result of any rulings by the Court bearing on claim construction, and/or discovery

10   bearing on claim construction.

11         7.    NXP objects to the First Set of Requests for Production and to each request for

12   production therein to the extent they request information dependent upon documents or other

13   information in the possession, custody and control of LSI or third parties. NXP reserves its right

14   to modify or supplement its responses in view of the discovery of information and review of

15   documents received from LSI or third parties.

16         8.    NXP also objects to LSI's First Set of Requests for Production on the grounds that

17   it has not completed its investigation in this case and has not completed its discovery. The

18   documents produced are based only upon such information and documents as are presently

19   available to NXP. Further discovery and investigation may reveal additional information which

20   may lead to additions to or variations from the immediate production, and NXP reserves the right

21   to modify or supplement its production accordingly.

22         9.    These general objections are part of NXP's response to each request for production

23   contained in LSI's First Set of Requests for Production, and are hereby incorporated into each of

24   those responses.

25

26

27

28

1

**REQUESTS FOR PRODUCTION**

2

**REQUEST NO. 1:**

3      All DOCUMENTS RELATING TO YOUR responses to any LSI discovery request in this
litigation, including DOCUMENTS identified in, or relied upon in the preparation of, such

4      responses.

5      **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

6              As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP

7      objects to this request as overly broad and premature in that it requests information outside the

8      scope of the current phase of litigation as agreed by the parties and is not related to the terms and

9      coverage of the Patent Licensing Agreement. Subject to, and without waiving the foregoing

10     specific or General Objections, NXP will produce non-privileged responsive documents directed

11     to the substance of the Patent License Agreement at a mutually agreeable time.

12     **REQUEST NO. 2:**
       All DOCUMENTS RELATING TO any of YOUR pleadings, filings, submissions, or

13     materials served pursuant to the Northern District of California Patent Local Rules (collectively,
       "papers"), in this litigation, including all DOCUMENTS identified in the papers, or used or relied

14     upon in preparation of the papers.

15

16     **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

17             As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

18     to this request as overly broad and premature in that it requests information outside the scope of

19     the current phase of litigation as agreed by the parties and is not related to the terms and coverage

20     of the Patent Licensing Agreement. NXP objects to this request to the extent that LSI requests

21     documents in the public domain or within the possession of LSI. NXP also objects to the

22     forgoing request as requesting documents protected by attorney/client privilege, the attorney work

23     product doctrine, or other applicable protections. NXP objects to this request as over broad.

       **REQUEST NO. 3:**
24             All DOCUMENTS produced or made available to YOU by any THIRD-PARTY,

25     including pursuant to any subpoena.

26     **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

27             As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

28     to this request as overly broad and premature in that it requests information outside the scope of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

2  of the Patent Licensing Agreement.

3          NXP objects to this request as overbroad, unduly burdensome and not reasonably

4  calculated to lead to admissible evidence as it is not limited in scope to documents relevant to this

5  litigation.  Further, NXP objects to this request to the extent that LSI requests documents in the

6  public domain or within the possession of LSI.  NXP also objects to the forgoing interrogatory as

7  requesting documents protected by attorney/client privilege, the attorney work product doctrine,

8  or other applicable protections.

9          Subject to, and without waiving the foregoing specific or General Objections, NXP will

10  produce non-privileged responsive documents directed to the substance of the Patent License

11  Agreement at a mutually agreeable time.

12  **REQUEST NO. 4:**

13          DOCUMENTS sufficient to fully describe NXP's document retention or document
    destruction policies since July 1, 1987, including electronic records management policies.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

15          NXP objects to this request as NXP did not exist in 1987.  Subject to, and without waiving

16  the foregoing General Objections, NXP will produce non-privileged responsive documents

17  sufficient to describe its document retention policy.

18  **REQUEST NO. 5:**

19          For all current NXP products, DOCUMENTS sufficient to fully describe the location of
    manufacture of the product, the identity of the line used to manufacture the product, and the entity

20  that manufactures the product.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

22          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23  to this request as overly broad and premature in that it requests information outside the scope of

24  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25  of the Patent Licensing Agreement.  NXP objects to this request to the extent that LSI requests

26  documents in the public domain or within the possession of LSI.  NXP further objects to this

27  request because it employs the ambiguous term "manufacturing line".

28          NXP further objects to this request because it is unduly burdensome and premature in that

1  it makes no effort to limit its request to products that are at issue in this case, and comes before

2  receiving LSI's contentions of which products are at issue in this case.  Answering this request

3  would require NXP to review and analyze hundreds of products before LSI has narrowed that

4  scope to a reasonable number by accusing specific NXP products.  Furthermore, to the extent this

5  request calls for the identity of goods which LSI does not intend to accuse of infringement of the

6  Patents-In-Suit and which will not be a part of this action, NXP objects to this request on grounds

7  that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8  **REQUEST NO. 6:**

9       For all manufacturing lines identified in response to REQUEST NO. 5, DOCUMENTS
sufficient to fully describe all steps performed on the manufacturing line, including but not

10  limited to process steps, process conditions, and manufacturing tolerances.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

12       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

13  to this request as overly broad and premature in that it requests information outside the scope of

14  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

15  of the Patent Licensing Agreement.  NXP further objects to this request because it employs the

16  ambiguous terms "manufacturing line" "process conditions" and "manufacturing tolerances".

17       NXP further objects to this request because it is over broad, unduly burdensome and

18  premature in that it makes no effort to limit its request to products that are at issue in this case,

19  and comes before receiving LSI's contentions of which products are at issue in this case.

20  Answering this request would require NXP to review and analyze hundreds of products before

21  LSI has narrowed that scope to a reasonable number by accusing specific NXP products.

22  Furthermore, to the extent this request calls for the identity of goods which LSI does not intend to

23  accuse of infringement of the Patents-In-Suit and which will not be a part of this action, NXP

24  objects to this request on grounds that it is irrelevant and not reasonably calculated to lead to the

25  discovery of admissible evidence.

26  **REQUEST NO. 7:**

27       DOCUMENTS sufficient to disclose all THIRD PARTIES who purchased products from
NXP in the last six years, and the types and amounts of products purchased.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

  As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this request because it is unduly burdensome and premature in that it comes before receiving LSI's contentions of which products are at issue in this case and is therefore not reasonably limited in scope to documents related to products at issue in this case. NXP also objects to this request as demanding confidential business information of third parties. Further, NXP objects on the grounds that this request is not reasonably calculated to lead to the discovery of admissible evidence. NXP will meet and confer with LSI in a good faith attempt to narrow the scope of this request.

**REQUEST NO. 8:**

  DOCUMENTS sufficient to fully disclose the top ten purchasers of NXP products by dollar amount in the Mobile & Personal, Home, Automotive & Identification, Multimarket Semiconductor, and commodity market segments over the last 6 years, the purchase amounts and products purchased for each of the last 6 years, and any agreements NXP has with these customers to supply NXP products on a going forward basis.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

  As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this request to the extent that LSI requests documents in the public domain or within the possession of LSI. NXP further objects to this request because it employs the ambiguous terms "market segment" "commodity market" and "purchase amounts". NXP further objects to this request because it is over broad, unduly burdensome and premature in that it comes before receiving LSI's contentions of which products are at issue in this case and is therefore not reasonably limited in scope to documents related to products at issue in this case.

**REQUEST NO. 9:**

  All DOCUMENTS RELATING TO the PLA.

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

2       NXP objects to the forgoing request as requesting documents protected by attorney/client

3   privilege, the attorney work product doctrine, or other applicable protections.  Subject to, and

4   without waiving the foregoing General Objections, NXP will produce non-privileged responsive

5   documents directed concerning the Patent License Agreement at a mutually agreeable time.

6   **REQUEST NO. 10:**

7       All DOCUMENTS RELATING TO the negotiation of the PLA.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

9       NXP objects to the forgoing request as requesting documents protected by attorney/client

10  privilege, the attorney work product doctrine, or other applicable protections.  Subject to, and

11  without waiving the foregoing specific and General Objections, NXP will produce non-privileged

12  responsive documents concerning the Patent License Agreement at a mutually agreeable time.

