MICHAEL E. MOLLAND (State Bar No. 111830)
DANIEL JOHNSON, JR. (State Bar No. 57409)
BRETT M. SCHUMAN (State Bar No. 189247)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: mmolland@morganlewis.com
E-mail: djjohnson@morganlewis.com
E-mail: bschuman@morganlewis.com

Attorneys for Plaintiff and Counterclaim-Defendant
NXP SEMICONDUCTORS USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware corporation, and AGERE SYSTEMS, INC., a Delaware corporation<br><br>Defendants.<br><br>AGERE SYSTEMS, INC., a Delaware Corporation,<br><br>Counterclaimant<br>v.<br><br>NXP SEMICONDUCTORS USA, INC., a Delaware corporation<br><br>Counterclaim-Defendant. | Case No. C 08-00775 JW<br><br>**NXP'S OPPOSITION TO MOTION TO COMPEL**<br><br>Date: September 10, 2008<br>Time: 9:30 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Richard Seeborg |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 3

    A. The Parties Agreed, And The Court Ordered, That The First Phase Of This Case Focus Exclusively On NXP's License Defense .............................................. 3

    B. The Discovery Sought By Agere/LSI Is Not Directed To NXP's License Defense And Therefore Should Be Denied .............................................................. 3

        1. Category 1 Sales and Manufacturing Information Is Irrelevant To NXP's License Defense ............................................................................. 4

        2. Category 2 Information Is Likewise Irrelevant To NXP's License Defense ............................................................................................... 6

    C. LSI/Agere's Motion To Compel With Respect To Interrogatory No. 16 Is Misleading And Should Be Denied For Additional Reasons ................................. 7

    D. LSI/Agere Improperly Ignores NXP's Position During The Meet And Confer Process And Its Supplemental Interrogatory Responses ............................ 8

    E. LSI/Agere's Allegation That "NXP Refuses To Produce Any Information Necessary to Analyze Its 1987 PLA License Defense" Is Patently False ............. 10

III. CONCLUSION .................................................................................................................. 10

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/20808238.2

i

NXP'S OPPOSITION TO MOTION TO COMPEL
CASE NO. C 08-00775 JW

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Jewish War Veterans v. Gates*,
  506 F.Supp.2d 30 (D.D.C. 2007) .................................................................................... 4

*Sorosky v. Burroughs Corp.*,
  826 F.2d 794 (9th Cir. 1987) ........................................................................................... 4

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D.Cal. 1995) ..................................................................................... 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

NXP'S OPPOSITION TO MOTION TO COMPEL
CASE NO. C 08-00775 JW

## I. INTRODUCTION

The motion to compel filed by defendants LSI Corporation and Agere Systems, Inc. (together, "LSI/Agere") is an obvious tactical ploy by LSI/Agere to force plaintiff NXP Semiconductors USA, Inc. ("NXP") to expend substantial efforts gathering and producing reams of irrelevant information. For at least the following reasons, the motion should be denied in its entirety.

*First*, LSI/Agere is not candid with the Court regarding the purpose and effect of Judge Ware's June 5, 2008 Order dividing this litigation into two phases. During the first phase, the parties were directed by Judge Ware to focus their discovery on NXP's claim (really, it's a defense) that NXP is licensed to practice eight of the 13 LSI/Agere patents-in-suit under a Patent License Agreement dated July 1, 1987, as modified and extended by a November 1995 letter agreement, (the "PLA"). The first phase will culminate in a summary judgment motion, to be filed by NXP on December 15, 2008, regarding NXP's license defense. The second phase will focus on patent infringement and invalidity issues. LSI barely mentions this Order in its motion to compel. It also fails to mention the parties' confirmatory agreement, early in the meet and confer process, "that the phasing of the litigation and resulting schedule dictate that discovery be taken first on the licensing issue, without prejudice to the right of the parties to seek additional discovery during subsequent phases." *See* Wells Declaration, Docket #40, Ex. 6 (Docket #40-7), p. 2.

