IRELL & MANELLA LLP
Jonathan H. Steinberg (98044)
Samuel K. Lu (171969)
Jason G. Sheasby (205455)
C. Maclain Wells (221609)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199
E-mail: jsteinberg@irell.com
E-mail: slu@irell.com
E-mail: jsheasby@irell.com
E-mail: mwells@irell.com

Attorneys for Defendant LSI CORPORATION and
Defendant and Counterclaimant AGERE SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware Corporation and AGERE SYSTEMS, INC., a Delaware corporation, <br><br> Defendants. <br><br> AGERE SYSTEMS, INC., a Delaware corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> NXP SEMICONDUCTORS USA, INC., a Delaware corporation, and <br><br> Counterclaim-Defendant. | CASE NO. CV-08-00775 (JW & RS) <br><br> **LSI CORPORATION'S REPLY IN SUPPORT OF MOTION TO COMPEL NXP PRODUCT INFORMATION** <br><br> Date:   September 10, 2008 <br> Time:   9:30 a.m. <br> Courtroom: 4, 5th Floor <br> Judge:   Hon. Richard Seeborg |

LSI'S REPLY ISO MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)

1899178

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. NXP's First Claim for Relief Seeks a Declaration on All of Its Products ....................................................................................................................2

    B. Thousands of Products will be at Issue in this Litigation, Not Nine .......................3

    C. NXP has Consistently Demanded that LSI Select Specific Products before Providing License Defense Discovery ........................................................3

        1. Category 1 and 2 Information Is the Most Efficient Way of Identifying Relevant Products ...................................................................4

        2. NXP's "Representative" Products are Representative of Nothing ...........................................................................................................5

    D. NXP's Position that Its First Claim for Relief is Now Limited to Only Nine Products has Preclusive Consequences ..................................................6

    E. LSI has the Right to Seek Discovery Necessary to Present Its Position on Summary Judgment ..............................................................................8

III. CONCLUSION ......................................................................................................................9

**TABLE OF AUTHORITIES**

Page

**Cases**

*Adams v. California Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) .................................................................................. 6

*Headwaters Inc. v. U.S. Forest Serv.*,
    399 F.3d 1047 (9th Cir. 2005) ................................................................................ 7

*Oppenheimer Fund, Inc v Sanders*,
    437 U.S. 340 (1978) ............................................................................................... 8

*Robertson v. Isomedix, Inc.*,
    28 F.3d 965 (9th Cir. 1994) .................................................................................... 7

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007) .................................................................. 6

## I. INTRODUCTION

NXP's discovery conduct has one goal in mind—to prevent LSI from collecting the information necessary to prepare a summary judgment motion relating to NXP's claim that all of its products are licensed under the 1987 PLA. The Court-set deadline for such motions is December 15, 2008.

*First*, NXP claims that the current phase of the case "will culminate in a summary judgment motion, to be filed by NXP . . . ." [Opposition at 1.] NXP fails to disclose to the Court that both parties have the right to file summary judgment motions on NXP's 1987 PLA license defense. In order for LSI to file a motion for summary judgment that NXP's current products are unlicensed, it must first obtain information regarding those products. This information is necessary because the 1987 PLA only grants a license to products that are "of the kind" sold by Philips in July 1987. NXP refuses to provide this information, claiming that it has simply too many products. In an attempt to address NXP's objections, LSI seeks two categories of information necessary to identify those NXP products that are commercially relevant and likely to be accused of infringement. Common sense suggests that these are the most important products to consider during this phase of the case. LSI does not seek premature damages and infringement discovery. LSI seeks information that will allow the parties to focus their license defense analysis on NXP's commercially relevant products.

*Second*, NXP maintains that its license defense claim only applies to nine products. The plain language of NXP's complaint seeks a declaration that all of its products are licensed under the 1987 PLA: "NXP seeks a declaration that <u>any use</u> by it of the methods or technology claimed in patents that were filed by AT&T or its related companies during the extended period is licensed and therefore noninfringing." [Ex. 1, ¶¶ 16-18 (emphasis added).][1] If NXP chooses to only present evidence on nine products, it will fail to meet its evidentiary burden as to all of its other products, and should therefore be precluded from ever presenting the 1987 PLA as a defense for any of its other products. Moreover, NXP provides no evidence that the nine products it seeks to

---

[1] Unless otherwise indicated, exhibits were attached to the Declaration of C. Maclain Wells in support of LSI's Motion to Compel NXP Product Information.

