IRELL & MANELLA LLP
Jonathan H. Steinberg (98044)
Samuel K. Lu (171969)
Jason G. Sheasby (205455)
C. Maclain Wells (221609)
Zachariah Summers (255284)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199
E-mail: jsteinberg@irell.com
E-mail: slu@irell.com
E-mail: jsheasby@irell.com
E-mail: mwells@irell.com
E-mail: zsummers@irell.com

Attorneys for Defendant LSI CORPORATION and
Defendant and Counterclaimant AGERE SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., | ) CASE NO. CV-08-00775 (JW & RS) |
| Plaintiff, | ) |
| vs. | ) **LSI CORPORATION'S RESPONSE** |
| | ) **TO NXP'S MOTION TO COMPEL** |
| LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware Corporation and AGERE SYSTEMS, INC., a Delaware corporation, | ) Date:          September 17, 2008 |
| | ) Time:          9:30 a.m. |
| | ) Courtroom:  4, 5th Floor |
| | ) Judge:        Hon. Richard Seeborg |
| Defendants. | ) |
| AGERE SYSTEMS, INC., a Delaware corporation, | ) |
| Counterclaimant, | ) |
| vs. | ) |
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation, and | ) |
| Counterclaim-Defendant. | ) |

LSI CORPORATION'S RESPONSE TO
NXP'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)

1916444

## TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ............................................................2

III.    ARGUMENT .......................................................................................................4

        A.    NXP Refused To Meet and Confer With LSI Regarding the Subject
              Of Its Motion...........................................................................................4

        B.    Interrogatory No. 1:  LSI Provided a Complete Response To
              Interrogatory No. 1, Including All the Facts That Currently Support
              Its Contentions.........................................................................................4

              1.    NXP Is Using Motion Practice to Replace the Meet and
                    Confer Process..............................................................................5

              2.    NXP Has Refused to Produce Information Necessary for LSI
                    to Provide Additional Facts...........................................................6

              3.    LSI Knows of No Evidence Establishing that Current NXP
                    Products Are Licensed ..................................................................6

        C.    Validity Documents: NXP Has Confirmed That Discovery
              Regarding Validity Is Unnecessary and Inappropriate .........................8

              1.    NXP Admitted to the Court That No Discovery Is Necessary
                    for Its Collateral Estoppel Motion................................................9

              2.    NXP Concedes That Substantive Validity Discovery Is
                    Inappropriate at This Stage .........................................................10

        D.    TSMC License Agreement:  LSI Has Requested Permission From
              TSMC To Produce The License..............................................................11

        E.    1987 PLA Documents:  LSI Has Produced All Relevant Documents
              Located To Date......................................................................................11

IV.     CONCLUSION: ................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Rules**

Magistrate Judge Richard Seeborg's Standing Order Re: Initial Case Management,
¶ 9 ................................................................................................................................. 4

Northern District of California Civil Local Rule 1-5(n) ................................................................ 4

Northern District of California Civil Local Rule 37-1 .................................................................. 4

**I.    INTRODUCTION**

NXP filed its motion to compel five days after LSI/Agere (collectively, "LSI") filed its own motion to compel.  The absence of any good faith attempt by NXP to meet and confer regarding its motion, coupled with an inaccurate characterization of both LSI's discovery responses and positions, strongly suggest that NXP is using motion practice as a retaliatory weapon—the best defense to the serious concerns expressed in LSI's motion to compel is an offense, whether good or not.

NXP's motion concerns four topics:

**Interrogatory No. 1**:  This interrogatory asks for LSI's contentions as to why NXP is not licensed under a 1987 Patent License Agreement ("the 1987 PLA").  NXP lists five deficiencies in LSI's supplemental response.  NXP has never met and conferred with LSI regarding these deficiencies.  If NXP had bothered to meet and confer, it would know that LSI's analysis has been progressing and that LSI plans to further supplement its interrogatory response to address two of NXP's concerns.  All of NXP's other concerns relate to facts that are in the sole possession of NXP and which have not been produced to LSI.

**Interrogatory No. 2 and Document Request No. 8**:  NXP seeks the production of every document ever produced in a litigation involving the patents in suit, and every validity argument ever made by any entity (in litigation or otherwise) regarding the patents in suit.  NXP claims this information is necessary for its collateral estoppel and licensing defense summary judgment motions.  But NXP has repeatedly represented to the Court that its collateral estoppel motion requires no discovery and that discovery regarding the validity of the patents in suit is inappropriate and unnecessary until after the Court hears summary judgment motions on the license defense.  Based on these representations, the Court adopted the current schedule, which delays any validity or infringement disclosures until after it hears the license defense motions.  Moreover, NXP agreed in writing not to seek the information called for by Interrogatory No. 2 and Request No. 8 until after the Court hears the license defense motions.

