1   IRELL & MANELLA LLP
    Jonathan H. Steinberg (98044)
2   Samuel K. Lu (171969)
    Jason G. Sheasby (205455)
3   C. Maclain Wells (221609)
    Zachariah Summers (255284)
4   1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4276
5   Telephone: (310) 277-1010
    Facsimile:  (310) 203-7199
6   E-mail: jsteinberg@irell.com
    E-mail: slu@irell.com
7   E-mail: jsheasby@irell.com
    E-mail: mwells@irell.com
8   E-mail: zsummers@irell.com

9   Attorneys for Defendant LSI CORPORATION and
    Defendant and Counterclaimant AGERE SYSTEMS, INC.

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14  NXP SEMICONDUCTORS USA, INC.,        ) CASE NO. CV-08-00775 (JW & RS)
                                         )
15              Plaintiff,               )
                                         ) **DECLARATION OF ZACHARIAH**
16      vs.                              ) **SUMMERS IN SUPPORT OF LSI**
                                         ) **CORPORATION'S OPPOSITION TO**
17  LSI CORPORATION d/b/a LSI LOGIC      ) **NXP'S MOTION TO COMPEL**
    CORPORATION, a Delaware Corporation  )
18  and AGERE SYSTEMS, INC., a Delaware  ) Date:        September 17, 2008
    corporation,                         ) Time:        9:30 a.m.
19                                       ) Courtroom:   4, 5th Floor
                Defendants.              ) Judge:       Hon. Richard Seeborg
20                                       )
    AGERE SYSTEMS, INC., a Delaware      )
21  corporation,                         )
                                         )
22              Counterclaimant,         )
                                         )
23      vs.                              )
                                         )
24  NXP SEMICONDUCTORS USA, INC.,        )
    a Delaware corporation, and          )
25                                       )
                Counterclaim-Defendant.  )
26

27

28

SUMMERS DECL. ISO LSI'S OPP. TO
NXP'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)

1920687

1

**DECLARATION OF ZACHARIAH SUMMERS**

2      I, Zachariah Summers, declare under penalty of perjury that the following is true and

3   correct.

4      1.      I am an attorney with the law firm of Irell & Manella, LLP, counsel of record for

5   defendant LSI Corporation and defendant and counterclaimant Agere Systems, Inc. (collectively,

6   "LSI"), in the above-captioned matter.  I am a member of the State Bar of California and have

7   been admitted to practice before this Court.

8      2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts of NXP

9   Semiconductor USA, Inc.'s Amended Complaint for Declaratory Judgment and Demand for Jury

10  Trial, filed in the above-captioned matter on May 30, 2008.  The attachments to the Amended

11  Complaint have been intentionally omitted.

12     3.      Attached hereto as Exhibit 2 is a true and correct copy of the Amended Scheduling

13  Order, entered in the above-captioned matter on August 5, 2008.

14     4.      Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the Joint Case

15  Management Conference Statement, entered in the above-captioned matter on May 23, 2008.

16     5.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts of LSI's Responses

17  to NXP's First Set of Requests for Production (Requests 1, 8, 46, 47), served by LSI on June 16,

18  2008.

19     6.      Attached hereto as Exhibit 5 is a true and correct copy of excerpts of LSI's Responses

20  to NXP's First Set of Interrogatories (Rogs. 1-2), served by LSI on June 16, 2008.

21     7.      Attached hereto as Exhibit 6 is a true and correct copy of a letter from Greg Yates,

22  dated July 11, 2008, to C. Maclain Wells.

23     8.      Attached hereto as Exhibit 7 is a true and correct copy of a letter from Mark W. Taylor,

24  dated July 18, 2008, to C. Maclain Wells.

25     9.      Attached hereto as Exhibit 8 is a true and correct copy of LSI's Supplemental

26  Response to NXP's Interrogatory No. 1, served on August 5, 2008.

27     10.     Attached hereto as Exhibit 9 is a true and correct copy of an August 8, 2008 e-mail

28  chain between LSI and NXP.

1    11.    Attached hereto as Exhibit 10 is a true and correct copy of a letter from C. Maclain
2    Wells, dated August 8, 2008, to Brett Schuman.

3    12.    Attached hereto as Exhibit 11 is a true and correct copy of excerpts of Plaintiff NXP
4    Semiconductors USA, Inc's Supplemental Responses to LSI's Interrogatories, served on August 5,
5    2008.

6    13.    Attached hereto as Exhibit 12 is a true and correct copy of excerpts of Plaintiff NXP
7    Semiconductors USA, Inc's Responses to LSI's First and Second Sets of Requests for Document
8    Production, served on June 20, 2008 and July 18, 2008, and LSI's Third Set of Requests for
9    Document Production, served on July 30, 2008.

10    14.    Attached hereto as Exhibit 13 is a true and correct copy of a letter from Mark W.
11    Taylor, dated July 23, 2008, to C. Maclain Wells.

12    15.    Attached hereto as Exhibit 14 is a true and correct copy of a letter from C. Maclain
13    Wells, dated July 28, 2008, to Mark W. Taylor.

14    16.    Attached hereto as Exhibit 15 is a true and correct copy of Plaintiff NXP
15    Semiconductors USA, Inc's Motion for Partial Summary Judgment, served in the above-captioned
16    matter on July 8, 2008.  The attachments to the motion have been intentionally omitted.

17    17.    Attached hereto as Exhibit 16 is a true and correct copy of a letter from Brett Schuman,
18    dated July 29, 2008, to the Honorable James Ware.

19    18.    Attached hereto as Exhibit 17 is a true and correct copy of NXP's Response to LSI's
20    Interrogatory No. 9, served by NXP on June 20, 2008.

21    19.    On July 11, 2008, NXP sent LSI a letter regarding alleged deficiencies in LSI's
22    original response to NXP's Interrogatory No. 1.  Ex. 6.

23    20.    The Parties held a meet and confer on July 15, 2008 regarding both Parties' discovery
24    responses.

25    21.    On July 18, 2008, NXP sent LSI another letter regarding alleged deficiencies in LSI's
26    original response to NXP's Interrogatory No. 1.  Ex. 7.

27

28

22.    On July 18, 2008 and July 28, 2008, LSI sent letters to NXP confirming the scope of discovery that LSI had agreed to produce and setting out its position on the discovery requests that are the subject of this motion.  NXP never provided a substantive response to these letters.

23.    Because NXP took the position that it had no obligation to collect documents from its predecessor-in-interest, LSI subpoenaed U.S. Philips Corporation on July 22, 2008.

24.    LSI and NXP made the initial productions in this case on July 29, 2008.  LSI's production consisted of 1,134 documents and 26,519 pages.  In a July 28 letter, LSI told NXP that supplemental productions would be forthcoming as additional documents were located, processed, and reviewed.

25.    Other than an August 6, 2008 letter requesting production of the TSMC license agreement, NXP's last communication alleging specific deficiencies in the discovery requests that are the subject of NXP's motion were made in NXP's July 18, 2008 letter.  NXP never raised any substantive objections to LSI's responses after LSI made its July 29, 2008 production or supplemented its response to Interrogatory No. 1 on August 5, 2008.

26.    LSI filed a motion to compel with this Court on August 6, 2008 (Docket No. 39).

27.    After filing its motion, LSI requested that NXP agree to expedite briefing on LSI's motion on August 8, 2008.  In response, NXP stated that it intended to file its own motion to compel. Ex. 9.

28.    LSI requested that NXP explain the basis of its anticipated motion to compel in an August 8, 2008 e-mail.  Ex. 9.  NXP refused to identify any alleged deficiencies in its response.

29.    On August 8, 2008, LSI also held a teleconference with NXP during which it asked NXP to identify the alleged deficiencies in LSI's discovery responses.  In response, NXP stated:

- That it was moving on LSI's Supplemented Response to Interrogatory No. 1, but did not identify any specific deficiencies in that response.  LSI repeatedly requested that NXP do so.  NXP refused.

- That it was moving to compel production of the TSMC agreement.  LSI informed NXP that it had sought TSMC's consent to produce the agreement, the terms of which are

1  confidential.   NXP stated that it believed that LSI had to produce this agreement

2  regardless.

3  • That it was moving on other deficiencies in LSI's responses, without indicating any

4  specific responses it believed were insufficient.

5  30.   LSI sent a follow-up letter regarding this telephone conference explaining that LSI did

6  not know the bases for NXP's proposed motion and requesting a proper meet and confer on the

7  issues.  Ex. 10.

8  31.   At no time during this process did NXP state that it would move to compel production

9  of documents related to the 1987 PLA or the validity documents it now requests.

10  32.   LSI told NXP that it was seeking TSMC's consent to produce the TSMC license

11  agreement in four separate communications:

12  • a July 28, 2008 letter from C. Maclain Wells to Mark W. Taylor;

13  • an August 8, 2008 email from Jason Sheasby to Brett Schuman;

14  • an August 8, 2008 telephonic meet and confer with NXP; and

15  • an August 8, 2008 letter from C. Maclain Wells to Brett Schuman.

16  33.   LSI has identified an additional agreement family involving TSMC that may be

17  responsive to NXP's requests.  LSI has asked TSMC to also consent to produce these documents.

18  34.   LSI has produced all non-privileged documents it has located to date that are directed

19  to the substance of the 1987 PLA.

20  35.   NXP has produced only two documents relating to the 1987 PLA as of the date of the

21  instant motion:  the 1997 PLA and a 1995 letter extending the 1987 PLA's capture period.

22

23  DATED:  August 27, 2008                    By:___/s/ Zachariah Summers_____

24                                                            Zachariah Summers

25

26

27

28

SUMMERS DECL. ISO LSI'S OPP. TO
NXP'S MOTION TO COMPEL
CASE NO. CV-08-00775 (JW & RS)          - 4 -

# EXHIBIT 1

1   MICHAEL E. MOLLAND (State Bar No. 111830)
    DANIEL JOHNSON, JR. (State Bar No. 57409)
2   BRETT M. SCHUMAN (State Bar No. 189247)
    GREGG P. YATES (State Bar No. 224641)
3   MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
4   San Francisco, CA  94105-1126
    Tel:  415.442.1000
5   Fax:  415.442.1001
    E-mail:  mmolland@morganlewis.com
6   E-mail:  djjohnson@morganlewis.com
    E-mail:  bschuman@morganlewis.com
7
    Attorneys for Plaintiff
8   NXP SEMICONDUCTORS USA, INC.

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13  NXP SEMICONDUCTORS USA, INC.,        Case No. CV-08-0775 JW
    a Delaware corporation,
14                                        **AMENDED COMPLAINT FOR
                   Plaintiff,             DECLARATORY JUDGMENT**
15
           v.                             **DEMAND FOR JURY TRIAL**
16
    LSI CORPORATION d/b/a LSI LOGIC
17  CORPORATION, a Delaware corporation,
    and AGERE SYSTEMS, INC., a Delaware
18  corporation,

19                 Defendants.

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2                    1          AMENDED COMPLAINT
                                        FOR DECLARATORY JUDGMENT
                                             CV-08-0775 JW

1    also disputes that its conduct infringes any of the aforementioned patents, or any valid and

2    enforceable claim of any of these patents.

3          15.    An actual and justiciable controversy exists between NXP on the one hand and LSI

4    and AGERE on the other hand concerning whether NXP infringes any valid claim of the

5    aforementioned patents.  NXP now seeks a declaratory judgment that the claims of the

6    aforementioned patents are invalid and/or that NXP does not infringe any valid claim of the

7    aforementioned patents.

8                            **FIRST CLAIM FOR RELIEF**

9                  (Declaratory Relief Regarding Meaning of PLA)

10         16.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

11    through 15 of this Complaint.

12         17.    An actual controversy has arisen and now exists between NXP on the one hand

13    and LSI and AGERE on the other hand concerning their rights and duties under the PLA, as

14    amended and modified.  LSI and AGERE contend that NXP is infringing the patents identified

15    above.  NXP contends that, for patents filed during the Extended Period, any use of the patented

16    methods or technology by NXP is licensed and therefore noninfringing.

17         18.    NXP desires a judicial determination of the rights and duties of the parties under

18    the PLA, as modified and amended.  NXP seeks a declaration that any use by it of the methods or

19    technology claimed in patents that were filed by AT&T or its related companies during the

20    Extended Period is licensed and therefore noninfringing.

21                        **SECOND CLAIM FOR RELIEF**

22          (Non-Infringement of United States Patent No. 5,373,180)

23         19.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

24    through 15 of this Complaint.

25         20.    NXP is not directly infringing, contributorily infringing, or actively inducing

26    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '180

27    patent as properly construed.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

6

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CLAIM FOR RELIEF**

(Invalidity of United States Patent No. 5,227,335)

21.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

22.    The claims of the '335 patent are invalid under the patent laws of the United States, as codified in Title 35 of the United States Code.

**FOURTH CLAIM FOR RELIEF**

(Non-Infringement of United States Patent No. 5,227,335)

23.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

24.    NXP is not directly infringing, contributorily infringing, or actively inducing others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '335 patent as properly construed.

**FIFTH CLAIM FOR RELIEF**

(Invalidity of United States Patent No. 5,599,739)

25.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

26.    The claims of the '739 patent are invalid under the patent laws of the United States, as codified in Title 35 of the United States Code.

**SIXTH CLAIM FOR RELIEF**

(Non-Infringement of United States Patent No. 5,599,739)

27.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1 through 15 of this Complaint.

28.    NXP is not directly infringing, contributorily infringing, or actively inducing others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '739 patent as properly construed.

**SEVENTH CLAIM FOR RELIEF**

(Non-Infringement of United States Patent No. 5,149,672)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2

7

AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1      29.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

2 through 15 of this Complaint.

3      30.    NXP is not directly infringing, contributorily infringing, or actively inducing

4 others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '672

5 patent as properly construed.

6              **EIGHTH CLAIM FOR RELIEF**

7         (Invalidity of United States Patent No. 5,022,958)

8      31.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

9 through 15 of this Complaint.

10     32.    The claims of the '958 patent are invalid under the patent laws of the United

11 States, as codified in Title 35 of the United States Code.

12              **NINTH CLAIM FOR RELIEF**

13     (Non-Infringement of United States Patent No. 5,022,958)

14     33.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

15 through 15 of this Complaint.

16     34.    NXP is not directly infringing, contributorily infringing, or actively inducing

17 others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '958

18 patent as properly construed.

19              **TENTH CLAIM FOR RELIEF**

20     (Invalidity of United States Patent No. 6,153,543)

21     35.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

22 through 15 of this Complaint.

23     36.    The claims of the '543 patent are invalid under the patent laws of the United

24 States, as codified in Title 35 of the United States Codes.

25            **ELEVENTH CLAIM FOR RELIEF**

26     (Non-Infringement of United States Patent No. 6,153,543)

27     37.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

28 through 15 of this Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2         8          AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    38.    NXP is not directly infringing, contributorily infringing, or actively inducing

2    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '543

3    patent as properly construed.

4    **TWELFTH CLAIM FOR RELIEF**

5    (Invalidity of United States Patent No. 4,914,500)

6    39.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

7    through 15 of this Complaint.

8    40.    The claims of the '500 patent are invalid under the patent laws of the United

9    States, as codified in Title 35 of the United States Code.

10    **THIRTEENTH CLAIM FOR RELIEF**

11    (Non-Infringement of United States Patent No. 4,914,500)

12    41.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

13    through 15 of this Complaint.

14    42.    NXP is not directly infringing, contributorily infringing, or actively inducing

15    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '500

16    patent as properly construed.

17    **FOURTEENTH CLAIM FOR RELIEF**

18    (Invalidity of United States Patent No. 4,919,748)

19    43.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

20    through 15 of this Complaint.

21    44.    The claims of the '748 patent are invalid under the patent laws of the United

22    States, as codified in Title 35 of the United States Code.

23    **FIFTEENTH CLAIM FOR RELIEF**

24    (Non-Infringement of United States Patent No. 4,919,748)

25    45.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

26    through 15 of this Complaint.

27    46.    NXP is not directly infringing, contributorily infringing, or actively inducing

28    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '748

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2                9                AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1   patent as properly construed.

2   **SIXTEENTH CLAIM FOR RELIEF**

3   (Invalidity of United States Patent No. 5,600,182)

4        47.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

5   through 15 of this Complaint.

6        48.    The claims of the '182 patent are invalid under the patent laws of the United

7   States, as codified in Title 35 of the United States Code.

8   **SEVENTEENTH CLAIM FOR RELIEF**

9   (Invalidity of United States Patent No. 5,844,928)

10       49.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

11  through 15 of this Complaint.

12       50.    The claims of the '928 patent are invalid under the patent laws of the United

13  States, as codified in Title 35 of the United States Code.

14  **EIGHTEENTH CLAIM FOR RELIEF**

15  (Non-Infringement of United States Patent No. 5,844,928)

16       51.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

17  through 15 of this Complaint.

18       52.    NXP is not directly infringing, contributorily infringing, or actively inducing

19  others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '928

20  patent as properly construed.

21  **NINETEENTH CLAIM FOR RELIEF**

22  (Invalidity of United States Patent No. 5,909,149)

23       53.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

24  through 15 of this Complaint.

25       54.    The claims of the '149 patent are invalid under the patent laws of the United

26  States, as codified in Title 35 of the United States Code.

27  **TWENTIETH CLAIM FOR RELIEF**

28  (Non-Infringement of United States Patent No. 5,909,149)

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7696185.2                               10                     AMENDED COMPLAINT
                                                                   FOR DECLARATORY JUDGMENT
                                                                   CV-08-0775 JW

1    55.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

2    through 15 of this Complaint.

3    56.    NXP is not directly infringing, contributorily infringing, or actively inducing

4    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '149

5    patent as properly construed.

6                        **TWENTY-FIRST CLAIM FOR RELIEF**

7                        (Invalidity of United States Patent No. 6,163,184)

8    57.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

9    through 15 of this Complaint.

10    58.    The claims of the '184 patent are invalid under the patent laws of the United

11    States, as codified in Title 35 of the United States Code.

12                        **TWENTY-SECOND CLAIM FOR RELIEF**

13                        (Non-Infringement of United States Patent No. 6,163,184)

14    59.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

15    through 15 of this Complaint.

16    60.    NXP is not directly infringing, contributorily infringing, or actively inducing

17    others to infringe as alleged by LSI and AGERE any valid and enforceable claim of the '184

18    patent as properly construed.

19                        **TWENTY-THIRD CLAIM FOR RELIEF**

20                        (Invalidity of United States Patent No. 5,827,777)

21    61.    NXP realleges and incorporates by reference the allegations stated in paragraphs 1

22    through 15 of this Complaint.

23    62.    The claims of the '777 patent are invalid under the patent laws of the United

24    States, as codified in Title 35 of the United States Code.

25                        **PRAYER FOR RELIEF**

26    WHEREFORE, NXP prays that this Court:

27    A.    As to the First Claim for Relief, enter a declaratory judgment that the PLA, as

28    amended and modified, authorizes any alleged use by NXP of the technology claimed in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2                    11                    AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
CV-08-0775 JW

1    asserted aforementioned patents that were filed during the Extended Period.

2        B.    As to the Second, Fourth, Sixth, Seventh, Ninth, Eleventh, Thirteenth, Fifteenth,

3    Eighteenth, Twentieth, and Twenty-Second Claim for Relief,

4            (1)    enter a declaratory judgment that the manufacture, use, sale, or offer for

5    sale of NXP's product(s) does not infringe any valid and enforceable claim of the LSI and/or

6    AGERE patents; and

7            (2)    enter a declaratory judgment that the manufacture, use, sale, or offer for

8    sale of NXP's product(s) does not constitute an inducement to infringe or contributory

9    infringement of any valid and enforceable claim of the LSI and/or AGERE patents;

10        C.    As to the Third, Fifth, Eighth, Tenth, Twelfth, Fourteenth, Sixteenth, Seventeenth,

11    Nineteenth, Twenty-First, and Twenty-Third Claims for Relief, enter a declaratory judgment

12    declaring that the claims of each of the LSI and/or AGERE patents are invalid;

13        D.    Declare this case exceptional under 35 U.S.C. § 285 and award NXP its reasonable

14    attorneys' fees, expenses and costs incurred in this action; and

15        E.    Grant NXP such other action and further relief as this Court may deem just and

16    proper, or that NXP may be entitled to as a matter of law or equity.

17    Dated: May 30, 2008                    MORGAN, LEWIS & BOCKIUS LLP

18

19

20                        By  /s/  Brett M. Schuman
                               Brett M. Schuman
21                             Attorneys for Plaintiff

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7696185.2                    12                    AMENDED COMPLAINT
                                                FOR DECLARATORY JUDGMENT
                                                        CV-08-0775 JW

# EXHIBIT 2

1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| NXP Semiconductors USA, Inc., | No. C 08-00775 JW |
|---|---|
| Plaintiff, | **AMENDED SCHEDULING ORDER** |
| v. | |
| LSI Corporation, et al., | |
| Defendants. | |

The Court is in receipt of letters from counsel for the parties in the above entitled action. (See Docket Item Nos. 36, 37.) The letters address the propriety of Plaintiff's Motion for Partial Summary Judgment which has been noticed for a hearing on October 27, 2008. To resolve the parties' dispute and to correct a typographical error in the Scheduling Order issued on June 5, 2008, (see docket item no. 28), the Court issues an Amended Scheduling Order as follows:

**CASE SCHEDULE**

| Plaintiff's Motion Re: Patent License Filing Date Plaintiff's Motion for Partial Summary Judgment Re: Collateral Estoppel[1] | December 15, 2008 |
|---|---|

---

[1] The Court finds good cause to hear both motions at the same time. Thus, in light of this Order and the Court's desire to clear its docket, the Clerk shall terminate Docket Item No. 28. Plaintiff shall renotice its "collateral estoppel's" motion on the date provided above by refiling it as a separate docket entry.

| Defendants' Opposition to Motions | January 15, 2009[2] |
| Plaintiff's Replies to Motions | January 30, 2009[3] |
| Hearing on Both Motions | February 23, 2009 at 9 a.m. |
| Case Management Conference | February 23, 2009 at 10 a.m. |
| Case Management Conference Statement *(Due 10 days before conference)* | February 13, 2009 |

None of the dates set in this Order may be changed without an order of the Court made after a motion is filed pursuant to the Civil Local Rules of Court.

### Standing Order to Lodge Printed Copy of "ECF" Papers

1.    In all cases, including cases covered by the Electronic Case Filing System of the Court "ECF," when filing papers in connection with any motion or any pretrial conference, in addition to filing the paper electronically, the filing parties shall lodge with the Clerk's Office a printed copy of the papers, in an envelop clearly marked "Chamber's Copy – Lodged for the Chambers of Judge James Ware." The "Chamber's Copy" envelop must state the case name and case number and be delivered on or before the close of the next court day following the day the papers are filed electronically. See Standing Order Regarding Case Management in Civil Cases.

### Compliance with Discovery Plan and Reference to Magistrate Judge

2.    The Court adopts the Discovery Plan proposed by the parties in their Joint Case Management Statement. The parties are ordered to comply with the discovery plan. Any disputes with respect to the implementation of the discovery plan and all disclosure or discovery disputes are referred to the assigned Magistrate Judge. In addition, any disputes pertaining to service or joinder of parties or claims are referred to the assigned Magistrate Judge.

---

[2]  Erroneously listed as January 15, 2008 in the Scheduling Order.

[3]  Erroneously listed as January 30, 2008 in the Scheduling Order.

**Document Management During Pretrial Discovery and Electronic Evidence Presentation**

3.      This Court has available a digital and video electronic evidence presentation system. Before commencement of pretrial discovery, the parties are ordered to familiarize themselves with the system, and to meet and confer about whether the case will involve voluminous documentary. If so, as the parties identify documentary material which is likely to be used as trial exhibits, the parties are ordered to electronically store these materials in a fashion which will facilitate displaying them electronically during the trial. The parties are reminded that Civil L.R. 30-2(b) requires sequential numbering of exhibits during depositions and that numbering must be maintained for those exhibits throughout the litigation. Each proposed exhibit shall be pre-marked for identification. All exhibits shall be marked with numerals. The parties shall meet and confer on a division which will avoid duplication (e.g., Plaintiff: 1-99,000; Defendant #1: 100,000-299,999; Defendant #2: 300,000-500,000).

