United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NXP Semiconductors USA, Inc., | NO. C 08-00775 JW |
| Plaintiff, v. | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| LSI Corporation, et al., | |
| Defendants. | |

## I. INTRODUCTION

NXP Semiconductors USA, Inc. ("Plaintiff") brings this action against LSI Corporation ("LSI") and Agere Systems Inc. ("Agere") (collectively, "Defendants") seeking declaratory judgment of non-infringement and invalidity concerning twelve U.S. patents.[1] Plaintiff manufactures and sells semiconductors.

---

[1] Plaintiff's Amended Complaint initially sought declaratory judgment with respect to thirteen U.S. patents. (See Docket Item No. 24.) However, the Court entered a stipulated Order on February 20, 2009 dismissing Plaintiff's claim regarding U.S. Patent No. 6,227,335. (See Docket Item No. 264.) The remaining patents-in-suit are as follows: U.S. Patent No. 5,600,182 ("'182 Patent"); U.S. Patent No. 5,599,739 ("'739 Patent"); U.S. Patent No. 5,149,672 ("'672 Patent"); U.S. Patent No. 5,022,958 ("'958 Patent"); U.S. Patent No. 6,153,543 ("'543 Patent"); U.S. Patent No. 4,914,500 ("'500 Patent"); U.S. Patent No. 4,919,748 ("'748 Patent"); U.S. Patent No. 5,844,928 ("'928 Patent"); U.S. Patent No. 5,909,149 ("'149 Patent"); and U.S. Patent No. 6,163,184 ("'184 Patent").

1  Presently before the Court is Plaintiff's Motion for Partial Summary Judgment on Plaintiff's
2  First Claim for Relief.[2]  The Court conducted a hearing on March 9, 2009.  Based on the papers
3  submitted to date and oral argument, the Court DENIES Plaintiff's Motion for Partial Summary
4  Judgment.

## II.  BACKGROUND

**A.    Undisputed Facts**

In January 1956, the United States, as plaintiff, and Western Electric Co., Inc. and American Telephone and Telegraph Co. (collectively, "AT&T"), as defendants, ended roughly seven years of litigation concerning AT&T's status as a monopolist in the communications services and communications equipment markets by entering into a consent decree that was enforced by the District Court ("1956 Consent Decree").  See United States v. Western Elec. Co., Inc., No. 17-49, 1956 U.S. Dist. LEXIS 4076, at *1 (D. N.J. Jan. 24, 1956).  The 1956 Consent Decree required AT&T to provide a non-exclusive license, with certain limitations, of its patents to anyone requesting such a license.  Id.  The 1956 Consent Decree enjoined AT&T "from including in any license granted by [AT&T] any restriction or condition whatsoever limiting the exercise of the rights granted thereby except that the license could be conditioned on (1) payment of reasonable royalty . . . (2) subjection . . . and (3) such other terms as [the] Court [should] approve upon application by [AT&T] and notice to the [United States]."  Id. at *13-15.

In 1980, while the 1956 Consent Decree was still in effect, AT&T entered into a Patent Licensing Agreement ("1980 PLA") with N.V. Philips' Gloeilampenfabrieken, a Netherlands corporation, U.S. Philips Corporation, a Delaware corporation, and North American Philips Corporation, a Delaware corporation, (collectively, "Philips").  (Declaration of Brett M. Schuman in Support of Plaintiff NXP Semiconductors USA's Motion for Partial Summary Judgment, Ex. D at 1, hereafter, "Schuman Decl.," Docket Item No. 138.)  Under the 1980 PLA, Philips and AT&T cross-

---

[2] (Plaintiff NXP Semiconductors USA's Motion for Partial Summary Judgment, hereafter, "Motion," Docket Item No. 124.)

2

licensed, with a few exceptions, all their patents for "inventions made prior to [July 1, 1987]." (Schuman Decl., Ex. D § 2.03, General Definitions Appx.) The contract was limited to a non-exclusive license for use in connection with numerous "kinds" of AT&T and Philips products and services, which were enumerated in the license. (Id., Ex. D §§ 2.01, 2.02.)