13  **REQUEST NO. 11:**

14      All DOCUMENTS RELATING TO all COMMUNICATIONS regarding the scope of the
    PLA.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

16      NXP objects to the forgoing request as requesting documents protected by attorney/client

17  privilege, the attorney work product doctrine, or other applicable protections.  Subject to, and

18  without waiving the foregoing specific and General Objections, NXP will produce non-privileged

19  responsive documents directed to the substance of the Patent License Agreement at a mutually

20  agreeable time.

21  **REQUEST NO. 12:**

22      All DOCUMENTS RELATING TO any analysis or study of what NXP products are
    licensed under the PLA.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

24      NXP objects to the forgoing request as requesting documents protected by attorney/client

25  privilege, the attorney work product doctrine, or other applicable protections.  NXP objects to this

26  request as premature and over broad in that this phase of the litigation is, on agreement of the

27  parties as discussed in paragraph 5 of the GENERAL OBJECTIONS, focused on the entities and

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1  patents covered by the Patent Licensing Agreement. NXP objects to this request as irrelevant as

2  NXP does not infringe any of the Patents-In-Suit and it is its contention that none of its products

3  require a license. Subject to, and without waiving the foregoing specific or General Objections,

4  NXP will produce non-privileged responsive documents concerning the Patent License

5  Agreement at a mutually agreeable time.

6  **REQUEST NO. 13:**

7       Copies of all agreements in which NXP is a party or a beneficiary that grant a license to a

8  patent or other intellectual products.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

10       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

11  to this request as overly broad and premature in that it requests information outside the scope of

12  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

13  of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is

14  overbroad, unduly burdensome, premature and not reasonably calculated to lead to discovery of

15  admissible evidence in that it makes no effort to limit its request to the license or patents at issue

16  in this case. NXP also objects to the forgoing request as requesting documents protected by

17  attorney/client privilege, the attorney work product doctrine, or other applicable protections.

18  **REQUEST NO. 14:**

19       Copies of all agreements in which the term "kind" is used to define the scope of a right or
obligation under the agreements, and all DOCUMENTS relating to the interpretation of the clause

20  that contains the word "kind."

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

22       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23  to this request as overly broad and premature in that it requests information outside the scope of

24  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25  of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is over

26  broad, unduly burdensome, premature and not reasonably calculated to lead to discovery of

27  admissible evidence in that it makes no effort to limit its request to the license at issue in this

28  case. NXP also objects to the forgoing request as requesting documents protected by

1   attorney/client privilege, the attorney work product doctrine, or other applicable protections.

2         Subject to, and without waiving the foregoing specific or General Objections, NXP will

3   produce non-privileged responsive documents directed to the substance of the Patent License

4   Agreement at a mutually agreeable time.

5   **REQUEST NO. 15:**

6         All DOCUMENTS which purport to describe the categories, types, or kinds of products
sold or used by NXP as of July 1, 1987.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

8         As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

9   to this request as overly broad and premature in that it requests information outside the scope of

10  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

11  of the Patent Licensing Agreement.  NXP further objects to this interrogatory because it is unduly

12  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

13  in that it makes no effort to limit its request to products that are at issue in this case, and comes

14  before LSI has issued its infringement contentions.  The request covers hundreds of products,

15  many of which may not be accused in this case.  Further, NXP objects to this request to the extent

16  that it was not in existence in 1987.

17  **REQUEST NO. 16:**

18        DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP

19  as of July 1, 1987, including a description of the method of manufacture, the intended use, and the

20  function.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

22        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23  to this request as overly broad and premature in that it requests information outside the scope of

24  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25  of the Patent Licensing Agreement.  NXP further objects to this interrogatory because it is unduly

26  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

27  in that it makes no effort to limit its request to products that are at issue in this case, and comes

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1  before LSI has issued its infringement contentions. The request covers hundreds of products,

2  many of which may not be accused in this case. Further, NXP objects to this request to the extent

3  that it was not in existence in 1987. NXP further objects to this request because it employs

4  ambiguous terms "method of manufacture", "intended use" and "function".

5  **REQUEST NO. 17:**
   DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP
6  as of the initiation of this action and within the last six years, including a description of the
7  method of manufacture, the intended use, and the function.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

9      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

10  to this request as overly broad and premature in that it requests information outside the scope of

11  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

12  of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

13  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

14  in that it makes no effort to limit its request to products that are at issue in this case, and comes

15  before LSI has issued its infringement contentions. The request covers potentially unlimited

16  numbers of products, most of which are not at issue in this case. Further, NXP objects to this

17  request to the extent that it was not in existence in 1987. NXP further objects to this request

18  because it employs ambiguous terms "method of manufacture", "intended use" and "function".

19  Finally, NXP objects to this request as duplicative of the one preceding.

20  **REQUEST NO. 18:**
   DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP
21  as of July 1, 1987 that were manufactured in whole or in part by a third party, the identity of the
   third party, and the role the third party played in the manufacture of the product.
22

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects
24
   to this request as overly broad and premature in that it requests information outside the scope of
25
   the current phase of litigation as agreed by the parties and is not related to the terms and coverage
26
   of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly
27
   burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence
28

1  in that it makes no effort to limit its request to products that are at issue in this case, and comes

2  before LSI has issued its infringement contentions.  The request covers potentially unlimited

3  numbers of products, most of which are not at issue in this case.  Further, NXP objects to this

4  request to the extent that it was not in existence in 1987.

5  **REQUEST NO. 19:**

6       All different product catalogues, product lists, product summaries, product inserts, or

7  product technical descriptions prepared by NXP during the years 1985 through the present.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

9       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

10  to this request as overly broad and premature in that it requests information outside the scope of

11  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

12  of the Patent Licensing Agreement.  NXP further objects to this interrogatory because it is unduly

13  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

14  in that it makes no effort to limit its request to products that are at issue in this case, and comes

15  before LSI has issued its infringement contentions.  The request covers potentially unlimited

16  numbers of products, most of which are not at issue in this case.  Further, NXP objects to this

17  request to the extent that it was not in existence in 1985.

18  **REQUEST NO. 20:**

19       All different product catalogues, product lists, product summaries, product inserts, or
product technical descriptions prepared by a third party regarding NXP products during the years

20  1985 through the present.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

22       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23  to this request as overly broad and premature in that it requests information outside the scope of

24  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25  of the Patent Licensing Agreement.  NXP further objects to this interrogatory because it is unduly

26  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

27  in that it makes no effort to limit its request to products that are at issue in this case, and comes

28  before LSI has issued its infringement contentions.  The request covers potentially unlimited

1 numbers of products, most of which are not at issue in this case. Further, NXP objects to this

2 request to the extent that it was not in existence in 1985.

3 **REQUEST NO. 21:**

4     All DOCUMENTS, including all press materials, that describe an NXP product sold or

5 used for the first time after July 1, 1987 as "new".

6 **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

7     As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

8 to this request as overly broad and premature in that it requests information outside the scope of

9 the current phase of litigation as agreed by the parties and is not related to the terms and coverage

10 of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

11 burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

12 in that it makes no effort to limit its request to products that are at issue in this case, and comes

13 before LSI has issued its infringement contentions. The request covers potentially unlimited

14 numbers of products, most of which are not at issue in this case of products, many of which may

15 not be accused in this case. Further, NXP objects to this request to the extent that it was not in

16 existence in 1987.

17

18

19 Dated: June _____, 2008                    MORGAN, LEWIS & BOCKIUS LLP

20

21 By _____
                                       Brett Schuman
22                                     Attorneys for Plaintiff

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

# EXHIBIT 6

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**Mark W. Taylor**
202.739.5030
mark.taylor@morganlewis.com

July 18, 2008

**VIA ELECTRONIC AND U.S. MAIL**

C. Maclain Wells
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

      Re:    NXP Semiconductors USA, Inc. v. LSI Corporation and Agere Systems, Inc.
             No. CV-08-0775 JW

Dear Maclain:

I write on behalf of NXP Semiconductors USA, Inc. ("NXP") to confirm our understanding of topics discussed during our July 15, 2008 teleconference, during which we met and conferred regarding discovery issues.