None of the discovery sought by LSI/Agere in its motion is reasonably calculated to lead to admissible evidence during the first phase of the litigation. Indeed, LSI/Agere repeatedly concedes that the discovery it is asking the Court to compel NXP to produce is being sought for other purposes:

- LSI/Agere tells the Court it needs the discovery to "identify which NXP products are actually generating significant revenue and will yield ***significant patent damages***," Motion, at 2:9-11;[1]
- LSI/Agere tells the Court "[t]he requested information will allow LSI to focus on a

---
[1] Emphasis in quotations is added unless otherwise indicated.

1        subset of NXP's '50,000+' products that are ***commercially relevant*** – those

2        products which: (a) generate substantial revenue for NXP; and (b) are not already

3        licensed under agreements with third parties," Motion, at 6:20-23; and

4    • LSI/Agere says it is seeking discovery regarding "NXP products that the parties

5        will focus on in the ***infringement phase of the case***." Motion, at 10:12-14.

6 These concessions, without more, dictate that LSI/Agere's motion be denied.

7    *Second*, LSI/Agere also is not candid with the Court regarding what transpired during the

8 meet and confer process. LSI/Agere fails to apprise the Court that NXP is only seeking a

9 declaration regarding whether the nine NXP products that LSI/Agere has accused of infringing its

10 patents are licensed under the PLA. NXP informed LSI/Agere of its position in a letter dated July

11 23, 2008, *see* Wells Declaration, Docket #40, Ex. 7 (Docket #40-8), p. 4, and in a supplemental

12 interrogatory response that LSI/Agere conspicuously fails to address at all in its motion to

13 compel. *See* Wells Declaration, Docket #40, Ex. 4 (Docket #40-5), pp. 6-8 (supplemental

14 response to interrogatory #2).

15    In the light of NXP's position, limiting the scope of the first phase of the case to the nine

16 products accused of infringement by LSI/Agere, LSI/Agere cannot carry its burden of

17 demonstrating why any of the discovery it is seeking regarding other products must be produced

18 during this phase of the litigation.

19    *Third*, LSI/Agere misleadingly suggests it is only asking for two "narrow categories" of

20 information. In fact, LSI/Agere is asking the Court to order NXP to provide essentially complete

21 discovery – all design, manufacture, marketing, sales and customer information – regarding all

22 products sold by NXP. Some requests seek information for all products sold during the past six

23 years; some requests (such as Interrogatory Nos. 12-17) seek much of this information for "every

24 semiconductor product sold by NXP since July 1, 1987." Motion, at 11:3-4 (quoting

25 Interrogatory #12). LSI/Agere's requests are anything but "narrow."

## II. ARGUMENT

### A. The Parties Agreed, And The Court Ordered, That The First Phase Of This Case Focus Exclusively On NXP's License Defense

By agreement of the parties and order of the Court, the first and current phase of this litigation focuses on the issue of whether the PLA grants NXP a license to the '180, '335, '739, '672, '958, '500, '748, and '928 patents. "LSI request[ed] that the Court phase the litigation by allowing ample time for discovery on licensing-related issues before deadlines for patent disclosures begin." Joint Case Management Conference Statement and Proposed Order, Docket #22, at 7:10-15. NXP essentially agreed that litigation of its license defense should proceed before litigation of other issues. *Id.*, at 7:3-9. In his June 5, 2008 Scheduling Order, Judge Ware adopted the parties' proposal and phased the litigation. *See* Docket #28.

The Scheduling Order itself is imprecise regarding the implications for discovery. However, the parties addressed the issue early in the meet and confer process and, on July 15, 2008, agreed that discovery during the first phase of the litigation would be limited to NXP's license defense. *See* Wells Declaration, Docket #40, Ex. 6 (Docket #40-7), p. 1. In a July 18, 2008 letter, LSI/Agere stated:

> The parties have agreed that in order to accommodate the Court's expedited schedule regarding NXP's licensing defense, the parties will focus in the immediate future on discovery necessary for the parties' respective anticipated motions for summary judgment relating to the 1987 PLA.

Declaration of Brett M. Schuman ("Schuman Declaration"), filed concurrently herewith, Ex. A.