1  limit the license defense phase of the case to are representative of its entire product line, allowing
2  them to serve as appropriate exemplars.

3  *Third,* NXP's claim that the discovery LSI seeks is burdensome is nothing but unsupported
4  attorney argument.  NXP provides no explanation for why the discovery is burdensome.  For
5  example, it has not suggested that sales records are inaccessible, or that NXP does not keep
6  records of which third parties manufacture or buy its products.

7  NXP claims that it cannot provide technical information on its "50,000+ . . . products"
8  because this would be too burdensome.  LSI assumed that NXP would welcome an attempt to
9  apply common sense to this problem:  the parties need to focus on those NXP products that are
10 commercially relevant.  Why fight about whether a product that has $100 in sales a year is
11 licensed or not?  Why fight about whether a product that does not have any potentially-infringing
12 features is licensed?  The parties should focus their license defense analysis on those products that
13 are generating meaningful revenue and likely to be accused of infringement.  Of course, common
14 sense is exactly what NXP wants to avoid.  If it had to face a summary judgment motion that its
15 commercially relevant products were unlicensed, it would be put at significant risk.

16 **II.    ARGUMENT**

17 **A.    NXP's First Claim for Relief Seeks a Declaration on All of Its Products**

18 NXP's Opposition represents that NXP only seeks a declaration that nine products are
19 licensed under the 1987 PLA.  [Opposition at 2.]  This is not so.  The plain language of NXP's
20 Complaint seeks a declaration that NXP can use any of a specified group of patents in <u>any</u> product
21 that it makes.

22 The First Claim for Relief in NXP's Complaint states that "NXP seeks a declaration that
23 <u>any use</u> by [NXP] of the methods or technology claimed in patents that were filed by AT&T or its
24 related companies during the extended period is licensed and therefore noninfringing" as a result
25 of NXP's rights under the 1987 PLA.  [Ex. 1, ¶¶ 16-18 (emphasis added).]  NXP contends that the
26 "extended period" means all patents filed before December 31, 1996, likely encompassing
27 hundreds if not thousands of patents (the "AT&T Patents").  [*Id.,* ¶ 10.]

28

The 1987 PLA grants a patent license of only limited scope. NXP concedes that any current NXP "products must be 'of the kinds' that were furnished or used by Philips…in [its] business[] on July 1, 1987" in order to receive a license under the 1987 PLA. [Opposition at 4.] To seek a declaration that "any use" by NXP of the AT&T Patents is licensed is by necessity a declaration that every product NXP makes is licensed—*i.e.* every NXP product is "of the kinds" which were sold by Philips in July 1987.

### B. Thousands of Products Will Be at Issue in this Litigation, Not Nine

Fighting about what NXP's First Claim for Relief encompasses is ultimately not productive. The reality is that in the patent infringement phase of this case thousands of NXP products will be at issue. This is because the patents in suit fall into two general categories: (1) methods of manufacture; and (2) circuitry designs. NXP makes large numbers of products on a given manufacturing line, and incorporates a given circuit design into many different products. Failing to consider all such products ensures that the planned license defense summary judgment motions will be dispositive of no issues.

### C. NXP Has Consistently Demanded That LSI Select Specific Products before Providing License Defense Discovery

LSI believes that in order to determine whether a given NXP product is "of the kind" that was sold by Philips in July 1987, an analysis needs to be performed comparing the current NXP product to historical Philips products. LSI provided a detailed description of the information necessary for this analysis in its supplemental response to NXP Interrogatory No. 1. [Declaration of C. Maclain Wells in support of Reply in support of Motion to Compel NXP Product Information ("Wells Reply Decl."), Ex. A (Rog. 1).] LSI also served a series of discovery requests in order to collect this information. [*E.g.,* Ex. 4 (Rog. 3); Ex. 5 (Requests 5, 17).]

NXP has refused to provide the discovery necessary to perform the required comparison until LSI narrows its request to only a selected group of NXP products. For example, Request No. 33 seeks the design history of products NXP contends are licensed under the 1987 PLA. NXP responded that it will not produce such information until the parties reach "a mutually acceptable agreement to proceed with discovery on the basis of representative parts." [Ex. 9 (Request 33).]