**Document Requests Nos. 46 and 47**:  These requests seek documents related to a license agreement between TSMC and Agere.  NXP fails to disclose to the Court that LSI has repeatedly

1   told NXP that it has already sought permission from TSMC to produce the requested agreement

2   and related documents and will produce the requested information, which is the subject of a

3   contractual confidentiality obligation, as soon as LSI receives such consent.

4       **NXP's Document Request No. 1**: This request seeks documents related to the 1987 PLA.

5   LSI has produced all such documents located to date.  NXP would know this if it had bothered to

6   meet and confer with LSI regarding its production.

7   **II.    STATEMENT OF RELEVANT FACTS**

8       NXP's Amended Complaint seeks two distinct types of relief.  Its First Request for Relief

9   seeks a declaration that all of its products are licensed under the 1987 PLA between AT&T (a

10  predecessor of Agere) and Philips (a predecessor of NXP).  All other claims for relief seek either a

11  declaration of invalidity and/or non-infringement as to thirteen LSI/Agere patents.  [Ex. 1.][1]

12      The Court adopted a schedule that suspended any deadlines for preliminary infringement

13  and invalidity contentions until after the Court hears summary judgment motions on NXP's 1987

14  PLA license defense.  [Ex. 2; Ex. 3, at 7-8.]

15      The Court did so upon the urging of NXP, who argued in the case management statement

16  that the parties should "litigate through dispositive motion practice NXP's declaratory judgment

17  claim regarding the effect of the Patent License Agreement <u>before issues relating to the</u>

18  <u>noninfringement or invalidity of the patents-in-suit</u>."  [Ex. 3, at 7 (emphasis added).]

19      NXP served the interrogatories and requests for production that are the subject of the

20  instant motion on May 13, 2008.  LSI responded on June 16.  [Exs. 4-5.]

21      NXP waited almost four weeks—until July 11—to identify alleged deficiencies in LSI's

22  responses.  [Ex. 6.]

23      LSI and NXP met and conferred on July 15 regarding both parties' discovery responses.

24  [Summers Decl. ¶ 20.]  NXP sent a letter on July 18 summarizing the meet and confer.  [Ex. 7.]

25      On July 18 and 28, LSI sent letters confirming the scope of discovery it had agreed to

26  provide.  [Summers Decl. ¶ 22.]  In these letters, LSI provided its position on the discovery

27

28      [1] All exhibits are attached to the Declaration of Zacariah Summers ("Summers Decl.")
filed concurrently with this response.

1   responses that are the subject of this motion. [*Id.*] NXP never provided a substantive response to

2   these letters. [*Id.*]

3       LSI produced documents on July 29. [Summers Decl. ¶ 24.] LSI told NXP that

4   supplemental productions would be forthcoming as additional documents were located, processed,

5   and reviewed. [*Id.*]

6       On August 5, LSI also supplemented Interrogatory No. 1. [Ex. 8.]

7       NXP raised no objections to LSI's July 29 production or supplemental production

8   proposal. Neither did NXP provide any substantive criticism of LSI's supplemental response to

9   Interrogatory No. 1. [Summers Decl. ¶ 25.] In fact, outside of an August 6 letter mentioning

10  NXP's request for the TSMC license agreement, the last substantive communication from NXP

11  alleging specific deficiencies in LSI's discovery responses was made on July 18—eleven days

12  before LSI made its production, eighteen days before LSI supplemented Interrogatory No. 1, and

13  twenty-four days before NXP filed its motion to compel. [*Id.*]

14      On August 6, LSI filed a motion to compel necessitated by NXP's refusal to provide

15  discovery on critical issues in the litigation. [Summers Decl. ¶ 26.]

16      On August 8, LSI asked NXP to agree to expedite briefing on its motion. In response,

17  NXP stated that it intended to file its own motion to compel. [Summers Decl. ¶ 27; Ex. 9, at 2.]

18      Upon hearing of NXP's intention, LSI wrote two letters and had a phone conference with

19  NXP in an attempt to discover the basis of NXP's motion. [Summers Decl. ¶¶ 28-30.] LSI

20  committed to providing an immediate response as to whether LSI could address NXP's concerns

21  and a date certain by which it would do so. [*Id.*; Ex. 10 ("If you can tell us what additional

22  information you seek, we will of course confirm promptly if we can provide the requested

23  information and provide a date certain by which we will supplement, if we can in fact do so.").]