Dated: August 5, 2008

JAMES WARE
United States District Judge

United States District Court
For the Northern District of California

3

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brett Michael Schuman bschuman@morganlewis.com
Crawford Maclain Wells mwells@irell.com
Daniel Johnson djjohnson@morganlewis.com
Gregg Paris Yates gyates@morganlewis.com
Jason George Sheasby JSheasby@Irell.com
Jonathan Henry Steinberg jsteinberg@irell.com
Michael Eric Molland mmolland@morganlewis.com
Samuel Kai Lu slu@irell.com

**Dated: August 5, 2008**                    Richard W. Wieking, Clerk


                                 By:  /s/ JW Chambers
                                      **Elizabeth Garcia**
                                      **Courtroom Deputy**

United States District Court
For the Northern District of California

4

# EXHIBIT 3

1 | MORGAN, LEWIS & BOCKIUS LLP
Michael E. Molland (State Bar No. 111830)
2 | Daniel Johnson, Jr. (State Bar No. 57409)
Brett Schuman (State Bar No. 189247)
3 | Gregg P. Yates (State Bar No. 224641)
One Market, Spear Street Tower
4 | San Francisco, CA 94105-1126
Tel: 415.442.1000
5 | Fax: 415.442.1001
E-mail: mmolland@morganlewis.com
6 | E-mail: djjohnson@morganlewis.com
E-mail: bschuman@morganlewis.com
7 | E-mail: gyates@morganlewis.com

IRELL & MANELLA LLP
Jonathan H. Steinberg (State Bar No. 98044)
Samuel K. Lu (State Bar No. 171969)
Jason G. Sheasby (State Bar No. 205455)
C. Maclain Wells (State Bar No. 221609)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel: 310.277-1010
Fax: 310-203-7199
E-mail: jsteinberg@irell.com
E-mail: slu@irell.com
E-mail: jsheasby@irell.com
E-mail: mwells@irell.com

8 | Attorneys for Plaintiff
NXP SEMICONDUCTORS USA, INC.

Attorneys for Defendant
LSI CORPORATION

9

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN JOSE DIVISION

13

14 | NXP SEMICONDUCTORS USA, INC.,
a Delaware corporation,

15 |           Plaintiff,

16 |       v.

17 | LSI CORPORATION d/b/a LSI LOGIC
CORPORATION, a Delaware corporation,

18 |          Defendant.

19

Case No. CV-08-0775 JW

**JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER**

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7707412.1

1

1    issues.

2    XV.    **Narrowing of the Issues**

3    NXP proposes that the Court phase this litigation, and that the parties litigate through

4    dispositive motion practice NXP's declaratory judgment claim regarding the effect of the Patent

5    License Agreement before issues relating to the noninfringement or invalidity of the patents-in-

6    suit.  Eight of thirteen patents currently being disputed are potentially subject to a complete

7    defense under the 1987 license agreement that is the subject of NXP's First Claim for Relief in

8    this case.  By litigating the effect of the Patent License Agreement first, the Court could

9    significantly clarify the scope of this dispute.

10    LSI does not believe that NXP will succeed on a motion for summary judgment.

11    However, because denial of summary judgment may facilitate resolution of this dispute, LSI

12    requests that the Court phase the litigation by allowing ample time for discovery on licensing-

13    related issues before deadlines for patent disclosures begin.  This will give NXP the opportunity

14    to file a motion for summary judgment on the license defense to the extent, after taking discovery,

15    it believes such a motion is appropriate.

16    XVI.    **Expedited Schedule**

17    The parties do not believe that this case is appropriate for an expedited schedule.

18    XVII.    **Scheduling**

19    If the Court were to agree to phase the litigation, the parties would propose the following

20    schedule:

21

22 | Case Management Conference | June 2, 2008 |
| --- | --- |
| Fed. R. Civ. P. 26(a)(1) Initial Disclosures | June 16, 2008 |
| Patent L.R. 3-1 Preliminary Infringement Contentions and Patent L.R. 3-2 Document Production, as to those patents where LSI/AGERE have counterclaimed for infringement and Patent L.R. 3-5 Preliminary Invalidity Contentions and Patent L.R. 3-4 Document Production, as to those patents where LSI/AGERE have not counterclaimed for infringement | March 16, 2009 |
| Patent L.R. 3-3 Preliminary Invalidity Contentions and Patent L.R. 3-4 Document Production, as to those patents where LSI/AGERE have | April 30, 2009 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7707412.1

7

JT. CASE MGMT. CONF. STATEMENT &
[PROPOSED] ORDER
C. 08-0775 JW

| | |
|---|---|
| counterclaimed for infringement | |
| Second Case Management Conference | May 15, 2009 |
| Patent L.R. 4-1 Exchange of Proposed Terms | June 1, 2009 |
| Patent L.R. 4-2 Preliminary Claim Construction | June 19, 2009 |
| Patent L.R. 4-3 Joint Claim Construction | July 17, 2009 |
| Patent L.R. 4-4 Close of Claim Construction Discovery | August 21, 2009 |
| Patent L.R. 4-5 Claim Construction Brief | September 7, 2009 |
| Tutorial | October 2009 |
| Claim Construction Hearing | October 2009 |
| Last Day to Amend Pleadings/Add Parties | December 2009 |
| Fact Discovery Cut-off | TBD at post claim construction case management conference |
| Disclosure of Identity of Liability Experts | TBD |
| Written Expert Reports Due | TBD |
| Rebuttal Expert Reports Due | TBD |
| Expert Discovery Cut-off | TBD |
| Deadline for Filing Dispositive Motions | TBD |
| Pretrial Conference | TBD |
| TRIAL | TBD |

If the Court were to decline to phase this litigation as suggested by the parties in Part XIV, *supra*, the parties would jointly propose the following schedule:

| EVENT | PROPOSED DATE |
|---|---|
| Case Management Conference | June 2, 2008 |
| Fed. R. Civ. P. 26(a)(1) Initial Disclosures | June 16, 2008 |
| Patent L.R. 3-1 Preliminary Infringement Contentions and Patent L.R. 3-2 Document Production, as to those patents where LSI/AGERE have counterclaimed for infringement and Patent L.R. 3-5 Preliminary Invalidity Contentions and Patent L.R. 3-4 Document Production, as to those patents where LSI/AGERE have not counterclaimed for infringement | September 15, 2008 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7707412.1

8

JT. CASE MGMT. CONF. STATEMENT &
[PROPOSED] ORDER
C. 08-0775 JW

| | |
|---|---|
| Patent L.R. 3-3 Preliminary Invalidity Contentions and Patent L.R. 3-4 Document Production, as to those patents where LSI/AGERE have counterclaimed for infringement | October 30, 2008 |
| Second Case Management Conference | November 14, 2008 |
| Patent L.R. 4-1 Exchange of Proposed Terms | December 1, 2008 |
| Patent L.R. 4-2 Preliminary Claim Construction | December 19, 2008 |
| Patent L.R. 4-3 Joint Claim Construction | January 19, 2009 |
| Patent L.R. 4-4 Close of Claim Construction Discovery | February 20, 2009 |
| Patent L.R. 4-5 Claim Construction Brief | March 9, 2009 |
| Tutorial | May 2009 |
| Claim Construction Hearing | May 2009 |
| Last Day to Amend Pleadings/Add Parties | December 2009 |
| Fact Discovery Cut-off | TBD at post claim construction case management conference |
| Disclosure of Identity of Liability Experts | TBD |
| Written Expert Reports Due | TBD |
| Rebuttal Expert Reports Due | TBD |
| Expert Discovery Cut-off | TBD |
| Deadline for Filing Dispositive Motions | TBD |
| Pretrial Conference | TBD |
| TRIAL | TBD |

## XVIII. **Trial**

The parties jointly request a jury trial. The length of the trial can be better ascertained after the parties have determined and added all their patent-related claims.

## XIX.    **Disclosure of Nonparty Interested Entities or Persons**

NXP has filed the required Certification of Interested Entities or Persons as required by Civil Local Rule 3-16.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7707412.1

9

JT. CASE MGMT. CONF. STATEMENT &
[PROPOSED] ORDER
C. 08-0775 JW

1    Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Gregg P. Yates,

2    attest that concurrence in the filing of this document has been obtained from each of the other

3    signatories.  I declare under penalty of perjury under the laws of the United States of America that

4    the foregoing is true and correct.

5        Executed this 23d day of May 2008, at San Francisco.

6

7

8        /s/  Gregg P. Yates
         Gregg P. Yates

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7707412.1

12

JT. CASE MGMT. CONF. STATEMENT &
[PROPOSED] ORDER
C 08-0775 JW

# EXHIBIT 4

1 | IRELL & MANELLA LLP
Jonathan H. Steinberg (98044)
2 | Samuel K. Lu (171969)
Jason G. Sheasby (205455)
3 | C. Maclain Wells (221609)
1800 Avenue of the Stars, Suite 900
4 | Los Angeles, California 90067-4276
Telephone: (310) 277-1010
5 | Facsimile: (310) 203-7199
E-mail: jsteinberg@irell.com
6 | E-mail: slu@irell.com
E-mail: jsheasby@irell.com
7 | E-mail: mwells@irell.com

8 | Attorneys for Defendant LSI CORPORATION and
Defendant and Counterclaimant AGERE SYSTEMS, INC.
9

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN JOSE DIVISION

13 | NXP SEMICONDUCTORS USA, INC.,                ) CASE NO. CV-08-00775 (JW)
                                                 )
14 |              Plaintiff,                      )
                                                 ) **LSI CORPORATION'S RESPONSES**
15 |       vs.                                    ) **TO NXP SEMICONDUCTORS USA,**
                                                 ) **INC.'S FIRST SET OF REQUESTS**
16 | LSI CORPORATION d/b/a LSI LOGIC             ) **FOR PRODUCTION**
CORPORATION, a Delaware Corporation             )
17 | and AGERE SYSTEMS, INC., a Delaware          )
corporation,                                    )
18 |                                              )
              Defendants.                        )
19 | _____            )
AGERE SYSTEMS, INC., a Delaware                 )
20 | corporation,                                 )
                                                 )
21 |              Counterclaimant,                )
                                                 )
22 |       vs.                                    )
                                                 )
23 | NXP SEMICONDUCTORS USA, INC.,               )
a Delaware corporation, and                     )
24 |                                              )
              Counterclaim-Defendant.            )
25 | _____            )

26

27

28

LSI'S RESPONSES TO NXP'S FIRST SET
OF REQUESTS FOR PRODUCTION
CASE NO. CV-08-00775 (JW)

## RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1.**

     All documents referring or relating to the Patent License Agreement attached to the complaint in this action as Exhibit 1.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1.**

     In addition to the General Objections, which are incorporated fully by reference herein, LSI objects to this request to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any other applicable privilege or protection. LSI further objects that the phrase "All documents referring to or relating to" is vague and ambiguous, as NXP has not defined "referring to" and has defined "relating to" in an overly broad manner. LSI also objects to this request as overbroad and unduly burdensome.

     LSI objects to this request to the extent that it seeks disclosure of LSI's or any third party's trade secret, proprietary, or other confidential or competitively sensitive information. LSI reserves the right not to provide any of this information until an appropriate protective order is in place, and/or until it receives appropriate approvals. LSI will not provide any of this information without consent of the third party. LSI objects to this request to the extent it calls for information LSI does not have the legal authority to release. LSI will not disclose any of this information without approval. LSI objects to this request to the extent it requests information dependent upon documents or other information in the possession, custody and control of NXP or third parties. LSI reserves its right to modify or supplement its responses in view of the discovery of information and review of documents received from NXP or third parties.

     Furthermore, LSI objects to this request insofar as discovery is ongoing. LSI reserves the right to modify or supplement its responses as LSI receives additional information from NXP or third parties, as it performs additional analysis of the facts and legal issues currently known, as LSI locates additional information, or based on a ruling by the Court.

1        Subject to, and without waiving, the foregoing, and the General Objections, LSI will

2    produce non-privileged responsive documents directed to the substance of the Patent License

3    Agreement at a mutually agreeable time.

4    **REQUEST FOR PRODUCTION NO. 2.**

5        All documents referring or relating to the October 2, 2003 letter attached hereto as Exhibit

6    A, including, but not limited to, any prior drafts of the letter.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 2.**

8        In addition to the General Objections, which are incorporated fully by reference herein,

9    LSI objects to this request to the extent it calls for information that is protected from discovery

10   under the attorney-client privilege, work product doctrine, settlement privilege, or any other

11   applicable privilege or protection.  LSI further objects that the phrase "All documents referring to

12   or relating to" is vague and ambiguous, as NXP has not defined "referring to" and has defined

13   "relating to" in an overly broad manner.

14       LSI objects to this request to the extent that it seeks disclosure of LSI's or any third

15   party's trade secret, proprietary, or other confidential or competitively sensitive information.  LSI

16   reserves the right not to provide any of this information until an appropriate protective order is in

17   place, and/or until it receives appropriate approvals.  LSI will not provide any of this information

18   without consent of the third party.  LSI objects to this request to the extent it calls for information

19   LSI does not have the legal authority to release.  LSI will not disclose any of this information

20   without approval.  LSI objects to this request to the extent it requests information dependent upon

21   documents or other information in the possession, custody and control of NXP or third parties.

22   LSI reserves its right to modify or supplement its responses in view of the discovery of

23   information and review of documents received from NXP or third parties.

24       Furthermore, LSI objects to this request insofar as discovery is ongoing.  LSI reserves the

25   right to modify or supplement its responses as LSI receives additional information from NXP or

26   third parties, as it performs additional analysis of the facts and legal issues currently known,  as

27   LSI locates additional information, or based on a ruling by the Court.

28

1   under the attorney-client privilege, work product doctrine, settlement privilege, or any other

2   applicable privilege or protection, including Federal Rule of Evidence 408 and the non-disclosure

3   agreement between the parties. LSI objects to this request as premature to the extent it is not

4   directed to information relevant to NXP's licensing defense in this case.

5        LSI further objects to this request as overbroad and unduly burdensome. For example, the

6   requested materials are publicly available to NXP from less burdensome sources. LSI further

7   objects that the phrase "constituting or pertaining to any assertion by any person or entity" is

8   vague and ambiguous, as NXP has not defined "pertaining to" or "constituting."

9        Furthermore, LSI objects to this request insofar as discovery is ongoing. LSI reserves the

10   right to modify or supplement its responses as LSI receives additional information from NXP or

11   third parties, as it performs additional analysis of the facts and legal issues currently known, as

12   LSI locates additional information, or based on a ruling by the Court.

13        Subject to, and without waiving, the foregoing, and the General Objections, LSI will

14   produce non-privileged responsive documents at a mutually agreeable time.

15   **REQUEST FOR PRODUCTION NO. 8.**

16        All documents from any action, litigation, or legal proceeding (including any

17   administrative proceeding) concerning any of the Patents-In-Suit, their foreign counterparts, or

18   related application(s), including but not limited to the cases captioned Agere Systems, Inc. v. Sony

19   Corporation, E.D. Tex. Case No. 2:2006cv00079, and Agere Systems, Inc. v. Atmel Corp., E.D.

20   Penn. Case No. 2:02-cv-00864-LDD.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8.**

22        In addition to the General Objections, which are incorporated fully by reference

23   herein, LSI objects to this request to the extent it calls for information that is protected from

24   discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any

25   other applicable privilege or protection. LSI objects to this request as premature to the extent it is

26   not directed to information relevant to NXP's licensing defense in this case.

27        LSI objects to this request as overbroad and unduly burdensome. For example, the

28   requested materials are publicly available to NXP from less burdensome sources. LSI further

1    objects to this request as vague and ambiguous.  For example, the phrases "from any action,

2    litigation or legal proceeding" and "concerning any of the Patents-in-Suit" are vague and

3    ambiguous.  The phrase "related application" is also vague and ambiguous.

4         LSI objects to this request to the extent that it seeks disclosure of LSI's or any third party's

5    trade secret, proprietary, or other confidential or competitively sensitive information.  LSI reserves

6    the right not to provide any of this information until an appropriate protective order is in place,

7    and/or until it receives appropriate approvals.  LSI will not provide any of this information without

8    consent of the third party.  LSI objects to this request to the extent it calls for information LSI does

9    not have the legal authority to release.  LSI will not disclose any of this information without

10   approval.  LSI objects to this request to the extent it requests information dependent upon

11   documents or other information in the possession, custody and control of NXP or third parties.

12   LSI reserves its right to modify or supplement its responses in view of the discovery of

13   information and review of documents received from NXP or third parties.

14        Furthermore, LSI objects to this request insofar as discovery is ongoing.  LSI reserves the

15   right to modify or supplement its responses as LSI receives additional information from NXP or

16   third parties, as it performs additional analysis of the facts and legal issues currently known, as

17   LSI locates additional information, or based on a ruling by the Court.

18        Subject to, and without waiving, the foregoing, and the General Objections, LSI will meet

19   and confer with NXP in good faith to discuss an appropriate scope of production.

20   **REQUEST FOR PRODUCTION NO.  9.**

21        All documents and things evidencing or relating to the conception, first actual reduction to

22   practice, or diligence between the conception and first actual reduction to practice of any invention

23   claimed in any of the Patents-In-Suit, their foreign counterparts, or related application(s)

24   including, without limitation, any engineering notebooks, laboratory notebooks, log books, records

25   books, memoranda, design reviews, progress reports, technical reports, drawings, schematics,

26   specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures,

27   patent prosecution records, or any other documents or things which LSI contends corroborate the

28   conception.

1   the right not to provide any of this information until an appropriate protective order is in place,

2   and/or until it receives appropriate approvals.  LSI will not provide any of this information without

3   consent of the third party.  LSI objects to this request to the extent it calls for information LSI does

4   not have the legal authority to release.  LSI will not disclose any of this information without

5   approval.  LSI objects to this request to the extent it requests information dependent upon

6   documents or other information in the possession, custody and control of NXP or third parties.

7   LSI reserves its right to modify or supplement its responses in view of the discovery of

8   information and review of documents received from NXP or third parties.

9          Furthermore, LSI objects to this request insofar as discovery is ongoing.  LSI reserves the

10  right to modify or supplement its responses as LSI receives additional information from NXP or

11  third parties, as it performs additional analysis of the facts and legal issues currently known, as

12  LSI locates additional information, or based on a ruling by the Court.

13  **REQUEST FOR PRODUCTION NO. 46.**

14         Any and all license agreements between Taiwan Semiconductor Manufacturing Company

15  Ltd. ("TSMC") and Agere Systems, Inc. or LSI in force from January 1, 2000 to the present.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46.**

17         In addition to the General Objections, which are incorporated fully by reference herein,

18  LSI objects to this request to the extent it calls for information that is protected from discovery

19  under the attorney-client privilege, work product doctrine, settlement privilege, or any other

20  applicable privilege or protection.

21         LSI objects to this request as overbroad and unduly burdensome.  For example, it is not

22  limited to the Patents-In-Suit or related technology.

23         LSI objects to this request to the extent that it seeks disclosure of LSI's or any third party's

24  trade secret, proprietary, or other confidential or competitively sensitive information.  LSI reserves

25  the right not to provide any of this information until an appropriate protective order is in place,

26  and/or until it receives appropriate approvals.  LSI will not provide any of this information without

27  consent of the third party.  LSI objects to this request to the extent it calls for information LSI does

28  not have the legal authority to release.  LSI will not disclose any of this information without

1   approval. LSI objects to this request to the extent it requests information dependent upon

2   documents or other information in the possession, custody and control of NXP or third parties.

3   LSI reserves its right to modify or supplement its responses in view of the discovery of

4   information and review of documents received from NXP or third parties.

5        Furthermore, LSI objects to this request insofar as discovery is ongoing. LSI reserves the

6   right to modify or supplement its responses as LSI receives additional information from NXP or

7   third parties, as it performs additional analysis of the facts and legal issues currently known, as

8   LSI locates additional information, or based on a ruling by the Court.

9        Subject to, and without waiving, the foregoing, and the General Objections, LSI will

10  produce non-privileged responsive documents at a mutually agreeable time.

11  **REQUEST FOR PRODUCTION NO. 47.**

12       All communications with TSMC regarding any of the Patents-In-Suit, NXP, or this action.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 47.**

14       In addition to the General Objections, which are incorporated fully by reference herein,

15  LSI objects to this request to the extent it calls for information that is protected from discovery

16  under the attorney-client privilege, work product doctrine, settlement privilege, or any other

17  applicable privilege or protection. LSI objects to this request as premature to the extent that it is

18  not directed to information relevant to NXP's licensing defense in this case.

19       LSI objects to this request to the extent that it seeks disclosure of LSI's or any third party's

20  trade secret, proprietary, or other confidential or competitively sensitive information. LSI reserves

21  the right not to provide any of this information until an appropriate protective order is in place,

22  and/or until it receives appropriate approvals. LSI will not provide any of this information without

23  consent of the third party. LSI objects to this request to the extent it calls for information LSI does

24  not have the legal authority to release. LSI will not disclose any of this information without

25  approval. LSI objects to this request to the extent it requests information dependent upon

26  documents or other information in the possession, custody and control of NXP or third parties.

27  LSI reserves its right to modify or supplement its responses in view of the discovery of

28  information and review of documents received from NXP or third parties.

1  DATED:  June 16, 2008                    Respectfully Submitted,

2                                            IRELL & MANELLA LLP
3                                            Jonathan H. Steinberg
                                             Samuel K. Lu
                                             Jason G. Sheasby
4                                            C. Maclain Wells

5

6                                            By:    /s/ C. Maclain Wells
                                                    C. Maclain Wells
7                                            Attorneys for Defendant LSI CORPORATION and
                                             Defendant and Counterclaimant AGERE SYSTEMS,
8                                            INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 5

1  IRELL & MANELLA LLP
   Jonathan H. Steinberg (98044)
2  Samuel K. Lu (171969)
   Jason G. Sheasby (205455)
3  C. Maclain Wells (221609)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile: (310) 203-7199
   E-mail: jsteinberg@irell.com
6  E-mail: slu@irell.com
   E-mail: jsheasby@irell.com
7  E-mail: mwells@irell.com

8  Attorneys for Defendant LSI CORPORATION and
   Defendant and Counterclaimant AGERE SYSTEMS, INC.
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13  NXP SEMICONDUCTORS USA, INC.,          ) CASE NO. CV-08-00775 (JW)
                                           )
14              Plaintiff,                 )
                                           )  **LSI CORPORATION'S RESPONSES**
15      vs.                                )  **TO NXP SEMICONDUCTORS USA,**
                                           )  **INC.'S FIRST SET OF**
16  LSI CORPORATION d/b/a LSI LOGIC        )  **INTERROGATORIES**
    CORPORATION, a Delaware Corporation    )
17  and AGERE SYSTEMS, INC., a Delaware    )
    corporation,                           )
18                                         )
                Defendants.                )
19                                         )
    ───────────────────────────────────   )
    AGERE SYSTEMS, INC., a Delaware        )
20  corporation,                           )
                                           )
21              Counterclaimant,           )
                                           )
22      vs.                                )
                                           )
23  NXP SEMICONDUCTORS USA, INC.,          )
    a Delaware corporation, and            )
24                                         )
                Counterclaim-Defendant.    )
25
26
27
28

LSI'S RESPONSES TO NXP'S FIRST SET
OF INTERROGATORIES
CASE NO. CV-08-00775 (JW)

1
2

**RESPONSES TO SPECIFIC INTERROGATORIES**

3  **INTERROGATORY NO. 1**:

4      If you contend that NXP is not licensed to the Patents-In-Suit under the 1987 Patent

5  License Agreement attached as Exhibit 1 to the complaint in this action, as amended by letter

6  attached as Exhibit 2 to the complaint in this action, state all facts supporting that contention.

7  **RESPONSE TO INTERROGATORY NO. 1**:

8      In addition to the General Objections, which are incorporated fully by reference herein,

9  LSI objects to this interrogatory to the extent it calls for information that is protected from

10 discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any

11 other applicable privilege or protection.  LSI objects that this interrogatory is a premature

12 contention interrogatory.  This matter is still in its early stages.  LSI is still analyzing the Patents-

13 In-Suit and the 1987 Patent License Agreement and its amendments, as well as formulating its

14 positions.  LSI reserves the right to modify or supplement its response as it receives additional

15 information from NXP or third parties, as it performs additional analysis of the facts and legal

16 issues currently known, as it locates additional information, or based on a ruling by the Court.