In 1982, United States District Judge Harold Greene vacated the 1956 Consent Decree. See United States v. Am. Telephone and Telegraph Co., 552 F. Supp. 131, 226 (D.D.C. 1982). In 1987, AT&T and Philips entered into a second Patent License Agreement ("1987 PLA"), governed by New York law, and under slightly different terms.[3] (Declaration of Maclain Wells in Support of LSI Corporation's Opposition to NXP Semiconductors, USA's Motion for Partial Summary Judgment, Ex. 13, hereafter, "Wells Decl.," Docket Item No. 202.) Under the 1987 PLA, AT&T and Philips granted, with a few exceptions, non-exclusive cross licenses to each others' patents filed before July 1, 1994. (Id., Ex. 13 § 1.01, Definitions Appx.) The scope of the license covered "any or all products and services of the kinds which are furnished or used by [Philips and AT&T] . . . in the operation of the business in which [they are] engaged on [July 1, 1987]." (Id., Ex. 13 § 1.01.)

In 1995, AT&T announced that it was restructuring. AT&T planned to conduct its business through three separate legal entities–a services company, an equipment company and a company called AT&T Global Information Solutions. (Schuman Decl., Ex. 19 at 1.) As a result, AT&T attempted to obtain consent from certain licensors including Philips, to sublicense AT&T's existing patent license rights to the three new AT&T entities. (Joint Statement of Undisputed Facts at 42-43, hereafter, "Undisputed Facts," Docket Item No. 215.) In November 1995, AT&T and Philips entered into an agreement ("1995 Concurrence"), under which they agreed to the following: First, the 1987 PLA would be extended to include inventions under patents filed no later than December 31, 1996 ("the Extended Period"). (Wells Decl., Ex. 19.) Second, Philips and the new AT&T entities would retain all the rights and obligations of the 1987 PLA, with the three new entities

---

[3] "The construction and performance of [the 1987 PLA] shall be governed by the law of the State of New York, United States of America." (Wells Decl., Ex. 13 § 6.10.)

3

1  taking on all the rights and obligations of AT&T. (Id.) Third, the licenses and rights granted under
2  the 1987 PLA could be sublicensed

> to any future divested present business of Philips or of the three entities by the divesting company. Such sublicenses may be granted and retained only while the future divested business operates as a separately identifiable business and not for an existing or other acquired business of a third party acquiring the future divested business and only to the extent applicable to those products and services sold by the future divested business which are substantially similar to products and services sold by it prior to its divestiture.

(Id.)

In 1996, the '500, '748, '958, '672, '180, '739 and '928 Patents (collectively, "Extended Period Patents") were assigned by AT&T to Lucent Technologies, Inc. ("Lucent"), the new equipment-focused entity under AT&T. (Undisputed Facts at 48.) With the exception of the '928 Patent, the parties agree that each of these patents is subject to the 1987 PLA pursuant to the 1995 Concurrence.[4] (Id. at 29-30.) In January 2001, Lucent assigned the '500, '748, '958, '672, '180 and '739 Patents to Agere, and assigned the '928 Patent to Agere Systems Optoelectronics Guardian Corp. ("Guardian"). (Id. at 48-49.) Agere and Guardian later merged, making Agere the sole assignee of all the rights and obligations to the Extended Period Patents. (Schuman Decl., Ex. KK.)

In 2006, Philips divested its semiconductor business by selling 80.1% of its semiconductor business to a consortium of private equity investors and retaining 19.9% ownership. (Schuman Decl., Ex. QQ.) The new entity was NXP B.V. Plaintiff NXP is a wholly owned subsidiary of NXP B.V. In October 2006, Philips and Plaintiff signed an agreement ("2006 Sublicense") providing that "Philips grants hereby sublicenses under the conditions as specified in the [1987 PLA as modified by the 1995 Concurrence] to . . . [Plaintiff NXP]." (Schuman Decl., Ex. PP.)

---

[4] The parties dispute whether the '928 Patent falls within the definition of "invention" under the 1987 PLA and 1995 Concurrence because they disagree on the proper interpretation of the contract term "any application for a patent" under the 1987 PLA. (Undisputed Facts at 29-30.) Since the parties have not briefed this issue, the Court declines to address the proper interpretation of this term under the 1987 PLA.

4

**B.     Procedural History**

Plaintiff filed this declaratory judgment action on February 1, 2008. Plaintiff seeks declaratory judgment with respect to, *inter alia*, noninfringement and invalidity regarding twelve patents in suit.[5] Plaintiff's First Claim for Relief under its Amended Complaint seeks "a declaration that any use by [Plaintiff] of the methods or technology claimed in patents that were filed by AT&T or its related companies during the Extended Period is licensed and therefore noninfringing." (Amended Complaint ¶ 18, Docket Item No. 24.) Defendants allege counterclaims for infringement for each of the Extended Period Patents. (See Answer to Amended Complaint and Counterclaims, Docket Item No. 30.)