The parties agree that the protective order is effectively in place, even if it has not yet been signed by Judge Ware, and document production should commence by July 29, 2008. The parties will provide privilege logs, exclusive of privileged documents prepared by, for, or at the direction of litigation counsel and their agents. The parties agree to produce to the other party all documents obtained from third parties pursuant to a subpoena.

LSI confirmed that its agreement to produce documents includes an agreement to produce documents in Agere's possession, custody, or control, and therefore, that duplicate sets of discovery need not be served on Agere by NXP. The parties agreed that, in responding to discovery requests, LSI and Agere will conduct reasonable searches of documents in their possession, custody, or control from AT&T or Lucent, and NXP will conduct reasonable searches of documents in its possession, custody, or control from Philips.

The parties further agree that the phasing of the litigation and resulting schedule dictate that discovery be taken first on the licensing issue, without prejudice to the right of the parties to seek additional discovery during subsequent phases. NXP has reasonably limited its current requests to the production by LSI and Agere of simple background information and information relevant to the licensing issue. LSI and Agere, on the other hand, seek documents and interrogatory

DB2/20766660



Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 2

responses from NXP that far exceed any reasonable interpretation of the scope of the current phase of this litigation.

**NXP's Discovery Responses**

As we explained during the teleconference, NXP does not have access to Philips' facilities. Indeed, the overwhelming majority of Philips' information and documents are not in the possession, custody, or control of NXP. However, those non-privileged documents that are responsive to LSI's discovery requests and are in NXP's possession, custody, or control will be produced to the extent they are relevant to the current stage of this litigation.

That said, LSI and Agere seek an inordinate amount of irrelevant and burdensome production from NXP relating to NXP and Philips products. It is both irrational and unreasonable to expect NXP to provide documentation that identifies and describes each and every one of NXP's 50,000+ licensed products (not to mention every iteration of those products going back, in some cases, to 1985), along with design, manufacture, and sale dates for each. NXP by no means has the burden to make an individualized showing that each and every product is covered by the license.

For these reasons, we proposed during out teleconference that the parties agree to proceed with discovery on the basis of representative products, namely those identified by LSI and Agere prior to this litigation, to narrow the scope of discovery to a reasonable and manageable level. Surprisingly, this proposal was rejected by you out of hand. You further declined our request that LSI/Agere consider proposing alternative representative products.

After revisiting the issue and considering your comments, we believe that our proposal is quite fair and clearly is the most reasonable suggestion to date. To clarify, NXP proposes to proceed using the representative products identified by LSI and Agere prior to this litigation, and when appropriate, to provide lists of products for which they are representative, rather than litigating over and asking the Court to adjudicate each product individually.

In order to further evaluate your proposal that representative products from Philips' 1987 products be identified, please explain: (i) how this is necessary or helpful; (ii) what advantages it presents beyond those presented by our proposal; and (iii) how it addresses the concerns dealt with by our proposal.

NXP's Interrogatory Responses

NXP agrees to supplement Interrogatory No. 1 to identify person(s), to the extent such persons exist, knowledgeable about: (i) what third parties manufacture products for NXP and which

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 3

products they manufacture; and (ii) material differences between Philips' July 1987 products and NXP's current products.  In lieu of identifying an individual knowledgeable about the patents-in-suit, NXP agrees to stipulate that the '180, '335, '739, '672, '958, '500, '748, and '928 patents are captured by the Patent License Agreement at issue, and that the remaining patents-in-suit, the '182, '777, '149, '543, and '184 patents, fall outside of the capture period of the Patent License Agreement and, therefore, are not at issue during this phase of the litigation.

In addition to the irrelevance of the comprehensive product-related discovery requested in LSI's discovery requests, it would be unreasonable to expect NXP to provide such discovery on all of NXP's products, let alone all of Philips' products.  Further, as explained during our teleconference, product data sheets for all of NXP's products are publicly available.  Accordingly, once an agreement is reached regarding representative products, NXP will supplement its responses to Interrogatory Nos. 2, 3, and 4 as appropriate.  Interrogatory No. 5 will be supplemented to the extent NXP has any responsive, relevant information in its possession, custody, or control.

If NXP has any non-privileged communications responsive to Interrogatory No. 6 and related to this phase of the litigation, our response will be supplemented.  Finally, with regard to Interrogatory Nos. 12-15 and 17, NXP agrees to examine the feasibility of providing lists of products with the recited features.  The parties agreed that the subject matter of Interrogatory Nos. 7-11 and 16 is not relevant to this stage of the litigation.

NXP's Responses to Requests for Production

NXP's objections, on the basis of work product and attorney-client privilege, stand with respect to Request No. 2.

NXP agrees to provide appropriate documents responsive to Request No. 5 once an agreement is reached with regard to representative products.  Request Nos. 6, 7, and 8, however, are beyond the scope of the current phase of this litigation, and appropriate responsive documents may be produced during a later phase of this litigation.

In accordance with Request No. 11, NXP will produce all non-privileged documents relating to the interpretation of the Patent License Agreement.  To the extent they are within the possession, custody, or control of NXP, we will also produce copies of agreements responsive to Request Nos. 13 and 14 to the extent they are related to the patents-in-suit or the Patent License Agreement.

Subject to NXP's objections regarding the relevance and public availability of this information, NXP will produce relevant documents responsive to Request Nos. 15, 16, and 18, to the extent



Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 4

any such documents are in the possession, custody, or control of NXP. Request Nos. 17, 19, 20, and 21, however, should be addressed after we have reached a mutually acceptable agreement regarding representative products.

**LSI Discovery Responses**

> LSI and Agere's Responses to Requests for Production

LSI and Agere agreed to collect and produce all non-privileged documents responsive to Request Nos. 1, 2, 38, and 39, including but not limited to all pre-litigation communications between the parties, as long as those documents are at least tangentially related to the Patent License Agreement issue. This agreement also includes any documents in files Agere may have received from Lucent regarding the original 1987 license agreement or the 1995 amendment thereto.

LSI agreed to produce any non-privileged documents responsive to Request No. 40 to the extent they are related to the license issue.

LSI and Agere agreed to collect and produce all documents responsive to Request Nos. 43, 44, 46, and 47 – including but not limited to any license agreements with TSMC and associated communications – that relate to this action, the patents-in-suit, or the Patent License Agreement. Likewise, LSI and Agere agreed to produce all documents responsive to Request Nos. 3, 4, 5, and 48. NXP agrees that a description is not necessary for the duties of every employee of LSI and Agere in response to Request No. 4.

NXP proposes to narrow the scope of Request Nos. 7 and 8 (and Interrogatory Nos. 2, 8, and 9) for this stage of the litigation only. For now, NXP requests identification of litigations or other proceedings in which the validity of any of the patents-in-suit has been challenged or overturned. NXP reserves its right to seek further responses to all requests during later phases of this litigation.

With regard to Request Nos. 10 and 11, LSI and Agere agreed to collect and produce all non-privileged documents reflecting the ownership or transfer of the patents-in-suit, including but not limited to the transfer from Lucent or AT&T to Agere and LSI and the divestiture of Agere from Lucent. LSI and Agere further agreed to produce documents that mention any licenses to which the patents-at-issue were subject at the time of transfer.

In response to Request Nos. 21 and 22, LSI and Agere agreed to produce copies of the prosecution histories of the patents-in-suit. LSI and Agere will also collect and produce documents responsive to Request No. 54 to the extent they involve the licensing issue.