### B. The Discovery Sought By Agere/LSI Is Not Directed To NXP's License Defense And Therefore Should Be Denied

As noted above, LSI/Agere is rather explicit about the fact that the discovery it is seeking is <u>not</u> focused on NXP's license defense. Instead, LSI/Agere is improperly trying to identify what it considers to be "commercially relevant" NXP products, *i.e.*, those products that, if later determined to be infringing of LSI/Agere's patents, would yield the most substantial patent damages for LSI/Agere. *See, e.g.*, Motion, at 2:9-11; 6:20-23.

In its motion, LSI/Agere divides its sought-after discovery into two categories: Category

1 seeks "Sales and Manufacturing Information" and Category 2 seeks "Identification of Products with Potentially Infringing Features." Motion, at 6:13; 10:5. Neither category of information is relevant to NXP's license defense.

### 1. Category 1 Sales and Manufacturing Information Is Irrelevant To NXP's License Defense

LSI/Agere misleadingly defines its Category 1 as seeking information only on NXP's "current products," *see* Motion, at 6:12-13, yet LSI/Agere's motion to compel actually seeks sales and manufacturing information for all NXP products sold "in the period beginning six years before the initiation of the litigation." Motion, at 6:13-15. LSI/Agere fails to explain how or why it needs that information to litigate NXP's license defense.

To be licensed under the PLA, NXP's products must be "of the kinds" that were furnished or used by Philips or any of the defined "related companies" in their businesses on July 1, 1987. In its motion to compel, LSI/Agere offers no interpretation of what this language means or doesn't mean. Instead, it merely asserts that "the process of comparison requires an understanding of, among other things, the function, use, and design of both current NXP products and historical Philips products." *See* Motion, at 3:7-9. Based solely on that conclusory assertion, LSI/Agere seeks voluminous discovery regarding, *inter alia*, the entities that manufacture products for NXP, customers who purchase those products, and the dates on which each product was first sold. LSI/Agere completely fails to establish that any of this information is reasonably calculated to lead to evidence admissible during the first phase of this case.[2]

Turning to LSI/Agere's specific requests:

LSI/Agere's Request for Production No. 5 seeks information regarding the location of

---

[2] LSI/Agere bears the burden of establishing its right to the sought-after discovery. *See, e.g., Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D.Cal. 1995) ("in general the party seeking to compel discovery bears the burden of showing that his request satisfies the relevance requirement of Rule 26"); *Jewish War Veterans v. Gates*, 506 F.Supp.2d 30, 42 (D.D.C. 2007)("The party moving to compel production of documents bears the initial burden of explaining how the requested information is relevant"); *see also Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (affirming denial of motion to compel: "Without a more specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence, we cannot say the district court abused its discretion in concluding that the burdens of the requests outweighed their potential benefits").

1  manufacture of all NXP products sold during the past six years, as well as the identity of the

2  manufacturing line used to make the product and the entity that manufactured the product. NXP

3  properly objected to this request on the ground it was not directed to information needed to

4  litigate NXP's license defense, among other grounds.[3] In its motion, LSI/Agere <u>concedes</u> this

5  information is not relevant to NXP's license defense. According to LSI/Agere, it needs this

6  information to determine which NXP products are "commercially relevant." Motion, at 6:13-24.

7  LSI/Agere also says "[t]he information on third-party manufacturing will assist LSI in

8  determining if a product is licensed under the patents in suit via an agreement with a third party."

9  Motion, at 6:18-20. That simply has nothing to do with the litigation or adjudication of NXP's

10  license defense.

11      LSI/Agere's Request for Production No. 7 seeks information regarding NXP's customers

12  during the past six years, including documents showing what products those customers purchased

13  and in what amounts. Request for Production No. 8 seeks additional information regarding

14  NXP's customers. How this is relevant to NXP's license defense, LSI/Agere does not say. Of

15  course, that is because elsewhere in its motion LSI/Agere concedes this information is being

16  sought purely for tactical reasons, *i.e.*, so LSI/Agere can identify "which NXP products are

17  actually generating significant revenue and will yield significant patent damages." Motion, at

18  2:9-11.

19      LSI/Agere's Request for Production No. 17 seeks documents that "fully describe" all

20  products sold or used by NXP during the six years prior to the initiation of this litigation,

21  including a description of the method of manufacture, intended use and function of every product.