1  Other requests seeking information about the design, function, and use of NXP current products
2  were met with a similar objection requiring LSI to select specific products before production.
3  [Ex. 4 (Rog. 3 (NXP objection that Interrogatory "would require NXP to analyze hundreds of
4  products before LSI has narrowed the scope to a reasonable number . . . "); Ex. 5 (Request 5 (same
5  NXP objection)).]

6  The purpose of LSI's instant motion is to collect the information that is necessary to
7  determine whether it is possible to select representative products and, if not, to at least focus the
8  litigation on those NXP products that are commercially relevant.

### 1. Category 1 and 2 Information Is the Most Efficient Way of Identifying Relevant Products

11  <u>Category 1 Information</u>:  LSI asks that NXP provide information on the revenue from its
12  products, and information on what third parties manufacture and purchase NXP products. This
13  information would allow the parties to focus the license defense phase of the case on only
14  commercially-relevant products. In particular, those products that generate meaningful revenue,
15  and which are not licensed to the patents in suit as a result of a license to the third-party
16  manufacturer or customer. LSI requests six-years worth of information because this is the limit of
17  damages under the Patent Act.

18  <u>Category 2 Information</u>:  LSI asks that NXP provide information by which LSI can
19  identify those products which are likely to be accused of infringement in the second phase of the
20  case. If a product is likely to be accused of infringement, it makes sense to perform an analysis of
21  whether it comes within the 1987 PLA. Indeed, NXP has repeatedly maintained in its discovery
22  responses that it would not provide the information necessary to determine whether a product is
23  licensed unless LSI "intend[s] to accuse [it] of infringement."  [*E.g.,* Ex. 4 (Rogs. 2-3); Ex. 5
24  (Request 5).] And yet now, NXP refuses to provide LSI with the information necessary to identify
25  the relevant products.

26  NXP's Opposition complains that Category 2 information is overbroad because it applies
27  to product sold since July 1, 1987. This is incorrect. LSI made clear in its motion that it only
28

seeks Category 2 information as to current NXP products, that is to say, products sold within the last six years. [Motion at 10.]

NXP's Opposition devotes an entire subsection to a discussion of Interrogatory No. 16, which asks NXP to identify products that have phase locked loops. The reality is that after the Court adopted the current phased schedule, NXP filed a response to Interrogatory No. 16 expressly agreeing to provide the requested information. [Ex. 4 (Rog. 16).] The response stated: "NXP will require additional time . . . to answer fully and completely this interrogatory. It will update this answer at the soonest possible opportunity." [*Id.*] NXP is unable to explain why it now refuses to comply with its formal commitment to provide the requested information.

Products with phase locked loops will figure prominently in the case. NXP's phase locked loop products contain other components that potentially fall within the scope of the eight patents that NXP is asserting fall within the "extended capture period" of the 198 PLA. If the components of NXP's phase locked products are licensed to those eight patents, it may make such products potentially inappropriate for use as representative products.

NXP also argues that LSI is seeking discovery on damages and infringement prematurely. [Opposition at 5.] LSI is doing nothing of the sort. NXP has refused to produce information necessary to determine whether the 1987 PLA covers a given product because it allegedly has too many products. Category 1 and 2 information will allow the parties to focus the license defense phase of the case on relevant products.

### 2. NXP's "Representative" Products Are Representative of Nothing

NXP has unilaterally decided that it will only provide discovery on nine of its products out of what it claims are "50,000+ licensed products." [Wells Decl. ¶ 4.] In correspondence, NXP has identified these as "representative" products. [Ex. 6 at 2; Ex. 7 at 5.][2] But NXP provides no explanation as to why these nine products can appropriately serve as representative products.

Moreover, even as to the nine products NXP is apparently willing to proceed with, it has refused to comply with LSI's discovery requests. For example, Interrogatory No. 3 asks for certain information regarding the design history on the products that NXP contends the 1987 PLA

---

[2] In its July 23, 2008 letter, NXP referred to ten, not nine, "representative" products.

covers. NXP refuses to provide an answer. NXP's conduct, in which it refuses to provide requested information even as to the products that it unilaterally decided should serve as "representative products" suggests its true goal: to prevent LSI from making a summary judgment motion on the schedule set by the Court.