24      NXP only provided LSI with three pieces of information: (1) that it was moving on LSI's

25  Supplemented Response to Interrogatory No. 1, but refusing to identify any deficiencies in the

26  response; (2) that it was moving to compel production of a license agreement with TSMC, despite

27  the fact that LSI told NXP that "we have asked TSMC for its consent to produce this document

28  and will produce the document once that consent is received" (Ex.10); and, (3) that it was moving

on other deficiencies in LSI's two-week-old production, despite refusing to identify any of these alleged deficiencies.  [Ex. 10; Summers Decl. ¶¶ 28-31.]

## III.    ARGUMENT

### A.    NXP Refused To Meet and Confer With LSI Regarding the Subject Of Its Motion

Northern District of California Civil Local Rules state that "[t]he Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Civil L. R. 37-1.  Indeed, parties are subject to sanctions for not complying with this rule.  *Id.*

In addition to the Civil Local Rules, this Court's Standing Order requires that "[a] declaration setting forth these meet and confer efforts, and the final positions of each party, shall be included in the moving papers."  Magistrate Judge Richard Seeborg's Standing Order Re: Initial Case Management, ¶ 9.

NXP did not comply with either of these obligations.  LSI repeatedly asked NXP to identify the alleged deficiencies in its updated discovery responses and production; NXP flatly refused to do so.  [Exs. 9-10; Summers Decl. ¶¶ 28-31.]

Moreover, NXP has failed to disclose to the Court that LSI committed to confirming promptly whether it could address NXP's concerns and to provide a date certain by which it would provide the additional requested information.  [Exs. 9-10.]  This is perhaps unsurprising.  Had NXP accurately reported the state of the "meet and confer," it would have established its failure to "communicate directly and discuss in good faith the issue(s) required under the particular rule or order."  Civil L.R. 1-5(n) (definition of "Meet and confer").

### B.    Interrogatory No. 1:  LSI Provided a Complete Response To Interrogatory No. 1, Including All the Facts That Currently Support Its Contentions

LSI served its original response to Interrogatory No. 1 on June 16.  [Ex. 5.]  NXP ultimately provided two substantive criticisms of the response:

- On July 11, NXP wrote that "NXP is entitled to LSI's contentions as to why the products accused by LSI are not licensed.  LSI's response improperly alleges what 'NXP must

1    establish' without revealing any of LSI's positions as to why the products are not

2    licensed." [Ex. 6.]

3    • On July 18, NXP asked LSI to explain why the method of manufacture of a product was

4      relevant to its license defense and to provide "LSI's interpretations of terms from the

5      Patent License Agreement such as 'products' and 'of the kind,' or any basis for your

6      contention that NXP is not licensed." [Ex. 7.]

7    LSI's August 5 supplementation provided all of the requested information, and NXP's motion

8    does not contend otherwise:

9    • LSI listed in detail each of the elements a given NXP product must satisfy in order to be

10     licensed under the 1987 PLA; and

11   • LSI explained the relevance of method of manufacture of a product, and its interpretation

12     of the agreement, including the terms "products" and "of the kind." [Ex. 8.]

13   NXP's motion concedes that "LSI outlines a test for comparing NXP's current products to

14   products sold by Philips as of July 1, 1987 that allegedly is required to determine if a specific NXP

15   product is licensed under the PLA . . . ." [NXP Motion at 6.]  Simply put, NXP knows exactly

16   what criteria LSI contends must be satisfied for NXP products to be licensed.

17         **1.    NXP Is Using Motion Practice to Replace the Meet and Confer Process**

18   NXP has apparently decided that there is additional information, which it did not identify

19   during the meet and confer process, that it now requires from LSI.  It seeks this information, for

20   the first time, in its motion.

21         As to two of NXP's demands—additional information regarding which of the patents in

22   suit are within the capture period of the 1987 PLA and which of these patents in suit are still

23   subject to the 1987 PLA—LSI's analysis has advanced since it last supplemented this response.

24   LSI will provide additional information identified to date within five days of the hearing.

25         As to NXP's other demands, the information NXP wants is solely within its possession and

26   NXP has refused to provide this information in a timely manner.

27

28

2.    **NXP Has Refused to Produce Information Necessary for LSI to Provide Additional Facts**

NXP complains that LSI has not provided facts that relate to the questions of whether:

- each current NXP product "[is] substantially similar to products and services sold by it prior to its divestiture;" and

- NXP "operates as a separately identifiable business and not for any existing or other acquired business of a third party acquiring the future divested business." [NXP Motion at 5.]