17 Furthermore, LSI objects that NXP has not yet identified any products for which NXP seeks a

18 declaration of non-infringement.  Until NXP identifies such products, it is improper to request that

19 LSI present facts supporting any contention that NXP's products are not licensed under the

20 Patents-In-Suit.  NXP also objects that the phrase "not licensed" is vague and ambiguous.

21      Subject to the foregoing, and the General Objections, LSI responds as follows:

22      NXP must establish that the Patents-In-Suit are within the capture period of the 1987

23 Patent License Agreement or any amendment thereto.

24      Furthermore, NXP's products must satisfy multiple requirements of the 1987 Patent

25 License Agreement to be licensed, including, among others, Section 1.01(a)'s requirement that

26 they be "products and services of the kinds which are furnished or used by PHILIPS or any of its

27 present RELATED COMPANIES in the operation of the business in which it is engaged on the

28 effective date of this Agreement," which entails a factual inquiry.

LSI'S RESPONSES TO NXP'S FIRST SET
OF INTERROGATORIES
CASE NO. CV-08-00775 (JW)                - 7 -

1    Furthermore, NXP must, among other things, satisfy the requirements of the 1995 letter

2    agreement between Jan Galama and M.R. Greene, including Section 1 of the agreement, which

3    entails a factual inquiry.

4    **INTERROGATORY NO. 2:**

5    If any person or entity has ever contended, in litigation or otherwise, that any asserted

6    claims of the LSI Patents-In-Suit or patents related to the LSI Patents-In-Suit are invalid,

7    defective, or unenforceable identify the person(s) so contending, describe each such

8    communication wherein such claim was alleged invalid, and identify (a) the specific prior art

9    mentioned or referenced in the communication, (b) each limitation of each claim of the LSI

10   Patents-In-Suit alleged to have been found in the prior art, (c) any specific combination or

11   combinations of prior art that the person(s) contended rendered the claim obvious to one of

12   ordinary skill, (d) what the person(s) so contending alleged suggested such combination,

13   combinations, and/or motivation to deviate from or combine the art, and (e) any documents

14   relating or referring to the communication.

15   **RESPONSE TO INTERROGATORY NO. 2:**

16   In addition to the General Objections, which are incorporated fully by reference herein,

17   LSI objects to this interrogatory to the extent it calls for information that is protected from

18   discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any

19   other applicable privilege or protection. LSI objects to this interrogatory as seeking information

20   that is publicly available and is equally accessible to NXP from less burdensome sources. LSI

21   objects to this interrogatory as compound and consisting of multiple subparts which properly

22   should be counted as separate interrogatories. LSI objects to this interrogatory as vague and

23   ambiguous. For example, the terms "defective," "related to," and "describe" are vague and

24   ambiguous. LSI also objects to the interrogatory to the extent it calls for information that is in the

25   possession of NXP or third parties not under LSI's control.

26   LSI objects that this interrogatory is premature. This matter is still in its early stages. LSI

27   reserves the right to modify or supplement its response as it receives additional information from

28

1  NXP or third parties, as it performs additional analysis of the facts and legal issues currently

2  known, and as LSI locates additional information, or based on a ruling by the Court.

3       LSI objects to the extent that this interrogatory is not directed to information relevant to

4  NXP's licensing defense in this case.

5       Subject to the foregoing, and the General Objections, LSI responds as follows:

6       LSI will meet and confer with NXP in good faith to determine an appropriate narrowing of

7  this interrogatory.

8  **INTERROGATORY NO. 3:**

9       State all facts relating to LSI's knowledge of prior art (including instances of alleged or

10 actual prior use, sales, or offers for sale), affecting the validity, enforceability, or scope of any

11 claim of any Patent-In-Suit including without limitation the prior art cited during the prosecution

12 of the Patent-In-Suit and all prior art or alleged prior art considered by or on behalf of LSI or

13 brought to the attention of LSI by any other person at any time. For each prior art item state all

14 facts relating to the circumstances by which it was brought to or came to the attention of LSI and

15 identify the LSI employee or representative who first became aware of such item and identify all

16 documents and things relating to any such facts, including without limitation all documents

17 relating to any analysis or study of each such item of prior art or the patentability and/or validity

18 of any claim of the Patent-In-Suit over any such items or prior art.

19 **RESPONSE TO INTERROGATORY NO. 3:**

20      In addition to the General Objections, which are incorporated fully by reference herein,

21 LSI objects to this interrogatory to the extent it calls for information that is protected from

22 discovery under the attorney-client privilege, the work product doctrine, the settlement privilege,

23 or other applicable privileges or protections. LSI objects to this interrogatory as compound and

24 consisting of multiple subparts which properly should be counted as separate interrogatories. LSI

25 objects to this interrogatory as calling for a legal conclusion. LSI objects to this interrogatory as

26 vague and ambiguous. For example, the phrases "LSI's knowledge of prior art," "affecting the

27 validity, enforceability, or scope of any claim of any Patent-In-Suit," "considered by or on behalf

28 of," and "LSI employee or representative" are vague and ambiguous. LSI objects to this

1       Requests for Admission Nos. 18-20, 24 and 26 have been denied. Defendants have

2 asserted infringement counterclaims with respect to the patents mentioned therein.

3       Requests for Admission 14-17, 21-23, and 25 have been denied on the basis that LSI lacks

4 sufficient information on which to base an admission or denial. LSI will supplement its response

5 based upon discovery received in this matter.

6       At a mutually agreeable time, and once a suitable protective order is in place, LSI will

7 identify additional responsive information.

8

9 DATED: June 16, 2008                  Respectfully Submitted,

10                                       IRELL & MANELLA LLP

11                                       Jonathan H. Steinberg
                                      Samuel K. Lu

12                                       Jason G. Sheasby
                                      C. Maclain Wells

13

14                                       By:    /s/ C. Maclain Wells
                                              C. Maclain Wells

15                                       Attorneys for Defendant LSI CORPORATION and
                                      Defendant and Counterclaimant AGERE SYSTEMS,

16                                       INC.

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 6

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
www.morganlewis.com



**Gregg P. Yates**
Associate
415.442.1365
gyates@morganlewis.com

July 11, 2008

**VIA ELECTRONIC AND U.S. MAIL**

C. Maclain Wells
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276

       Re:    NXP Semiconductors USA, Inc. v. LSI Corporation and Agere Systems, Inc.
             No. CV-08-0775 JW

Dear Maclain:

I write on behalf of NXP Semiconductors, USA, Inc. ("NXP") regarding LSI Corporation's
("LSI") responses to NXP's First Set of Interrogatories and First Set of Requests for Production
of Documents and Things, served on or about June 16, 2008.  In short, LSI's responses are
woefully insufficient and incomplete.  In response to each of NXP's discovery requests, LSI has
either refused to provide any substantive response or has postponed responding until a suggested
future meet and confer conference.  These responses do not comply with LSI's obligations under
the Federal Rules of Civil Procedure.

NXP has identified specific insufficient responses below, and requests that LSI supplement these
responses immediately.  NXP specifically reserves its right to compel LSI to provide complete
responses to all of the propounded discovery requests, including those not addressed in this
letter.

**NXP's First Set of Document Requests.**

Patent License Agreement:  As LSI is aware, the parties agreed and the Court ordered that this
matter be litigated in phases.  The first and current phase concerns whether the Patent License
Agreement between the predecessors-in-interest to the current parties, as extended and modified,
grants NXP a license to use certain patents, including patents-in-suit.  As part of this
phasing proposal, "LSI and Agere request[ed] that the Court phase the litigation by allowing
ample time for discovery on licensing-related issues before deadlines for patent disclosures

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP.
C. Maclain Wells
July 11, 2008
Page 2

begin." Joint Case Management Statement at 7. LSI must produce documents responsive to Request Nos. 1, 2, 38, 39, 40, 43, 44, and 46, and do so without further delay.

LSI's objection to these requests on the basis of its own or third party trade secret, proprietary, confidential, or competitively sensitive information does not justify withholding discovery. These objections are inappropriate with respect to NXP's discovery requests relating specifically to the Patent License Agreement. LSI/Agere have acknowledged the validity and effect of this agreement, as extended and modified, and cannot withhold discovery relating to it, including communications between LSI/Agere and NXP, on the ground that the agreement is confidential. The parties have agreed to a protective order to govern this action that protects such interests.

LSI's objection that its discovery is ongoing is not ground to withhold discovery, particularly in light of the phased nature of this litigation. Documents responsive to these requests must be produced immediately.

LSI and Agere Corporate Information and Document Policies; Legal Relationship Between LSI and Agere: Request Nos. 3, 4, 5, and 48 call for basic corporate information. NXP requests that this information be produced without further delay.

LSI's objection to these requests on the ground that this information is confidential is not well-taken in light of the parties' protective order. Moreover, LSI's objection that its investigation is ongoing does not excuse withholding basic discovery regarding LSI's document retention policies and its corporate structure and relationships. This discovery is foundational, readily accessible to both LSI and Agere, and must be produced immediately.

Validity of the Patents-in-Suit: Request Nos. 7 and 8 seek basic information pertaining to the validity of the patents-in-suit, including litigation over these issues. NXP is aware of at least one proceeding in which a patent-in-suit has been found invalid. NXP is entitled to discovery into other instances where LSI/Agere have asserted or litigated the patents-in-suit. LSI's objection on the basis of privilege is not well-taken. Assertions of invalidity regarding the patents-in-suit from third-parties or public filings from public legal proceedings cannot be considered privileged and are discoverable. Documents responsive to these requests must be produced without further delay.

Ownership, Assignment, & Control of the Patents-in-Suit: Request Nos. 10 and 11 concern the ownership, assignment and control of the patents-in-suit. This information is foundational and necessary at this phase of the litigation to determine the scope of the terms and coverage of the Patent License Agreement. LSI's objection that discovery is ongoing does not support withholding this discovery at this phase of litigation. Neither are LSI's objections on the basis of confidentiality well taken in light of the parties' protective order. Documents responsive to these requests must be produced immediately.

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP.
C. Maclain Wells
July 11, 2008
Page 3

Prosecution Histories:  Request Nos. 21 and 22 concern the complete prosecution histories of the
patents-in-suit.  These are reasonable requests and necessary information for NXP to prepare its
case at this phase.  LSI must produce documents responsive to these requests immediately.

Infringement Contentions:  Request Nos. 29-37 concern Agere's infringement contentions
against NXP and others.  This is basic information that NXP requires to ascertain the products
that Agere alleges infringe the patents-in-suit.  This is particularly relevant to the license phase of
this litigation to determine whether and to what extent the accused products themselves represent
uses covered by the Patent License Agreement.

LSI responds to NXP's reasonable requests for documents supporting Agere's infringement
contentions with boilerplate objections and a vague promise to "meet and confer in good
faith . . . to discuss a proper scope of production."  This response does not satisfy LSI's
obligations under the Federal Rules of Civil Procedure.  LSI's objections on the basis of
overbreadth and undue burden are not well-taken; the patents-in-suit have been identified, and
LSI/Agere are aware of the products or processes they claim infringe these patents-in-suit.  LSI's
objections on the basis of confidentiality are addressed by the protective order.  Documents
responsive to Request Nos. 29-37 must be produced without further delay.

TSMC License Agreement:  Requests 46-47 seek license agreements and related
communications between LSI and TSMC.  This information is non-privileged and relevant to
this dispute.  LSI's objections on the basis of confidentiality are not well-taken in light of the
parties' protective order.  LSI's objection on the ground that discovery is ongoing does not
excuse withholding these documents, and they must be produced without further delay.

Specific Pre-Litigation Communications Between LSI and NXP:  Request Nos. 49-52 concern
documents referring or relating to pre-litigation negotiations between LSI/Agere and NXP
regarding LSI/Agere's accusations of infringement.  Requests 49 and 50 in particular focus on
two specific, pre-litigation demands by LSI/Agere regarding their accusations of infringement.
These two demands, as well as the course of dealing and negotiations between the parties
generally, are directly relevant to NXP's license defense, and NXP is entitled to this discovery.
LSI did not respond to these requests, other than to object on the ground of privilege and to note
that discovery is ongoing.  LSI's objections are not well taken.  Privileged communications
notwithstanding, these two communicated demands implicate significant non-privileged analysis
and business review.  LSI's observation that discovery is ongoing is not grounds for withholding
responsive, relevant discovery.  LSI requests that documents responsive to Request Nos. 49-52,
including but not limited to documents relating to the specific demands identified in Requests 49
and 50, be produced without further delay.

LSI and Agere's Defenses:  Request Nos. 53-56 concern LSI and Agere's defenses to NXP's
request for Declaratory Judgment such as standing, estoppel, laches, and failure to join a
necessary party.  To the extent that LSI and Agere seek to raise these defenses as a bar to NXP's

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP.
C. Maclain Wells
July 11, 2008
Page 4

litigation, this discovery is relevant to this dispute and the license phase of this litigation and must be produced promptly.

LSI objected to Request Nos. 53 and 56, regarding LSI's argument that the Court lacks subject matter jurisdiction and that NXP failed to join necessary parties, as "irrelevant" on the ground that NXP "served an Amended Complaint for Declaratory Relief & Demand for Jury Trial." NXP takes this objection to be a concession that LSI will not assert defenses of subject matter jurisdiction or failure to join necessary parties in this action. If this is not the case, please confirm.

### NXP's First Set of Interrogatories.

LSI's responses to NXP's interrogatories similarly fail to satisfy LSI's discovery obligations under the Federal Rules of Civil Procedure.

Interrogatory 1:  LSI must immediately supplement its response to these interrogatories. NXP is entitled to LSI's contentions as to why the products accused by LSI are not licensed. LSI's response improperly alleges what "NXP must establish" without revealing any of LSI's positions as to why the products are not licensed.

Interrogatories 2, 8, and 9:  LSI/Agere have asserted at least one patent against NXP that has been found to be invalid. NXP is entitled to discovery from LSI/Agere regarding other instances where the patents-in-suit have been asserted or found to be invalid. This information is relevant, non-privileged, and known to LSI and Agere. This interrogatory must be responded to immediately.

Interrogatory 11:  NXP seeks information relating to the ownership and control of the patents-in-suit. This is foundational information that is particularly relevant at this phase of the litigation, which is focused on NXP's license defense. LSI's promise to withhold documents or information regarding the identity of persons who previously held any ownership interest in the patents-in-suit is improper. The parties have agreed to a protective order. NXP demands that this information be provided immediately.

Interrogatory 14:  NXP seeks information relating to LSI's laches/estoppel defenses to NXP's Declaratory Judgment claims. To the extent that LSI and Agere seek to raise these defenses as a bar to NXP's litigation, this discovery is relevant to this dispute and the license phase of this litigation and must be answered promptly. LSI's objection that it is "investigating additional basis [sic] for this contention" does not satisfy LSI's obligations under the Federal Rules of Civil Procedure.

The foregoing interrogatories are directly relevant to the current license phase of this litigation. Accordingly, NXP requests a timely and complete response to these interrogatories.

Irell & Manella LLP.
C. Maclain Wells
July 11, 2008
Page 5

**Morgan Lewis**
COUNSELORS AT LAW

In sum, NXP requests that LSI promptly provide complete responses to its discovery requests, as outlined above. The foregoing is not intended to be an exclusive or complete catalog of the deficiencies with LSI's discovery responses. NXP's review of LSI's discovery responses, including the documents produced by LSI to date, is ongoing. NXP reserves its right to compel complete responses to all of its discovery requests.

As discussed in my earlier email correspondence, we would like to meet and confer regarding the parties' respective discovery issues on Tuesday, July 15, 2008. We propose a conference call at 2:00 p.m. We will follow-up with dial-in information.

Very truly yours,

Gregg P. Yates

# EXHIBIT 7

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

**Mark W. Taylor**
202.739.5030
mark.taylor@morganlewis.com

July 18, 2008

## VIA ELECTRONIC AND U.S. MAIL

C. Maclain Wells
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

      Re:    NXP Semiconductors USA, Inc. v. LSI Corporation and Agere Systems, Inc.
               No. CV-08-0775 JW

Dear Maclain:

I write on behalf of NXP Semiconductors USA, Inc. ("NXP") to confirm our understanding of topics discussed during our July 15, 2008 teleconference, during which we met and conferred regarding discovery issues.

The parties agree that the protective order is effectively in place, even if it has not yet been signed by Judge Ware, and document production should commence by July 29, 2008. The parties will provide privilege logs, exclusive of privileged documents prepared by, for, or at the direction of litigation counsel and their agents. The parties agree to produce to the other party all documents obtained from third parties pursuant to a subpoena.

LSI confirmed that its agreement to produce documents includes an agreement to produce documents in Agere's possession, custody, or control, and therefore, that duplicate sets of discovery need not be served on Agere by NXP. The parties agreed that, in responding to discovery requests, LSI and Agere will conduct reasonable searches of documents in their possession, custody, or control from AT&T or Lucent, and NXP will conduct reasonable searches of documents in its possession, custody, or control from Philips.

The parties further agree that the phasing of the litigation and resulting schedule dictate that discovery be taken first on the licensing issue, without prejudice to the right of the parties to seek additional discovery during subsequent phases. NXP has reasonably limited its current requests to the production by LSI and Agere of simple background information and information relevant to the licensing issue. LSI and Agere, on the other hand, seek documents and interrogatory

DB2/20766660



Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 2

responses from NXP that far exceed any reasonable interpretation of the scope of the current phase of this litigation.

**NXP's Discovery Responses**

As we explained during the teleconference, NXP does not have access to Philips' facilities. Indeed, the overwhelming majority of Philips' information and documents are not in the possession, custody, or control of NXP. However, those non-privileged documents that are responsive to LSI's discovery requests and are in NXP's possession, custody, or control will be produced to the extent they are relevant to the current stage of this litigation.

That said, LSI and Agere seek an inordinate amount of irrelevant and burdensome production from NXP relating to NXP and Philips products. It is both irrational and unreasonable to expect NXP to provide documentation that identifies and describes each and every one of NXP's 50,000+ licensed products (not to mention every iteration of those products going back, in some cases, to 1985), along with design, manufacture, and sale dates for each. NXP by no means has the burden to make an individualized showing that each and every product is covered by the license.

For these reasons, we proposed during out teleconference that the parties agree to proceed with discovery on the basis of representative products, namely those identified by LSI and Agere prior to this litigation, to narrow the scope of discovery to a reasonable and manageable level. Surprisingly, this proposal was rejected by you out of hand. You further declined our request that LSI/Agere consider proposing alternative representative products.

After revisiting the issue and considering your comments, we believe that our proposal is quite fair and clearly is the most reasonable suggestion to date. To clarify, NXP proposes to proceed using the representative products identified by LSI and Agere prior to this litigation, and when appropriate, to provide lists of products for which they are representative, rather than litigating over and asking the Court to adjudicate each product individually.

In order to further evaluate your proposal that representative products from Philips' 1987 products be identified, please explain: (i) how this is necessary or helpful; (ii) what advantages it presents beyond those presented by our proposal; and (iii) how it addresses the concerns dealt with by our proposal.

NXP's Interrogatory Responses

NXP agrees to supplement Interrogatory No. 1 to identify person(s), to the extent such persons exist, knowledgeable about: (i) what third parties manufacture products for NXP and which

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 3

products they manufacture; and (ii) material differences between Philips' July 1987 products and NXP's current products. In lieu of identifying an individual knowledgeable about the patents-in-suit, NXP agrees to stipulate that the '180, '335, '739, '672, '958, '500, '748, and '928 patents are captured by the Patent License Agreement at issue, and that the remaining patents-in-suit, the '182, '777, '149, '543, and '184 patents, fall outside of the capture period of the Patent License Agreement and, therefore, are not at issue during this phase of the litigation.

In addition to the irrelevance of the comprehensive product-related discovery requested in LSI's discovery requests, it would be unreasonable to expect NXP to provide such discovery on all of NXP's products, let alone all of Philips' products. Further, as explained during our teleconference, product data sheets for all of NXP's products are publicly available. Accordingly, once an agreement is reached regarding representative products, NXP will supplement its responses to Interrogatory Nos. 2, 3, and 4 as appropriate. Interrogatory No. 5 will be supplemented to the extent NXP has any responsive, relevant information in its possession, custody, or control.

If NXP has any non-privileged communications responsive to Interrogatory No. 6 and related to this phase of the litigation, our response will be supplemented. Finally, with regard to Interrogatory Nos. 12-15 and 17, NXP agrees to examine the feasibility of providing lists of products with the recited features. The parties agreed that the subject matter of Interrogatory Nos. 7-11 and 16 is not relevant to this stage of the litigation.

        NXP's Responses to Requests for Production

NXP's objections, on the basis of work product and attorney-client privilege, stand with respect to Request No. 2.

NXP agrees to provide appropriate documents responsive to Request No. 5 once an agreement is reached with regard to representative products. Request Nos. 6, 7, and 8, however, are beyond the scope of the current phase of this litigation, and appropriate responsive documents may be produced during a later phase of this litigation.

In accordance with Request No. 11, NXP will produce all non-privileged documents relating to the interpretation of the Patent License Agreement. To the extent they are within the possession, custody, or control of NXP, we will also produce copies of agreements responsive to Request Nos. 13 and 14 to the extent they are related to the patents-in-suit or the Patent License Agreement.

Subject to NXP's objections regarding the relevance and public availability of this information, NXP will produce relevant documents responsive to Request Nos. 15, 16, and 18, to the extent



Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 4

any such documents are in the possession, custody, or control of NXP. Request Nos. 17, 19, 20, and 21, however, should be addressed after we have reached a mutually acceptable agreement regarding representative products.

**LSI Discovery Responses**

      <u>LSI and Agere's Responses to Requests for Production</u>

LSI and Agere agreed to collect and produce all non-privileged documents responsive to Request Nos. 1, 2, 38, and 39, including but not limited to all pre-litigation communications between the parties, as long as those documents are at least tangentially related to the Patent License Agreement issue. This agreement also includes any documents in files Agere may have received from Lucent regarding the original 1987 license agreement or the 1995 amendment thereto.

LSI agreed to produce any non-privileged documents responsive to Request No. 40 to the extent they are related to the license issue.

LSI and Agere agreed to collect and produce all documents responsive to Request Nos. 43, 44, 46, and 47 – including but not limited to any license agreements with TSMC and associated communications – that relate to this action, the patents-in-suit, or the Patent License Agreement. Likewise, LSI and Agere agreed to produce all documents responsive to Request Nos. 3, 4, 5, and 48. NXP agrees that a description is not necessary for the duties of every employee of LSI and Agere in response to Request No. 4.

<u>NXP proposes to narrow the scope of Request Nos. 7 and 8 (and Interrogatory Nos. 2, 8, and 9) for this stage of the litigation only. For now, NXP requests identification of litigations or other proceedings in which the validity of any of the patents-in-suit has been challenged or overturned. NXP reserves its right to seek further responses to all requests during later phases of this litigation.</u>

With regard to Request Nos. 10 and 11, LSI and Agere agreed to collect and produce all non-privileged documents reflecting the ownership or transfer of the patents-in-suit, including but not limited to the transfer from Lucent or AT&T to Agere and LSI and the divestiture of Agere from Lucent. LSI and Agere further agreed to produce documents that mention any licenses to which the patents-at-issue were subject at the time of transfer.

In response to Request Nos. 21 and 22, LSI and Agere agreed to produce copies of the prosecution histories of the patents-in-suit. LSI and Agere will also collect and produce documents responsive to Request No. 54 to the extent they involve the licensing issue.

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 18, 2008
Page 5

### LSI and Agere's Interrogatory Responses

As discussed during our teleconference, LSI/Agere's assertion that NXP bears the ultimate burden of persuasion on the license issue does not relieve LSI or Agere of their obligations to respond fully to Interrogatory No. 1. LSI and Agere must explain fully their contentions regarding the Patent License Agreement and the bases therefor. Your refusal to supplement this response until documents are produced is improper, especially in light of the fact that LSI and Agere have clearly developed and articulated positions regarding the interpretation of the Patent License Agreement to which NXP is entitled discovery. For example, you stated during the teleconference that changes in a process from 1987 to the present would be indicative of changes in the kind of products. However, you have not expressed such a theory in response to Interrogatory No. 1, nor have you provided NXP with Agere and LSI's interpretations of terms from the Patent License Agreement such as "products" and "of the kind," or any basis for your contention that NXP is not licensed. Therefore, LSI and Agere must immediately supplement their response to Interrogatory No. 1, or NXP will move to compel such supplementation.

LSI and Agere agreed to supplement their response to Interrogatory No. 11 to identify assignment documents produced pursuant to Request for Production Nos. 10 and 11.