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment on its First Claim for Relief.

### III.  STANDARDS

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment." However, partial summary judgment is inherent in that Rule 56(a) provided for summary judgment on "all or part of the claim." Thus, a party may move for summary judgment on the liability issues in a claim, leaving the issue of damages, for example, for trial.

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, partial summary judgment may be used to dispose of a factually unsupported affirmative defense.

As with a motion on the entire claim, under Rule 56(c), partial summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment [on a part of the claim or an affirmative defense] as a matter of law."

---

[5] See Footnote 1, *supra*.

5

1 Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the
2 district court of the basis for its motion, and identifying the evidence which it believes demonstrates
3 the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then
4 identify specific facts "that might affect the outcome of the suit under the governing law," thus
5 establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

6 When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv., 809 F.2d at 631. In such a case, partial summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Plaintiff moves for partial summary judgment on its First Claim for Relief on the ground that Philips had a license under the 1987 PLA to use the Extended Period Patents, and, upon divestiture, Philips gave NXP a valid sublicense pursuant to the 1995 Concurrence. (Motion at 18-21.) Defendants contend that Plaintiff has not provided enough evidence for the Court to determine whether Plaintiff's products are covered by the 1987 PLA.[6] Specifically, Defendants present two reasons for opposing summary judgment: First, they contend that a historical analysis comparing Plaintiff's current products with those offered by Philips in 1987 is necessary to determine if they

---

[6] (LSI Corporation's Opposition to NXP Semiconductor USA, Inc.'s Motion for Partial Summary Judgment, hereafter, "Opposition," Docket Item No. 201.)

6

1 are "of the same kind" under the 1987 PLA, and that insufficient evidence has been presented to
2 conduct this historical analysis. (Opposition at 9.) Second, Defendant contend that Plaintiff has not
3 provided sufficient evidence to show that its 2006 Sublicense meets the three requirements
4 enumerated in the 1995 Concurrence. (Opposition at 20.)

**A.   Scope of the 1987 PLA**

The parties dispute whether Plaintiff's products are covered by the scope of the 1987 PLA. Plaintiff contends that the 1987 PLA granted a license to use the Extended Period Patents in connection with any of Philips' then-existing businesses, which included the semiconductor business. (Motion at 19-20.) Defendants focus on the 1987 PLA's requirement that only products and services "of the kinds" furnished by Philips in 1987 are licensed. (Opposition at 9.)

Under New York law,[7] "the initial interpretation of a contract is a matter of law for the court to decide." Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996). The first critical inquiry for a court on summary judgment is to determine whether the contract language is ambiguous. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002). "An ambiguity exits where the terms of [a contract] could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (internal quotations omitted). If a court finds that a contract is not ambiguous, it should assign the plain and ordinary meaning to the language and interpret the contract without the aid of extrinsic evidence. Int'l Multifoods, 309 F.3d at 83.

If a court finds that a contract is ambiguous, it may look to "any extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." Id. However, under New York law, when the language of a contract is ambiguous, a determination of the parties'

---

[7] The parties do not dispute that New York law governs the interpretation of the contracts at issue.

7

United States District Court / For the Northern District of California

intent becomes a question of fact.  Amusement Bus. Underwriters v. American Int'l Group, 66 N.Y.2d 878, 880-81 (1985); County of Orange v. Carrier Corp., 869 N.Y.S.2d 211, 212 (N.Y. App. Div. 2008).  While there is no "rigid rule prohibiting reference to extrinsic evidence in resolving a contractual ambiguity on a summary judgment motion," ambiguity will generally preclude summary judgment.  Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) (internal quotations omitted); Nat'l Union Fire Ins. Co. of Pittsburgh v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983).  Summary judgment should be granted only if, viewing all the evidence concerning the parties' intent in the light most favorable to the non-movant, a court finds that the ambiguity can be resolved.[8]  Southern California Gas, 336 F.3d at 889.

Here, the 1987 PLA grants Philips a license with the following scope:

> under AT&T's Patents, nonexclusive and nontransferable licenses to make, have made, use, lease, sell, import and otherwise dispose of (and practice methods and processes for the use of) any or all products and services of the kinds which are furnished or used by Philips . . . in the operation of the business in which it is engaged on [July 1, 1987].