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 5

<u>LSI and Agere's Interrogatory Responses</u>

As discussed during our teleconference, LSI/Agere's assertion that NXP bears the ultimate burden of persuasion on the license issue does not relieve LSI or Agere of their obligations to respond fully to Interrogatory No. 1. LSI and Agere must explain fully their contentions regarding the Patent License Agreement and the bases therefor. Your refusal to supplement this response until documents are produced is improper, especially in light of the fact that LSI and Agere have clearly developed and articulated positions regarding the interpretation of the Patent License Agreement to which NXP is entitled discovery. For example, you stated during the teleconference that changes in a process from 1987 to the present would be indicative of changes in the kind of products. However, you have not expressed a theory in response to Interrogatory No. 1, nor have you provided NXP with Agere and LSI's interpretations of terms from the Patent License Agreement such as "products" and "of the kind," or any basis for your contention that NXP is not licensed. Therefore, LSI and Agere must immediately supplement their response to Interrogatory No. 1, or NXP will move to compel such supplementation.

LSI and Agere agreed to supplement their response to Interrogatory No. 11 to identify assignment documents produced pursuant to Request for Production Nos. 10 and 11.

Finally, NXP again requests supplementation of Interrogatory No. 14. As we discussed during our teleconference, LSI and Agere must identify any additional bases for their laches and estoppel contentions. The license issue is not a new one, and NXP is entitled to discovery of any additional bases of which LSI and Agere are aware. Furthermore, the statement in LSI's response regarding the payment of royalties is not clear and needs further explanation. During the teleconference, you explained LSI's theory that NXP's declaratory judgment claims of invalidity may be barred if NXP prevails on the Patent License Agreement issue. NXP requests that you supplement the response to Interrogatory No. 14 to confirm that this is the only purported basis that LSI and Agere have for its laches and/or estoppel argument.

Very truly yours,

Mark W. Taylor

DB2/20766660

# EXHIBIT 7

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  202.739.3000
Fax:  202.739.3001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

Mark W. Taylor
202.739.5030
mark.taylor@morganlewis.com

July 23, 2008

## VIA ELECTRONIC AND U.S. MAIL

C. Maclain Wells
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re:    NXP Semiconductors USA, Inc. v. LSI Corporation and Agere Systems, Inc.
       No. CV-08-0775 JW

Dear Maclain:

I write in response to your letters dated July 18 and July 21, 2008, which contain numerous misstatements and mischaracterizations.

### TSMC

Your July 18 letter misleadingly suggests the purported issue regarding whether NXP's communications with TSMC violate the Non-Disclosure Agreement was discussed during our July 15 meet and confer conference.  It was not.  Contrary to your July 18 letter, NXP did not agree to produce "all documents, materials, and other communications with TSMC."  Rather, as with all other discovery requests and consistent with the Court's order regarding the phasing of the case for discovery purposes, NXP agreed to produce documents, materials, and other communications with TSMC to the extent they relate to the 1987 PLA issue.

Further, your letter is once again non-responsive to Brett Schuman's July 1, 2008 and July 9, 2008 emails on the subject.  (Those emails are attached to this letter for convenient reference).  LSI/Agere has not articulated how the communication described in Brett's July 1, 2008 email violates any provision of the Non-Disclosure Agreement.

### NXP's Responses to LSI/Agere's Document Requests

Document Request No. 1:  NXP agreed to produce non-privileged documents referenced in its interrogatory responses.

DB2/20773928.1

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 2

Document Request No. 2:  With regard to Document Request No. 2, you have again mischaracterized NXP's position.  As we explained during our meet and confer, the collection of documents and the attorneys' evaluation of the relative importance of the underlying facts are privileged.  Further, you were unable to articulate during our teleconference the relevance of this information either to any issue in the case or to the phase of the case we are currently litigating.

Document Request No. 3:  We agreed to produce copies of documents received by NXP in response to third-party subpoenas.  Please confirm whether LSI/Agere will do the same.

Document Request No. 4:  We agreed to produce NXP's document retention policy.

Document Request Nos. 9-12:  NXP agreed to produce all non-privileged documents in its possession, custody or control relating to the 1987 PLA or its interpretation.

Document Request Nos. 13-14:  NXP agreed to produce responsive documents to the same extent agreed to by LSI/Agere, which we understood to be limited to agreements related to the patents-in-suit or the 1987 PLA as recited in your discovery responses.  If LSI/Agere's position has changed regarding what they will be producing, please let us know.

Document Request Nos. 15 and 18:  After advising you that NXP does not generally have in its possession, custody or control Philips documents from the time prior to the creation of NXP in 2006, we agreed to produce those non-privileged documents in NXP's possession, custody or control describing Philips' products in 1987.

In your July 18 letter you improperly renew your request that NXP undertake to collect documents from Philips, without citing any authority supporting your apparent position that it is NXP's obligation to do so.  By parity of reasoning, Agere would be obligated to collect documents for NXP from Lucent and also AT&T.  We have not taken that position because it is inconsistent with litigants' obligations under the Federal Rules.  In any event, since your letter you have subpoenaed Philips, thereby acknowledging that NXP has no obligation to conduct that non-party discovery for LSI/Agere.

Document Request Nos. 26-29 and 32:  We are puzzled by your inclusion of any reference to Document Request Nos. 26-29 and 32 in your July 18 letter, since NXP's responses to those requests were not served until days after our July 15 teleconference and indeed not until after you sent your July 18 letter.  We reached no agreements during our July 15 teleconference regarding these requests.

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 3


### NXP's Responses To LSI/Agere's Interrogatories

Interrogatory No. 1:  With regard to Interrogatory No. 1, you have misstated our agreement.  As discussed during our meet and confer and as explained in my letter of July 18, 2008, in lieu of identifying an individual knowledgeable about the patents-in-suit as requested in Interrogatory No. 1, NXP has agreed to stipulate to which patents-in-suit are and are not within the capture period of the 1987 PLA.  As the parties agreed during the meet and confer, this is more than sufficient for this stage of the litigation.  With regard to your request for the identity of the person most knowledgeable with respect to differences between Philips' 1987 products and NXP's current products, we agreed to identify such a person.  With regard to your request for the identity of the person most knowledgeable with respect to third-party manufacturing lines, you failed to explain during our teleconference how the identity of this person is relevant during this phase of the litigation.

Interrogatory Nos. 2 and 4:  During our conference we discussed whether NXP's complaint – particularly, the First Claim for Relief – seeks a declaration that all of NXP's products are licensed or whether the claim is limited to those products accused by LSI/Agere during pre-litigation discussions.  We informed you that NXP has over 50,000 products and that NXP does not intend to identify, on a product-by-product basis, which product is licensed and which may not be, as LSI/Agere appears to be requesting.  We informed you that we do not believe that such an analysis is required by the 1987 PLA.

In the light of the foregoing, NXP will provide a supplemental response to these interrogatories by July 28 contending that, for present purposes, it is seeking to establish that all of the 10 products accused by LSI/Agere during pre-litigation discussions are licensed under the 1987 PLA.

Interrogatory Nos. 12-15 and 17:  As explained in my July 18 letter, NXP is looking into whether it can respond to Interrogatory Nos. 12-15 and 17.  The information may not be maintained in this way in the ordinary course of NXP's business.  Once we have further information, we will update you.  Further, as we explained during our July 15 teleconference, we do not understand how these requests – which relate to the processes allegedly used to make NXP's products – relate to the issues to be determined during this phase of the litigation.  The 1987 PLA grants a license to "products and services of the kinds which are furnished or used by" Philips or any of its "related companies" in their business in 1987.  As you conceded during our July 15 teleconference, this license grant focuses on whether the products or services themselves are "of the kinds" used by Philips in 1987, and not the processes used to make those products or services.  Further, as with the overwhelming majority of your other purported issues with NXP's discovery responses, LSI/Agere's request for all of this information would be obviated and

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 4

subsumed within an appropriate agreement to proceed with this discovery on the basis of appropriate representative parts.

Interrogatory No. 16: During our July 15 teleconference, we informed you that NXP was not contending either of the two phase-locked loop related patents are within the Extended Period, *i.e.*, capture period, of the 1987 PLA, as amended. You conceded that, in the light of NXP's position, discovery regarding those patents and products (including Interrogatory No. 16) was not part of this phase of the case. In your July 18 letter, purporting to confirm our July 15 teleconference, you have changed your position and now appear to be demanding discovery regarding products that NXP does not contend are licensed. As we told you during the call, NXP stipulates that neither of the phase-locked loop patents (the '149 and '184 patents) are within the Extended Period of the 1987 PLA, as amended.