22  LSI/Agere does not explain how any of this information relates to the determination of whether

23  NXP's products are "of the kinds" that were furnished or used by Philips or any of its related

24  companies as of July 1, 1987. Nor does LSI/Agere address how any of this information is

25  reasonably calculated to lead to admissible evidence when NXP has agreed to test its license

26  defense on the basis of the nine products that LSI/Agere accused of infringing its patents prior to

---

[3] NXP also objected to Request for Production No. 5 on the ground that the undefined term "manufacturing line" is vague and ambiguous. *See* Wells Declaration, Docket #40, Ex. 5 (Docket #40-6), p. 6:26-27. LSI/Agere improperly ignores NXP's objection in its motion to compel.

the initiation of this declaratory judgment action.

In sum, none of LSI/Agere's Category 1 information is relevant to the first phase of this litigation. NXP should not be ordered to produce any of this information.

### 2. Category 2 Information Is Likewise Irrelevant To NXP's License Defense

LSI/Agere's Interrogatory Nos. 12-17 seek information regarding potentially infringing features of every NXP product sold since July 1, 1987. LSI/Agere purports to justify its motion with respect to these requests by claiming "[i]t is this subgroup of NXP products that the parties will focus on <u>in the infringement phase</u> of the case . . . and so [according to LSI/Agere] it makes sense to deal with this same subgroup in the license phase of the case." Motion, at 10:12-15. LSI/Agere further claims "this information will assist in limiting the scope of the license dispute by allowing the parties to also focus on subset [sic] of NXP's '50,000+' products which are <u>candidates for claims of infringement</u>." Motion, at 10:8-10. Once again, LSI/Agere admits its sought-after discovery is not needed to litigate NXP's license defense.

Further, the phasing of the litigation was intended to avoid precisely the sort of facially burdensome and potentially unnecessary discovery requested by LSI/Agere's Interrogatory Nos. 12-17. For example, Interrogatory No. 12 – the request held up by LSI/Agere in its motion as illustrative of this series of requests, *see* Motion, at 10:10-15 – asks NXP to identify by product number and product description <u>all NXP products since July 1, 1987</u> having a tungsten plug and to produce "documents sufficient to fully describe all steps in the manufacture of tungsten plugs in the product, as well as the location of manufacture of the product, and the identity of the manufacturer." Motion, at 11:3-9 (quoting Interrogatory No. 12). If the Court agrees with NXP that its products are licensed under the PLA because they are products "of the kinds" furnished or used by Philips or the related companies as of July 1, 1987, there would be no need for NXP to compile and produce (or for LSI/Agere to receive and analyze) any of the information requested by Interrogatory No. 12.

Finally, LSI/Agere fails to establish that the pertinent license language – "products and services of the kinds" – requires any assessment of whether the accused products contain any of

the allegedly infringing features that are the subject of Interrogatory Nos. 12-17.  Indeed, LSI/Agere impliedly concedes that the PLA does <u>not</u> require such an assessment by attempting to justify these requests in its motion solely by reference to "the infringement phase of the case." *See* Motion, at 10:13-14.  That is consistent with LSI/Agere's earlier, express concession that "this license grant focuses on whether the products or services themselves are 'of the kinds' used by Philips in 1987, and not the processes used to make those products or services." *See* Wells Declaration, Docket #40, Ex. 7 (Docket #40-8), p. 4.

### C. LSI/Agere's Motion To Compel With Respect To Interrogatory No. 16 Is Misleading And Should Be Denied For Additional Reasons

In its motion, LSI misrepresents that "<u>NXP formally committed in June 2008 to providing the requested information</u>" in response to Interrogatory No. 16.  *See* Motion, at 10:15-19 (emphasis in original).