NXP claims that LSI identified these nine products in pre-litigation settlement communications between LSI and NXP. Such communications are subject to a Non-Disclosure Agreement and NXP's reliance on such communications to support its position is a breach of that agreement. LSI reserves all rights in this regard.

### D. NXP's Position That Its First Claim for Relief Is Now Limited to Only Nine Products Has Preclusive Consequences

In an attempt to support its unsupportable position regarding the proper scope of discovery, NXP states that "LSI/Agere fails to apprise the Court that NXP <u>is only seeking a declaration regarding whether the nine NXP products</u> . . . are licensed under the PLA." [Opposition at 2 (emphasis added).] NXP's Complaint seeks a declaration that all of its current products are licensed under the 1987 PLA. If it intends to now only allow discovery and present evidence as to nine products, it will have failed to meet its evidentiary burden as to all of its other products which are at issue in its First Claim for Relief.

NXP will presumably argue that it can limit its claim to only nine products in this litigation, while preserving its right to assert that the 1987 PLA protects other products in a subsequent litigation. The doctrine of claim splitting prohibits this sharp practice. "The doctrine of claim splitting bars a party from subsequent litigation where the 'same controversy' exists." *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007) (internal citation omitted). In other words, if the two claims would be part of the "same controversy," they must be brought together. "To determine if the doctrine of claim splitting applies to bar a subsequent case, the Ninth Circuit 'borrow[s] from the test for claim preclusion.'" *Id.* (citing *Adams v. California Dep't of Health Servs.,* 487 F.3d 684 (9th Cir. 2007)). "[C]laim preclusion, prevents relitigation of the same cause of action between the same parties . . . ." *Id.* (citing *Headwaters Inc. v. U.S. Forest Serv*., 399 F.3d 1047, 1051-52 (9th Cir. 2005)). The factors

1  for considering whether successive suits involve the same cause of action include whether "the
2  two suits arise out of the same transactional nucleus of facts." *Robertson v. Isomedix, Inc.,* 28
3  F.3d 965, 970 (9th Cir. 1994). NXP's claim that nine of its products are licensed under the 1987
4  PLA and any subsequent claim that other NXP products are licensed under the 1987 PLA arise
5  from the same transactional nucleus of facts—the negotiations regarding the 1987 PLA, the 1987
6  PLA, statements between NXP and LSI regarding the scope of the 1987 PLA that led to this
7  litigation, and the state of Philips products in 1987.

8  Perhaps recognizing the serious consequences of attempting to establish that only nine of
9  its products are licensed, NXP softens its position at points in its Opposition. NXP mentions in
10 passing that it intends to "<u>test its licensing defense</u> on the basis of the nine products." [Opposition
11 at 5 (emphasis added), *see also* Opposition at 9 ("NXP's decision to test its license defense based
12 on . . . .").] There are two problems with NXP's "back up" argument:

13 First, NXP may wish to limit the scope of its own motion to nine products, but has no right
14 to limit the scope of any potential LSI motion. NXP's opposition represents that only NXP can
15 file a motion for summary judgment: "[t]he first phase will culminate in a summary judgment
16 motion, to be filed by NXP on December 15, 2008, regarding NXP's license defense."
17 [Opposition at 1.] This is incorrect. The Court's scheduling order explicitly contemplates that
18 both NXP and LSI can bring motions for summary judgment: "[a]t the conference, <u>the parties
19 represented that they wish to file summary judgment motion</u>s (re: the patent license at issue in this
20 case) . . . ." [Wells Reply Decl., Ex. B (6/5/08 Order at 1 (emphasis added)).]

21 Second, the Court and the Parties agreed to phase this litigation in an effort to decrease the
22 number of issues before the Court, not to provide NXP with advisory opinions "testing" the
23 validity of its licensing defense. In the Joint Case Management Statement, NXP stated:

24 > NXP proposes that the Court phase this litigation, and that the parties litigate
25 > through <u>dispositive motion practice NXP's declaratory judgment claim regarding
   > the effect of the Patent License Agreement</u> before issues relating to the
26 > noninfringement or invalidity of the patents-in-suit. <u>Eight of thirteen patents
   > currently being disputed are potentially subject to a complete defense under the
27 > 1987 license agreement that is the subject of NXP's First Claim for Relief in this
   > case. By litigating the effect of the Patent License Agreement first, the Court could
28 > significantly clarify the scope of this dispute.</u> [Wells Reply Decl., Ex. C at 7
   > (emphasis added).]