These questions relate to information in the sole possession of NXP.  As a result, it is unsurprising that LSI had no additional facts to add at the time of supplementation.  LSI has served discovery requests seeking factual information relating to these questions, and anticipates that as discovery progresses it may be able to add additional information.  [Ex. 11-12 (LSI Rogs. 1, 13-17 and Requests 9, 10, 15-21, 23, 26, 27, 29, 31-33, 40, 41).]

3.    **LSI Knows of No Evidence Establishing that Current NXP Products Are Licensed**

Both parties agree that for NXP's products to be licensed, they must be "products and services of the kinds which were furnished or sold by Philips" in the operation of the business in which it is engaged on July 1, 1987.  [Ex. 11 (NXP Resp. to LSI Rog. 2).]  LSI contends that to determine whether a product is "of the kind . . .," a comparison must occur between the current product and the products sold by Philips (NXP's historical parent) in 1987.  In particular, there must be a match between the historical product and current product on various parameters: design, function, use, and business purpose.  LSI's interrogatory response sets out in detail the relevant criteria.  [Ex. 8, at 8-9.]

NXP complains that LSI failed to "identify a single NXP product" and to analyze products to determine if they are licensed.  [Opposition at 6.]  LSI is not aware of any evidence establishing that any NXP current product and any historical Philips product are of the same kind.  Simply put, LSI's current <u>factual</u> contention is that no evidence of a match between the relevant parameters for historical and current products exists.

LSI CORPORATION'S RESPONSE TO
NXP'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)          - 6 -                                    1916444

1    LSI anticipates that as discovery progresses it will identify Philips or NXP documents

2    affirmatively establishing that none of NXP's products are licensed. LSI has served targeted

3    discovery requests on NXP that seek information relevant to the comparison of current and

4    historical products. [Exs. 11-12 (LSI Rogs. 2-5 and Requests 15-21, 23, 29, 33).] Unfortunately,

5    NXP has refused to provide the required responsive information in a timely manner.

6        For example, LSI Interrogatory No. 2 asks NXP to identify which products it contends are

7    licensed, and to provide information on the design history of the product. LSI served this

8    interrogatory on May 21, 2008. It was not until July 23 that NXP announced that it would

9    supplement its interrogatory to specifically list 10 products. [Ex. 13, at 3.] NXP did not provide

10   such supplementation until August 5.**2** [Ex. 11, at 25.] Before August 5, NXP's interrogatory

11   response was a single conclusory statement that its products were licensed because they are

12   "products or services of the kind that were furnished or sold by Philips." [*Id.*, at 6.]

13       Moreover, even though NXP has finally identified specific products that it contends are

14   licensed, it continues to refuse to provide the requested information on the design history, use,

15   function and business purpose of these products. [Exs. 11-12 (NXP's Resp. to LSI Rogs. 2-3 and

16   Requests 17, 33).] This information is necessary for LSI to provide the supplementation that NXP

17   demands.

18       As to information regarding historical Philips products (the second critical piece of any

19   analysis), NXP did not produce a single document in this case until July 29, just days before LSI's

20   August 5 interrogatory supplementation. [Summers Decl. ¶ 24.] NXP has represented that "NXP

21   does not generally have in its possession, custody, or control Philips documents from the time

22   prior to the creation of NXP in 2006." [Ex. 7, at 2; Ex. 13, at 2.] NXP has also refused to assist

23   LSI in obtaining discovery from NXP's historical parent Philips, who apparently has the relevant

24   information. [Ex. 13.] LSI has therefore been forced to subpoena Philips, delaying the analysis.

25   [Summers Decl. ¶ 23.]

26

27

28
    ---
        **2** In its supplemental responses, NXP identified nine, not ten, products.

Discovery is a two-way street. It is incoherent for NXP to complain about an absence of "facts" from LSI's interrogatory response when NXP has systematically blocked LSI's attempts to obtain the critical facts relevant to its licensing defense:

- NXP made its first production in this case <u>four</u> business days before LSI served its supplemental interrogatory response.

- As of the date LSI served its supplemental response, NXP had refused to provide any substantive explanation of why even one of its products is licensed under the 1987 PLA.

- NXP has refused to assist LSI in collecting discovery from NXP's parent Philips, while admitting that Philips (not NXP) is the most important source of information relevant to the license defense.