Finally, NXP again requests supplementation of Interrogatory No. 14. As we discussed during our teleconference, LSI and Agere must identify any additional bases for their laches and estoppel contentions. The license issue is not a new one, and NXP is entitled to discovery of any additional bases of which LSI and Agere are aware. Furthermore, the statement in LSI's response regarding the payment of royalties is not clear and needs further explanation. During the teleconference, you explained LSI's theory that NXP's declaratory judgment claims of invalidity may be barred if NXP prevails on the Patent License Agreement issue. NXP requests that you supplement the response to Interrogatory No. 14 to confirm that this is the only purported basis that LSI and Agere have for its laches and/or estoppel argument.

Very truly yours,

Mark W. Taylor

DB2/20766660

# EXHIBIT 8

1  IRELL & MANELLA LLP
   Jonathan H. Steinberg (98044)
2  Samuel K. Lu (171969)
   Jason G. Sheasby (205455)
3  C. Maclain Wells (221609)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile:  (310) 203-7199
   E-mail: jsteinberg@irell.com
6  E-mail: slu@irell.com
   E-mail: jsheasby@irell.com
7  E-mail: mwells@irell.com

8  Attorneys for Defendant LSI CORPORATION and
   Defendant and Counterclaimant AGERE SYSTEMS, INC.
9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                           SAN JOSE DIVISION

13  NXP SEMICONDUCTORS USA, INC.,          ) CASE NO. CV-08-00775 (JW & RS)
                                           )
14            Plaintiff,                   )
                                           ) **LSI CORPORATION'S FIRST**
15     vs.                                 ) **SUPPLEMENTAL RESPONSES TO**
                                           ) **NXP SEMICONDUCTORS USA,**
16  LSI CORPORATION d/b/a LSI LOGIC        ) **INC.'S FIRST SET OF**
    CORPORATION, a Delaware Corporation    ) **INTERROGATORIES (NOS. 1, 11**
17  and AGERE SYSTEMS, INC., a Delaware    ) **AND 14)**
    corporation,                           )
18                                         )
              Defendants.                  )
19  ─────────────────────────────────     )
    AGERE SYSTEMS, INC., a Delaware        )
20  corporation,                           )
                                           )
21            Counterclaimant,             )
                                           )
22     vs.                                 )
                                           )
23  NXP SEMICONDUCTORS USA, INC.,          )
    a Delaware corporation, and            )
24                                         )
              Counterclaim-Defendant.      )
25  ─────────────────────────────────

26

27

28

    LSI'S RESPONSES TO NXP'S FIRST SET
    OF INTERROGATORIES
    CASE NO. CV-08-00775 (JW & RS)                              1903575

1

2

### SUPPLEMENTAL RESPONSES TO INTERROGATORIES NOS. 1, 11 AND 14

3 **INTERROGATORY NO. 1**:

4    If you contend that NXP is not licensed to the Patents-In-Suit under the 1987 Patent

5 License Agreement attached as Exhibit 1 to the complaint in this action, as amended by letter

6 attached as Exhibit 2 to the complaint in this action, state all facts supporting that contention.

7 **RESPONSE TO INTERROGATORY NO. 1**:

8    In addition to the General Objections, which are incorporated fully by reference herein,

9 LSI objects to this interrogatory to the extent it calls for information that is protected from

10 discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any

11 other applicable privilege or protection. LSI objects that this interrogatory is a premature

12 contention interrogatory. This matter is still in its early stages. LSI is still analyzing the Patents-

13 In-Suit and the 1987 Patent License Agreement and its amendments, as well as formulating its

14 positions. LSI reserves the right to modify or supplement its response as it receives additional

15 information from NXP or third parties, as it performs additional analysis of the facts and legal

16 issues currently known, as it locates additional information, or based on a ruling by the Court.

17 Furthermore, LSI objects that NXP has not yet identified any products for which NXP seeks a

18 declaration of non-infringement. Until NXP identifies such products, it is improper to request that

19 LSI present facts supporting any contention that NXP's products are not licensed under the

20 Patents-In-Suit. NXP also objects that the phrase "not licensed" is vague and ambiguous.

21    Subject to the foregoing, and the General Objections, LSI responds as follows:

22    NXP must establish that the Patents-In-Suit are within the capture period of the 1987

23 Patent License Agreement or any amendment thereto.

24    Furthermore, NXP's products must satisfy multiple requirements of the 1987 Patent

25 License Agreement to be licensed, including, among others, Section 1.01(a)'s requirement that

26 they be "products and services of the kinds which are furnished or used by PHILIPS or any of its

27 present RELATED COMPANIES in the operation of the business in which it is engaged on the

28 effective date of this Agreement," which entails a factual inquiry.

1         Furthermore, NXP must, among other things, satisfy the requirements of the 1995 letter

2    agreement between Jan Galama and M.R. Greene, including Section 1 of the agreement, which

3    entails a factual inquiry.

4    **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

5         Subject to the foregoing, and the General Objections, LSI further responds as follows:

6         NXP bears the burden of proof on this issue.

7         NXP has failed to identify which of the Patents-In-Suit it contends are within the capture

8    period of the 1987 PLA and has failed to establish that such patents are within the capture period

9    of the 1987 PLA.

10         NXP has failed to establish that the patents assigned to Lucent upon its divestment from

11    AT&T, which were subsequently assigned to Agere upon its divestment from Lucent, are limited

12    by the 1987 PLA.

13         Furthermore, NXP has failed to demonstrate that its products satisfy the requirements of

14    the 1987 Patent License Agreement, including, among others, Section 1.01(a)'s requirement that

15    they be "products and services of the kinds which are furnished or used by PHILIPS or any of its

16    present RELATED COMPANIES in the operation of the business in which it is engaged on the

17    effective date of this Agreement." In particular, NXP must, for each product that was sold by

18    Philips as of July 1, 1987 (a "historical Philips Product"):

19         (a) Identify what businesses these products were sold in; and

20         (b) Define the methods of manufacture, designs, functions, and uses of the products.

21    Then, for current NXP products, NXP must:

22         (1) Identify what businesses the products are sold in; and

23         (2) Define the methods of manufacture, designs, functions, and uses of the products.

24    For a current NXP product to be licensed, a necessary condition is for NXP to compare (1) and (2)

25    to (a) and (b) and establish a match.

26         Furthermore, NXP must, among other things, satisfy the requirements of the 1995 letter

27    agreement between Jan Galama and M.R. Greene, including Section 1 of the agreement, which

28

1    entails a factual inquiry. This includes establishing that each current NXP product "[is]

2    substantially similar to products and services sold by it prior to its divestiture."

3        Furthermore, NXP must establish satisfaction of the requirement that "sublicenses may be

4    granted and retained only while the future divested business operates as a separately identifiable

5    business and not for any existing or other acquired business of a third party acquiring the future

6    divested business." NXP has failed to provide any information demonstrating that this obligation

7    has been satisfied. In particular, LSI requires information regarding communications and

8    documents exchanged between NXP and Philips Electronics N.V. regarding the 1987 PLA and

9    information regarding the nature of the process of divestment of NXP from Philips Electronics

10   N.V.

11   **INTERROGATORY NO. 11**:

12       Identify all persons who have, or previously held, any interest in the LSI Patents-In-Suit,

13   any patents or patent applications related to the LSI Patents-In-Suit, and any foreign counterparts

14   to the LSI Patents-In-Suit.

15   **RESPONSE TO INTERROGATORY NO. 11**:

16       In addition to the General Objections, which are incorporated fully by reference herein,

17   LSI objects to this interrogatory to the extent it calls for information that is protected from

18   discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any

19   other applicable privilege or protection. LSI further objects to this interrogatory as vague and

20   ambiguous. For example, the phrase "any interest" is vague and ambiguous. LSI further objects

21   to this interrogatory as overbroad and unduly burdensome as it is not limited to the Patents-In-

22   Suit.

23       LSI objects to this interrogatory as premature. This matter is still in its early stages. LSI

24   reserves the right to modify or supplement its response as it receives additional information from

25   NXP or third parties, as it performs additional analysis of the facts and legal issues currently

26   known, and as LSI locates additional information, or based on a ruling by the Court.

27       Subject to the foregoing, and the General Objections, LSI responds as follows:

28

1 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14**:

2 |     Subject to the foregoing, and the General Objections, LSI further responds as follows:

3 |     Because the 1987 PLA does not require the payment of royalties, if NXP establishes that

4 | one or more of the Patents-In-Suit are licensed under the 1987 PLA, licensee estoppel prevents

5 | NXP from pursuing invalidity claims against such patents.

6 |

7 |

8 | DATED:  August 5, 2008                    Respectfully Submitted,

9 |                                          IRELL & MANELLA LLP
                                             Jonathan H. Steinberg
10 |                                         Samuel K. Lu
                                             Jason G. Sheasby
11 |                                         C. Maclain Wells

12 |

13 |                                         By:____/s/ C. Maclain Wells_____
                                                      C. Maclain Wells

14 |
                                             Attorneys for Defendant LSI CORPORATION and
15 |                                         Defendant and Counterclaimant AGERE SYSTEMS,
                                             INC.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# EXHIBIT 9

**Summers, Zach**

| | |
|---|---|
| **From:** | Wells, Maclain |
| **Sent:** | Friday, August 08, 2008 3:31 PM |
| **To:** | #LSI NXP/litigation [Int] |
| **Subject:** | FW: Expedited Schedule For Motion To Compel |

**From:** Brett M. Schuman [mailto:bschuman@morganlewis.com]
**Sent:** Friday, August 08, 2008 3:23 PM
**To:** Wells, Maclain
**Cc:** NXP0029@morganlewis.com
**Subject:** RE: Expedited Schedule For Motion To Compel

Maclain,

We shocked that you're shocked. We have been "meeting and conferring" with you since July 11 and have made it very clear what we are seeking from LSI/Agere both by way of documents and interrogatory responses. In addition to a three-plus hour call with you on July 15, we have sent you letters dated July 11 and July 18 setting forth our position, and Mark Taylor has sent you emails including, but not limited to, his July 25, 2008 email regarding the timing of any motion to compel.

When we spoke today about the email exchange below, I told you NXP will not agree to your proposed expedited schedule unless LSI agrees to expedite the schedule for NXP's motion. Both sides are subject to the same MSJ schedule that is the express basis for your request for an expedited briefing schedule on the discovery motion. You agreed to reconsider your position after seeing our motion. We look forward to your response.

Brett

Brett M. Schuman
Morgan, Lewis & Bockius LLP

"Wells, Maclain" <MWells@irell.com>

| | |
|---|---|
| **"Wells, Maclain"** <MWells@irell.com> | To"~Schuman, Brett" <bschuman@morganlewis.com> |
| | cc"NXP0029@morganlewis.com" <NXP0029@morganlewis.com> |
| 08/08/08 01:59 PM | SubjectRE: Expedited Schedule For Motion To Compel |

Dear Brett:

We are shocked that you would be threatening to file a motion to compel against LSI. We are not aware of any outstanding disputes regarding our discovery responses. Indeed, we believe that the only question NXP has outstanding to us is the status of the TSMC license referenced in your August 6 letter. We have asked TSMC's permission to produce the agreement, which is subject to confidentiality obligations. TSMC has referred the matter to outside counsel and we

are awaiting a response. We will keep you updated.

If there are any other concerns NXP has that it believes merit a motion to compel, please tell us what they are and we will address them.

Based on the above, we cannot agree to expedited briefing of an NXP motion that we have not seen and we believe is improper. Will NXP, however, agree to expedited briefing on our motion?

Thank you,
Maclain

---

**From:** Brett M. Schuman [mailto:bschuman@morganlewis.com]
**Sent:** Friday, August 08, 2008 1:45 PM
**To:** Wells, Maclain
**Cc:** NXP0029@morganlewis.com
**Subject:** Re: Expedited Schedule For Motion To Compel

We will be filing NXP's motion to compel on Monday. Will you agree that our motion will be briefed and heard on the same schedule as you've proposed below?

Brett M. Schuman
Morgan, Lewis & Bockius LLP

"Wells, Maclain" <MWells@irell.com>

| "Wells, Maclain"<br>&lt;MWells@irell.com&gt; | "~Schuman, Brett"<br>To&lt;bschuman@morganle<br>"NXP0029@morganle |
|---|---|
| 08/08/08 11:28 AM | cc&lt;NXP0029@morganle<br>Expedited Schedule Fo<br>SubjectTo Compel |

Dear Brett:

On Wednesday, August 6 we filed a motion to compel NXP to produce certain discovery relating to the license defense. Given the short amount of time left until summary judgment motions are due on the license defense, and given the large amount of information that NXP has refused to produce, we request that NXP agree to a stipulated motion to expedite the briefing and hearing of our motion. We propose that NXP file its opposition by Friday, August 15, that we file a reply by Wednesday, August 20, and that the Court hear the motion on Wednesday, August 27.

Please let us know if NXP will agree to this proposal.

Regards,
Maclain

ccmailg.irell.com made the following annotations------------------------
--------------------------------------------PLEASE NOTE: This message,
including any attachments, may include privileged, confidential
and/or inside information. Any distribution or use of this
communication by anyone other than the intended recipient(s) is
strictly prohibited and may be unlawful. If you are not the intended
recipient, please notify the sender by replying to this message and
then delete it from your system. Thank you.

------------------------------------------------------------------

DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged
and confidential.  If you are not an intended recipient,
you may not review, copy or distribute this message. If
you have received this communication in error, please
notify us immediately by e-mail and delete the original
message.

ccmailg.irell.com made the following annotations--------------------------------------------------
------------------PLEASE NOTE: This message, including any attachments, may include
privileged, confidential and/or inside information. Any distribution or use of this
communication by anyone other than the intended recipient(s) is strictly prohibited and may
be unlawful. If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.

------------------------------------------------------------------

DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged

8/26/2008

and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

# EXHIBIT 10

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7656
FACSIMILE (310) 556-5382
MWELLS@IRELL.COM

August 8, 2008

**VIA E-MAIL**

bschuman@morganlewis.com
Brett M. Schuman
One Market, Spear Street Tower
San Francisco, CA 94105-1126

  Re:  <u>NXP v. LSI and Agere</u>

Dear Brett:

  I write regarding your e-mail today indicating NXP's intention to file a motion to compel on Monday, August 11 and our subsequent telephone discussion today regarding the same. The Civil Local Rules require that counsel meet and confer "in good faith" for "the purpose of attempting to resolve all disputed issues" prior to filing a motion to compel. Civil Local Rule 1-5(n), 37-1(a). NXP has not fulfilled its obligations to meet and confer in good faith. In particular:

  <u>During our telephone discussion, you stated that NXP intends to move for additional information regarding LSI's contention the certain NXP products are not licensed under the 1987 PLA. LSI provided a supplemental interrogatory response on this topic on August 5, 2008. That response reflects LSI's contentions at this time. It is unclear what additional information NXP expects or desires. Moreover, we believe that we have addressed the concerns NXP expressed regarding our original response. If you can tell us what additional information you seek, we will of course confirm promptly if we can provide the requested information and provide a date certain by which we will supplement, if we in fact can do so.</u>

  <u>You also stated that you will seek production of the patent license agreement between TSMC and LSI. I have informed you that we have asked TSMC for its consent to produce this document and will produce the document once that consent is received.</u>

  <u>You also indicated that there are other categories of materials detailed in your discovery letters for which NXP will seek to compel production. When asked what those other categories of materials are, you refused to provide further details.</u>

  As you know, LSI completed a substantial production of materials on July 29, 2008. We have also indicated that LSI's collection of responsive materials is on-going and additional productions will be forthcoming as such materials are located, reviewed and

1912528

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Brett M. Schuman
August 8, 2008
Page 2

processed. It is our belief that LSI has taken reasonable efforts to collect and produce materials relevant to NXP's licensing defense and fulfilled its obligations under the applicable rules.

As previously stated, if NXP believes that there are specific categories of documents or information that LSI has not produced, we will be happy to address NXP's concerns and share with you our current anticipated timeline for additional productions.

On the other-hand, if you proceed with filing a motion to compel on these topics, we reserve the right to seek appropriate discovery sanctions.

Sincerely,

/s/ C. Maclain Wells

C. Maclain Wells

1912528

# EXHIBIT 11

1    MORGAN, LEWIS & BOCKIUS LLP
      MICHAEL E. MOLLAND, State Bar No. 111830
2    DANIEL JOHNSON, JR., State Bar No. 57409
      BRETT M. SCHUMAN, State Bar No. 189247
3    GREGG P. YATES, State Bar No. 224641
      One Market, Spear Street Tower
4    San Francisco, CA 94105-1126
      Tel: 415.442.1000
5    Fax: 415.442.1001
      E-mail: mmolland@morganlewis.com
6    E-mail: djjohnson@morganlewis.com
      E-mail: bschuman@morganlewis.com
7

8    Attorneys for Plaintiff
      NXP SEMICONDUCTORS USA, INC.

9

10                  UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13    NXP SEMICONDUCTORS USA, INC.,      Case No. C 08-00775 JW
      a Delaware corporation,

14                             **PLAINTIFF NXP SEMICONDUCTORS**
              Plaintiff,          **USA, INC.'S SUPPLEMENTAL**
15                             **RESPONSES TO LSI'S FIRST SET OF**
          vs.                  **INTERROGATORIES**
16

17    LSI CORPORATION d/b/a LSI LOGIC
      CORPORATION, a Delaware corporation,
      and AGERE SYSTEMS, INC. a Delaware
18    corporation,

19               Defendants.

20

21         Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules

22 for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc. ("NXP"), hereby

23 responds to Defendants LSI Corporation and Agere Systems Inc.'s ("LSI") First Set of

24 Interrogatories (Nos. 1-17), served on May 21, 2008 as follows:

25                            **GENERAL OBJECTIONS:**

26         1.      As preliminary and general objections to LSI's First Set of Interrogatories, NXP

27 objects to each interrogatory to the extent that it calls for information contained in notes,

28

DB2/20778519.2

1       10.     To the extent that LSI's First Set of Interrogatories call for NXP to identify

2    responsive documents, NXP reserves the right to amend its interrogatory responses as its

3    document collection progresses and it becomes aware of the identity of those documents.

4

5                              **INTERROGATORIES**

6    **INTERROGATORY NO. 1:**
             IDENTIFY the NXP employee most knowledgeable about each of the following
7    categories: (1) each of the manufacturing lines used to manufacture NXP products, including but
     not limited to the manufacturing lines owned in whole or in part by THIRD PARTIES; (2) the
8    differences between products sold by NXP on July 1, 1987 and NXP products currently offered
     for sale; and (3) the PATENTS-IN-SUIT.
9

10   **RESPONSE TO INTERROGATORY NO. 1:**

11           As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

12   to this interrogatory as overly broad and premature in that it requests information outside the

13   scope of the current phase of litigation as agreed by the parties and is not related to the terms and

14   coverage of the Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the

15   grounds that it is vague and ambiguous as to the phrase "manufacturing line"; this interrogatory is

16   also ambiguous in that it does not specify a person most knowledgeable about the technical or

17   legal significance of the Patents-In-Suit.  NXP also objects to this interrogatory as unduly

18   burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that

19   it requests identifications and information about NXP products that have not been accused by LSI

20   of infringing an asserted Patent-In-Suit, and therefore may lie outside the potential scope of the

21   asserted Patents-In-Suit.  Subject to, and without waiving the foregoing objections, NXP responds

22   as follows:

23           The following NXP employees are most knowledgeable about the following topics:

24           Rutger Wijburg: Manufacturing of NXP semiconductor products.

25           Luca Lo Coco: Manufacture of NXP products with phase locked loops.

26           Pieter Hoojimans: Differences between products sold by NXP.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2                                    4

1    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

2              As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3    to this interrogatory as overly broad and premature in that it requests information outside the

4    scope of the current phase of litigation as agreed by the parties and is not related to the terms and

5    coverage of the Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the

6    grounds that it is vague and ambiguous as to the phrase "manufacturing line"; this interrogatory is

7    also ambiguous in that it does not specify a person most knowledgeable about the technical or

8    legal significance of the Patents-In-Suit.  NXP also objects to this interrogatory as unduly

9    burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that

10   it requests identifications and information about NXP products that have not been accused by LSI

11   of infringing an asserted Patent-In-Suit, and therefore may lie outside the potential scope of the

12   asserted Patents-In-Suit.

13             Subject to, and without waiving the foregoing objections, NXP responds as follows:

14   1.       Rutger Wijburg (manufacturing of NXP semiconductor products); Luca Lo Coco

15   (manufacturing of NXP products with phase locked loops).

16   2.       NXP agrees to identify an appropriate witness to testify at LSI's 30(b)(6) deposition of

17   NXP regarding the similarities between products of the kinds furnished or used by Philips on

18   July 1, 1987 and those furnished or used by NXP at present.

19   3.       Pursuant to the parties' agreement during the July 15, 2008 meet and confer

20   teleconference, in lieu of identifying an NXP employee most knowledgeable about the Patents-In-

21   Suit, NXP identifies the following Patents-In-Suit as falling within the EXTENDED PERIOD, as

22   that term is defined in the 1987 Patent License Agreement, as amended by the November 1995

23   letter agreement: the '180, '335, '739, '672, '958, '500, '748, and '928 patents.

24
25   **INTERROGATORY NO. 2:**
          IDENTIFY, by product number and product description, every NXP product that NXP
26   contends is licensed under the PATENTS-IN-SUIT, and IDENTIFY all INFORMATION,
     DOCUMENTS, facts, and arguments that support NXP's contention.
27

28
MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
   NEW YORK
          DB2/20778519.2                              5

**RESPONSE TO INTERROGATORY NO. 2:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory on the grounds that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that its products do not infringe the Patents-In-Suit and therefore no license is necessary. NXP objects to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the right to amend or modify its answer as further information comes to light. Further, NXP objects to this interrogatory as unduly burdensome and premature because answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed that scope to a reasonable number by accusing specific NXP products. Furthermore, to the extent this interrogatory requests the identity of licensed goods which LSI does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action, this interrogatory is irrelevant, outside the scope of this litigations, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections, NXP answers the following: all of the accused products identified by Agere and LSI to date are licensed to all Patents-In-Suit filed before December 31, 1996 because they are products or services of the kinds which were furnished or sold by Philips.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad and premature in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP objects to this interrogatory on the grounds

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

6

1  that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on

2  the grounds that its products do not infringe the Patents-In-Suit and therefore no license is

3  necessary. NXP objects to this interrogatory as premature in that the litigation is still in its early

4  stages; NXP reserves the right to amend or modify its answer as further information comes to

5  light. Further, NXP objects to this interrogatory as unduly burdensome and not reasonably

6  calculated to lead to the discovery of admissible evidence. Accordingly, NXP interprets the term

7

8  "NXP product" to refer to the NXP products accused by LSI/Agere in pre-litigation negotiations.

9       Subject to, and without waiving the foregoing objections, NXP responds as follows: Each

10  and every one of the products accused by LSI/Agere prior to the commencement of this litigation

11  are products and services of the kinds that Philips and/or its RELATED COMPANIES (as that

12  term is defined in the Patent License Agreement) furnished or used in their businesses in 1987.

13

14  The following accused products are semiconductor chips and SEMICONDUCTOR PRODUCTS

15  (as that term is defined in the Patent License Agreement): PNX8550EH, PNX7850E,

16  PCF5213EL1 Die A, PCF5213EL1 Die B, 3587G Die A, CF50603, BLF6G2745, BLF4G22LS

17  and TZA3010 / 11 / 47 (the "Accused Semiconductor Products"). Philips and/or its RELATED

18  COMPANIES were furnishing and/or using semiconductor chips and SEMICONDUCTOR

19  PRODUCTS in the operation of their businesses as of July 1, 1987. Further, in some instances

20  NXP uses foundry services to make the Accused Semiconductor Products. Philips and/or its

21  RELATED COMPANIES were furnishing and/or using foundry services to make semiconductor

22

23  chips as of July 1, 1987.

24       Further, without conceding that the Patent License Agreement requires any more

25  specificity regarding product similarities, NXP avers that the Accused Semiconductor Products

26  utilize CMOS and LDMOS technologies. Philips and/or its RELATED COMPANIES were

27  furnishing and/or using semiconductor chips and/or SEMICONDUCTOR PRODUCTS utilizing

28

these technologies as of July 1, 1987. Further, as of July 1, 1987, Philips and/or its RELATED

COMPANIES furnished and/or used a broad range of semiconductors and integrated circuits and

used those products in, among other things, consumer electronics including audio products (*e.g.*,

portable radios, car radios, receivers, amplifiers, and Compact Disc systems) and video products

(*e.g.*, televisions, video recorders and cam recorders). The Accused Semiconductor Products are

all furnished and/or used in audio and video products. By way of example, the TZA3010 / 11 / 47

is a semiconductor chip that operates a laser in consumer products such as CD players. Philips

and/or its RELATED COMPANIES were furnishing and/or using chips that operate lasers in

consumer products such as CD players as of July 1, 1987.