(Wells Decl., Ex. 13 § 1.01(a).)  The 1987 PLA is unambiguously limited to "products and services of the kinds" which Philips furnished on July 1, 1987.  Although the contract does not expressly define the term "products and services of the kinds," the language of the license grant evidences an intent to extend the license to a class of products and services that is broader than the precise products and services sold by Philips on July 1, 1987.  Moreover, the use of the term "of the kinds" to define the class of products for which the patents were licensed shows that the parties intentionally did not limit the license by specifying a level of abstraction at which "of the kinds" must be read.  In other words, the license unambiguously expresses the parties' intent to grant a broad license allowing Philips to use AT&T patents as long as the product for which those patents

---

[8] The Court notes that the threshold for obtaining summary judgment on a particular state-law issue has both substantive and procedural aspects.  However, the Second Circuit applies the same standard when addressing contract interpretation under New York law.  See Alexander & Alexander Serv., Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1990); Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 429 (2d Cir. 1992).

8

1  are used could be classified as being the same "kind" of product as any product made by Philips on
2  July 1, 1987, regardless of the level of generality applied to the term "kind."
3        The unambiguous breadth of the license grant is corroborated by the definition of
4  "Semiconductor Products" contained in the 1987 PLA. Section 1.01(c) of the 1987 PLA limits
5  Philips' ability to grant sublicenses to certain related companies by allowing Philips to sublicense
6  AT&T patents only for use concerning "products which are Semiconductor Products." (Wells Decl.,
7  Ex. 13 § 1.01(c).) "Semiconductor Product" is in turn defined under the 1987 PLA as

> a device consisting primarily of a body (which may be in the form of a layer), or of a unitary structure of bodies which have been produced in this structure simultaneously and/or commonly, of a single semiconductor material or a plurality of semiconductor materials and a plurality of electrodes associated therewith, and including, if present, in and/or upon said body or bodies layers and/or regions and/or additional circuit elements in the form of layers, which layers and/or regions may be in single or multiple form and may consist also of materials other than semiconductor material.

12  (Wells Decl., Ex. 13, Definitions Appx. at ii.) While semiconductor technology has certainly
13  advanced since July 1, 1987, any modern semiconductor product would be a product "of the kind"
14  defined in the 1987 PLA. Since the parties do not dispute that Philips furnished semiconductor
15  products on July 1, 1987,[9] the Court finds that, to the extent Plaintiff uses the Extended Period
16  Patents with respect to semiconductor products which, at a minimum, fall within the definition
17  provided in the 1987 PLA, Plaintiff's use falls within the scope of the 1987 PLA and a detailed
18  historical comparison of Plaintiff's current products with Philips' July 1, 1987 products is
19  unnecessary.
20        Despite the Court's finding that the scope of the 1987 PLA is both unambiguous and broad,
21  the parties have not provided evidence with respect to how Plaintiff used the Extended Period
22  Patents. Plaintiff does not provide any evidence showing that its use of the Extended Period Patents
23  comports with the license grant of the 1987 PLA as interpreted by the Court. Therefore, the Court
24  finds that a genuine issue of material fact remains as to Plaintiff's First Claim for Relief.

---

[9] (See, e.g. Opposition at 14.)

**B.     1995 Concurrence**

The parties also dispute whether Plaintiff's use of the Extended Period Patents pursuant to the 2006 Sublicense satisfies the three requirements of the 1995 Concurrence. Defendants contend that Plaintiff has not provided sufficient evidence to show that its conduct under the 2006 Sublicense meets the requirements for any such sublicense set out in the 1995 Concurrence. (Opposition at 20.)

Under the 1995 Concurrence, Philips may grant a sublicense for all the rights Philips possessed under the 1987 PLA to any future divested business as long as three requirements are met: (1) the sublicensee must be a "divested business" operated by Philips as of November 29, 2005; (2) the sublicensee may retain rights under the 1987 PLA "only while the future divested business operates as a separately identifiable business and not for an existing or other acquired business of a third party acquiring the future divested business;" and (3) the sublicensee possesses the rights defined under the 1987 PLA "only to the extent applicable to those products and services sold by the future divested business which are substantially similar to products and services sold by it prior to its divestiture." (Wells Decl., Ex. 19.)