NXP will supplement the aforementioned interrogatory responses to the extent described herein on July 28, 2008. We expect LSI to serve its supplemental interrogatory responses on that date as well.

### NXP's Representative Products Proposal

During our July 15 teleconference, NXP proposed proceeding with discovery and adjudication during this phase of the litigation on the basis of representative parts. During our teleconference, you rejected that proposal out-of-hand and instead, based on LSI/Agere's purported reading of NXP's complaint, demanded complete discovery regarding all approximately 50,000 NXP products and all prior iterations of those products.

After rejecting NXP's proposal, LSI/Agere offered none of its own. In your July 21 letter you claim LSI made a "counterproposal" in your July 18 letter. If by "counterproposal" you are referring to language on page 4 of your July 18 letter, asking for information regarding, among other things, the quantities sold and prices paid by customers for each NXP product sold in the past six years, we disagree with your characterization of that request as a "counterproposal." The quantities sold, prices paid, location of manufacture, etc. is all irrelevant to adjudicating whether the products and services at issue are "of the kinds" used or furnished by Philips in 1987.

As noted in my July 18 letter, product data sheets are publicly available on all of NXP's products – if LSI/Agere really wants that information.

Your letters also erroneously state that NXP refused your proposal to proceed with representative products for Philips' 1987 products. We posed several follow-up questions in my July 18 letter,

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 5

none of which were answered in your July 21 letter, presumably because your proposal does nothing to promote efficiency of the discovery process.

We remain convinced that complete discovery regarding each and every current and former NXP product is not necessary to adjudicate NXP's rights under the license agreement. As we explained during our July 15 teleconference, the 1987 PLA only requires the current NXP products or services be "of the kinds" used or furnished by Philips in 1987. Further, in the light of NXP's agreement to provide a supplemental response to LSI/Agere's Interrogatory Nos. 2 and 4, identify those parts that NXP contends for present purposes are licensed, there is no justification for LSI/Agere's insistence on discovery regarding all other NXP parts.

### Privilege Log

Finally, while this condition was not mentioned during this portion of the meet and confer, we can agree to limit the litigation counsel exception for the privilege log to privileged materials created by litigation counsel and their agents after the filing of this action.

Very truly yours,

Mark W. Taylor

# EXHIBIT 8

US005227335A

# United States Patent [19]

## Holschwandner et al.

[11] Patent Number: 5,227,335

[45] Date of Patent: Jul. 13, 1993

[54] **TUNGSTEN METALLIZATION**

[75] Inventors: **Lowell H. Holschwandner,** Fountain Hill; **Virendra V. S. Rana,** South Whitehall Township, Lehigh County, both of Pa.

[73] Assignee: **AT&T Bell Laboratories,** Murray Hill, N.J.

[21] Appl. No.: **517,973**

[22] Filed: **Apr. 30, 1990**

### Related U.S. Application Data

[63] Continuation of Ser. No. 338,473, Apr. 14, 1989, abandoned, which is a continuation of Ser. No. 929,043, Nov. 10, 1986, abandoned.

[51] Int. Cl.$^5$ ........................................ H01L 21/283
[52] U.S. Cl. ...................................... 437/192; 437/190; 437/194; 437/246
[58] Field of Search ............... 437/192, 190, 245, 246, 437/194

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,697,343 | 10/1972 | Cuomo et al. | 437/962 |
| 4,394,678 | 7/1983 | Winchell et al. | 357/68 |
| 4,650,696 | 3/1987 | Raby | 427/89 |
| 4,666,737 | 5/1987 | Gimpelson et al. | 427/89 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1955716 | 5/1971 | Fed. Rep. of Germany | 437/192 |
| 0211269 | 12/1982 | Japan | 437/192 |

### OTHER PUBLICATIONS

Wittmer, M., J. Vac. Sci. Technol. A2(2), Apr.–Jun., 1984, pp. 273–279.
Mehta, S., et al., "Blanket CVD Tungsten . . . ",Jun. 9–10, 1986, V–MIC. Conf., pp. 418–435.
Higelin, G. , et al., "A Contact Filling . . . ", Jun. 9–10, 1986, V–MIC Conf., pp. 443–449.
Smith; G., et al., "Comparison of Two Contact Plug . . . ", Jun. 9–10, 1986, V–MIC Conf., pp. 403–410.
Brols, D., et al., "CVD Tungsten . . . " Solid State Technology, Apr. 1984, pp. 313–314.
"Tungsten-on-Conducting Nitride . . . " IBM Technical Disc. Bull., vol. 31, No. 3, Aug. 1988, pp. 477–478.
Saraswat, K., et al., "Selective VCD of Tungsten . . . ", Procs. Second Int. Symp. VLSI, vol. 84–7, 1984, pp. 409–419.
Miller, N., et al., "Hot Wall CVD Tungsten . . . ", Solid State Technology, Dec. 1980, pp. 79–81.
Nicollet, M. A., "Diffusion Barriers . . . ", Thin Solid Films, vol. 52, 1978, pp. 415–432.
Wittmer, M., Appl. Phys Lett., 36(6), Mar. 15, 1980, pp. 456–458.
Rosser, P. J., et al., Mat. Res. Soc. Symp. Proc. vol. 37, 1985 Material Research Society, pp. 607–612.

*Primary Examiner*—T. N. Quach
*Attorney, Agent, or Firm*—Richard D. Laumann

[57] **ABSTRACT**

The adhesion of tungsten to an underlying dielectric layer is improved by the use of a thin glue layer of either TiN or Al.

**11 Claims, 2 Drawing Sheets**





*FIG. 1*



*FIG. 2*



*FIG. 3*

*FIG. 4*



5,227,335

1

# TUNGSTEN METALLIZATION

This application is a continuation of application Ser. No. 338,473, filed on Apr. 14, 1989, abandoned, which is a continuation of application Ser. No. 929,043, filed on Nov. 10, 1986, abandoned.

## TECHNICAL FIELD

This invention relates generally to metallizations used in semiconductor devices, and particularly to devices having such metallizations which use tungsten.

## BACKGROUND OF THE INVENTION

As the complexity of integrated circuits continues to increase, the dimensions of the components of the integrated circuits continue to decrease. Not only do device dimensions decrease, but the dimensions of the interconnects, that is, the lines and windows used to connect devices decrease. The windows are often termed vias by those skilled in the art. It is noted that the term window is sometimes applied only to the openings to the source, gate, or drain electrodes while the term via is applied to the opening between levels in multilevel metal structures. Vias may be conveniently visualized as cylinders which are filled with a metal so that, e.g., devices located on different metallization levels can be electrically connected. As it is difficult to completely fill a small diameter cylinder with sputtered Al, a metal commonly used in integrated circuit metallizations, a heating step is frequently used to cause an overlying dielectric layer to flow into a portion of the via. The heating step creates a more easily filled conical shape. The conical shape is, of course, truncated at the bottom so that an electrical contact can be formed to the underlying conductor.

As smaller devices typically use relatively shallower junction depths than do larger devices, the use of high temperature thermal processing to taper the vias by causing a dielectric material to flow eventually becomes impossible as the via dimensions decrease. Consequently, the vias that must be filled with metal not only have a high aspect ratio, that is, a high ratio of height to width, but their walls are also substantially vertical. Aluminum is difficult to deposit uniformly in such vias and poor step coverage results for conventional deposition techniques such as sputtering. This not only leads to possible discontinuities in the metal coverage but also makes planarization of the surface, frequently required for subsequent processing such as second level metallization, very difficult.

Al metallizations suffer from several drawbacks. Al has a low electromigration resistance and is susceptible to hillock formation. Also, because of its low melting point and tendency to react with Si, severe limitations are placed on the maximum temperature that can be used in post-metallization processing.