Interrogatory No. 16 seeks information regarding all NXP products sold since June 1, 1999 that contains phase locked loops with certain features.  *See* Motion, at 17:3-12 (quoting Interrogatory No. 16).  NXP has sought declaratory judgment of noninfringement and invalidity regarding two Agere patents concerning phase locked loops.  *See* Wells Declaration, Docket #40, Ex. 1(Docket #40-2), at pp. 10-11 (nineteenth through twenty-second claims for relief). However, NXP does not contend it is licensed to either of those patents under the PLA.  Based on that concession, the parties <u>agreed</u> that "the subject matter of Interrogatory No. 16 is **not relevant** to this stage of the litigation." *See* Wells Declaration, Docket #40, Ex. 6 (Docket #40-7), at p. 3; *see also* Wells Declaration, Ex. 7, at p. 5 (further meet and confer correspondence regarding Interrogatory No. 16); Motion, at 18:9-19:3 (NXP's supplemental response to Interrogatory No. 16, conceding that NXP is not licensed to either of the patents concerning phase locked loops).

In the light of this record, it is surprising – and therefore revealing – that LSI/Agere would seek to compel NXP to respond to this Interrogatory.  LSI/Agere's motion to compel with respect to Interrogatory No. 16 clearly shows that LSI/Agere is not seeking information it needs to litigate NXP's license defense, but rather is pursuing the sought-after discovery for other, improper reasons, *i.e.*, to identify NXP products that might potentially yield substantial patent

infringement damages for LSI/Agere if and when the parties turn to litigating patent infringement issues.[4]

### D. LSI/Agere Improperly Ignores NXP's Position During The Meet And Confer Process And Its Supplemental Interrogatory Responses

In its motion, LSI/Agere repeatedly claims that NXP is seeking a declaration that "any use by NXP of the methods or technology claimed in patents that were filed by AT&T or its related companies . . . is licensed . . . ." *See, e.g.*, Motion, at 1:13-15; 2:27-3:2. LSI/Agere also asks the Court to adopt a version of a proposal LSI/Agere made during the meet and confer process for proceeding with discovery on the basis of representative parts. *See* Motion, at 6-8.

However, nowhere in its motion does LSI/Agere apprise the Court of <u>NXP's</u> meet and confer proposal, or, more importantly, of NXP's decision to tailor its request for declaratory relief to the nine products accused by LSI/Agere of infringement prior to the commencement of this litigation.

During a meet and confer conference that occurred on July 15, 2008, the parties "discussed whether NXP's complaint – particularly, the First Claim for Relief – seeks a declaration that <u>all</u> of NXP's products are licensed or whether the claim is limited to those products accused by LSI/Agere during pre-litigation discussions." NXP informed LSI/Agere during that conference that "NXP has over 50,000 products and [] NXP does not intend to identify, on a product-by-product basis, which product is licensed and which may not be." Wells Declaration, Docket #40, Ex. 7 (Docket #40-8), p. 4.

NXP thereafter clarified that it would litigate its license defense on the basis of the nine NXP products accused by LSI/Agere of infringing its patents prior to the commencement of the litigation. *Id.* NXP then supplemented its response to LSI/Agere's Interrogatory No. 2 (asking for NXP to identify "every NXP product that NXP contends is licensed") to reflect this position.

---

[4] LSI/Agere does not need the sought-after discovery for this purpose, either. LSI/Agere obviously identified certain allegedly infringing NXP products pre-litigation without access to discovery from NXP. Plaintiffs in patent infringement cases typically identify potentially infringing products through reverse-engineering, market analyses, and by using other available information. LSI/Agere obviously is trying to use the discovery process in the pending litigation to avoid the normal pre-assertion process.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20808238.2      8      NXP'S OPPOSITION TO MOTION TO COMPEL
CASE NO. C 08-00775 JW

*See* Wells Declaration, Docket #40, Ex. 4 (Docket #40-5), at 7:23-9-21 (specifically identifying the products).

As the party seeking the declaratory relief, it is NXP's prerogative to submit the license issue for resolution on the basis of these accused products. NXP anticipates that the Court's resolution of the license issue with respect to these nine products will have broader implications because resolution necessarily will require the Court to inform the parties regarding how the critical "of the kinds" language in the PLA should be interpreted. NXP may be right, or it may be wrong, but as the plaintiff it is entitled to so delimit its claim for declaratory relief.