LSI'S REPLY ISO MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)
- 7 -

The Court relied on NXP's representations that its motion would present "a complete defense under the 1987 license agreement" to eight of the thirteen LSI patents. [*Id.*] Even if NXP prevails on the motion that it now proposes, there would still be potentially 49,991+ NXP products and all of the patents in suit at issue.

### E. LSI has the Right to Seek Discovery Necessary to Present Its Position on Summary Judgment

NXP's discovery conduct has one goal—to prevent LSI from collecting the information necessary to move for summary judgment that NXP's current products are unlicensed. The Parties agree that "[t]o be licensed under the PLA, NXP's products must [at least] be 'of the kinds' that were furnished or used by Philips…on July 1, 1987." [*See* Opposition at 4.] LSI believes that in order to determine whether a current NXP product is "of the kind" sold by Philips on July 1, 1987 a comparison of the function, use, and design of NXP's current products and historical Philips products is necessary. LSI provided a detailed description of its interpretation of "of the kind . . ." in its contention interrogatory response. [Wells Reply Decl., Ex. A (Rog. 1).]

NXP's position regarding discovery on these matters amounts to the following: (1) NXP disagrees with LSI's position that an analysis of the function, use and design of current NXP products and historical Philips products must occur; and (2) because NXP thinks LSI is mistaken, NXP will not provide LSI with any discovery that would be relevant to LSI's interpretation of the 1987 PLA. This is not how discovery works. Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc v Sanders,* 437 U.S. 340, 350 (1978) (internal citation omitted). The fact that NXP disagrees with LSI's interpretation of the 1987 PLA does not excuse it from complying with Federal Rule of Civil Procedure 26.

NXP also asserts that because NXP product datasheets are publicly available on the Internet, its discovery obligations are satisfied. [Opposition at 10.] NXP presents no evidence that such datasheets are available for all of its current products, let alone all products offered in the last six years. Moreover, these datasheets simply do not provide sufficient information regarding,

among other things, the history of the design and development of NXP products, necessary to perform the analysis of whether the products are licensed under the 1987 PLA. And finally, looking through 50,000 datasheets does LSI no good. LSI currently intends to focus its motion for summary judgment on commercially relevant products.

NXP claims that seeking information on the design history of its products (*e.g.*, date the product was designed, date the manufacturing line used to make the product was designed) is irrelevant. [Opposition, at 10.] NXP is mistaken. For example, if a product was not designed until after July 1, 1987, or if the manufacturing line to make the product did not exist until after this date, such facts would provide evidence that the product is not "of the kind" sold by Philips as of July 1, 1987. How could a product design that did not exist and could not be manufactured in July 1987 be "of the kind" of products sold in July 1987?

NXP also reports that that it has produced 23,500 pages of documents to date. Of course, it does not claim that this production contains the information sought by this motion.

Finally, NXP claims that the term "manufacturing line" is vague and ambiguous. It is nothing of the sort. NXP has a series of factories around the world that make microprocessors. A series of steps involving a set of machines are necessary to make a given microprocessor. It is this collection of steps and machines that constitute a "manufacturing line."

## III.   CONCLUSION

In order to allow LSI to prepare for impending motions for summary judgment, LSI respectfully requests that the Court order the following schedule:

- Within five business days of the Court's order, NXP must produce the Category 1 and Category 2 information as to NXP current products.

- Within ten business days of LSI identifying a current NXP product or product family, NXP must provide the information on its function, use, manufacture, and design history specified in Requests for Production 5 and 17 and Interrogatory 3.

DATED: August 27, 2008

Respectfully Submitted,
IRELL & MANELLA LLP
Jonathan H. Steinberg
Samuel K. Lu
Jason G. Sheasby
C. Maclain Wells

By: /s/ C. Maclain Wells
   C. Maclain Wells

Attorneys for Defendant LSI CORPORATION and Defendant and Counterclaimant AGERE SYSTEMS, INC.

LSI'S REPLY ISO MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)
- 10 -