**C.    Validity Documents: NXP Has Confirmed That Discovery Regarding Validity Is Unnecessary and Inappropriate**

At the beginning of this litigation, the parties were faced with a choice. They could either litigate validity and infringement of all thirteen patents in suit, or they could phase the litigation and first determine whether NXP's products are licensed to some of those patents under the 1987 PLA. The parties agreed to phase the litigation. As NXP told Judge Ware, the parties will "litigate through dispositive motion practice NXP's declaratory judgment claim regarding the effect of the Patent License Agreement <u>before issues relating to the noninfringement or invalidity of the patents-in-suit.</u>" [Ex. 3 (emphasis added).] Judge Ware adopted a schedule that allowed this to occur. [Ex. 2.]

Despite the phasing of the case, NXP's motion claims that it needs every document produced in every litigation involving the patents in suit (NXP Request 8) and a detailed explanation of every substantive validity allegation ever made against the patents in suit (NXP Rog. 2).

As an initial matter, NXP has already withdrawn its demand for the discovery called for by Request No. 8 and Interrogatory No. 2. After the July 15 meet and confer, NXP confirmed in writing that:

> NXP proposes to narrow the scope of Request Nos. 7 and 8 (and Interrogatory Nos. 2, 8, and 9) for this stage of the litigation only.  For now, NXP requests identification of litigations or other proceedings in which the validity of any of the patents-in-suit has been challenged or overturned.  NXP reserves its right to seek further responses to all requests during later phases of this litigation. [Ex. 7, at 4.]

LSI responded that during the current phase of the litigation it would only produce information relevant to NXP's license defense.  [Ex. 14, at 2.]   NXP never explained why a list of proceedings involving the patents in suit was relevant to its license defense.  Indeed, NXP never even bothered to respond to LSI's letter.  [Summers Decl. ¶ 22.]

The process of collecting the information NXP admitted was irrelevant to the current phase of the case—but now demands—would be substantial and could take many months to complete, among other reasons because of third party confidentiality issues.  NXP has failed to provide any reasoned basis for its position.

### 1.     NXP Admitted to the Court That No Discovery Is Necessary for Its Collateral Estoppel Motion

NXP claims that the validity discovery it seeks is necessary because "to the extent any of these legal proceedings [involving the patents in suit] have resulted in a ruling that any of the Patents-In-Suit are invalid, information relating to those proceedings is relevant to NXP's motion . . . on the basis of collateral estoppel."  [NXP Motion at 10.]  NXP's explanation is not credible.  NXP has repeatedly represented to Judge Ware that no discovery is necessary on its collateral estoppel motion.

NXP's motion seeks a declaration that LSI is collaterally estopped from asserting one of the patents in suit—the '335 patent—based on a jury verdict and order in a previous litigation. [Ex. 15.]  NXP argued to the Court that it was appropriate to hear the motion during the current phase of the litigation because it "<u>does not require discovery</u> . . . ."  [Ex. 16 (emphasis added).] Indeed, one of the main headings of the letter NXP wrote to Judge Ware explaining why the motion should be heard was "**<u>NXP's Motion Requires No Discovery</u>** . . . ."  [*Id*.]

Contrary to NXP's suggestion, the Court did not authorize NXP to conduct discovery and file motions on the validity of multiple patents in suit.  Instead, based on NXP's representation that no discovery would be necessary, the Court agreed to hear NXP's already-filed motion for collateral estoppel on the '335 patent. [Ex. 2, n.1.]

On a practical level, NXP's use of its collateral estoppel motion to support validity discovery also makes no sense. If NXP wants to determine whether any other courts have found the patents in suit invalid, why does it need every single document ever produced in any litigation involving the patents in suit and every single validity argument ever presented involving the patents in suit?

### 2.    NXP Concedes That Substantive Validity Discovery Is Inappropriate at This Stage

NXP also claims that the discovery is necessary because "information and documents relating to legal challenges to the validity of the Patents-In-Suit also are relevant to the licensing issue. To the extent LSI challenges the applicability of the PLA to certain Patents-In-Suit and/or alleges that certain products are not licensed . . . under the PLA, information regarding the validity of the Patents-In-Suit is relevant to narrow the scope of the issues." [NXP Motion at 10.]

NXP's position is inconsistent with all of its previous commitments to this Court and LSI:

- NXP asked Judge Ware, and Judge Ware agreed, to adopt a schedule that would require the parties to "litigate through dispositive motion practice NXP's declaratory judgment claim regarding the effect of the Patent License Agreement before issues relating to the noninfringement or invalidity of the patents-in-suit." [Ex. 3 (emphasis added); *see also* Ex. 2.]