Further, NXP's interpretation of the Patent License Agreement is supported by years of

conduct by the parties (and their predecessors) operating under the Patent License Agreement.

By way of example, and not limitation, Agere previously asserted the '335 patent against Intersil

Corporation with respect to integrated circuits sold to Intersil by Philips. When, by letter dated

September 22, 2003, Philips invoked its rights under the Patent License Agreement, Agere

responded by confirming that "Agere will respect the license agreement between AT&T Corp.

and Philips dated July 1, 1987."

NXP's analysis and review of the evidence is ongoing. NXP reserves the right to

supplement this response further as appropriate.

**INTERROGATORY NO. 3:**

For each product identified in response to Interrogatory No. 2, IDENTIFY the date on
which the product was first sold, the date the product was designed, the date on which each
manufacturing line used to manufacture the product was designed, and the date on which each
manufacturing line used to manufacture the product was first used, including the IDENTITY of
DOCUMENTS sufficient to evidence the foregoing.

1

**RESPONSE TO INTERROGATORY NO. 3:**

2

      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3

to this interrogatory as overly broad and premature in that it requests information outside the

4

scope of the current phase of litigation as agreed by the parties and is not related to the terms and

5

coverage of the Patent Licensing Agreement. NXP objects to this interrogatory on the grounds

6

that it calls for a legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on

7

the grounds that its products do not infringe the Patents-In-Suit and therefore no license is

8

necessary. NXP objects to this interrogatory as premature in that the litigation is still in its early

9

stages; NXP reserves the right to amend or modify its answer as further information comes to

10

light. Further, NXP objects to this interrogatory as unduly burdensome and premature because

11

answering this interrogatory would require NXP to review and analyze hundreds of products

12

before LSI has narrowed that scope to a reasonable number by accusing specific NXP products.

13

Also, to the extent this interrogatory requests the identity of licensed goods which LSI does not

14

intend to accuse of infringement of the Patents-In-Suit and which will not be a part of this action,

15

this interrogatory is irrelevant, over broad, and not reasonably calculated to lead to the discovery

16

of admissible evidence. Further, NXP objects to this interrogatory on the grounds that it is vague

17

and ambiguous as to the phrase "manufacturing line".

18

19

20

21

**INTERROGATORY NO. 4:**
      IDENTIFY by product number and product description every NXP product that NXP

22

believes is not licensed under the PATENTS-IN-SUIT, and IDENTIFY all INFORMATION,
DOCUMENTS, facts, and arguments that support NXP's belief.

23

24

**RESPONSE TO INTERROGATORY NO. 4:**

25

      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

26

to this interrogatory as overly broad in that it requests information outside the scope of the current

27

phase of litigation as agreed by the parties and is not related to the terms and coverage of the

28

1    Patent Licensing Agreement. NXP objects to this interrogatory on the grounds that it calls for a

2    legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that

3    its products do not infringe the Patents-In-Suit and therefore no license is necessary. NXP objects

4    to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the

5    right to amend or modify its answer as further information comes to light. NXP further objects to

6    this interrogatory as unduly burdensome as answering this interrogatory would require NXP to

7    review and analyze hundreds of products before LSI has narrowed that scope to a reasonable

8    number by accusing specific NXP products.

9

10   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.4:**

11        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

12   to this interrogatory as overly broad in that it requests information outside the scope of the current

13   phase of litigation as agreed by the parties and is not related to the terms and coverage of the

14   Patent Licensing Agreement. NXP objects to this interrogatory on the grounds that it calls for a

15   legal conclusion; furthermore, NXP objects to this interrogatory as irrelevant on the grounds that

16   its products do not infringe the Patents-In-Suit and therefore no license is necessary. NXP objects

17   to this interrogatory as premature in that the litigation is still in its early stages; NXP reserves the

18   right to amend or modify its answer as further information comes to light. NXP further objects to

19   this interrogatory as unduly burdensome as answering this interrogatory would require NXP to

20   review and analyze hundreds of products before LSI has narrowed that scope to a reasonable

21   number by accusing specific NXP products.

22        Subject to, and without waiving the foregoing objections, NXP responds as follows: NXP

23   incorporates by this reference its response to Interrogatory No. 2.

24

25   **INTERROGATORY NO. 5:**
         IDENTIFY all products sold or used by NXP as of July 1, 1987, and IDENTIFY
26   DOCUMENTS sufficient to fully describe the design, method of manufacture, intended use, and
     function of the products.
27

28

1    **RESPONSE TO INTERROGATORY NO. 5:**

2        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3 to this interrogatory as overly broad in that it requests information outside the scope of the current

4 phase of litigation as agreed by the parties and is not related to the terms and coverage of the

5 Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

6 burdensome and premature in that it makes no effort to limit its request to products that are at

7 issue in this case, and comes before receiving LSI's contentions of which products are at issue in

8 this case. Answering this interrogatory would require NXP to review and analyze hundreds of

9 products before LSI has narrowed that scope to a reasonable number by accusing specific NXP

10 products. Furthermore, to the extent this interrogatory requests the identity of goods which LSI

11 does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of

12 this action, NXP objects to this interrogatory on grounds that it is irrelevant and not reasonably

13 calculated to lead to the discovery of admissible evidence. NXP further objects to this

14 interrogatory because it employs ambiguous terms such as "intended use", "function of the

15 products" and "method of manufacture".

16
17    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

18        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

19 to this interrogatory as overly broad in that it requests information outside the scope of the current

20 phase of litigation as agreed by the parties and is not related to the terms and coverage of the

21 Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

22 burdensome and premature in that it makes no effort to limit its request to products that are at

23 issue in this case, and comes before receiving LSI's contentions of which products are at issue in

24 this case. Answering this interrogatory would require NXP to review and analyze hundreds of

25 products before LSI has narrowed that scope to a reasonable number by accusing specific NXP

26 products. Furthermore, to the extent this interrogatory requests the identity of goods which LSI

27 does not intend to accuse of infringement of the Patents-In-Suit and which will not be a part of

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

11

1  this action, NXP objects to this interrogatory on grounds that it is irrelevant and not reasonably

2  calculated to lead to the discovery of admissible evidence.  NXP further objects to this

3  interrogatory because it employs ambiguous terms such as "intended use", "function of the

4  products" and "method of manufacture".

5      Subject to, and without waiving the foregoing objections, NXP responds as follows:

6  NXP has produced or will produce documents in its possession, custody or control describing the

7

8  products and services furnished or used by Philips and its RELATED COMPANIES on July 1,

9  1987.

10

11  **INTERROGATORY NO. 6:**

12      IDENTIFY all COMMUNICATIONS with LSI or any THIRD PARTY RELATING TO
    the PATENTS-IN-SUIT, or the above-captioned lawsuit, including the contents of those
    COMMUNICATIONS and the PERSONS involved in those COMMUNICATIONS.

13

14  **RESPONSE TO INTERROGATORY NO.6:**

15      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

16  to this interrogatory as overly broad in that it requests information outside the scope of the current

17  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

18  Patent Licensing Agreement.  NXP also objects to the forgoing interrogatory as requesting

19  information protected by attorney/client privilege, the attorney work product doctrine, or other

20  applicable protections.  NXP also objects to this interrogatory because it calls for information or

21  documents already within the possession of LSI or in the public domain.  NXP further objects to

22  this interrogatory as irrelevant and not reasonably calculated to lead to admissible evidence.

23

24  Subject to, and without waiving the foregoing objections, NXP responds as follows:

25      The forgoing interrogatory will be answered by producing documents responsive to the

26  request, but limited to those relevant to the issues of the first phase of this litigation, that is, those

27  documents related to communications with third parties concerning the Patents-In-Suit and this

28

1  to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

2  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

3
4          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

5  to this interrogatory as overly broad in that it requests information outside the scope of the current

6  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

7  Patent Licensing Agreement.  Further, NXP objects to this interrogatory on the grounds that it

8  employs the vague and ambiguous use of the term "semiconductor product".  To the extent that

9  this interrogatory calls for information related to products that LSI will not accuse and which are

10  not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

11  burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

12  to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

13

14          Subject to and without waiving the foregoing objections, NXP responds as follows:  In the

15  light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

16  Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

17  interrogatory is irrelevant.

18

19  **INTERROGATORY NO. 13:**
         IDENTIFY, by product number and product description, every semiconductor product
20  sold by NXP since July 1, 1987 having a passivation layer that is deposited with at least one high
21  density plasma chemical vapor deposition step, IDENTIFY DOCUMENTS sufficient to fully
    describe all steps in the manufacture of any passivation layers in the product, as well as the
22  location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the
23  NXP employee most knowledgeable about the foregoing.

24  **RESPONSE TO INTERROGATORY NO. 13:**

25          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

26  to this interrogatory as overly broad in that it requests information outside the scope of the current

27  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

28  Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2                                    17

1   the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

2   this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

3   product" "high density plasma chemical vapor deposition" and "passivation layer".  To the extent

4   that this interrogatory calls for information related to products that LSI will not accuse and which

5   are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

6   burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

7   to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

to this interrogatory as overly broad in that it requests information outside the scope of the current

phase of litigation as agreed by the parties and is not related to the terms and coverage of the

Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in

the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

product" "high density plasma chemical vapor deposition" and "passivation layer".  To the extent

that this interrogatory calls for information related to products that LSI will not accuse and which

are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

Subject to and without waiving the foregoing objections, NXP responds as follows:  In the

light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

interrogatory is irrelevant.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

18

**INTERROGATORY NO. 14:**

IDENTIFY, by product number and product description, every semiconductor product sold by NXP since July 1, 1987 having at least one aluminum interconnect whereby a cross sectional area of the aluminum interconnect in a region closer to the substrate is, by design, greater than a cross sectional area of the aluminum interconnect in a region further away from the substrate, IDENTIFY DOCUMENTS sufficient to fully describe all steps in the manufacture of the aluminum interconnects, as well as the location of manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the foregoing.

**RESPONSE TO INTERROGATORY NO. 14:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "high density plasma chemical vapor deposition" and "passivation layer". NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues. To the extent that this interrogatory calls for information related to products that LSI will not accuse and which are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. Further, NXP objects to this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor product" "high density plasma chemical vapor deposition" and "passivation layer". NXP objects to this interrogatory as premature at this early date in the litigation, and reserves the right to update as discovery continues. To the extent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

19

1   that this interrogatory calls for information related to products that LSI will not accuse and which

2   are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

3   burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

4   to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

5
6       Subject to and without waiving the foregoing objections, NXP responds as follows:  In the

7   light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

8   Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

9   interrogatory is irrelevant.

10
11  **INTERROGATORY NO. 15:**
        IDENTIFY, by product number and product description, every integrated circuit product
12  sold by NXP since December 1, 1998 that is capable of generating a drive current for a laser and
    that, either alone or in combination with another component, is capable of sensing the
13  temperature of the integrated circuit, IDENTIFY DOCUMENTS sufficient to fully describe the
    design and operation of the circuit, as well as the location of manufacture of the product, and the
14  identity of the manufacturer, and IDENTIFY the NXP employee most knowledgeable about the
15  foregoing.

16  **RESPONSE TO INTERROGATORY NO.15:**

17      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

18  to this interrogatory as overly broad in that it requests information outside the scope of the current

19  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

20  Patent Licensing Agreement..  NXP objects to this interrogatory as premature at this early date in

21  the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

22  this interrogatory on the grounds that it employs the vague and ambiguous terms "integrated

23  circuit product" and "drive current".  To the extent that this interrogatory calls for information

24  related to products that LSI will not accuse and which are not therefore at issue in this litigation,

25  NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably

26  calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not

27  reasonably limited in scope or time as NXP did not exist in 1998.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2                                    20

1    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

2          As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3    to this interrogatory as overly broad in that it requests information outside the scope of the current

4    phase of litigation as agreed by the parties and is not related to the terms and coverage of the

5    Patent Licensing Agreement.. NXP objects to this interrogatory as premature at this early date in

6    the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

7    this interrogatory on the grounds that it employs the vague and ambiguous terms "integrated

8    circuit product" and "drive current".  To the extent that this interrogatory calls for information

9    related to products that LSI will not accuse and which are not therefore at issue in this litigation,

10   NXP objects to this interrogatory as premature, unduly burdensome, and not reasonably

11   calculated to lead to admissible evidence.  Finally, NXP objects to this interrogatory as not

12   reasonably limited in scope or time as NXP did not exist in 1998.

13          Subject to and without waiving the foregoing objections, NXP responds as follows:  In the

14   light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

15   Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

16   interrogatory is irrelevant.

17   **INTERROGATORY NO. 16:**

18         IDENTIFY, by product number and product description, every semiconductor product
     sold by NXP since June 1, 1999 that contains a phase locked loop capable of outputting a signal
19   generated based on comparing an input signal, or a signal related thereto, to a reference signal, or
     a signal related thereto, IDENTIFY DOCUMENTS sufficient to fully describe the design and
20   operation of the device and phase locked loop, as well as the location of manufacture of the
     product, and the identity of the manufacturer, and IDENTIFY the NXP employee most
21   knowledgeable about the foregoing.

22

23   **RESPONSE TO INTERROGATORY NO. 16:**

24         As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

25   to this interrogatory as overly broad in that it requests information outside the scope of the current

26   phase of litigation as agreed by the parties and is not related to the terms and coverage of the

27   Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2                                        21

1 the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

2 this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

3 product" "phase locked loop", "input signal" and "reference signal".  Furthermore, the entire

4 phrase "contains a phase locked loop capable of outputting a signal generated based on

5 comparing an input signal", is objected to as ambiguous and impossible to parse.  To the extent

6 that this interrogatory calls for information related to products that LSI will not accuse and which

7 are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

8 burdensome, and not reasonably calculated to lead to admissible evidence.  Finally, NXP objects

9 to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1999.

10 Subject to, and without waiving the foregoing objections, NXP responds as follows:

11 The NXP employee most knowledgeable about these products is Luca Lo Coco, however

12 NXP will require additional time to review hundreds of products, analyze data sheets and design

13 descriptions in order to answer fully and completely this interrogatory.  It will update this answer

14 at the soonest possible opportunity.

15

16 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

17

18 As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

19 to this interrogatory as overly broad in that it requests information outside the scope of the current

20 phase of litigation as agreed by the parties and is not related to the terms and coverage of the

21 Patent Licensing Agreement.  NXP objects to this interrogatory as premature at this early date in

22 the litigation, and reserves the right to update as discovery continues.  Further, NXP objects to

23 this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

24 product" "phase locked loop", "input signal" and "reference signal".  Furthermore, the entire

25 phrase "contains a phase locked loop capable of outputting a signal generated based on

26 comparing an input signal", is objected to as ambiguous and impossible to parse.  To the extent

1    that this interrogatory calls for information related to products that LSI will not accuse and which

2    are not therefore at issue in this litigation, NXP objects to this interrogatory as premature, unduly

3    burdensome, and not reasonably calculated to lead to admissible evidence. Finally, NXP objects

4    to this interrogatory as not reasonably limited in scope or time as NXP did not exist in 1999.

5
        Subject to, and without waiving the foregoing objections, NXP responds as follows: NXP

6    does not contend that either of the Patents-In-Suit concerning phase-locked loop technology is

7    within the EXTENDED PERIOD of the 1987 Patent License Agreement, as amended.

8    Accordingly, the information requested by this interrogatory is, at this stage of the case,

9    irrelevant.

10
11
12   **INTERROGATORY NO. 17:**
13       IDENTIFY, by product number and product description, every semiconductor product
     sold by NXP since July 1, 1987 having a gate runner including a silicide overlayer, whereby a
14   first layer of dielectric is deposited over the gate runner and a second layer of dielectric is
     deposited over the first layer of dielectric, IDENTIFY DOCUMENTS sufficient to fully describe
15   the design and operation of the gate runner and layers of dielectric, as well as the location of
     manufacture of the product, and the identity of the manufacturer, and IDENTIFY the NXP
16   employee most knowledgeable about the foregoing.
17
18
19   **RESPONSE TO INTERROGATORY NO. 17:**

20       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

21   to this interrogatory as overly broad in that it requests information outside the scope of the current

22   phase of litigation as agreed by the parties and is not related to the terms and coverage of the

23   Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in

24   the litigation, and reserves the right to update as discovery continues. Further, NXP objects to

25   this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

26   product" "gate runner", "silicide overlayer" and "dielectric". To the extent that this interrogatory

27   calls for information related to products that LSI will not accuse and which are not therefore at

28

1  issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and

2  not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this

3  interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987. Subject to,

4  and without waiving the foregoing objections, NXP responds as follows:

5

6      The NXP employee most knowledgeable about the above products is Rutger Wijburg,

7  however NXP will require additional time to review hundreds of products, analyze data sheets

8  and design descriptions in order to answer fully and completely this interrogatory. It will update

9  this answer at the soonest possible opportunity.

10

11

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

13      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

14  to this interrogatory as overly broad in that it requests information outside the scope of the current

15  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

16  Patent Licensing Agreement. NXP objects to this interrogatory as premature at this early date in

17  the litigation, and reserves the right to update as discovery continues. Further, NXP objects to

18  this interrogatory on the grounds that it employs vague and ambiguous terms "semiconductor

19  product" "gate runner", "silicide overlayer" and "dielectric". To the extent that this interrogatory

20  calls for information related to products that LSI will not accuse and which are not therefore at

21  issue in this litigation, NXP objects to this interrogatory as premature, unduly burdensome, and

22  not reasonably calculated to lead to admissible evidence. Finally, NXP objects to this

23  interrogatory as not reasonably limited in scope or time as NXP did not exist in 1987.

24

25      Subject to and without waiving the foregoing objections, NXP responds as follows: In the

26  light of NXP's Supplemental Response to Interrogatory No. 2 and the explanation provided in

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

24

1    Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

2    interrogatory is irrelevant.

3

4

5    Dated: August 5, 2008                        MORGAN, LEWIS & BOCKIUS LLP

6

7                                   By _____

8                                   Brett Schuman
                                      Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 12

MORGAN, LEWIS & BOCKIUS LLP
MICHAEL E. MOLLAND, State Bar No. 111830
DANIEL JOHNSON, JR., State Bar No. 57409
BRETT M. SCHUMAN, State Bar No. 189247
GREGG P. YATES, State Bar No. 224641
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: mmolland@morganlewis.com
E-mail: djjohnson@morganlewis.com
E-mail: bschuman@morganlewis.com

Attorneys for Plaintiff
NXP SEMICONDUCTORS USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LSI CORPORATION d/b/a LSI LOGIC CORPORATION, a Delaware corporation, and AGERE SYSTEMS, INC. a Delaware corporation.<br><br>Defendants. | Case No. C 08-00775 JW<br><br>**PLAINTIFF NXP SEMICONDUCTORS USA, INC.'S RESPONSE TO LSI'S FIRST SET OF REQUESTS FOR DOCUMENT PRODUCTION** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules

for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc ("NXP") hereby

responds to Defendant LSI Corporation and Agere Systems Inc.'s ("LSI") First Set of Requests

for Production (Nos. 1-21) as follows:

**GENERAL OBJECTIONS:**

1.      As preliminary and general objections to LSI's First Set of Requests for

Production, NXP objects to each interrogatory to the extent that it calls for information contained

in notes, memoranda, correspondence, or other documents prepared by NXP or its attorneys in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    the current phase of litigation as agreed by the parties and is not related to the terms and coverage

2    of the Patent Licensing Agreement.

3          NXP objects to this request as overbroad, unduly burdensome and not reasonably

4    calculated to lead to admissible evidence as it is not limited in scope to documents relevant to this

5    litigation. Further, NXP objects to this request to the extent that LSI requests documents in the

6    public domain or within the possession of LSI. NXP also objects to the forgoing interrogatory as

7    requesting documents protected by attorney/client privilege, the attorney work product doctrine,

8    or other applicable protections.

9          Subject to, and without waiving the foregoing specific or General Objections, NXP will

10   produce non-privileged responsive documents directed to the substance of the Patent License

11   Agreement at a mutually agreeable time.

12   **REQUEST NO. 4:**

13         DOCUMENTS sufficient to fully describe NXP's document retention or document
     destruction policies since July 1, 1987, including electronic records management policies.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

15         NXP objects to this request as NXP did not exist in 1987. Subject to, and without waiving

16   the foregoing General Objections, NXP will produce non-privileged responsive documents

17   sufficient to describe its document retention policy.

18   **REQUEST NO. 5:**

19         For all current NXP products, DOCUMENTS sufficient to fully describe the location of
     manufacture of the product, the identity of the line used to manufacture the product, and the entity

20   that manufactures the product.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

22         As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23   to this request as overly broad and premature in that it requests information outside the scope of

24   the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25   of the Patent Licensing Agreement. NXP objects to this request to the extent that LSI requests

26   documents in the public domain or within the possession of LSI. NXP further objects to this

27   request because it employs the ambiguous term "manufacturing line".

28         NXP further objects to this request because it is unduly burdensome and premature in that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    it makes no effort to limit its request to products that are at issue in this case, and comes before

2    receiving LSI's contentions of which products are at issue in this case.  Answering this request

3    would require NXP to review and analyze hundreds of products before LSI has narrowed that

4    scope to a reasonable number by accusing specific NXP products.  Furthermore, to the extent this

5    request calls for the identity of goods which LSI does not intend to accuse of infringement of the

6    Patents-In-Suit and which will not be a part of this action, NXP objects to this request on grounds

7    that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8    **REQUEST NO. 6:**
         For all manufacturing lines identified in response to REQUEST NO. 5, DOCUMENTS
9    sufficient to fully describe all steps performed on the manufacturing line, including but not
     limited to process steps, process conditions, and manufacturing tolerances.
10

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

12        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

13   to this request as overly broad and premature in that it requests information outside the scope of

14   the current phase of litigation as agreed by the parties and is not related to the terms and coverage

15   of the Patent Licensing Agreement.  NXP further objects to this request because it employs the

16   ambiguous terms "manufacturing line" "process conditions" and "manufacturing tolerances".

17        NXP further objects to this request because it is over broad, unduly burdensome and

18   premature in that it makes no effort to limit its request to products that are at issue in this case,

19   and comes before receiving LSI's contentions of which products are at issue in this case.

20   Answering this request would require NXP to review and analyze hundreds of products before

21   LSI has narrowed that scope to a reasonable number by accusing specific NXP products.

22   Furthermore, to the extent this request calls for the identity of goods which LSI does not intend to

23   accuse of infringement of the Patents-In-Suit and which will not be a part of this action, NXP

24   objects to this request on grounds that it is irrelevant and not reasonably calculated to lead to the

25   discovery of admissible evidence.

26   **REQUEST NO. 7:**
         DOCUMENTS sufficient to disclose all THIRD PARTIES who purchased products from
27   NXP in the last six years, and the types and amounts of products purchased.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

2       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

3 to this request as overly broad and premature in that it requests information outside the scope of

4 the current phase of litigation as agreed by the parties and is not related to the terms and coverage

5 of the Patent Licensing Agreement.  NXP further objects to this request because it is unduly

6 burdensome and premature in that it comes before receiving LSI's contentions of which products

7 are at issue in this case and is therefore not reasonably limited in scope to documents related to

8 products at issue in this case.  NXP also objects to this request as demanding confidential

9 business information of third parties.  Further, NXP objects on the grounds that this request is not

10 reasonably calculated to lead to the discovery of admissible evidence. NXP will meet and confer

11 with LSI in a good faith attempt to narrow the scope of this request.

12 **REQUEST NO. 8:**

13       DOCUMENTS sufficient to fully disclose the top ten purchasers of NXP products by
dollar amount in the Mobile & Personal, Home, Automotive & Identification, Multimarket

14 Semiconductor, and commodity market segments over the last 6 years, the purchase amounts and
products purchased for each of the last 6 years, and any agreements NXP has with these

15 customers to supply NXP products on a going forward basis.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

17       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

18 to this request as overly broad and premature in that it requests information outside the scope of

19 the current phase of litigation as agreed by the parties and is not related to the terms and coverage

20 of the Patent Licensing Agreement.  NXP objects to this request to the extent that LSI requests

21 documents in the public domain or within the possession of LSI.  NXP further objects to this

22 request because it employs the ambiguous terms "market segment" "commodity market" and

23 "purchase amounts".  NXP further objects to this request because it is over broad, unduly

24 burdensome and premature in that it comes before receiving LSI's contentions of which products

25 are at issue in this case and is therefore not reasonably limited in scope to documents related to

26 products at issue in this case.