Here, the only dispute between the parties is the meaning of the term "substantially similar."[10] Plaintiff contends that it continues to sell two types of semiconductors–discrete semiconductors and integrated circuit semiconductors–just as Philips did at the time of the 2006 divestiture. (Reply at 15.) Defendants contend that a historical comparison is necessary to determine if the products and services for which Plaintiff has used the Extended Period Patents are "substantially similar" to the products and services sold by Philips at the time of the 2006 divestiture. (Opposition at 22-23.)

The parties' dispute over the meaning of the term "substantially similar" mirrors their dispute regarding the interpretation of the term "products and services of the kinds" contained in the 1987 PLA. Similar to the 1987 PLA, the 1995 Concurrence unambiguously extends the 2006 Sublicense

---

[10] (See Opposition at 22-23; Plaintiff NXP Semiconductors USA's Reply in Support of Its Motion for Partial Summary Judgment at 15, hereafter, "Reply," Docket Item No. 233.)

to a class of products beyond the precise products sold by Philips in 2006 prior to the divestiture of Plaintiff NXP. Furthermore, the parties chose not to specify a level of abstraction for which the term "substantially similar" must be applied. Thus, the term "substantially similar" is unambiguously broad. For the reasons discussed above regarding the 1987 PLA, the Court finds that the "substantially similar" requirement of the 1995 Concurrence is satisfied if Plaintiff used the Extended Period Patents in connection with products that can be classified, at some level of abstraction, as "substantially similar" to Philips' products at the time of the 2006 Sublicense.

However, Plaintiff fails to provide sufficient evidence to show that the 2006 Sublicense meets the three requirements of the 1995 Concurrence.[11] In particular, Plaintiff does not provide the Court with any evidence concerning the products sold by Philips at the time of the 2006 divestiture and the products for which Plaintiff used the Extended Period Patents.[12] Without such evidence, the Court is unable to determine whether Plaintiff's are properly acting within the scope of the 1995 Concurrence.

In an effort to establish that the 2006 Sublicense meets the criteria of the 1995 Concurrence, in advance of providing evidence regarding how it has used the Extended Period Patents, Plaintiff provides an exhibit attached to a complaint filed by Defendants with the International Trade Commission ("ITC") containing a statement that Plaintiff is licensed under the 1987 PLA to use the '335 Patent. (Schuman Decl., Ex. UU.) However, the '335 Patent is no longer a patent at issue in this case. (See Docket Item No. 264.) Thus, the Court finds Defendants' filing with the ITC is insufficient to establish that the 2006 Sublicense meets the criteria set out in the 1995 Concurrence.

---

[11] Although the parties' briefing centers primarily on the 1987 PLA term "products and services of the kinds" and the 1995 Concurrence term "substantially similar," the Court finds that further briefing concerning whether the 2006 Sublicense satisfies the other two requirements set out in the 1995 Concurrence would be necessary to grant summary judgment.

[12] Plaintiff contends that it is undisputed that it makes the same type of semiconductors that Philips made at the time of the 2006 divestiture. (Reply at 15.) However, this fact is not clearly undisputed, and the parties do not provide evidence regarding the scope of Plaintiff's use of the Extended Period Patents. (Undisputed Facts at 51.)

11

In sum, the Court DENIES Plaintiff's Partial Motion for Summary Judgment as to its First Cause of Action.

## V. CONCLUSION

The Court DENIES Plaintiff NXP Semiconductors USA's Motion for Partial Summary Judgment on its First Cause of Action.

The parties are ordered to appear for a Case Management Conference on **June 22, 2009 at 10 a.m.** to discuss a schedule for the remainder of this case. The parties shall file a Joint Case Management Statement on or before **June 12, 2009**. The parties' Statement shall address, among other things, a subsequent summary judgment motion regarding the licensing issues discussed in this Order.

Dated: May 27, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brett Michael Schuman bschuman@morganlewis.com
Crawford Maclain Wells mwells@irell.com
Daniel Johnson djjohnson@morganlewis.com
Gregg Paris Yates gyates@morganlewis.com
Herman Joseph Freder Hoying hhoying@morganlewis.com
Jason George Sheasby Jsheasby@Irell.com
Jonathan Henry Steinberg jsteinberg@irell.com
Michael Eric Molland mmolland@morganlewis.com
Ryan Lindsay Scher rscher@morganlewis.com
Samuel Kai Lu slu@irell.com
Zachariah Bo Summers zsummers@irell.com

**Dated: May 27, 2009**               **Richard W. Wieking, Clerk**

**By:   /s/ JW Chambers**
       **Elizabeth Garcia**
       **Courtroom Deputy**

**United States District Court**
For the Northern District of California