Accordingly, alternatives to aluminum have been sought for at least portions of the metallization. One commonly contemplated alternative metal is low pressure chemical vapor deposition (LPCVD) tungsten. LPCVD tungsten is a desirable alternative because it has a conformal step coverage. LPCVD tungsten also offers advantages for use as interconnects. Besides having conformal step coverage, it has high electromigration resistance, resistance to hillock formation and high temperature stability. Although many methods of depositing LPCVD tungsten have been proposed, they

2

are all included within two generic categories which are conveniently termed selective and blanket.

Selective deposition typically relies upon the reaction of a gas, such as tungsten hexafluoride, with substrates, such as silicon, to leave tungsten on the silicon surface. Selective deposition is also possible on metals and silicides. A carrier gas, such as hydrogen, is commonly used. Tungsten hexafluoride does not react with other materials, such as a surrounding dielectric region of silicon dioxide, and in theory, tungsten is deposited only on the silicon surface. However, selective deposition is difficult to obtain in practice in the thicknesses which are needed to fill deep vias because of the loss of selectivity. This probably arises because some tungsten hexafluoride reacts with the hydrogen carrier gas thus forming HF as well as nucleating W. HF reacts with and etches the SiO2, which is obviously an undesirable result.

With blanket deposition, tungsten is deposited over the entire surface and then etched back so that tungsten ideally remains only in the vias or as, for example, interconnects. While this process is conceptually simple, tungsten does not adhere well to silicon dioxide and practical problems arise. For example, after the deposition has been completed, the tungsten film may simply peel off the silicon dioxide which is also an obviously undesirable result.

The use of a glue layer has been proposed to overcome the adhesion problem just discussed. A glue layer is a layer of material deposited prior to the tungsten and which has good adhesion both to the underlying dielectric layer and to the tungsten. Several substances have been proposed for glue layers. For example, the use of both elemental metals, such as Ti, and metallic silicides, such as WSi2, has been proposed. See, for example, Comparison of Two Contact Plug Techniques for Use with Planarized Oxide and A Contact Filling Process with CVD-Tungsten for Multilevel Metallization Systems, Proceedings of the V-MIC Conference, pp. 403-410, and pp. 443-449, Jun. 9-10, 1986, respectively. A common feature of the approaches adopted by these references is the use of relatively thick glue layers. Thicknesses of approximately 100 nm or more were used. It should be noted that the thickness of the Ti layer in the former reference is not explicitly given. However, FIG. 3 illustrates a plug after etching has been completed. It is evident that there is severe overetching of the glue layer which would not be visible if a thin glue layer had been used.

However, the use of a thick glue layer is undesirable because during the etch back step, severe undercutting of the tungsten layer occurs if, as is often the case, the glue layer etches more rapidly than does the tungsten. The undercutting may make subsequent processing very difficult. For example, voids may be left in the oxide and in subsequent metallizations after metal deposition.

Of course, the glue layer material should be electrically conducting. Only metals or silicides have been proposed as glue layer materials because of the rapid film growth in these materials. However, the use of some metals, such as aluminum, has not been seriously considered because a thick aluminum layer may cause spiking due to its rapid diffusion into the underlying material. Other conducting compounds have not yet been proposed as glue layers.

5,227,335

| 3 | 4 |

## SUMMARY OF THE INVENTION

We have found that tungsten can be blanket deposited with good adhesion over a dielectric covering a portion of a silicon surface by first depositing a film comprising either Al or a conducting nitride such as TiN as a glue layer. The glue layer film may be deposited, through openings in the dielectric, directly on the silicon or on a conducting material, such as a silicide, overlying the silicon. Of course, the glue layer is also deposited on the dielectric. Both TiN and Al films provide good adhesion down to thicknesses as small as approximately 3 nm. The minimum thickness is determined primarily by the requirement that the entire wafer surface be covered adequately. The thinner glue layers are generally preferred as they minimize any problems that might be caused by either spiking of deposited metal or undercutting during reactive sputter etching (RSE). However, if interaction of W with the substrate is to be prevented, a thicker layer of TiN may be used. To prevent spiking, the Al layer is typically less than 25 nm thick although the maximum thickness will be determined by device design and processing parameters. Uses other than plugs are contemplated. In particular, interconnects and gate structures are also contemplated.

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a schematic representation of a exemplary metallization according to this invention;

FIG. 2 is a schematic representation of a via filled with tungsten after the etching step has been completed; and

FIGS. 3 and 4 are schematic representations useful in explaining interconnects according to this invention.

For reasons of clarity, the elements of the devices depicted are not drawn to scale.

## DETAILED DESCRIPTION

Our invention will be described by reference to FIG. 1 which is a schematic representation of a tungsten metallization according to this invention. Depicted are silicon layer 1, dielectric region 3, glue layer 5 and tungsten metallization 7. As can be seen, the glue layer and metallization extend into a via 9. The glue layer covers the interior surface of the via as well as the underlying silicon layer 1. The glue layer also covers the dielectric region 3. It will be readily appreciated that the individual components of the integrated circuit are not depicted for reasons of clarity.

The vias are formed by conventional VLSI processing steps which deposit, pattern and etch the dielectric, etc. These steps are well known to those skilled in the art and need not be described in detail. The dielectric region depicted comprises $SiO_2$ although it will be appreciated by those skilled in the art that other dielectric materials may be used. For example, B and P doped $SiO_2$ and $Si_3N_4$ might be used. It will also be appreciated that although layer 1 is described as silicon, other conducting materials might be used. For example, conducting silicides might be used. Such silicides are formed on the silicon surface. Thus, while the glue layer is described as being deposited over a silicon surface, the presence of other materials between the glue layer and the silicon surface is contemplated.

The glue layer is expediently deposited by well known techniques such as sputtering. The glue layer comprises at least one material selected from the group

consisting of Al and conducting nitrides such as TiN. It will be appreciated that minor amounts of other materials may be present in the glue layer. For example, either or both Si and Cu may be present in Al. These materials are metallurgically stable with respect to the tungsten film. Good adhesion, as evidenced by an inability to remove the film by pulling on an attached adhesive tape, is obtained down to glue layer thicknesses of approximately 3 nm.

The native oxides on TiN and $Al_2O_3$ are thin. Although the successful use of Al might seem surprising in view of its strong susceptibility to oxide formation, it is believed that during the tungsten deposition most of the aluminum oxide present is removed although residues of non-conductive fluorides may remain. To prevent spiking, the Al layer should be less than approximately 25 nm thick. However, as will be readily appreciated by those skilled in the art, a precise maximum thickness cannot be given as it depends on several factors. These factors include the desired junction depth and the post Al deposition processing parameters. Given these factors, one skilled in the art can readily determine the maximum Al thickness.

The thinness of the glue layer is surprising but it must be noted, in retrospect, that pinholes in the glue layer need not be a significant problem. That is, the presence of some pinholes will not necessarily adversely affect the adhesive properties sought. It must also be remembered that, within the vias, pinholes are not significant as the electrical contact will still be formed if W goes through a pinhole at the bottom of the via provided that there is no chemical interaction with the substrate. For example, W interaction with, e.g., $TiS_2$, is not a problem. However, pinholes may be a problem for the W/Si interface although the interaction of W with a small amount of silicon can generally be tolerated. No adverse results occurs if the W touches the dielectric through a pinhole.

The growth of W films on the nitrides is surprising because it is hypothesized there are no displacement reactions which provide W nuclei for further film growth, i.e., the nitrides do not reduce $WF_6$. The Ti-N bonds are sufficiently strong so that the interaction of Ti with $WF_6$ is not energetically favored. The growth of W films on the nitrides is believed to occur by the reduction of $WF_6$ with $H_2$, solely. Upon exposure to $WF_6$ and $H_2$, H and F atoms react and nucleate W on the surface. After the resulting islands coalesce, the growth rate of films is similar to the rates on Si or Al coated surfaces. The disadvantage of using a displacement reaction is that fluorides are formed at the interface.

FIG. 2 depicts a via after etching. Conventional etching techniques can be used for the etching steps. It should be remembered that the tungsten layer is typically overetched to guarantee its complete removal from areas not covered with resist in case there are non-uniformities in layer thickness. The overetch not only removes the tungsten but removes the thin glue layer contacting layer 1 without the need for any additional etching chemistry.