Although LSI/Agere should be precluded from doing so for the first time in its reply brief, NXP expects LSI/Agere to argue that somehow NXP's approach violates a pre-litigation Non-Disclosure Agreement ("NDA") between NXP and Agere. *See* Schuman Declaration, Ex. B, at p. 1. If LSI/Agere takes this position, it would be wrong. The NDA is narrowly drawn and only protects certain defined types of proprietary "information" that may have been exchanged by the parties prior to the commencement of the litigation from being used in certain specific ways. *See* Schuman Declaration, Ex. C, ¶1 (defining "information"); ¶3 (restricting how "information" can be used). The fact that LSI/Agere accused certain NXP products of infringing its patents is not protected "information" under the NDA. Further, the NDA expressly says that it "does not constitute a waiver of [] either party's respective rights, claims, and/or defenses that may be asserted in any present or future litigation relating to the subject matter thereof." *See id.*, ¶16. That provision expressly authorizes NXP to seek declaratory judgment of noninfringement, including based on its license defense, with respect to the products accused by LSI/Agere prior to the commencement of the litigation.

Lastly, LSI/Agere is in no position to complain about NXP's decision to test its license defense based on the NXP products that <u>LSI/Agere selected</u> and chose to accuse of infringement in the face of the PLA.

### E. LSI/Agere's Allegation That "NXP Refuses To Produce <u>Any</u> Information Necessary to Analyze Its 1987 PLA License Defense"[5] Is Patently False

As of the date LSI/Agere filed its motion to compel, NXP had produced approximately 8,000 pages of documents in response to LSI/Agere's discovery requests. Much of that information related to the products sold or used by Philips as of July 1, 1987. *See* Schuman Declaration, ¶5. NXP made a further production of over 15,500 additional pages on August 15, 2008, after LSI filed this motion. *Id.*, ¶6.[6] Further, NXP has informed LSI/Agere that "product data sheets for all of NXP's products are publicly available." *See* Wells Declaration, Docket #40, Ex. 6 (Docket #40-7), p. 4.

LSI/Agere fails to establish that it needs any additional information to perform the comparison it claims is required to litigate NXP's license defense. LSI/Agere fails to establish, for example, how the *date* on which the product was *first sold*, the *date* the product was *designed*, the *date* on which each *manufacturing line* used to manufacture the product was *designed*, or the *date* on which each *manufacturing line* used to make the product was *first used*, is relevant to the litigation of NXP's license defense. *See* Motion, at 5:3-10 (purportedly seeking to compel a further response to LSI/Agere's Interrogatory No. 3).[7] The PLA grants a license for "products and services of the kinds" furnished or used by Philips or its related companies on July 1, 1987. The *date* the accused NXP product was first sold, the date it was designed, etc., is irrelevant.

### III. CONCLUSION

The parties have little time left before dispositive motion practice on NXP's license defense. They agreed to focus their discovery efforts during this phase of the case on that issue. Now, LSI/Agere seeks to compel NXP to produce discovery which, according to LSI/Agere itself, is <u>not</u> for purposes of litigating NXP's license defense – it is instead designed to help identify "commercially relevant" products that may <u>never</u> be the subject of patent infringement

---

[5] *See* Motion, at 2:25-26.
[6] LSI/Agere agreed to and anticipated that NXP's production would be a "rolling production." *See* Schuman Declaration, Ex. F.
[7] NXP also objected to Interrogatory No. 3 on the ground that the undefined term "manufacturing line" is vague and ambiguous. *See* Wells Declaration, Docket #40, Ex. 4 (Docket #40-5), p. 10, lns. 18-19. LSI/Agere improperly ignores NXP's objection in its motion to compel.

1  litigation if the Court sides with NXP regarding the license issue.

2      LSI/Agere's suggestion that it only seeks "narrow categories" of information is absurd.

3  On the face of the requests themselves – some of which seek product information covering a span

4  exceeding 20 years – the burden of production on NXP would be tremendous.

5      For the foregoing reasons, LSI/Agere's motion should be denied.

7  Dated: August 20, 2008                              MORGAN, LEWIS & BOCKIUS LLP

9                                            By   /s/ Brett M. Schuman
                                                Brett M. Schuman
                                                Attorneys for Plaintiff
                                                NXP SEMICONDUCTORS USA, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20808238.2                    11                    NXP'S OPPOSITION TO MOTION TO COMPEL
                                                CASE NO. C 08-00775 JW