- NXP has conceded in correspondence that substantive validity discovery is inappropriate while the parties are litigating NXP's license defense: "the phasing of the litigation and resulting schedule dictate that discovery be taken first on the licensing issue, without prejudice to the right of the parties to seek additional discovery during subsequent phases." [Ex. 7, at 1.]

- NXP has itself refused to provide any discovery on validity, stating that such discovery is "outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent License Agreement." [Ex. 17, at 14-15.]

1  NXP's demands are motivated by a desire to harass LSI and manufacture a discovery

2  dispute. Validity discovery at this juncture of the case is irrelevant, because Judge Ware has only

3  authorized NXP's collateral estoppel motion, not general summary judgment motions on validity.

4  **D.    TSMC License Agreement:  LSI Has Requested Permission From TSMC To Produce The License**

5
6  LSI has identified a license agreement between TSMC and Agere. LSI has repeatedly told

7  NXP that it is seeking TSMC's consent to produce this agreement and will produce it as soon as it

8  receives that consent. LSI told NXP so on four separate occasions leading up to NXP's motion to

9  compel. [Summers Decl. ¶ 32.] NXP omitted any mention of these communications from its

10 motion and from its supporting declaration.

11 Since these communications, LSI has identified an additional agreement family involving

12 TSMC that may be responsive to NXP's requests. LSI has asked TSMC to also consent to

13 produce these documents. [Summers Decl. ¶ 33.]

14 LSI believes it is appropriate to give TSMC time to consider LSI's request for consent.

15 NXP has not provided any explanation for why TSMC license information is time-sensitive. For

16 example, it does not contend that the information is necessary for its planned summary judgment

17 motion on the 1987 PLA. Indeed, NXP is a major customer of TSMC and therefore is in a very

18 good position to convince TSMC to agree to the production of the relevant documents.

19 If the Court orders production of the TSMC agreements and LSI/TSMC communications

20 regarding the instant litigation, LSI requests that it set the date of production for ten business days

21 after the order. This will give TSMC sufficient time to make a motion to the Court objecting to

22 the production. And it will also help to ensure that LSI is not accused of breaching any

23 obligations that TSMC may allege exist.

24 **E.    1987 PLA Documents:  LSI Has Produced All Relevant Documents Located To Date**

25 LSI has produced all non-privileged documents it has located that are directed to the

26 substance of the PLA. [Summers Decl. ¶ 34.] NXP does not know this because it refused to meet

27 and confer with LSI in advance of filing its motion.

28

LSI CORPORATION'S RESPONSE TO
NXP'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)          - 11 -                                    1916444

1    LSI responded to NXP's Request for Production No. 1 by promising to produce "non-
2 privileged, responsive documents directed to the substance of the Patent License Agreement at a
3 mutually agreeable time."   [Ex. 4.]   On July 29, 2008, LSI produced the relevant documents
4 located to date.   In particular, LSI produced the file for the 1987 PLA that it located on Agere's
5 license database.

6    The reality is that the 1987 PLA is over 20 years old.  It was negotiated by AT&T.  AT&T
7 spun-off Lucent, which spun-off Agere, which was acquired by LSI.  The passage of time makes it
8 highly unlikely that LSI will uncover additional information.

9    NXP apparently has encountered the same challenge:  as of the date of the instant motion,
10 NXP had produced only two documents relating to the 1987 PLA.  [Summers Decl. ¶ 35.]

11 **IV.    CONCLUSION:**

12    NXP's motion seeks information that LSI either had produced prior to NXP's motion, had
13 agreed to provide as soon as possible, or simply does not exist.  LSI respectfully requests that the
14 Court deny NXP's motion.

15

16 DATED:  August  27, 2008                    Respectfully Submitted,

17                                             IRELL & MANELLA LLP
                                              Jonathan H. Steinberg
18                                            Samuel K. Lu
                                              Jason G. Sheasby
19                                            C. Maclain Wells
                                              Zachariah Summers
20

21                                            By:___/s/ Zachariah Summers_____
                                                       Zachariah Summers
22
                                              Attorneys for Defendant LSI CORPORATION and
23                                            Defendant and Counterclaimant AGERE SYSTEMS,
                                              INC.
24

25

26

27

28

LSI CORPORATION'S RESPONSE TO
NXP'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)          - 12 -                                    1916444