27 **REQUEST NO. 9:**

28       All DOCUMENTS RELATING TO the PLA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

2        NXP objects to the forgoing request as requesting documents protected by attorney/client

3    privilege, the attorney work product doctrine, or other applicable protections.  Subject to, and

4    without waiving the foregoing General Objections, NXP will produce non-privileged responsive

5    documents directed concerning the Patent License Agreement at a mutually agreeable time.

6    **REQUEST NO. 10:**

7        All DOCUMENTS RELATING TO the negotiation of the PLA.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

9        NXP objects to the forgoing request as requesting documents protected by attorney/client

10   privilege, the attorney work product doctrine, or other applicable protections.  Subject to, and

11   without waiving the foregoing specific and General Objections, NXP will produce non-privileged

12   responsive documents concerning the Patent License Agreement at a mutually agreeable time.

13   **REQUEST NO. 11:**

14       All DOCUMENTS RELATING TO all COMMUNICATIONS regarding the scope of the
     PLA.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

16       NXP objects to the forgoing request as requesting documents protected by attorney/client

17   privilege, the attorney work product doctrine, or other applicable protections.  Subject to, and

18   without waiving the foregoing specific and General Objections, NXP will produce non-privileged

19   responsive documents directed to the substance of the Patent License Agreement at a mutually

20   agreeable time.

21   **REQUEST NO. 12:**

22       All DOCUMENTS RELATING TO any analysis or study of what NXP products are
     licensed under the PLA.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

24       NXP objects to the forgoing request as requesting documents protected by attorney/client

25   privilege, the attorney work product doctrine, or other applicable protections.  NXP objects to this

26   request as premature and over broad in that this phase of the litigation is, on agreement of the

27   parties as discussed in paragraph 5 of the GENERAL OBJECTIONS, focused on the entities and

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1   attorney/client privilege, the attorney work product doctrine, or other applicable protections.

2   Subject to, and without waiving the foregoing specific or General Objections, NXP will

3   produce non-privileged responsive documents directed to the substance of the Patent License

4   Agreement at a mutually agreeable time.

5   **REQUEST NO. 15:**

6   All DOCUMENTS which purport to describe the categories, types, or kinds of products
    sold or used by NXP as of July 1, 1987.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

8   As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

9   to this request as overly broad and premature in that it requests information outside the scope of

10  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

11  of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

12  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

13  in that it makes no effort to limit its request to products that are at issue in this case, and comes

14  before LSI has issued its infringement contentions. The request covers hundreds of products,

15  many of which may not be accused in this case. Further, NXP objects to this request to the extent

16  that it was not in existence in 1987.

17  **REQUEST NO. 16:**

18  DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP

19  as of July 1, 1987, including a description of the method of manufacture, the intended use, and the

20  function.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

22  As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23  to this request as overly broad and premature in that it requests information outside the scope of

24  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25  of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

26  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

27  in that it makes no effort to limit its request to products that are at issue in this case, and comes

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    before LSI has issued its infringement contentions. The request covers hundreds of products,

2    many of which may not be accused in this case. Further, NXP objects to this request to the extent

3    that it was not in existence in 1987. NXP further objects to this request because it employs

4    ambiguous terms "method of manufacture", "intended use" and "function".

5    **REQUEST NO. 17:**

6    DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP
     as of the initiation of this action and within the last six years, including a description of the

7    method of manufacture, the intended use, and the function.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

9    As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

10   to this request as overly broad and premature in that it requests information outside the scope of

11   the current phase of litigation as agreed by the parties and is not related to the terms and coverage

12   of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

13   burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

14   in that it makes no effort to limit its request to products that are at issue in this case, and comes

15   before LSI has issued its infringement contentions. The request covers potentially unlimited

16   numbers of products, most of which are not at issue in this case. Further, NXP objects to this

17   request to the extent that it was not in existence in 1987. NXP further objects to this request

18   because it employs ambiguous terms "method of manufacture", "intended use" and "function".

19   Finally, NXP objects to this request as duplicative of the one preceding.

20   **REQUEST NO. 18:**
     DOCUMENTS sufficient to identify and fully describe all products sold or used by NXP

21   as of July 1, 1987 that were manufactured in whole or in part by a third party, the identity of the
     third party, and the role the third party played in the manufacture of the product.

22
     **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

23
24   As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

25   to this request as overly broad and premature in that it requests information outside the scope of

26   the current phase of litigation as agreed by the parties and is not related to the terms and coverage

27   of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

28   burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    in that it makes no effort to limit its request to products that are at issue in this case, and comes

2    before LSI has issued its infringement contentions.  The request covers potentially unlimited

3    numbers of products, most of which are not at issue in this case.  Further, NXP objects to this

4    request to the extent that it was not in existence in 1987.

5    **REQUEST NO. 19:**

6         All different product catalogues, product lists, product summaries, product inserts, or

7    product technical descriptions prepared by NXP during the years 1985 through the present.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

9         As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

10   to this request as overly broad and premature in that it requests information outside the scope of

11   the current phase of litigation as agreed by the parties and is not related to the terms and coverage

12   of the Patent Licensing Agreement.  NXP further objects to this interrogatory because it is unduly

13   burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

14   in that it makes no effort to limit its request to products that are at issue in this case, and comes

15   before LSI has issued its infringement contentions.  The request covers potentially unlimited

16   numbers of products, most of which are not at issue in this case.  Further, NXP objects to this

17   request to the extent that it was not in existence in 1985.

18   **REQUEST NO. 20:**

19   All different product catalogues, product lists, product summaries, product inserts, or
     product technical descriptions prepared by a third party regarding NXP products during the years

20   1985 through the present.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

22        As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

23   to this request as overly broad and premature in that it requests information outside the scope of

24   the current phase of litigation as agreed by the parties and is not related to the terms and coverage

25   of the Patent Licensing Agreement.  NXP further objects to this interrogatory because it is unduly

26   burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

27   in that it makes no effort to limit its request to products that are at issue in this case, and comes

28   before LSI has issued its infringement contentions.  The request covers potentially unlimited

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1  numbers of products, most of which are not at issue in this case. Further, NXP objects to this

2  request to the extent that it was not in existence in 1985.

3  **REQUEST NO. 21:**

4       All DOCUMENTS, including all press materials, that describe an NXP product sold or

5  used for the first time after July 1, 1987 as "new".

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

7       As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

8  to this request as overly broad and premature in that it requests information outside the scope of

9  the current phase of litigation as agreed by the parties and is not related to the terms and coverage

10  of the Patent Licensing Agreement. NXP further objects to this interrogatory because it is unduly

11  burdensome, premature and not reasonably calculated to lead to discovery of admissible evidence

12  in that it makes no effort to limit its request to products that are at issue in this case, and comes

13  before LSI has issued its infringement contentions. The request covers potentially unlimited

14  numbers of products, most of which are not at issue in this case of products, many of which may

15  not be accused in this case. Further, NXP objects to this request to the extent that it was not in

16  existence in 1987.

17

18

19  Dated: June _____, 2008                    MORGAN, LEWIS & BOCKIUS LLP

20

21                                           By _____
                                                Brett Schuman
22                                              Attorneys for Plaintiff

23

24

25

26

27

28

1
2
3
4
5
6
7
8

MORGAN, LEWIS & BOCKIUS LLP
MICHAEL E. MOLLAND, State Bar No. 111830
DANIEL JOHNSON, JR., State Bar No. 57409
BRETT M. SCHUMAN, State Bar No. 189247
GREGG P. YATES, State Bar No. 224641
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: mmolland@morganlewis.com
E-mail: djjohnson@morganlewis.com
E-mail: bschuman@morganlewis.com

Attorneys for Plaintiff
NXP SEMICONDUCTORS USA, INC.

9
10
11
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

13
14
15
16
17
18
19

NXP SEMICONDUCTORS USA, INC.,
a Delaware corporation,

                    Plaintiff,

          vs.

LSI CORPORATION d/b/a LSI LOGIC
CORPORATION, a Delaware corporation,
and AGERE SYSTEMS, INC. a Delaware
corporation.

                    Defendants.

Case No. C 08-00775 JW

**PLAINTIFF NXP SEMICONDUCTORS
USA, INC.'S RESPONSE TO LSI'S
SECOND SET OF REQUESTS FOR
PRODUCTION**

20
21
22
23
24

          Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules

for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc ("NXP") hereby

responds to Defendant LSI Corporation and Agere Systems Inc.'s ("LSI and Agere") Second Set

of Requests for Production (Nos. 22-34) as follows:

25

                    **GENERAL OBJECTIONS:**

26
27
28

          1.          As preliminary and general objections to LSI and Agere's Second Set of Requests

for Production, NXP objects to each request to the extent that it calls for information contained in

notes, memoranda, correspondence, or other documents prepared by NXP or its attorneys in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1

20759787.3

1  Agere have defined the phrase "referring or relating to" in an overly broad manner.  NXP further

2  objects that the phrase "marketing acceptance documents" is vague, ambiguous and unintelligible.

3  **REQUEST NO. 23:**

4      All product development DOCUMENTS, including but not limited to DOCUMENTS

5  RELATING TO the design, testing, research, development, upgrade, modification, or

   improvement of NXP products during the years 1985 through the present, including

6  DOCUMENTS RELATING TO NXP products that have not yet been released.

7  **RESPONSE TO REQUEST NO. 23:**

8      NXP incorporates by this reference its General Objections.  NXP further objects to this

9  request as overly broad and premature in that it requests information outside the scope of the

10  current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

11  and not reasonably calculated to lead to admissible evidence.  NXP objects that the phrase

12  "product development documents" is vague and ambiguous and that LSI and Agere have defined

13  the phrase "relating to" in an overly broad manner.

14  **REQUEST NO. 24:**

15      All articles, speeches, presentations or interviews that have been written or given by NXP

16  or its employees, officers, directors or other representatives during the years 1985 through the

   present that refer or RELATE TO NXP products or to LSI.

17  **RESPONSE TO REQUEST NO. 24:**

18

19      NXP incorporates by this reference its General Objections.  NXP further objects to this

20  request as overly broad and premature in that it requests information outside the scope of the

21  current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

22  and not reasonably calculated to lead to admissible evidence.  Further, NXP objects to this request

23  to the extent that LSI and Agere request documents in the public domain or within the possession,

24  custody, and control of LSI or Agere or third parties.  NXP objects that the phrases "written or

25  given by" and "other representatives" are vague and ambiguous.

26  **REQUEST NO. 25:**

27      All DOCUMENTS and things that were provided to any potential investor or entity that

   considered investing in NXP that RELATE TO NXP products or to LSI and were provided during

28  the years 1985 through the present.

4

1    **RESPONSE TO REQUEST NO. 25:**

2         NXP incorporates by this reference its General Objections.  NXP further objects to this

3    request as overly broad and premature in that it requests information outside the scope of the

4    current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

5    and not reasonably calculated to lead to admissible evidence.  NXP objects to this request to the

6    extent that it seeks disclosure of NXP's and third party's trade secrets, proprietary, or other

7    confidential or competitively sensitive information.  NXP objects that the terms "potential

8    investor or entity" and "considered investing" are vague and ambiguous and that LSI and Agere

9    have defined the phrase "all documents and things" in an overly broad manner.

10        Subject to and without waiving its objections, NXP will produce non-privileged

11   documents provided to Kohlberg Kravis Roberts & Co. (KKR), Bain Capital, Silver Lake

12   Partners, Apax and AlpInvest Partners N.V., regarding the 1987 Patent License Agreement and/or

13   LSI, if any.

14   **REQUEST NO. 26:**

15        DOCUMENTS sufficient to IDENTIFY and fully describe the corporate and internal
     organization, including all business divisions, sales divisions, manufacturing divisions, and the
16   like, of N.V. Philips Gloeilampenfabrieken and U.S. Philips Corporation, and any related entities,
     parents, subsidiaries or divisions thereof, as of July 1, 1987.
17

18   **RESPONSE TO REQUEST NO. 26:**

19        NXP incorporates by this reference its General Objections.  NXP further objects to this

20   request as overly broad and premature in that it requests information outside the scope of the

21   current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

22   and not reasonably calculated to lead to admissible evidence.  NXP objects that LSI and Agere

23   have defined the term "internal organization" in an overly broad manner.  NXP further objects

24   that this information is publicly available and equally accessible to the parties.

25   **REQUEST NO. 27:**

26        DOCUMENTS sufficient to IDENTIFY and fully describe the current corporate and
     internal organization of NXP, including all business divisions, sales divisions, manufacturing
27   divisions, and the like.

28

20759787.3

1  **RESPONSE TO REQUEST NO. 27:**

2       NXP incorporates by this reference its General Objections.  NXP further objects to this

3  request as overly broad and premature in that it requests information outside the scope of the

4  current phase of litigation.  Furthermore, NXP objects that the term "fully describe" is vague and

5  ambiguous and that LSI and Agere have defined the term "internal organization" in an overly

6  broad manner.

7       Subject to and without waiving its objections, NXP will produce non-privileged

8  documents reflecting NXP's corporate structure and business lines.

9  **REQUEST NO. 28:**

10      DOCUMENTS sufficient to IDENTIFY and fully describe the various employment
   positions within NXP's current organization and a description of the duties and responsibilities
11 for each position listed.

12 **RESPONSE TO REQUEST NO. 28:**

13      NXP incorporates by this reference its General Objections.  NXP further objects to this

14 request as overly broad and premature in that it requests information outside the scope of the

15 current phase of litigation.  NXP further objects to this request as overbroad, unduly burdensome

16 and not reasonably calculated to lead to admissible evidence.

17 **REQUEST NO. 29:**

18      All quarterly and annual reports produced by NXP from 1985 through the present.

19 **RESPONSE TO REQUEST NO. 29:**

20      NXP incorporates by this reference its General Objections.  NXP further objects to this

21 request as overly broad and premature in that it requests information outside the scope of the

22 current phase of litigation.  Further, NXP objects to this request to the extent it seeks documents

23 in the public domain or within the possession of LSI or Agere.

24 **REQUEST NO. 30:**

25      DOCUMENTS sufficient to IDENTIFY and fully describe all products sold or used by
26 NXP since July 1, 1987 that have been manufactured by Taiwan Semiconductor Manufacturing
   Corp., and for each of those products DOCUMENTS sufficient to fully describe the entity that
27 designed the circuits on the product.

28

6

20759787.3

1    **RESPONSE TO REQUEST NO. 30:**

2         NXP incorporates by this reference its General Objections.  NXP further objects to this

3    request as overly broad and premature in that it requests information outside the scope of the

4    current phase of litigation.  NXP objects further to the extent this request purports to ask NXP to

5    identify all products made for NXP by TSMC, including those products that LSI/Agere have not

6    and cannot accuse of infringement in this action.  NXP objects further to this request on grounds

7    that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery

8    of admissible evidence.

9         Subject to and without waiving its objections, NXP will produce non-privileged

10   documents, if any, sufficient to identify the products made for NXP by TSMC that have been

11   accused by LSI/Agere.

12   **REQUEST NO. 31:**

13        DOCUMENTS sufficient to IDENTIFY and fully describe the apportionment of liability

14   arising out of the divestment of NXP B.V. and its subsidiaries from Philips Electronics and its
     subsidiaries.

15

16   **RESPONSE TO REQUEST NO. 31:**

17        NXP incorporates by this reference its General Objections.  NXP further objects to this

18   request as overly broad and premature in that it requests information outside the scope of the

19   current phase of litigation.  Further, NXP objects to the forgoing request as requesting documents

20   protected by attorney/client privilege, the attorney work product doctrine, or other applicable

21   protections.  NXP also objects to this request on grounds that it is not reasonably calculated to

22   lead to the discovery of admissible evidence.  Furthermore, NXP objects that the term "arising out

23   of" is vague and ambiguous.

24   **REQUEST NO. 32:**

25        DOCUMENTS sufficient to IDENTIFY and fully describe any obligations Philips

26   Electronics and its subsidiaries and NXP B.V. and its subsidiaries owe to each other to assist in
     litigation, indemnify for third party claims, or provide DOCUMENTS and INFORMATION on

27   request.

28

7

1   **RESPONSE TO REQUEST NO. 32:**

2        NXP incorporates by this reference its General Objections.  NXP further objects to this

3   request as overly broad and premature in that it requests information outside the scope of the

4   current phase of litigation.  NXP also objects that this request is vague, ambiguous and not

5   reasonably calculated to lead to the discovery of admissible evidence.  Further, NXP objects to

6   the forgoing request as requesting documents protected by attorney/client privilege, the attorney

7   work product doctrine, or other applicable protections.

8        Subject to and without waiving its objections, NXP responds that, after a good faith effort

9   to locate responsive documents, no responsive documents exist.  NXP reserves the right to

10  supplement or amend this response as appropriate.

11  **REQUEST NO. 33:**

12       For each NXP product that NXP contends is licensed under the 1987 Patent License,
    DOCUMENTS sufficient to IDENTIFY and fully describe all historical versions of the product,
13  the designs of those historical versions, the dates of commercial introduction of those historical
    versions, and all uses of the historical versions.
14

15  **RESPONSE TO REQUEST NO. 33:**

16       NXP incorporates by this reference its General Objections.  NXP further objects to this

17  request as overly broad and premature in that it requests information outside the scope of the

18  current phase of litigation.  NXP further objects to the forgoing request as requesting documents

19  protected by attorney-client privilege, the attorney work product doctrine, or other applicable

20  privilege.  NXP further objects to this request on the grounds that it is overly broad, unduly

21  burdensome and not reasonably calculated to lead to admissible evidence.

22       Subject to and without waiving its objections, NXP responds that it will continue to meet

23  and confer with LSI/Agere regarding a mutually acceptable agreement to proceed with discovery

24  on the basis of representative parts.

25  **REQUEST NO. 34:**

26       All DOCUMENTS exchanged between NXP and any market research company
    RELATING TO NXP's products or the markets for NXP's products.
27

28

8

1  **RESPONSE TO REQUEST NO. 34:**

2        NXP incorporates by this reference its General Objections. NXP further objects to this

3  request as overly broad and premature in that it requests information outside the scope of the

4  current phase of litigation. NXP objects that the term "market research company" is vague,

5  ambiguous and unintelligible. NXP further objects to this request as overbroad, unduly

6  burdensome and not reasonably calculated to lead to admissible evidence.

7

8  Dated: July 18, 2008                              MORGAN, LEWIS & BOCKIUS LLP

9

10                                                   By

11                                                   Brett M. Schuman
                                                     Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  IRELL & MANELLA LLP
   Jonathan H. Steinberg (98044)
2  Samuel K. Lu (171969)
   Jason G. Sheasby (205455)
3  C. Maclain Wells (221609)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile:  (310) 203-7199
   E-mail: jsteinberg@irell.com
6  E-mail: slu@irell.com
   E-mail: jsheasby@irell.com
7  E-mail: mwells@irell.com

8  Attorneys for Defendant LSI CORPORATION and
   Defendant and Counterclaimant AGERE SYSTEMS, INC.
9

10               UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13  NXP SEMICONDUCTORS USA, INC.,        ) CASE NO. CV-08-00775 (JW, RS)
                                         )
14             Plaintiff,                )
                                         )
15       vs.                             )  **LSI CORPORATION'S THIRD SET
                                         )  OF REQUESTS FOR PRODUCTION
16  LSI CORPORATION d/b/a LSI LOGIC      )  TO NXP SEMICONDUCTORS USA,
    CORPORATION, a Delaware Corporation  )  INC.**
17  and AGERE SYSTEMS, INC., a Delaware  )
    corporation,                         )
18                                       )
               Defendants.               )
19  _____  )
    AGERE SYSTEMS, INC., a Delaware      )
20  corporation,                         )
                                         )
21             Counterclaimant,          )
                                         )
22       vs.                             )
                                         )
23  NXP SEMICONDUCTORS USA, INC.,        )
    a Delaware corporation,              )
24                                       )
               Counterclaim-Defendant.   )
25  _____

26

27

28

    LSI'S THIRD SET OF REQUESTS FOR
    PRODUCTION TO NXP
    CASE NO. CV-08-00775 (JW, RS)

1   subsidiaries, or divisions, regarding the PLA's relationship to VLSI or Taiwan Seminconductor

2   Manufacturing Company.

3   **Request No. 39**:

4   All DOCUMENTS RELATING TO all COMMUNICATIONS NXP B.V. or any of its

5   subsidiaries has had with Koninklijke Philips Electronics, N.V., or any of its subsidiaries

6   RELATING TO the PLA, the Patents-In-Suit, LSI, or this litigation.

7   **Request No. 40**:

8   All DOCUMENTS, COMMUNICATIONS, and INFORMATION RELATING TO the impact of

9   the divestment of NXP B.V., and its related entities, subsidiaries, or divisions, from Koninklijke

10  Philips Electronics, N.V., and its related entities, parents, subsidiaries, or divisions, on any party's

11  rights under the PLA.

12  **Request No. 41**:

13  DOCUMENTS sufficient to fully describe all acquisitions of companies that marketed

14  semiconductor devices and all acquisitions of semiconductor device product lines by NXP after

15  July 1, 1987; the design, function, and intended use of the semiconductor devices; and their

16  relationship to products currently marketed by NXP.

17

18  DATED:  July 30, 2008                          IRELL & MANELLA LLP
                                                    Jonathan H. Steinberg
                                                    Samuel K. Lu
19                                                  Jason G. Sheasby
                                                    C. Maclain Wells
20

21                                                  By:____/s/ C. Maclain Wells_____
                                                            C. Maclain Wells
22

23                                                  Attorneys for Defendant LSI CORPORATION and
                                                    Defendant and Counterclaimant AGERE SYSTEMS,
                                                    INC.
24

25

26

27

28

# EXHIBIT 13

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Mark W. Taylor**
202.739.5030
mark.taylor@morganlewis.com

July 23, 2008

## VIA ELECTRONIC AND U.S. MAIL

C. Maclain Wells
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

      Re:    NXP Semiconductors USA, Inc. v. LSI Corporation and Agere Systems, Inc.
            No. CV-08-0775 JW

Dear Maclain:

I write in response to your letters dated July 18 and July 21, 2008, which contain numerous misstatements and mischaracterizations.

## TSMC

Your July 18 letter misleadingly suggests the purported issue regarding whether NXP's communications with TSMC violate the Non-Disclosure Agreement was discussed during our July 15 meet and confer conference. It was not. Contrary to your July 18 letter, NXP did not agree to produce "all documents, materials, and other communications with TSMC." Rather, as with all other discovery requests and consistent with the Court's order regarding the phasing of the case for discovery purposes, NXP agreed to produce documents, materials, and other communications with TSMC to the extent they relate to the 1987 PLA issue.

Further, your letter is once again non-responsive to Brett Schuman's July 1, 2008 and July 9, 2008 emails on the subject. (Those emails are attached to this letter for convenient reference). LSI/Agere has not articulated how the communication described in Brett's July 1, 2008 email violates any provision of the Non-Disclosure Agreement.

## NXP's Responses to LSI/Agere's Document Requests

Document Request No. 1:  NXP agreed to produce non-privileged documents referenced in its interrogatory responses.

DB2/20773928.1

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 2

<u>Document Request No. 2</u>:  With regard to Document Request No. 2, you have again mischaracterized NXP's position.  As we explained during our meet and confer, the collection of documents and the attorneys' evaluation of the relative importance of the underlying facts are privileged.  Further, you were unable to articulate during our teleconference the relevance of this information either to any issue in the case or to the phase of the case we are currently litigating.

<u>Document Request No. 3</u>:  We agreed to produce copies of documents received by NXP in response to third-party subpoenas.  Please confirm whether LSI/Agere will do the same.

<u>Document Request No. 4</u>:  We agreed to produce NXP's document retention policy.

<u>Document Request Nos. 9-12</u>:  NXP agreed to produce all non-privileged documents in its possession, custody or control relating to the 1987 PLA or its interpretation.

<u>Document Request Nos. 13-14</u>:  NXP agreed to produce responsive documents to the same extent agreed to by LSI/Agere, which we understood to be limited to agreements related to the patents-in-suit or the 1987 PLA as recited in your discovery responses.  If LSI/Agere's position has changed regarding what they will be producing, please let us know.

<u>Document Request Nos. 15 and 18</u>:  After advising you that <u>NXP does not generally have in its possession, custody or control Philips documents from the time prior to the creation of NXP</u> in 2006, we agreed to produce those non-privileged documents in NXP's possession, custody or control describing Philips' products in 1987.