The absence of significant amounts of O and F at the W/TiN interface makes TiN ideally suited for use as a glue layer with etch-back plugs and interconnects.

The use of a thin layer also minimizes undercutting problems. It is apparent that a relatively planar surface is obtained in preparation for further processing. It should be noted that at most only a very thin layer of Al contacts the Si. This eliminates or minimizes the

5,227,335

**5**

possibility of spiking which occurs with thicker A1 films.

Other uses for our deposition process are contemplated. For example, it may be used to form interconnects or gate structures. The strong adhesion provided by thin glue layers is useful for patterning W interconnects. FIG. 3 is useful in explaining interconnect fabrication. Numerals identical to those used in FIG. 1 represent identical elements. Also depicted is patterned resist 11. To form interconnects, the tungsten and glue layers depicted are etched and the resist removed to yield the structure shown in FIG. 4. An A1 layer under W interconnects should provide low resistance contacts. The use of A1 is particularly suited for upper levels in multilevel metallization schemes where junction spiking is not a consideration. Also, it is suitable for very thin A1 glue layer on Si contacts, as well as silicided junctions, where junction spiking may not occur.

What is claimed is:

1. A method of fabricating an integrated circuit comprising the steps of:

   patterning a dielectric layer to form holes which expose the underlying material, said exposed underlying material comprises an electrically conducting material;

   depositing a glue layer covering said dielectric and said exposed underlying material;

**6**

   depositing a tungsten layer by chemical vapor deposition, said tungsten layer covering said glue layer on said dielectric and said exposed material;

   CHARACTERIZED IN THAT said glue layer comprises at least one member selected from the group consisting of conducting nitrides.

2. A method as recited in claim 1 in which said material comprises said silicon surface.

3. A method as recited in claim 1 in which said material comprises a metallic silicide.

4. A method as recited in claim 1 further comprising etching said tungsten and said glue layer to form a planar surface of said dielectric and said tungsten in said hole, said tungsten being etched before said glue layer.

5. A method as recited in claim 4 in which said conducting nitride consists essentially of TiN.

6. A method as recited in claim 1 in which said dielectric comprises silicon dioxide.

7. A method as recited in claim 1 in which said W layer is deposited by low pressure chemical vapor deposition.

8. A method as recited in claim 7 in which said deposition uses $WF_6$ and $H_2$.

9. A method as recited in claim 8 in which said glue layer comprises a conducting nutride.

10. A method as recited in claim 8 in which said conducting nitride comprises TiN.

11. A method as recited in claim 1 further comprising the step of patterning said tungsten and said glue layer.

* * * * *

# EXHIBIT 9

1  MORGAN, LEWIS & BOCKIUS LLP
   MICHAEL E. MOLLAND, State Bar No. 111830
2  DANIEL JOHNSON, JR., State Bar No. 57409
   BRETT M. SCHUMAN, State Bar No. 189247
3  GREGG P. YATES, State Bar No. 224641
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   E-mail:  mmolland@morganlewis.com
6  E-mail:  djjohnson@morganlewis.com
   E-mail:  bschuman@morganlewis.com
7
   Attorneys for Plaintiff
8  NXP SEMICONDUCTORS USA, INC.

9
                     UNITED STATES DISTRICT COURT

10
                   NORTHERN DISTRICT OF CALIFORNIA

11
                          SAN JOSE DIVISION

12

13  NXP SEMICONDUCTORS USA, INC.,        Case No. C 08-00775 JW
    a Delaware corporation,
14                                        **PLAINTIFF NXP SEMICONDUCTORS
                      Plaintiff,          USA, INC.'S RESPONSE TO LSI'S
15                                        SECOND SET OF REQUESTS FOR
               vs.                        PRODUCTION**
16
    LSI CORPORATION d/b/a LSI LOGIC
17  CORPORATION, a Delaware corporation,
    and AGERE SYSTEMS, INC. a Delaware
18  corporation.

19                    Defendants.

20

21          Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules

22  for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc ("NXP") hereby

23  responds to Defendant LSI Corporation and Agere Systems Inc.'s ("LSI and Agere") Second Set

24  of Requests for Production (Nos. 22-34) as follows:

25                                **GENERAL OBJECTIONS:**

26          1.      As preliminary and general objections to LSI and Agere's Second Set of Requests

27  for Production, NXP objects to each request to the extent that it calls for information contained in

28  notes, memoranda, correspondence, or other documents prepared by NXP or its attorneys in

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW

                                              1

1    preparation for litigation in this matter.  All such documents are protected from disclosure by the

2    work-product doctrine and/or the attorney-client privilege or other applicable protections and

3    privileges.

4        2.    NXP objects to the Second Set of Requests for Production and to each definition,

5    instruction, and request for production therein to the extent that they purport to impose on NXP

6    obligations that differ from or exceed those required by the Federal Rules of Civil Procedure, the

7    Local Rules for the Northern District of California ("Local Rules"), or any order or ruling by the

8    Court in this action.  NXP shall not comply with any purported obligation not imposed by law.

9        3.    NXP objects to the Second Set of Requests for Production and to each request for

10    production therein to the extent that they seek disclosure of NXP's trade secrets, proprietary, or

11    other confidential or competitively sensitive information or personal information that is protected

12    by statutory, constitutional, common law or privacy rights.

13        4.    NXP objects to the Second Set of Requests for Production and each request for

14    production therein to the extent they call for trade secret, proprietary, or other confidential or

15    competitively sensitive information of third parties.  NXP will not provide any of this information

16    without consent of the third party.

17        5.    NXP further objects to LSI and Agere's Second Set of Requests for Production on

18    the grounds that they are not reasonably restricted to reflect the limited nature of discovery at this

19    phase of the litigation.  The first and current phase concerns the issue of whether the Patent

20    License Agreement entered into by predecessors-in-interest to the current parties, as extended and

21    modified, grants NXP a license to the '180, '335, '739, '672, '958, '500, '748, and '928 Patents.

22    *Joint Case Management Conference Statement and Proposed Order* at p.3.  Further, "LSI

23    request[ed] that the Court phase the litigation by allowing ample time for discovery on licensing-

24    related issues before deadlines for patent disclosures begin.  This will give NXP the opportunity

25    to file such a motion for summary judgment on the license defense to the extent, after taking

26    discovery, it believes such a motion is appropriate." *See id.* at 7.

27        6.    NXP objects to the Second Set of Requests for Production and to each request for

28    production therein to the extent they request documents concerning patent claims and claim terms

1  that have not yet been construed by the Court.  NXP reserves its right to modify or supplement its

2  responses as a result of any rulings by the Court bearing on claim construction, and/or discovery

3  bearing on claim construction.

4      7.    NXP objects to the Second Set of Requests for Production and to each request for

5  production therein to the extent they request information dependent upon documents or other

6  information in the possession, custody and control of LSI or Agere or third parties.  NXP reserves

7  its right to modify or supplement its responses in view of the discovery of information and review

8  of documents received from LSI or Agere or third parties.

9      8.    NXP objects to LSI and Agere's Second Set of Requests for Production on the

10  grounds that it has not completed its investigation in this case and has not completed its

11  discovery.  The documents produced are based only upon such information and documents as are

12  presently available to NXP.  Further discovery and investigation may reveal additional

13  information which may lead to additions to or variations from the immediate production, and

14  NXP reserves the right to modify or supplement its production accordingly.

15      9.    These general objections are part of NXP's response to each request for production

16  contained in LSI and Agere's Second Set of Requests for Production, and are hereby incorporated

17  into each of those responses.

19  ### RESPONSES TO REQUESTS FOR PRODUCTION

20  **REQUEST NO. 22:**

21      All projections, forecasts, market share reports, marketing acceptance documents,
22  business plans, strategic plans, fiscal plans, marketing plans, or sales plans referring or
    RELATING TO NXP products during the years 1985 through the present.