<u>In your July 18 letter you improperly renew your request that NXP undertake to collect documents from Philips, without citing any authority supporting your apparent position that it is NXP's obligation to do so.  By parity of reasoning, Agere would be obligated to collect documents for NXP from Lucent and also AT&T.  We have not taken that position because it is inconsistent with litigants' obligations under the Federal Rules.  In any event, since your letter you have subpoenaed Philips, thereby acknowledging that NXP has no obligation to conduct that non-party discovery for LSI/Agere.</u>

<u>Document Request Nos. 26-29 and 32</u>:  We are puzzled by your inclusion of any reference to Document Request Nos. 26-29 and 32 in your July 18 letter, since NXP's responses to those requests were not served until days after our July 15 teleconference and indeed not until after you sent your July 18 letter.  We reached no agreements during our July 15 teleconference regarding these requests.

Morgan Lewis
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 3

## NXP's Responses To LSI/Agere's Interrogatories

<u>Interrogatory No. 1</u>:  With regard to Interrogatory No. 1, you have misstated our agreement.  As discussed during our meet and confer and as explained in my letter of July 18, 2008, in lieu of identifying an individual knowledgeable about the patents-in-suit as requested in Interrogatory No. 1, NXP has agreed to stipulate to which patents-in-suit are and are not within the capture period of the 1987 PLA.  As the parties agreed during the meet and confer, this is more than sufficient for this stage of the litigation.  With regard to your request for the identity of the person most knowledgeable with respect to differences between Philips' 1987 products and NXP's current products, we agreed to identify such a person.  With regard to your request for the identity of the person most knowledgeable with respect to third-party manufacturing lines, you failed to explain during our teleconference how the identity of this person is relevant during this phase of the litigation.

<u>Interrogatory Nos. 2 and 4</u>:  During our conference we discussed whether NXP's complaint – particularly, the First Claim for Relief – seeks a declaration that all of NXP's products are licensed or whether the claim is limited to those products accused by LSI/Agere during pre-litigation discussions.  We informed you that NXP has over 50,000 products and that NXP does not intend to identify, on a product-by-product basis, which product is licensed and which may not be, as LSI/Agere appears to be requesting.  We informed you that we do not believe that such an analysis is required by the 1987 PLA.

In the light of the foregoing, NXP will provide a supplemental response to these interrogatories by July 28 contending that, for present purposes, it is seeking to establish that all of the 10 products accused by LSI/Agere during pre-litigation discussions are licensed under the 1987 PLA.

<u>Interrogatory Nos. 12-15 and 17</u>:  As explained in my July 18 letter, NXP is looking into whether it can respond to Interrogatory Nos. 12-15 and 17.  The information may not be maintained in this way in the ordinary course of NXP's business.  Once we have further information, we will update you.  Further, as we explained during our July 15 teleconference, we do not understand how these requests – which relate to the processes allegedly used to make NXP's products – relate to the issues to be determined during this phase of the litigation.  The 1987 PLA grants a license to "products and services of the kinds which are furnished or used by" Philips or any of its "related companies" in their business in 1987.  As you conceded during our July 15 teleconference, this license grant focuses on whether the products or services themselves are "of the kinds" used by Philips in 1987, and not the processes used to make those products or services.  Further, as with the overwhelming majority of your other purported issues with NXP's discovery responses, LSI/Agere's request for all of this information would be obviated and

**Morgan Lewis**
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 4

subsumed within an appropriate agreement to proceed with this discovery on the basis of appropriate representative parts.

Interrogatory No. 16: During our July 15 teleconference, we informed you that NXP was not contending either of the two phase-locked loop related patents are within the Extended Period, *i.e.*, capture period, of the 1987 PLA, as amended. You conceded that, in the light of NXP's position, discovery regarding those patents and products (including Interrogatory No. 16) was not part of this phase of the case. In your July 18 letter, purporting to confirm our July 15 teleconference, you have changed your position and now appear to be demanding discovery regarding products that NXP does not contend are licensed. As we told you during the call, NXP stipulates that neither of the phase-locked loop patents (the '149 and '184 patents) are within the Extended Period of the 1987 PLA, as amended.

NXP will supplement the aforementioned interrogatory responses to the extent described herein on July 28, 2008. We expect LSI to serve its supplemental interrogatory responses on that date as well.

## NXP's Representative Products Proposal

During our July 15 teleconference, NXP proposed proceeding with discovery and adjudication during this phase of the litigation on the basis of representative parts. During our teleconference, you rejected that proposal out-of-hand and instead, based on LSI/Agere's purported reading of NXP's complaint, demanded complete discovery regarding all approximately 50,000 NXP products and all prior iterations of those products.

After rejecting NXP's proposal, LSI/Agere offered none of its own. In your July 21 letter you claim LSI made a "counterproposal" in your July 18 letter. If by "counterproposal" you are referring to language on page 4 of your July 18 letter, asking for information regarding, among other things, the quantities sold and prices paid by customers for each NXP product sold in the past six years, we disagree with your characterization of that request as a "counterproposal." The quantities sold, prices paid, location of manufacture, etc. is all irrelevant to adjudicating whether the products and services at issue are "of the kinds" used or furnished by Philips in 1987.

As noted in my July 18 letter, product data sheets are publicly available on all of NXP's products – if LSI/Agere really wants that information.

Your letters also erroneously state that NXP refused your proposal to proceed with representative products for Philips' 1987 products. We posed several follow-up questions in my July 18 letter,

Morgan Lewis
COUNSELORS AT LAW

Irell & Manella LLP
C. Maclain Wells
July 23, 2008
Page 5

none of which were answered in your July 21 letter, presumably because your proposal does nothing to promote efficiency of the discovery process.

We remain convinced that complete discovery regarding each and every current and former NXP product is not necessary to adjudicate NXP's rights under the license agreement. As we explained during our July 15 teleconference, the 1987 PLA only requires the current NXP products or services be "of the kinds" used or furnished by Philips in 1987. Further, in the light of NXP's agreement to provide a supplemental response to LSI/Agere's Interrogatory Nos. 2 and 4, identify those parts that NXP contends for present purposes are licensed, there is no justification for LSI/Agere's insistence on discovery regarding all other NXP parts.

### Privilege Log

Finally, while this condition was not mentioned during this portion of the meet and confer, we can agree to limit the litigation counsel exception for the privilege log to privileged materials created by litigation counsel and their agents after the filing of this action.

Very truly yours,

Mark W. Taylor

DB2/20773928.1

# EXHIBIT 14

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7656
FACSIMILE (310) 556-5382
MWELLS@IRELL.COM

July 28, 2008

**VIA E-MAIL**

mark.taylor@morganlewis.com
Mark W. Taylor
1111 Pennsylvania Ave, NW
Washington, DC 20004

   Re:  <u>NXP v. LSI and Agere</u>

Dear Mark:

   I write following-up to my letter dated July 21 to clear up inaccuracies and mischaracterizations in your July 18 letter regarding LSI's agreement regarding LSI's production of discovery materials.

   LSI's agreement to produce documents is subject to the objections identified in LSI's discovery responses and, to the extent that there are similar requests in LSI's discovery requests, dependent upon NXP's agreement to make a reciprocal production of the same scope. As addressed in the meet and confer, an initial production will take place on July 29, 2008 with supplemental productions forthcoming as additional documents are located, processed, and reviewed.

   Below are our responses to specific document requests addressed in your July 18 letter:

   Document Request 1: LSI will produce non-privileged documents relating to the substance of the 1987 PLA, including documents relating to its scope and enforceability.

   Document Request 2: LSI will produce non-privileged documents relating to the identified letter.

   Document Request 3: LSI will produce non-privileged documents sufficient to identify LSI's document retention policies.

   Document Request 4: LSI will produce non-privileged documents sufficient to show LSI's corporate and organizational structure.

1903908

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Mark Taylor
July 28, 2008
Page 2


Document Request 5: LSI will produce non-privileged documents sufficient to identify its legal status.

Document Requests 7-8 (and Interrogatories 2, 8, 9): LSI will produce non-privileged documents relating to NXP's licensing defense.

Document Requests 10-11: LSI will produce assignment agreements for the Patents-In-Suit and other assignment agreements related to the 1987 PLA subject to obtaining third party permissions regarding confidentiality where required. After reviewing these documents, if NXP believes more information is necessary, the parties can meet and confer.

Document Requests 21-22: LSI will produce the file histories for the Patents-In-Suit.

Document Requests 38-39: LSI will produce non-privileged documents relating to communications with NXP regarding the Patents-In-Suit and 1987 PLA.

Document Request 40: LSI will produce non-privileged documents relating to NXP's licensing defense. LSI does not believe that there are any such non-privileged documents because the request on its face calls for information which is all privileged.

Document Requests 43-44: We believe it makes sense to speak one final time to ensure that the parties properly define the scope of production relating to patent license agreements in their records.

Document Request 45: LSI will produce non-privileged documents relating to NXP's licensing defense.

Document Request 46-47: LSI will produce licenses with TSMC relating to the Patents-In-Suit or the 1987 PLA, subject to TSMC's required consent. LSI will produce correspondence with TSMC relating to the Patents-In-Suit, the 1987 PLA, or this action. This agreement is contingent upon NXP producing all agreements it has with TSMC, as well as all communications with TSMC regarding those agreements, this litigation, the 1987 PLA or the Patents-In-Suit.

Document Request 48: LSI will produce non-privileged documents sufficient to identify the legal relationship between LSI and Agere.

Document Request 54: LSI will produce non-privileged documents relating to NXP's licensing defense.

LSI is planning a supplementation of interrogatory responses 1, 11 and 14 on August 5. Note that this supplementation will not be exhaustive. In other words, additional facts or

1903908

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Mark Taylor
July 28, 2008
Page 3

information may come to light which may cause LSI to change its position.    This is
particularly the case as to the laches and estoppel defense referenced in interrogatory 14.

Sincerely,

/s/ C. Maclain Wells

C. Maclain Wells

1903908

# EXHIBIT 15

1  MICHAEL E. MOLLAND (State Bar No. 111830)
   DANIEL JOHNSON, JR. (State Bar No. 57409)
2  BRETT M. SCHUMAN (State Bar No. 189247)
   GREGG P. YATES (State Bar No. 224641)
3  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   E-mail: mmolland@morganlewis.com
6  E-mail: djjohnson@morganlewis.com
   E-mail: bschuman@morganlewis.com
7
   Attorneys for Plaintiff and Counterclaim-Defendant
8  NXP SEMICONDUCTORS USA, INC.

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

14  NXP SEMICONDUCTORS USA, INC.,        Case No. C 08-0775 JW
    a Delaware corporation,
15                                        **MOTION FOR PARTIAL SUMMARY**
                    Plaintiff,            **JUDGMENT**
16
         v.                               Hearing Date:    October 27, 2008
17                                        Time:            9:00 a.m.
    LSI CORPORATION d/b/a LSI LOGIC       Judge:           Hon. James Ware
18  CORPORATION, a Delaware corporation,
    and AGERE SYSTEMS, INC., a Delaware
19  corporation

20                  Defendant.

21  AGERE SYSTEMS, INC., a Delaware
    Corporation,
22                  Counterclaimant

23       v.

24  NXP SEMICONDUCTORS USA, INC., a
    Delaware corporation
25
                    Counterclaim-Defendant.
26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB1/61913570.3

NXP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

                                                                              **Page**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF THE CASE ..............................................................1

III.    ARGUMENT ..........................................................................................3

        A.    All Of The Prerequisites To Application Of Issue Preclusion Are Met Here .........3

        B.    The Settlement Of The Atmel Litigation, And The Associated Vacatur Order, Have No Impact On The Application Of Issue Preclusion Against Agere ..............................................................................................6

        C.    In Any Event, On Its Face The Vacatur Does Not Apply To The District Court's JMOL Ruling of Obviousness ........................................10

IV.     CONCLUSION .....................................................................................10

1

**TABLE OF AUTHORITIES**

2
                                                                                    **Page**

3     **Cases**

4     *Asustek Computer Inc. v. Ricoh Co., Ltd.,*
          2007 U.S. Dist. LEXIS 86302 (N.D. Cal. Nov. 21, 2007) ........................................................10
5
      *Bates v. Union Oil Co. of California,*
6         944 F.2d 647 (9th Cir. 1991) ........................................................ 7, 8, 9, 10

7     *Blonder-Tongue Labs., Inc. v. University of Ill. Found.,*
          402 U.S. 313 (1971) ........................................................9
8
      *Cardinal Chem. Co.v. Morton Int'l, Inc.,*
9         508 U.S. 83 (1993) ........................................................9, 10

10    *Graham v. John Deere Co. of Kansas City,*
          383 U.S. 1 (1966) ........................................................3
11
      *Hybritech Inc. v. Monoclonal Antibodies, Inc.,*
12        802 F.2d 1367 (Fed. Cir. 1986) ........................................................3

13    *In re Freeman,*
          30 F.3d 1459 (Fed. Cir. 1994) ........................................................4, 5, 6
14
15    *Luben Indus., Inc. v. United States,*
          707 F.2d 1037 (9th Cir. 1983) ........................................................5

16    *Medinol Ltd. v. Guidant Corp.,*
          341 F.Supp.2d 301 (S.D.N.Y. 2004) ........................................................10
17
18    *Mendenhall v. Barber Greene Co.,*
          26 F.3d 1573 (Fed. Cir. 1994) ........................................................10

19    *Partmar Corp. v. Paramount Pictures Theatres Corp.,*
          347 U.S. 89 (1954) ........................................................5
20
21    *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,*
          170 F.3d 1373 (Fed. Cir. 1999) ........................................................10

22    *Purdue Pharma L.P. v. Teva Pharmaceuticals USA, Inc.,*
          2004 WL 1444883 (S.D.N.Y. June 28, 2004) ........................................................10
23
24    *Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters,*
          686 F.2d 720 (9th Cir. 1982) ........................................................ 7, 8, 9

25    *Security People, Inc. v. Medeco Security Locks, Inc.,*
          59 F. Supp. 2d 1040 (N.D. Cal. 1999) ........................................................4, 5
26
27    *Sentinel Trust Co. v. Universal Bonding Ins. Co.,*
          316 F.3d 213 (3d Cir. 2003) ........................................................9

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/61913570.3                                      ii                    NXP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**
(continued)

2
                                                                                              **Page**

3     *Syverson v. IBM,*
        472 F.3d 1072 (9th Cir. 2007) .................................................................................4

4
      *Truth Hardware Corp. v. Ashland,*
5       2003 WL 22005839 (D. Del. Aug. 19, 2003)........................................................10

6     *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,*
        513 U.S. 18 (1994).................................................................................................8, 9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/61913570.3

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">

**NOTICE OF MOTION**

</div>

NOTICE IS HEREBY GIVEN that on October 27, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court, Plaintiff and Counterclaim Defendant NXP Semiconductors USA, Inc. ("NXP") will and hereby does move for partial summary judgment on (1) NXP's Third Claim For Relief (Invalidity of United States Patent No. 5,227,335) and (2) Defendant and Counterclaimant Agere Systems, Inc. ("Agere")'s Third Claim for Relief Against NXP For Patent Infringement (U.S. Patent No. 5,227,335), on the ground that collateral estoppel precludes Agere from asserting the patent against NXP. The motion is based upon this Notice, the following Memorandum of Points and Authorities, the accompanying declaration of Brett M. Schuman, all pleadings and papers on file in this case, and upon such other matters as may be presented to the court at the time of the hearing.

<div align="center">

**MEMORANDUM OF POINTS AND AUTHORITIES**

</div>

**I.    INTRODUCTION**

Agere has asserted a claim against NXP for purported infringement of a patent – United States Patent No. 5,227,335 ("the '335 patent") – that has been found invalid in a prior case by a jury (on anticipation grounds) and a judge (on obviousness grounds). Agere had a full and fair opportunity to litigate the validity of the '335 patent in the prior litigation, and it lost. Agere improperly seeks to relitigate those determinations here. Allowing Agere to do so would needlessly expend the resources of this Court and burden NXP.

Collateral estoppel defeats Agere's gambit. To try to avoid collateral estoppel, Agere settled the prior litigation and procured a vacatur of the judgment from the district court in that case. But the vacatur is irrelevant. Under controlling law, it is for this Court to decide whether to give preclusive effect to the determinations made by the jury and judge in the prior litigation. For the reasons explained below, this Court should apply collateral estoppel and reject Agere's attempt to force NXP – and this Court, and another jury – to re-try issues which were fully and fairly litigated in a prior case.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB1/61913570.3                                         NXP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    II.    STATEMENT OF THE CASE

2            NXP commenced this action on February 1, 2008. *See* Docket # 1. On May 30, 2008,

3    NXP filed an amended complaint for declaratory judgment relating to thirteen patents, including a

4    declaration that the '335 patent was invalid. *See* Docket # 24. On June 12, 2008, Agere

5    counterclaimed for purported infringement of the '335 patent against NXP.[1] *See* Docket # 30.

6            Previously, on February 20, 2002, Agere filed suit against Atmel Corporation ("Atmel")

7    alleging infringement of claims 1-6 and 11 of the '335 patent in the Eastern District of

8    Pennsylvania. *See* Schuman Decl., Ex. 2. After over three years of litigation, and a nearly three

9    week jury trial, the Agere-Atmel case culminated in a jury verdict that the asserted claims of the

10   '335 patent were invalid as anticipated. *See Agere Systems Inc. v. Atmel Corp.*, No. 02-864, 2005

11   WL 2994702 at *16-17 (E.D. Pa. Aug. 17, 2005) (attached to the Schuman Declaration as Exhibit

12   3). The jury's verdict and the district court's judgments were not surprising, given the prior art

13   that existed before the claimed inventions in the '335 patent, including work done by employees

14   at IBM (a rival company of the named inventor's employer) over a year before the application for

15   the '335 patent was even submitted to the PTO. *See* Schuman Decl., Ex. 4 (Amended Transcript

16   of Proceedings held on 03/15/05, *Agere Systems Inc., et al. v. Atmel Corp.*, 2:02-cv-00864-LDD

17   (E.D. Pa. Mar. 22, 2005) at 27:22-29:22). Indeed, a named inventor of the '335 patent, Dr. Rana,

18   made the admission at trial that the employees at IBM had in fact conceived of the *same* invention

19   claimed in the '335 patent:

20            12 Q If your earliest work --

21            13 A Yes.

22            14 Q -- was after the date shown on Exhibit 11 1 I--

23            15 A Yes.

24            16 Q -- would you agree with me that somebody at least drew

25   _____

26   [1] Agere's counterclaim in this litigation does not specify which claims of the '335 patent it alleges
     are infringed by NXP. However, on April 18, 2008 LSI and Agere filed a complaint with the
27   U.S. International Trade Commission ("ITC") alleging infringement of only claim 1 of the '335
     patent against NXP and others. *See* Declaration of Brett M. Schuman dated July 8, 2008
28   ("Schuman Decl."), Exhibit 1. Agere has never accused NXP of infringement of any claims of
     the '335 patent besides those declared invalid in the prior litigation.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

2

DB1/61913570.3

1       17 what you considered to be your invention prior to your

2       18 beginning your work?

3       19 A Yeah, if it is proven after looking at my notebooks in

4       20 my-- at our company, if my notebooks show that I started my

5       21 work after that date then, yes, then *they are the inventors,*

6       22 yes.

7    *Id.* at 29:12-22 (emphasis added). After the jury reached its verdict, the district court entered

8    judgment on the jury verdict of anticipation. *See* Schuman Decl., Ex. 5. Subsequently, the district

9    court denied Agere's post-trial motions, finding that the "great weight of the evidence" supported

10   the jury's verdict that the asserted claims of the '335 patent were invalid as anticipated. *See*

11   Schuman Decl., Ex. 3 (*Agere Systems Inc. v. Atmel Corp.,* 2005 WL 2994702 at *17-22).

12       While the jury did not also find the patent to be invalid on the ground of obviousness,[2] the

13   district court reviewed the evidence and then granted Atmel's motion for judgment as a matter of

14   law ("JMOL"), overturning the jury's decision of no obviousness and holding that no reasonable

15   jury could have found the asserted claims to be non-obvious. *Id.* at *22-26. The court entered a

16   separate order granting judgment as a matter of law against Agere with regard to the invalidity of

17   the '335 patent on the issue of obviousness. *Id.*

18       Agere and Atmel settled their dispute after the district court made these determinations.

19   Based on the parties' stipulated request, the district court vacated: (i) its summary judgment

20   orders; (ii) the jury verdict; and (iii) its judgments based on the jury verdict. *See* Schuman Decl.,

21   Ex. 7. The district court made no statement regarding the preclusive effect of the rulings it was

22   vacating. *Id.*

23

24

---

25   [2] A finding of anticipation requires a single piece of prior art to show every element of the claim.

26   *See Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1378 (Fed. Cir. 1986). A finding of obviousness requires that **any differences** between the claim and the prior art be

27   obvious. *See Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17-18 (1966). While the jury had not found that the patent was also invalid on the ground of obviousness, this was likely

28   because they felt there were **no differences** between the claim and the prior art, as reflected in their verdict of anticipation.

1    III.    **ARGUMENT**

2          Collateral estoppel (also called issue preclusion) protects NXP from having to re-litigate

3    issues, *i.e.*, the validity of the '335 patent, that were fully and fairly litigated and decided against

4    Agere in a prior proceeding.

5                    A.    **All Of The Prerequisites To Application Of Issue Preclusion**
6                          **Are Met Here**

7          The Federal Circuit and the courts in this Circuit all apply the same factors when assessing

8    the appropriateness of applying collateral estoppel.  Specifically, collateral estoppel is appropriate

9    if: (1) the issue of fact or law is identical to one decided in the first action; (2) the issue was

10   actually litigated and determined in the first action; (3) resolution of the issue was essential to a

11   final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the

12   issue in the first action; and (5) the party against whom issue preclusion is asserted was a party or

13   in privity with a party to the prior action.  *See, e.g., In re Freeman,* 30 F.3d 1459, 1465 (Fed. Cir.

14   1994); *Syverson v. IBM,* 472 F.3d 1072, 1078 (9th Cir. 2007); *Security People, Inc. v. Medeco*

15   *Security Locks, Inc.,* 59 F. Supp. 2d 1040, 1044 (N.D. Cal. 1999).

16         All of these prerequisites are met here.  There are no disputed issues of material fact on

17   any of them.

18         *First,* the issue involved in this case – the validity of the '335 patent – is identical to the

19   issue decided by the jury and the district court in the prior proceeding.  "The general principle of

20   issue preclusion is that a right, question, or fact distinctly put in issue cannot be disputed in a

21   second suit."  *Freeman,* 30 F.3d at 1465.  Here, a jury in the Eastern District of Pennsylvania

22   found clear and convincing evidence that claim 1 of the '335 patent was invalid as anticipated.

23   *See* Schuman Decl., Ex. 8, Doc. No. 333, Trial Transcript of Proceedings held on 03/22/05, *Agere*

24   *Systems Inc., et al.* v. *Atmel Corp.,* 2:02-cv-00864-LDD (E.D. Pa. Mar. 24, 2005) at 21:7-10.  The

25   jury reached its conclusion at least in part because an inventor of the '335 patent, Dr. Rana,

26   conceded that employees at IBM created the same invention set forth in his patent application.

27   *See* Schuman Decl., Ex. 4 at 27:22-29:22.  The district court entered judgment on that verdict.

28   *See* Schuman Decl., Ex. 5.  The district court then found "overwhelming" evidence that the '335

1    patent was invalid on obviousness grounds. *See* Schuman Decl., Ex. 2, at \*26. These issues –

2    anticipation and obviousness of the '335 patent – are identical to the issues this Court will have to

3    consider should it allow Agere to re-litigate the '335 patent.

4         *Second*, it is beyond dispute that the validity of the '335 patent was heavily litigated and

5    actually determined by the judge and jury in the earlier proceeding. *See* Schuman Decl., Ex. 2.

6    "The requirement that the issue have been actually decided is generally satisfied if the parties to

7    the original action disputed the issue and the trier of fact decided it." *Freeman*, 30 F.3d at 1466.