23  **RESPONSE TO REQUEST NO. 22:**

25      NXP incorporates by this reference its General Objections.  NXP further objects to this

26  request as overly broad and premature in that it requests information outside the scope of the

27  current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

28  and not reasonably calculated to lead to admissible evidence.  NXP further objects that LSI and

3

1    Agere have defined the phrase "referring or relating to" in an overly broad manner.  NXP further

2    objects that the phrase "marketing acceptance documents" is vague, ambiguous and unintelligible.

3    **REQUEST NO. 23:**

4        All product development DOCUMENTS, including but not limited to DOCUMENTS

5    RELATING TO the design, testing, research, development, upgrade, modification, or
improvement of NXP products during the years 1985 through the present, including

6    DOCUMENTS RELATING TO NXP products that have not yet been released.

7    **RESPONSE TO REQUEST NO. 23:**

8        NXP incorporates by this reference its General Objections.  NXP further objects to this

9    request as overly broad and premature in that it requests information outside the scope of the

10   current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

11   and not reasonably calculated to lead to admissible evidence.  NXP objects that the phrase

12   "product development documents" is vague and ambiguous and that LSI and Agere have defined

13   the phrase "relating to" in an overly broad manner.

14   **REQUEST NO. 24:**

15       All articles, speeches, presentations or interviews that have been written or given by NXP

16   or its employees, officers, directors or other representatives during the years 1985 through the
present that refer or RELATE TO NXP products or to LSI.

17   **RESPONSE TO REQUEST NO. 24:**

18

19       NXP incorporates by this reference its General Objections.  NXP further objects to this

20   request as overly broad and premature in that it requests information outside the scope of the

21   current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

22   and not reasonably calculated to lead to admissible evidence.  Further, NXP objects to this request

23   to the extent that LSI and Agere request documents in the public domain or within the possession,

24   custody, and control of LSI or Agere or third parties.  NXP objects that the phrases "written or

25   given by" and "other representatives" are vague and ambiguous.

26   **REQUEST NO. 25:**

27       All DOCUMENTS and things that were provided to any potential investor or entity that
considered investing in NXP that RELATE TO NXP products or to LSI and were provided during

28   the years 1985 through the present.

4

**RESPONSE TO REQUEST NO. 25:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. NXP further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to admissible evidence. NXP objects to this request to the extent that it seeks disclosure of NXP's and third party's trade secrets, proprietary, or other confidential or competitively sensitive information. NXP objects that the terms "potential investor or entity" and "considered investing" are vague and ambiguous and that LSI and Agere have defined the phrase "all documents and things" in an overly broad manner.

Subject to and without waiving its objections, NXP will produce non-privileged documents provided to Kohlberg Kravis Roberts & Co. (KKR), Bain Capital, Silver Lake Partners, Apax and AlpInvest Partners N.V., regarding the 1987 Patent License Agreement and/or LSI, if any.

**REQUEST NO. 26:**

DOCUMENTS sufficient to IDENTIFY and fully describe the corporate and internal organization, including all business divisions, sales divisions, manufacturing divisions, and the like, of N.V. Philips Gloeilampenfabrieken and U.S. Philips Corporation, and any related entities, parents, subsidiaries or divisions thereof, as of July 1, 1987.

**RESPONSE TO REQUEST NO. 26:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. NXP further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to admissible evidence. NXP objects that LSI and Agere have defined the term "internal organization" in an overly broad manner. NXP further objects that this information is publicly available and equally accessible to the parties.

**REQUEST NO. 27:**

DOCUMENTS sufficient to IDENTIFY and fully describe the current corporate and internal organization of NXP, including all business divisions, sales divisions, manufacturing divisions, and the like.

**RESPONSE TO REQUEST NO. 27:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. Furthermore, NXP objects that the term "fully describe" is vague and ambiguous and that LSI and Agere have defined the term "internal organization" in an overly broad manner.

Subject to and without waiving its objections, NXP will produce non-privileged documents reflecting NXP's corporate structure and business lines.

**REQUEST NO. 28:**

DOCUMENTS sufficient to IDENTIFY and fully describe the various employment positions within NXP's current organization and a description of the duties and responsibilities for each position listed.

**RESPONSE TO REQUEST NO. 28:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. NXP further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 29:**

All quarterly and annual reports produced by NXP from 1985 through the present.

**RESPONSE TO REQUEST NO. 29:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. Further, NXP objects to this request to the extent it seeks documents in the public domain or within the possession of LSI or Agere.

**REQUEST NO. 30:**

DOCUMENTS sufficient to IDENTIFY and fully describe all products sold or used by NXP since July 1, 1987 that have been manufactured by Taiwan Semiconductor Manufacturing Corp., and for each of those products DOCUMENTS sufficient to fully describe the entity that designed the circuits on the product.

6

1    **RESPONSE TO REQUEST NO. 30:**

2          NXP incorporates by this reference its General Objections.  NXP further objects to this

3    request as overly broad and premature in that it requests information outside the scope of the

4    current phase of litigation.  NXP objects further to the extent this request purports to ask NXP to

5    identify all products made for NXP by TSMC, including those products that LSI/Agere have not

6    and cannot accuse of infringement in this action.  NXP objects further to this request on grounds

7    that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery

8    of admissible evidence.

9          Subject to and without waiving its objections, NXP will produce non-privileged

10   documents, if any, sufficient to identify the products made for NXP by TSMC that have been

11   accused by LSI/Agere.

12   **REQUEST NO. 31:**

13         DOCUMENTS sufficient to IDENTIFY and fully describe the apportionment of liability

14   arising out of the divestment of NXP B.V. and its subsidiaries from Philips Electronics and its
     subsidiaries.

15   **RESPONSE TO REQUEST NO. 31:**

16

17         NXP incorporates by this reference its General Objections.  NXP further objects to this

18   request as overly broad and premature in that it requests information outside the scope of the

19   current phase of litigation.  Further, NXP objects to the forgoing request as requesting documents

20   protected by attorney/client privilege, the attorney work product doctrine, or other applicable

21   protections.  NXP also objects to this request on grounds that it is not reasonably calculated to

22   lead to the discovery of admissible evidence.  Furthermore, NXP objects that the term "arising out

23   of" is vague and ambiguous.

24   **REQUEST NO. 32:**

25         DOCUMENTS sufficient to IDENTIFY and fully describe any obligations Philips

26   Electronics and its subsidiaries and NXP B.V. and its subsidiaries owe to each other to assist in
     litigation, indemnify for third party claims, or provide DOCUMENTS and INFORMATION on

27   request.

28

**RESPONSE TO REQUEST NO. 32:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. NXP also objects that this request is vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Further, NXP objects to the forgoing request as requesting documents protected by attorney/client privilege, the attorney work product doctrine, or other applicable protections.

Subject to and without waiving its objections, NXP responds that, after a good faith effort to locate responsive documents, no responsive documents exist. NXP reserves the right to supplement or amend this response as appropriate.

**REQUEST NO. 33:**

For each NXP product that NXP contends is licensed under the 1987 Patent License, DOCUMENTS sufficient to IDENTIFY and fully describe all historical versions of the product, the designs of those historical versions, the dates of commercial introduction of those historical versions, and all uses of the historical versions.

**RESPONSE TO REQUEST NO. 33:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. NXP further objects to the forgoing request as requesting documents protected by attorney-client privilege, the attorney work product doctrine, or other applicable privilege. NXP further objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence.

Subject to and without waiving its objections, NXP responds that it will continue to meet and confer with LSI/Agere regarding a mutually acceptable agreement to proceed with discovery on the basis of representative parts.

**REQUEST NO. 34:**

All DOCUMENTS exchanged between NXP and any market research company RELATING TO NXP's products or the markets for NXP's products.

8

**RESPONSE TO REQUEST NO. 34:**

NXP incorporates by this reference its General Objections. NXP further objects to this request as overly broad and premature in that it requests information outside the scope of the current phase of litigation. NXP objects that the term "market research company" is vague, ambiguous and unintelligible. NXP further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to admissible evidence.

Dated: July 18, 2008                                    MORGAN, LEWIS & BOCKIUS LLP

By _____
Brett M. Schuman
Attorneys for Plaintiff

9