8         *Third*, resolution of the issues regarding the validity of the '335 patent were essential to

9    the final judgment in favor of the accused infringer, Atmel, in the prior litigation. *See* Schuman

10   Decl., Exs. 5; *see also* Schuman Decl., Ex. 6 at pp. 3-4 ("there is no doubt that a final judgment

11   has been reached on the . . . '335 . . . patent[]"). "In order to give preclusive effect to a particular

12   finding in a prior case, that finding must have been necessary to the judgment rendered in the

13   previous action. The purpose of this requirement is to prevent the *incidental or collateral*

14   *determination of a nonessential issue* from precluding reconsideration of that issue in later

15   litigation." *Freeman*, 30 F.3d at 1466 (emphasis added) (citation omitted). Validity is not

16   "incidental" or "collateral" in patent litigation – it is a primary defense in nearly all patent cases,

17   and was necessary to resolve the claims and counterclaims in the prior Atmel litigation.

18        Further, once judgment is entered it is final for purposes of res judicata and collateral

19   estoppel whether or not the losing party chooses to file an appeal. *See Partmar Corp. v.*

20   *Paramount Pictures Theatres Corp.*, 347 U.S. 89, 99 n.6 (1954). "Ninth Circuit case law holds

21   that to be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the

22   sense of 28 U.S.C. § 1291. Instead, a final judgment for purposes of collateral estoppel is any

23   prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be

24   accorded preclusive effect." *Security People*, 59 F. Supp. 2d at 1045 (citing *Luben Indus., Inc. v.*

25   *United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).

26        "[T]he Ninth Circuit has set forth a number of factors which should be considered in

27   determining whether a prior adjudication is 'sufficiently firm' to be accorded conclusive effect:

28   (1) whether the decision was not avowedly tentative, (2) whether the parties were fully heard, (3)

1   whether the court supported its decision with a reasoned opinion, and (4) whether the decision

2   was subject to an appeal." *Id.* Here, the court-affirmed jury verdict and the district court's JMOL

3   order were in no sense avowedly tentative. Both anticipation and obviousness were disputed and

4   were decided by the jury and the district court. *See* Schuman Decl., Exs. 2 & 8. Judgment was

5   entered on the verdict, the district court provided another independent judgment in the form of the

6   obviousness JMOL, and each was supported by a well-reasoned order. *See* Schuman Decl., Ex. 2.

7   Finally, the decisions were subject to appeal until Agere *voluntarily* gave up that right when the

8   parties settled the matter, thereby ending the controversy and removing appellate jurisdiction. In

9   sum, there is no question that the parties in the earlier litigation vigorously contested both

10   anticipation and obviousness, and the jury and district court did in fact decide those issues with

11   sufficient firmness and finality.[3]

12       *Fourth*, Agere had a full and fair opportunity to litigate the validity of the '335 patent in

13   the prior litigation. "To apply issue preclusion, the party against whom the estoppel is being

14   asserted must have been accorded a full and fair opportunity to litigate in the prior court

15   proceeding the very issue he now seeks to relitigate." *Freeman*, 30 F.3d at 1467. Agere

16   participated in discovery and litigated the case for over three years from the time its case was

17   filed until the date that trial commenced. Agere then had the opportunity to present all of its

18   arguments regarding validity to a jury. *See* Schuman Decl., Ex. 8. The district court then

19   entertained and denied post-trial motions filed by Agere regarding the jury's invalidity verdict.

20   *See* Schuman Decl., Ex. 2. Agere also was heard in opposition to Atmel's JMOL motion, which

21   was granted by the court. *See id.*

22       *Fifth*, and finally, it is undisputed that Agere – the party against whom issue preclusion is

23   asserted – was a party to the prior action, *Agere Systems Inc., et al. v. Atmel Corp.*, 2:02-cv-

24   00864-LDD (E.D. Pa.).

25

26

27

28

---

[3] We explain separately below why the district court's vacatur order does not deprive the judgment and related rulings of collateral estoppel effect. *See* post, at section III.B.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB1/61913570.3

NXP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1
2

**B.     The Settlement Of The Atmel Litigation, And The Associated
Vacatur Order, Have No Impact On The Application Of Issue
Preclusion Against Agere**

3        The Ninth Circuit has held that district court rulings vacated solely for purposes of

4   settlement may continue to have preclusive effect against the parties involved in the prior

5   litigation. *See Bates v. Union Oil Co. of California*, 944 F.2d 647, 650-51 (9th Cir. 1991);

6   *Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982).

7        In *Bates*, the Ninth Circuit considered the precise question presented here: "whether a

8   judgment vacated as a condition of settlement can have preclusive effect." *Bates*, 944 F.2d at

9   649. In a prior case a group of Unocal oil dealers successfully sued Unocal on a variety of

10  contract claims. While the appeal was pending, the parties agreed to settle, conditioned on

11  vacatur of the district court judgment, to which the district court judge agreed. When another

12  group of Unocal dealers sued Unocal in a new action with similar claims, the dealers moved for

13  summary judgment against Unocal based on the preclusive effect of the judgment in the first

14  action. Unocal argued that collateral estoppel did not apply because the judgment had been

15  vacated. The district judge disagreed, holding that "the vacatur sa[id] nothing about the

16  preclusive effect of the [district court] judgment." *Bates*, 944 F.2d at 649. The Ninth Circuit

17  affirmed the district court's application of collateral estoppel based on the previously vacated

18  judgment. *See Bates*, 944, F.2d at 650 ("We hold that the [district court] judgment did not lose

19  preclusive effect simply because it was vacated, and that the *Ringsby* factors, although not

20  considered at the time the [district court] judgment was vacated, were properly considered by the

21  district court when, in this case, it confronted the question of the preclusive effect of the vacated

22  judgment").

23       In *Ringsby*, 686 F.2d at 720, the parties settled and agreed that the judgment of the district

24  court be vacated while an appeal was pending. The Ninth Circuit reasoned that:

25           If the effect of post-judgment settlements were automatically to vacate the trial court's
26           judgment, any litigant dissatisfied with a trial court's findings would be able to have them
             wiped from the books. ... 'It would be quite destructive to the principle of judicial finality
27           to put such a litigant in a position to destroy the collateral conclusiveness of a judgment
             by destroying his own right of appeal.' That possibility would undermine the risks
28

1    inherent in taking any controversy to trial and, in cases such as this one, provide the
     dissatisfied party with an opportunity to relitigate the same issues.

2
     *Ringsby*, 686 F.2d at 721. Thus, the Ninth Circuit declined to vacate the district court judgment
3
     because "the appellant ha[d] by his own act caused the dismissal of the appeal and [wa]s in no
4
     position to complain that his right of review of an adverse lower court judgment ha[d] been lost."
5
     *Id.* at 722.
6
           In *Bates*, the Ninth Circuit directed district judges to consider what it has termed "the
7
     *Ringsby* factors" before granting a request to vacate a judgment to facilitate settlement. *See*
8
     *Bates*, 944 F.2d at 950. By "the *Ringsby* factors" the court was referring to "the competing values
9
     of finality of judgment and right to relitigation of unreviewed disputes." *Id.* (citing *Ringsby*, 686
10
     F.2d at 722). However, "[i]f the court does not consider Ringsby in granting or denying the
11
     motion to vacate, the question of issue preclusion from the first trial will remain open for
12
     subsequent determination in a later case." *Id.*, at 651.
13
           Here, as in *Bates v. Unocal*, the district court in the prior litigation did not expressly
14
     consider the future consequences of its vacatur order. *See* Schuman Decl., Ex. 7. Therefore, it is
15
     this Court's prerogative to decide, in the first instance, whether to give preclusive effect in this
16
     case to the vacated invalidity judgment from the Atmel litigation. As the judge did in *Bates v.*
17
     *Unocal*, the Court should conclude that re-litigation of the validity of the '335 patent "'after a full
18
     and fair jury trial' of those same issues in [Atmel] would be a waste of judicial resources." *Bates*,
19
     944 F.2d at 650.
20
           In cases decided after *Ringsby* and *Bates*, the Supreme Court has reinforced the strong
21
     systemic interest in finality of judgments – especially in cases involving the validity of patents.
22
     In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), the Court
23
     addressed the issue of whether vacatur is appropriate when an appeal is mooted by the parties'
24
     settlement of the case. The Court held that, absent exceptional circumstances, judgments should
25
     not be vacated under these circumstances: "Where mootness results from settlement . . . the
26
     losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or
27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

8                          NXP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DB1/61913570.3

1    certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.*, at 25.  The

2    Court added that the "public interest" justifies the general rule against vacatur:

> As always when federal courts contemplate equitable relief, our
> holding must also take account of the public interest. 'Judicial
> precedents are presumptively correct and valuable to the legal
> community as a whole.  They are not merely the property of private
> litigants and should stand unless a court concludes that the public
> interest would be served by vacatur.'

*Id.*, at 26.[4]

7        In *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 100-101 (1993), the Court made

8    the point specifically in the context of judgments regarding the validity of patents.  In *Cardinal,*

9    the Court rejected "[t]he Federal Circuit's current practice of routinely vacating declaratory

10   judgments regarding patent validity following a determination of noninfringement." *Id.*, at 88.

11   The Court's ruling was based in large part on the "strong public interest in the finality of

12   judgments in patent litigation." *Id.*, at 100.  "[T]he Federal Circuit's practice of routinely

13   vacating judgments of validity after finding noninfringement creates a similar potential for

14   relitigation and imposes ongoing burdens on competitors who are convinced that a patent has

15   been correctly found invalid." *Id.*, at 101.

16       In *Cardinal,* the Court relied on its prior decision in *Blonder-Tongue Labs., Inc. v.*

17   *University of Ill. Found.,* 402 U.S. 313 (1971).  In *Blonder-Tongue,* a plaintiff's patent was

18   declared invalid by a court in the Southern District of Iowa.  *Id.* at 314-15.  That same patent was

19   also the subject of a concurrent litigation against a different defendant in the Northern District of

20   Illinois, and the defendant in that action argued that the ruling in Iowa bound the plaintiff in the

21   Illinois litigation.  *Id.* at 316.  Both the district court and the court of appeals rejected that

22   argument, but the Supreme Court unanimously reversed.  *Id.* at 316-17.  The Court noted that

23   patent litigation "is a very costly process," and that resources are wasted if parties are forced to

24   re-litigate claims the patentee has fully litigated and lost in a prior action.  *Id.* at 334.  The Court

25   held that when there has been a "perfectly sound judgment of invalidity," it makes little sense and

26

27   [4] In the light of *U.S. Bancorp.,* and the Third Circuit's analysis of the case in *Sentinel Trust Co. v.*
     *Universal Bonding Ins. Co.,* 316 F.3d 213, 220 (3d Cir. 2003), there is at least a serious question
28   regarding whether the district court in the Atmel case should have agreed to vacate the judgment
     in that case.

1    is indeed "wasteful" to force new defendants to expend additional resources to overcome the

2    presumption of validity yet again, and to re-litigate infringement of an invalid patent. *Id.* at 338.

3           Other cases decided since *Ringsby* and *Bates* show that collateral estoppel is particularly

4    appropriate when the former adjudication involves the validity of a patent. *See, e.g., Pharmacia*

5    *& Upjohn Co. v. Mylan Pharmaceuticals, Inc.,* 170 F.3d 1373, 1379 (Fed. Cir. 1999) ("once the

6    claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party

7    who is sued for infringement of those claims may reap the benefit of the invalidity decision under

8    the principles of collateral estoppel" (*citing Mendenhall v. Barber Greene Co.,* 26 F.3d 1573,

9    1577 (Fed. Cir. 1994))); *see also Medinol Ltd. v. Guidant Corp.,* 341 F.Supp.2d 301, 318-23

10   (S.D.N.Y. 2004) (applying collateral estoppel to invalidity determination in prior case); *Asustek*

11   *Computer Inc. v. Ricoh Co., Ltd.,* 2007 U.S. Dist. LEXIS 86302 (N.D. Cal. Nov. 21, 2007) (Patel,

12   J.) (same) (attached to the Schuman Declaration as Ex. 9); *Truth Hardware Corp. v. Ashland,*

13   2003 WL 22005839 (D. Del. Aug. 19, 2003) (Sleet, J.) (same) (attached to the Schuman

14   Declaration as Ex. 10); *Purdue Pharma L.P. v. Teva Pharmaceuticals USA, Inc.,* 2004 WL

15   1444883 (S.D.N.Y. June 28, 2004) (same) (attached to the Schuman Declaration as Ex. 11).

16          Here, notwithstanding that Agere procured a vacatur of the Atmel judgment, that

17   judgment should be given collateral estoppel effect in this litigation under the controlling case of

18   *Bates v. Unocal.* Agere should not be permitted to relitigate the *same issues* it litigated (and lost)

19   in Pennsylvania before *another* jury in *another* court. As the Supreme Court said in *Cardinal,*

20   "[p]ermitting repeated litigation of the same issues as long as the supply of unrelated defendants

21   holds out reflects either the aura of the gaming table or 'a lack of discipline and of

22   disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning

23   rules of procedure.'" *Cardinal,* 508 U.S. at 101, fn.23 (citation omitted).

                    **C.    In Any Event, On Its Face The Vacatur Does Not Apply To The
24                          District Court's JMOL Ruling of Obviousness**

25

26          The Pennsylvania court's vacatur order states: "The Court's summary judgment orders,

27   jury verdicts, and *judgments based thereon,* including the March 28, 2005 Order of Civil

28   Judgment and the underlying jury verdict, are hereby vacated." *See* Schuman Decl., Ex. 7

1    (emphasis added). The district court's JMOL of obviousness, entered August 18, 2005, is not a

2    "summary judgment order," it is not a "jury verdict," and it is certainly not a "judgment[] based"

3    on the jury verdict – it was a judgment *notwithstanding* the jury verdict. Thus, the vacatur order

4    does not apply to the JMOL finding the '335 patent invalid on obviousness grounds. The JMOL

5    independently bars Agere from re-litigating the validity of the '335 patent in this proceeding.

6    **IV.    CONCLUSION**

7         For the foregoing reasons, NXP respectfully requests an order granting partial summary

8    judgment in its favor on (1) NXP's Third Claim for Relief; and (2) Agere's Third Claim for

9    Relief, based on the preclusive effect of the determinations and judgments in the Atmel litigation.

10   Dated: July 8, 2008                                    MORGAN, LEWIS & BOCKIUS LLP

11

12

13                                                         By /s/ Brett M. Schuman
                                                              Brett M. Schuman
14                                                            Attorneys for NXP Semiconductors USA,
                                                              Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 16

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  415.442.1000
Fax:  415.442.1001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**Brett M. Schuman**
415.442.1024
bschuman@morganlewis.com

July 29, 2008

The Honorable James Ware
United States District Court
280 South First Street
San Jose, CA 95113

      Re:    *NXP Semiconductors USA, Inc. v. LSI Corporation and Agere Systems, Inc.*
            No. CV-08-0775 JW

Dear Judge Ware:

We write in response to the letter filed yesterday by counsel for defendants LSI
Corporation and Agere Systems, Inc. (collectively, "LSI"), Docket #36, which asks the Court to
take off calendar or continue NXP's pending Motion for Partial Summary Judgment.

Preliminarily, we object to LSI's form of procedure.  Nothing in the Federal Rules of
Civil Procedure or the Northern District Local Rules authorizes a letter from LSI asking this
Court to take NXP's motion off calendar.  However, we think LSI's request can and should be
denied without the need for proper motion practice.

### The Court's Scheduling Order Does Not Prohibit NXP From
### Seeking Partial Summary Judgment Based On Collateral Estoppel

As LSI stated in the Joint Case Management Conference Statement, the parties' proposal
to phase this case was designed to postpone discovery and disclosures under the Patent Local
Rules regarding claim construction, infringement and invalidity:

      LSI requests that the Court phase the litigation by allowing ample time for discovery on
      licensing-related issues before deadlines for patent disclosures begin.

*See* Docket #22, at 7:10-15.

      NXP's Motion for Partial Summary Judgment asks the Court to decide only whether
prior determinations that the '335 patent is invalid are entitled to collateral estoppel effect in this
case.  It does not require discovery, claim construction, etc., and LSI does not argue otherwise.

DB2/20782460.1

**Morgan Lewis**
COUNSELORS AT LAW

The Honorable James Ware
July 29, 2008
Page 2

In its July 28, 2008 letter, LSI quotes NXP's request that the Court allow the parties to litigate the effect of the Patent License Agreement "before issues relating to the noninfringement or invalidity of the patents-in-suit." NXP's pending Motion for Partial Summary Judgment does not ask the Court to adjudicate, in the first instance, any issues of noninfringement or invalidity. It asks the Court to apply collateral estoppel.

Perhaps more important than characterizations of what the parties *requested* is what the Court understood and *ordered* with respect to case management. In its Scheduling Order, Docket #28, the Court said: "the parties represented that they wish to file summary judgment motions (re: the patent license at issue in this case) *before proceeding with claim construction under the Patent Local Rules*." (emphasis added). Again, NXP's Motion for Partial Summary Judgment does not require claim construction or any other procedures under the Patent Local Rules. Thus, nothing in the Court's Scheduling Order precluded NXP from filing its pending Motion for Partial Summary Judgment.

→ **NXP's Motion Requires No Discovery And Promotes Efficiency**

In its letter, LSI does not contend that a discovery is required before the Court can adjudicate NXP's motion. Nor does LSI contend that claim construction or other disclosures under the Patent Local Rules are required before the Court can adjudicate NXP's motion. In fact, none of that is required for the Court to decide whether collateral estoppel precludes LSI from asserting the invalidated '335 patent against NXP.

LSI suggests that it would be more efficient for the Court to postpone NXP's pending Motion For Partial Summary Judgment on collateral estoppel until after the Court resolves NXP's anticipated motion for summary judgment regarding the Patent License Agreement: "A possible result of the February 2009 hearing is that the Court will conclude that NXP has a complete license to the '335 patent. If this is the case, NXP's collateral estoppel motion regarding the '335 patent may be moot." *See* Docket #36, p. 2.

LSI has it entirely backwards. If, as NXP contends in its pending Motion for Partial Summary Judgment, LSI is precluded from asserting the '335 patent against NXP, neither the parties nor the Court need to be concerned with litigating and deciding whether NXP is licensed to that patent.

**LSI's Mention Of The ITC Proceeding Is Irrelevant**

LSI fails to explain how the pending motion in the ITC proceeding affects this case, if at all. Significantly, LSI does not argue (or cite any authority supporting the proposition) that a final decision by the ITC regarding collateral estoppel would be binding on this Court. Nor can LSI say when a final ITC decision on the issue may come. In short, this Court need not and

DB2/20782460.1

**Morgan Lewis**
COUNSELORS AT LAW

The Honorable James Ware
July 29, 2008
Page 3

should not abstain from deciding a properly noticed motion simply because the ITC may decide
a similar issue in a separate case pending there.

*    *    *

For the foregoing reasons, LSI's request that NXP's pending Motion for Partial Summary
Judgment be taken off calendar should be denied, and NXP's Motion for Partial Summary
Judgment should be heard as scheduled.

Respectfully submitted,

Brett M. Schuman

DB2/20782460.1

# EXHIBIT 17

1   MORGAN, LEWIS & BOCKIUS LLP
    MICHAEL E. MOLLAND, State Bar No. 111830
2   DANIEL JOHNSON, JR., State Bar No. 57409
    BRETT M. SCHUMAN, State Bar No. 189247
3   GREGG P. YATES, State Bar No. 224641
    One Market, Spear Street Tower
4   San Francisco, CA  94105-1126
    Tel:  415.442.1000
5   Fax:  415.442.1001
    E-mail:  mmolland@morganlewis.com
6   E-mail:  djjohnson@morganlewis.com
    E-mail:  bschuman@morganlewis.com
7
    Attorneys for Plaintiff
8   NXP SEMICONDUCTORS USA, INC.

9
                        UNITED STATES DISTRICT COURT
10
                     NORTHERN DISTRICT OF CALIFORNIA
11
                            SAN JOSE DIVISION
12

13   NXP SEMICONDUCTORS USA, INC.,              Case No. C 08-00775 JW
     a Delaware corporation,
14                                              **PLAINTIFF NXP SEMICONDUCTORS
                      Plaintiff,                USA, INC.'S SUPPLEMENTAL
15                                              RESPONSES TO LSI'S FIRST SET OF
              vs.                               INTERROGATORIES**
16
     LSI CORPORATION d/b/a LSI LOGIC
17   CORPORATION, a Delaware corporation,
     and AGERE SYSTEMS, INC. a Delaware
18   corporation,

19                    Defendants.

20
            Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules
21
     for the Northern District of California, Plaintiff NXP Semiconductors USA, Inc. ("NXP"), hereby
22
     responds to Defendants LSI Corporation and Agere Systems Inc.'s ("LSI") First Set of
23
     Interrogatories (Nos. 1-17), served on May 21, 2008 as follows:
24

25                          **GENERAL OBJECTIONS:**

26         1.      As preliminary and general objections to LSI's First Set of Interrogatories, NXP

27   objects to each interrogatory to the extent that it calls for information contained in notes,

28
MORGAN, LEWIS &
  BOCKIUS LLP
ATTORNEYS AT LAW
   NEW YORK
                 DB2/20778519.2

**RESPONSE TO INTERROGATORY NO.8:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the Patent Licensing Agreement. NXP further objects to this interrogatory as unduly burdensome in that it seeks to improperly shift the burden from LSI to NXP to identify potentially infringing products. Under the local patent rules, it is LSI's burden to identify products which it alleges are infringing the Patents-In-Suit, and only then does the burden shift to NXP to raise appropriate defenses. Further, NXP objects to this interrogatory as unduly burdensome because answering this interrogatory would require NXP to review and analyze hundreds of products before LSI has narrowed this scope to a reasonable number by accusing specific NXP products. NXP also objects to this interrogatory on the ground that it calls for a legal conclusion. NXP further objects to this interrogatory on the grounds it prematurely seeks an opinion that will be the subject of expert testimony and improperly shifts the burden from LSI to prove infringement. NXP objects to the forgoing interrogatory to the extent that it requests information protected by the attorney/client privilege, the attorney work product doctrine, or other applicable protections.

**INTERROGATORY NO. 9:**

Excluding any of the subject matter called for by the Northern District of California's Patent Local Rules 3-3 and 3-4, IDENTIFY all facts and reasons (including all DOCUMENTS) that support or contradict any NXP contention that each of the claims of the PATENTS-IN-SUIT is invalid under the patent laws of the United States.

**RESPONSE TO INTERROGATORY NO. 9:**

As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects to this interrogatory as overly broad in that it requests information outside the scope of the current phase of litigation as agreed by the parties and is not related to the terms and coverage of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20778519.2

14

1   Patent Licensing Agreement.  NXP further objects to this interrogatory as premature in that it

2   seeks information explicitly at issue in later phases of this litigation, but not at issue during this

3   phase.  Furthermore, NXP objects to this interrogatory as premature and unduly burdensome in

4   that invalidity contentions are explicitly contemplated by the patent local rules of the United

5

6   States District Courts for the Northern District of California, and will be served at a later date but

7   are not currently the responsibility of NXP.  NXP also objects to this interrogatory on the ground

8   that it calls for a legal conclusion.  NXP further objects to this interrogatory on the grounds it

9   prematurely seeks an opinion that will be the subject of expert testimony.  NXP objects to the

10  forgoing interrogatory to the extent that it requests information protected by the attorney/client

11

12  privilege, the attorney work product doctrine, or other applicable protections.

13  **INTERROGATORY NO. 10:**
        IDENTIFY all facts and reasons (including all DOCUMENTS) that support or contradict
14  any NXP contention that the PATENTS-IN-SUIT are unenforceable.

15

16  **RESPONSE TO INTERROGATORY NO. 10:**

17      As explained in the GENERAL OBJECTIONS section above at paragraph 5, NXP objects

18  to this interrogatory as overly broad in that it requests information outside the scope of the current

19  phase of litigation as agreed by the parties and is not related to the terms and coverage of the

20  Patent Licensing Agreement.  NXP also objects to this interrogatory because it calls for a legal

21  conclusion.  Further, NXP objects to this interrogatory in that it requests information and

22  documents which are properly protected by attorney client privilege, the attorney work product

23  doctrine, and other applicable protections and privileges.

24

25  **INTERROGATORY NO. 11:**
        IDENTIFY all facts and reasons (including all DOCUMENTS) that support or contradict
26  any NXP contention that NXP has not willfully infringed any claim of the PATENTS-IN-SUIT.

27

28

1    Mark Taylor's July 23, 2008 letter to C. Maclain Wells, the information requested by this

2    interrogatory is irrelevant.

3

4

5    Dated: August 5, 2008                              MORGAN, LEWIS & BOCKIUS LLP

6

7                                                       By _____

8                                                          Brett Schuman
                                                           Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DB2/20778519.2                                    25